**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 4, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

RODNEY DOUGLAS EAVES,

     Plaintiff - Appellee,

v.

JARED POLIS,

     Defendant - Appellant,

and

DEAN WILLIAMS; GYPSY KELSO;
ANTHONY DECESARO; MARSHALL
GRIFFITH; JERRY ROARK; DAVID
HESTAND; STEVEN SALAZAR;
TRAVIS TRANI; JASON SMITH;
CLARA CASEBOLT; LARRY COX;
JUSTIN ARRASMITH; DERICK
DOCKTER; LUKE HOLLAND;
TIFFANY SALDANA; COLIN CARSON;
DONNY BRITTON,

     Defendants.

No. 23-1143

_____

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 1:21-CV-01269-KAS)**

_____

LeeAnn Morrill, First Assistant Attorney General (Philip J. Weiser, Attorney General, and Michael T. Kotlarczyk and Christopher J.L. Diedrich, Senior Assistant Attorneys General, with her on the briefs), Colorado Department of Law, Denver, Colorado, for Defendant-Appellant.

Jeffrey Then, Kaplan Hecker & Fink LLP (Joshua Matz, Kaplan Hecker & Fink LLP, and Samuel Weiss, Rights Behind Bars, Washington, D.C., with him on the briefs), New York, New York, for Plaintiff-Appellee.

———————————————

Before **BACHARACH**, **BALDOCK**, and **CARSON**, Circuit Judges.

———————————————

**BALDOCK**, Circuit Judge.

———————————————

Plaintiff Rodney Douglas Eaves is in the custody of the Colorado Department of Corrections (CDOC) and will be for the foreseeable future.[1] While incarcerated in the Bent County Correctional Facility (BCCF), Plaintiff, proceeding pro se, filed this suit for monetary and injunctive relief challenging his conditions of confinement. Plaintiff claimed a violation of his right to practice his Sac & Fox faith under the First Amendment, U.S. Const. amend I, and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §§ 2000cc–2000cc-5. In his Amended Complaint (AC), Plaintiff names 18 Defendants in both their official and individual capacities. These Defendants may be grouped as follows: (1) Jared Polis, the Governor of Colorado, (2) six officials from the CDOC, and (3) eleven employees of the BCCF.

This matter is before the Court on Defendant Governor's appeal from the district court's order denying his motion to dismiss the AC's official-capacity claims for

———————————————

[1] Plaintiff's incarceration is a result of his 2016 convictions in Colorado state court for aggravated robbery, theft, menacing, and possession of a weapon by a previous offender. *People v. Eaves*, No. 15-CR-1188 (El Paso Cnty., Colo. 2015). Plaintiff is not eligible for parole until November 14, 2037. https://www.doc.state.co.us/oss/ (CDOC inmate lookup) (last visited Feb. 17, 2026).

injunctive relief against him on the basis of Eleventh Amendment immunity. U.S. Const. amend XI. Defendant Governor says he does not have the requisite connection to the CDOC regulations and policies about which Plaintiff complains, in turn rendering inapplicable the prospective relief exception to the Eleventh Amendment established in *Ex Parte Young*, 209 U.S. 123 (1908). Our jurisdiction arises under 28 U.S.C. § 1291 via the collateral order doctrine. *Arbogast v Kansas, Dept. of Lab.*, 789 F.3d 1174, 1179 (10th Cir. 2015).

Importantly, during the pendency of this appeal, the CDOC transferred Plaintiff out of the BCCF and, after a couple stops along the way, into the Sterling Correctional Facility (SCF), where he now resides. This revised scenario, which Defendant Governor inexplicably and belatedly brought to our attention just prior to oral argument, gives rise to another inquiry apart from his claim to Eleventh Amendment immunity. That two-fold inquiry is whether Plaintiff's transfer to another facility within the CDOC has rendered his claims for injunctive relief against Defendant Governor (1) constitutionally moot meaning an Article III "case or controversy" no longer exists for the district court to adjudicate, or (2) prudentially moot meaning the district court must dismiss Plaintiff's claims for injunctive relief without prejudice in an exercise of its remedial discretion. For reasons to follow, we first decide Defendant Governor's appeal is neither constitutionally nor prudentially moot. We then decide the district court properly held Defendant Governor was not entitled to Eleventh Amendment immunity, and thus properly denied his motion to dismiss. Accordingly, we affirm and remand for further proceedings.

I.

Defendant Governor's challenge to the AC is a facial one so we accept the operative pleading's non-conclusory factual allegations as true. *Graff v. Aberdeen Enter., II, Inc.*, 65 F.4th 500, 507 (10th Cir. 2023). Because Plaintiff filed the AC pro se, we liberally construe it and, "however inartfully pleaded, . . . [hold it] to less stringent standards than formal pleadings drafted by lawyers." *United States v. Trent*, 884 F.3d 985, 993 (10th Cir. 2018). Plaintiff's thirty page AC raises seven claims. Four claims implicate Defendant Governor and remain viable in the district court. These four claims allege unlawful (1) denial of Plaintiff's request to possess sacred items for his personal religious practices (claim one), (2) denial of Plaintiff's request to spiritually cleanse his cell and embellish his headband and medicine bag with beads and stones (claim three), (3) confiscation of firewood bought with funds Plaintiff donated to purchase the firewood for use in religious ceremonies (claim four), and (4) denial of Plaintiff's access to the BCCF's faith grounds during and after the COVID pandemic (claim six).

As for claim one, Plaintiff's pertinent allegation against Defendant Governor is found in paragraph eight of the AC. This paragraph states that in September 2020, CDOC Defendant Gypsy Kelso, the CDOC's Faith and Citizens Administrative Designee, "with a memorandum issued from" Defendant Governor and Defendant Dean Williams, the CDOC's Executive Director, "denied [Plaintiff's] request to possess personal sacred objects." Turning to claim three, Plaintiff in paragraph 105 of the AC alleges he submitted a request to amend CDOC Administrative Regulation

4

(AR) 800-01 (addressing "Religious Programs, Services, Clergy, Faith Group Representatives, and Practices") to permit him to "Wazilla [his] living space and embellish [his] headband and medicine bag with beads and stones."[2]  In paragraph 106, Plaintiff alleges CDOC Defendant Kelso informed Defendant Governor of Plaintiff's request to amend AR 800-01.  In paragraph 107, Plaintiff says that six months later, Defendant Governor and CDOC Defendant Williams "developed a new AR 800-01 without considering the requirements of [Plaintiff's] Native American beliefs." Continuing on, paragraph 125 alleges Defendant Governor, together with four CDOC Defendants, "chose to create and enforce a policy that denies [Plaintiff's] religious expression."  In the same paragraph, Plaintiff alleges, "[t]hese Defendants have collaborated together to create and enforce insensitive policies in violation of [his] First Amendment rights."  Next, in claim four, Plaintiff alleges in paragraph 127 that he was donating funds to the CDOC's Native American Faith Fund to purchase firewood for religious ceremonies.  In paragraph 131, he says Defendant Governor along with two CDOC Defendants "developed a policy creating a loophole" so the State of Colorado would not have to purchase firewood for use in religious ceremonies at CDOC facilities.  *See* CDOC AR 800-02 (addressing "Religious Trust Fund Accounts and Charitable Contributions").  Lastly, in claim six, Plaintiff alleges that during and after the COVID pandemic lockdown, Plaintiff wanted access to the BCCF's faith grounds but, according to paragraphs 157 and 158, Defendant Governor

---

[2]  The CDOC's administrative policies and regulations may found at https://cdoc.colorado.gov/about/department-policies (last visited February 17, 2026).

and three CDOC Defendants "created and enforced a policy" that denied Plaintiff access to the grounds, thus preventing him from practicing his faith.

## II.

Before addressing Defendant Governor's claim to Eleventh Amendment immunity, we first must ask and answer whether Plaintiff's transfer out of the BCCF and into the SCF has mooted his claims for injunctive relief against Defendant Governor. But we cannot resolve that query until we address whether we may exercise our discretion to consider Plaintiff's affidavit, attached to his supplemental brief, as to his current conditions of confinement at the SCF. To answer this preliminary inquiry, we need look no further than our decision in *Morganroth & Morganroth v. DeLorean*, 213 F.3d 1301 (10th Cir. 2000), *overruled in part on other grounds by TW Telecom Holdings, Inc. v. Carolina Internet Ltd.*, 661 F.3d 495, 496–97 (10th Cir. 2011). There, plaintiff law firm filed a diversity suit to set aside a transfer of property as fraudulent. Plaintiff prevailed, the transfer was set aside, and the property was sold to satisfy a debt owed plaintiff. Defendant debtors appealed, whereupon plaintiff suggested the execution sale of the subject property had mooted the appeal. In support, plaintiff submitted an affidavit of counsel, appended to plaintiff's appellate brief, to which defendants objected:

> [Plaintiff's] affidavit describes events which occurred after the district court had entered judgment . . . . Defendants object that [plaintiff] is attempting to inject matters not in the record below. This is patently correct, but the suggestion that [plaintiff's] affidavit is improper is fatuous. Of course it is proper for a party to provide additional facts when that party has an objectively reasonable, good faith argument that subsequent events have rendered the controversy moot. Indeed, we

6

depend on the parties for such information, and it is axiomatic that subsequent events will not be reflected in the district court record.

*Id*. at 1309.

*Morganroth* tells us we may consider Plaintiff's affidavit in a sound exercise of our discretion. *Cf. Jordan v. Sosa*, 654 F.3d 1012, 1033 (10th Cir. 2011) (refusing to give credence to a Colorado official's affidavit regarding plaintiff's current conditions of confinement in a Pennsylvania facility because affiant "did not purport to have any personal knowledge as to those conditions"). Where a party on appeal suggests that events subsequent to the district court's judgment have rendered a controversy moot—in this case Plaintiff's transfer out of the BCCF and into the SCF—our adversarial system requires that the opposing party be permitted, by way of response, to submit facts suggesting those events have not rendered the controversy moot. *Cf. Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1110–11 n. 11 (10th Cir. 2010) (where the question on appeal was whether the case became moot prior to entry of the district court's judgment, court would not supplement the record with documents the district court had no opportunity to review).

In paragraph ten of his affidavit, Plaintiff says his "need for the injunctive relief requested in [his] amended complaint, with one exception, remains the same" at his new facility. Plaintiff attests that while at the SCF, he has not been allowed to possess personal sacred objects, embellish his medicine bag and headband, wear a choker as religious neck ware, or spiritually cleanse his living space (claims one and three). He further attests Defendant Governor has not provided an accounting indicating who has

7

donated to the Native American Faith Fund, how much they have donated, and how those donations have been spent (claim four). Finally, Plaintiff attests Defendant Governor has failed to develop a plan to allow him access to the SCF's faith grounds once a week (claim six). Plaintiff acknowledges that at the SCF he now has a limited ability to wear his eagle feathers and has sporadic access to the facility's faith grounds. Otherwise, however, his conditions of confinement at the SCF are the same as they were at the BCCF.

## A.

With Plaintiff's uncontested affidavit in mind, we now turn to the question of mootness. "Mootness has many moods. . . . In some cases mootness bears a constitutional countenance, acting as a jurisdictional bar against even entertaining a case. Other times mootness carries a more prudential complexion, permitting [a court] to withhold relief [it has] the authority to grant." *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1209 (10th Cir. 2012). The constitutional mootness doctrine, grounded in Article III's case or controversy requirement, U.S. Const. art. III, provides that although an actual and justiciable controversy existed at the action's onset, if and when that controversy ceases to exist, a federal court must dismiss the action for want of subject-matter jurisdiction.[3] But whether, when, and to what extent an Article III controversy has ceased to exist is an inquiry that has taxed federal courts and eluded

---

[3] The Supreme Court has recognized constitutional "mootness as 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980).

clear answer. Nonetheless, because it bears on a federal court's jurisdiction, the constitutional inquiry necessarily comes first. We undertake this inquiry de novo. *Rio Grande Silvery Minnow*, 601 F.3d at 1123.

Where a defendant suggests that events subsequent to the filing of a lawsuit have rendered the plaintiff's claim for injunctive relief moot, a court's constitutional inquiry is a narrow one. Neither a defendant's voluntary cessation of a challenged practice nor a change in circumstances apart from voluntary cessation in itself deprives a federal court of its power to determine the legality of the practice. *See Friends of the Earth, Inc. v. Laidlaw Env't Serv. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (voluntary cessation); *Fletcher v. United States*, 116 F.3d 1315, 1321 (10th Cir. 1997) (change in circumstances). A court will hold a controversy constitutionally moot for the purpose of prospective relief *only if* the party asserting mootness satisfies the "heavy burden" of establishing his adversary is no longer subject to the wrongs about which he originally complained *and* no possibility exists that he will again become subject to such wrongs. *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953). In other words, a case becomes constitutionally moot when its proponent establishes subsequent events make it "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth*, 528 U.S. at 189 (quoting *United States v. Concentrated Phosphate Exp. Ass'n, Inc.* 393 U.S. 199, 203 (1968)).

For our purpose this is to say that where an incarcerated plaintiff alleges exposure to unlawful conditions of confinement at the time he files his complaint, a subsequent transfer to another prison will not render his claim(s) for injunctive relief

constitutionally moot unless defendant can show plaintiff is not and will not be exposed, even in part, to such conditions at his new facility.  *See Knox v. Serv. Employ. Int'l Union*, 567 U.S. 298, 307 (2012).  Because "[t]he purpose of an injunction is to prevent future violations," we may state as a general rule that a federal court's "power to grant injunctive relief survives discontinuance of the illegal conduct."  *W.T. Grant*, 345 U.S. at 633.  A case becomes constitutionally moot only when the proponent of mootness establishes subsequent events make it "impossible for a court to grant any effective relief whatever" to his adversary.  *Knox*, 567 U.S. at 307 (internal quotations omitted); *see also Rezaq v. Nalley*, 677 F.3d 1001, 1010 (10th Cir. 2012)  ("A case is not moot when there is *some* possible remedy, even a partial remedy[.]").

That Plaintiff's transfer out of the BCCF and into the SCF has not rendered his claims for injunctive relief against Defendant Governor constitutionally moot is apparent on the record before us.  Plaintiff's undisputed affidavit concerning the conditions of confinement at the SCF represents that those conditions are substantially the same as they were at the BCCF.[4]  Given, as we shall see in Part III *infra*, that Defendant Governor is "situated to effectuate any prospective relief that the court[] might see fit to grant," *Jordan*, 654 F.3d at 1028, he has failed to meet his burden of showing a live controversy no longer exists between Plaintiff and himself.  Defendant

---

[4]  In *Jordan,* 654 F.3d at 1028, we recognized that "where a prisoner brings a lawsuit challenging policies that apply in a generally uniform fashion throughout a prison system, courts have been disinclined to conclude that the prisoner's declaratory or injunctive relief claims are [constitutionally] moot, even after he has been transferred to another prison in that system."

Governor has not even attempted to show that if Plaintiff ultimately prevails, the district court would be incapable of awarding him meaningful injunctive relief. Accordingly, we hold Plaintiff's claims for injunctive relief against Defendant Governor are not constitutionally moot.

B.

This brings us to a consideration of prudential mootness, perhaps more appropriately referred to as the doctrine of remedial discretion. Unlike constitutional mootness, this doctrine does not address a court's power to grant relief, but rather a court's discretion in the exercise of such power. *Jordan*, 654 F.3d at 1024. One court has described the doctrine of remedial discretion, "[t]he cousin of the mootness doctrine, in its strict Article III sense, [as] a mélange of doctrines relating to the court's discretion in matters of remedy and judicial administration." *Chamber of Com. v. U.S. Dept. of Energy*, 627 F.2d 289, 291 (D.C. Cir. 1980). Even if a case is not constitutionally moot, a court still *may* rely on its remedial discretion to conclude that the benefit of injunctive (or declaratory) relief is too slight or speculative to justify granting such relief.[5] *See, e.g.*, *Bacote v. Fed. Bureau of Prisons*, 119 F.4th 808, 813–14 (10th Cir. 2024). Importantly, where the question is whether a court should exercise its remedial discretion to deny a party prospective relief, the burden shifts. The party

---

[5] A federal court also might exercise its discretion to decline to award prospective relief where such relief would be duplicative of relief promised by a coordinate branch of government. *Winzler*, 681 F.3d at 1210–12 (dismissing appeal as prudentially moot where a coordinate branch of government stepped in "to promise" Plaintiff the relief she sought by way of a vehicle recall pursuant to federal law).

11

seeking prospective relief, rather than the party asserting constitutional mootness, has the burden of showing relief is needed because "there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *W.T. Grant*, 345 U.S. at 633.

Thus, where a defendant asserts subsequent events have rendered a plaintiff's claim(s) for injunctive relief moot, the difference between constitutional mootness and prudential mootness is just this:  To obtain dismissal on the basis of constitutional mootness, defendant bears the burden of establishing that a grant of at least some meaningful relief to plaintiff is not possible, *Knox*, 567 U.S. at 307, because the prospect that the wrong(s) about which plaintiff complained will recur is highly unlikely. *Friends of the Earth*, 528 U.S. at 189.  But to avoid dismissal on the basis of prudential mootness, plaintiff bears the burden of establishing a recurrent violation of the wrongs about which he complained is more than an abstract possibility, *W.T. Grant*, 345 U.S. at 633, such that the court may grant him some meaningful relief.  *Rezaq*, 677 F.3d at 1009–10.

Our recent decision in *Bacote* provides a sound example of when a prisoner's complaint for injunctive relief based on his conditions of confinement has become prudentially moot.  In *Bacote*, plaintiff originally was incarcerated at the Administrative Maximum Facility in Florence, Colorado (ADX-Florence).  But plaintiff suffered from Persistent Depressive Disorder (PDD) and a Federal Bureau of Prisons (FBP) policy forbid defendant FBP from incarcerating individuals with PDD at ADX-Florence.  Plaintiff filed suit for injunctive relief claiming defendant FBP had

12

violated his Eighth Amendment rights by acting with deliberate indifference to his mental disability.  The district court dismissed plaintiff's suit on the merits.  Pending plaintiff's appeal, defendant FBP transferred plaintiff to a penitentiary in Allenwood, Pennsylvania (USP-Allenwood), a facility where incarceration of those suffering from PDD was permissible.

Exercising our remedial discretion, we vacated the district court's judgment and remanded with instructions to dismiss plaintiff's claims for injunctive relief without prejudice.  We observed that once plaintiff received his PDD diagnosis, defendant FBP promptly moved him to USP-Allenwood because, per FBP policy, the FBP did not designate ADX-Florence to house seriously mentally ill inmates, including those with PDD.  In other words, the policy at issue in *Bacote* specifically forbid plaintiff's incarceration at ADX-Florence but not at USP-Allenwood.  We observed that plaintiff presented "little information regarding [his] current conditions of confinement," effectively asking us to resolve the question of mootness in his favor based on "conjecture and speculation."  *Bacote*, 119 F.4th at 814 (internal quotations omitted).  We further observed that "to the limited extent that the record reveals the conditions of plaintiff's current confinement, it suggest[ed] that defendant gave plaintiff conditions [at USP-Allenwood] preferable to those about which [he] complained [at ADX-Florence]."  *Id.*  Therefore, we concluded that any relief we might grant plaintiff not only would be based on speculation given the lack of evidence, but also would be too slight because the conditions of confinement about which plaintiff complained appeared specific to ADX-Florence.

The present appeal is readily distinguishable from *Bacote* because here Plaintiff's post-judgment affidavit indicates "a cognizable danger of recurrent violation exists beyond a mere possibility." *Id.* at 813 (internal quotations omitted). Plaintiff's unrefuted affidavit tells us his conditions of confinement at the SCF are substantially the same as they were at the BCCF. Because Defendant Governor has submitted nothing to contradict this view, the record points in only one direction: Unlike the uncertainty surrounding plaintiff's new conditions of confinement in *Bacote*, the CDOC continues to subject Plaintiff post transfer to at least some of the allegedly unlawful conditions of confinement from which he seeks relief in his AC. We will not order Plaintiff's claims for injunctive relief against Defendant Governor dismissed pursuant to an exercise of our remedial discretion because Plaintiff has met his burden of showing that his claims for injunctive relief against him are not prudentially moot.

III.

At last we are ready to address the question originally presented to us by Defendant Governor's appeal: Does Defendant Governor have the requisite connection to the CDOC regulations and policies about which Plaintiff complains such that the Eleventh Amendment does not render Defendant Governor immune from Plaintiff's claims for injunctive relief under the exception established in *Ex Parte Young*, 209 U.S. at 123. The district court answered this question yes. We review its answer de novo. *Free Speech Coal. v. Anderson*, 119 F.4th 732, 735 (10th Cir. 2024).

The Eleventh Amendment states:  "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."   U.S. Const. amend XI.   Despite its plain language, the Amendment bars not only suits brought by "Citizens of another State," but also "suits in federal court against a nonconsenting state brought by the state's own citizens." *Williams v. Utah Dept. of Corr.*, 928 F.3d 1209, 1212 (10th Cir. 2019).  But as a general rule the Amendment does not bar suit for prospective relief against a state official sued in his official capacity so long as the complaint alleges an ongoing violation of federal law.  *Harris v. Owens*, 264 F.3d 1282, 1290 (10th Cir. 2001); *see also Verizon MD, Inc. v. Pub. Serv. Comm'n*, 535 U.S. 636, 645 (2002).  Before this exception applies, however, the state official, by virtue of his office, "must have some connection with the enforcement" of the challenged law about which plaintiff complains.  *Ex Parte Young*, 209 U.S. at 157.  Otherwise, the suit is "merely making [the official] a party as a representative of the state, and thereby [impermissibly] attempting to make the state a party."  *Id.*  While *Ex Parte Young* "does not require that the state official have a special connection to the unconstitutional act or conduct,"  *Hendrickson v. AFSCME Council 18*, 992 F.3d 950, 965 (10th Cir. 2021) (internal quotations omitted), what our precedents do require is that the state official have the power to enforce the law and a demonstrated willingness to exercise that power.  *See, e.g.*, *Hendrickson*, 992 F.3d at 965; *Peterson v. Martinez*, 707 F.3d 1197, 1207 (10th Cir. 2013).

15

Because the question of whether Defendant Governor has the power to enforce the CDOC's regulations and policies about which Plaintiff complains turns on our reading of Colorado law, this question, by definition, is one of law.  The Colorado Supreme Court, albeit outside the context of the Eleventh Amendment, has recognized "[t]he CDOC is an executive agency directly within the Governor's control," and "over which he has ultimate authority."[6] *Raven v. Polis*, 479 P.3d 918, 919, 922 (Colo. 2021).  In *Raven*, the Governor moved to dismiss a class action complaint challenging the conditions of confinement of transgender women in the custody of the CDOC.  The Governor argued he was not a proper party to "a suit challenging the implementation of Colorado law and policy by the [CDOC]." *Id.* at 919.  But the court explained the lawsuit challenged the actions of an executive agency, namely the CDOC, that is explicitly under the Governor's control:  "Because the Governor has final authority to order executive directors of all state agencies to commence or cease any action on behalf of the state, . . . the Governor has appropriately been named as a defendant in this type of action on many occasions." *Id.* at 921 (internal quotations omitted).

To support his argument that he does not have the requisite connection to CDOC regulations and policies that *Ex Parte Young* and its progeny require, Defendant

---

[6]  The Colorado Supreme Court's view is not inconsistent with the Colorado Code.  For instance, the Code provides "[t]he governor . . . shall appoint an executive director of the department of corrections, who shall serve at the pleasure of the governor." Colo. Rev. Stat. § 17-1-101(1).  The Code further provides "[t]he head of each principal [administrative] department is empowered, subject to the written approval of the governor, to prescribe rules and regulations, not inconsistent with law, for the government of his department." *Id.* § 24-2-105.

Governor cites our decisions in *Hendrickson*, 992 F.2d at 950, and *Peterson*, 707 F.3d at 1197.  Both decisions are distinguishable.  In *Hendrickson*, plaintiff sued his former union as well as New Mexico's governor and attorney general over union fees.  We upheld dismissal of the claims against the governor and attorney general because they did not enforce the applicable state statutory scheme.  Rather, members of the Public Employee Labor Relations Board did, and the New Mexico Supreme Court had insulated the board from other executive branch officials.  992 F.3d at 965.  Similarly, in *Peterson* we dismissed an action against a public official because that official had no connection to the challenged law's enforcement.  There, an out-of-state resident applied for a concealed handgun license (CHL) from a Colorado county sheriff.  After the sheriff denied the application, plaintiff sued both the sheriff and the executive director of the Colorado Department of Public Safety (CDPS).  Because Colorado assigned county sheriffs the task of administering the state's CHL laws, not the executive director of the CDPS, we held plaintiff's claims against the director did not fall within *Ex Parte Young*'s exception to the Eleventh Amendment.  We explained that "when a state law explicitly empowers one set of officials to enforce its terms, a plaintiff cannot sue a different official absent some evidence that the defendant is connected to the enforcement of the challenged law."  707 F.3d at 1207.

Defendant Governor in this case argues that while he may be involved in developing CDOC regulations and policies, he does not enforce them and absent such enforcement power, he is entitled to dismissal of Plaintiff's claims for injunctive relief—just as the executive officials in *Hendrickson* and *Peterson* were entitled to

dismissal of the official-capacity claims against them. But Defendant Governor's position cannot be squared with the Colorado Supreme Court's view about the extent of his authority over the CDOC. In *Raven*, the court observed that the Governor of Colorado has "final authority" to order the CDOC's executive director "to commence or cease *any* action on behalf of the state." 479 P.3d at 921 (emphasis added). Surely this observation alone is enough to satisfy *Ex Parte Young*'s requirement that Defendant Governor have "some connection with the enforcement" of CDOC regulations and policies. 209 U.S. at 157. In fact, the court's broad statement cannot help but encompass Defendant Governor's final enforcement power over CDOC regulations and policies, and Defendant Governor does not suggest otherwise.

Nor can Defendant Governor's position be squared with the AC's factual allegations, accepted as true. Those allegations indicate Defendant Governor, as a factual matter, has demonstrated a willingness to exercise his enforcement power over the CDOC regulations and policies that prevent Plaintiff from exercising his faith. *See Hendrickson*, 992 F.3d at 965. Plaintiff alleges he was denied the right to possess sacred objects "with a memorandum issued from" Defendant Governor and the CDOC's Executive Director (claim one). Plaintiff alleges Defendant Governor was notified of Plaintiff's concerns regarding AR 800-01 and responded, together with the CDOC's Executive Director, by revising AR 800-01 in a manner that failed to accommodate Plaintiff's religion (claim three). Plaintiff also alleges Defendant Governor collaborated with others to create and enforce policies regarding his access

to Native American Faith Fund monies and facility faith grounds that violate his First Amendment rights (claims four and six).

Because both Colorado law and the factual allegations of the AC, accepted as true, lead to the conclusion that *Ex Parte Young*'s exception to Eleventh Amendment immunity applies in this case, the district court properly denied Defendant Governor's motion to dismiss on the basis of such immunity.  Accordingly, we affirm the judgment of the district court and remand this matter to it for further proceedings consistent with this opinion.

AFFIRMED and REMANDED.