23-1143

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

JARED POLIS,

Defendant - Appellant,

v.

RODNEY DOUGLAS EAVES,

Plaintiff - Appellee.

On Appeal from the United States District Court, District of Colorado
The Honorable Kristen L. Mix
District Judge

District Court Case No. 21-cv-01269-KAS

**DEFENDANT-APPELLANT JARED POLIS'S APPENDIX,
VOLUME 2 OF 3**

PHILIP J. WEISER
Attorney General
MICHAEL T. KOTLARCZYK *
Senior Assistant Attorney General
CHRISTOPHER J.L. DIEDRICH*
Senior Assistant Attorney General

Colorado Department of Law
1300 Broadway, 6th Floor
Denver, Colorado 80203
Telephone: 720-508-6187
E-Mail: mike.kotlarczyk@coag.gov;
christopher.diedrich@coag.gov
*Counsel of Record
*Attorneys for Governor Polis*

# TABLE OF CONTENTS

## Volume 1 of 3 (SEALED)

Document 66, Amended Prisoner Complaint ....................................................App 1

## Volume 2 of 3

District Court Docket Sheet, Case No. 1:21-cv-01269-KAS .........................App 37

Document 73, Governor Polis's Motion to Dismiss......................................App 57

Document 76, CDOC's Partial Motion to Dismiss .......................................App 65

Document 76-1, Exhibit A to CDOC's Partial Motion to Dismiss ................App 93

Document 78, Minute Order Granting CDOC's Motion to Restrict Plaintiff's
    Amended Complaint ......................................................................App 168

Document 79, BCCF's Motion to Dismiss....................................................App 170

Document 83, Plaintiff's Response to BCCF Motion to Dismiss ................App 190

Document 85, BCCF's Reply in Support of its Motion to Dismiss .............App 197

Document 90, Plaintiff's Response to CDOC's Motion to Dismiss ............App 207

Document 91, Plaintiff's Response to Governor Polis's Motion to
    Dismiss..........................................................................................App 247

Document 92, Plaintiff's Surreply to BCCF's Motion to Dismiss...............App 254

Document 94, Governor Polis's Reply in Support of his Motion to
    Dismiss..........................................................................................App 258

Document 97, CDOC's Reply in Support of its Motion to Dismiss ............App 263

## Volume 3 of 3

Document 106, Order on Motions to Dismiss ...............................................App 281

Document 114, Plaintiff's Motion for Reconsideration on Order on Motions to
    Dismiss..........................................................................................App 346

Document 116, Governor Polis's Notice of Appeal ......................................App 367

Document 118, Appeal Letter.......................................................App 370

Document 118-1, Preliminary Record and Docket Sheet.............................App 371

Document 119, USCA Case Number Letter....................................................App 455

Document 124, Governor Polis's Motion to Stay ........................................App 457

Document 128, Letter to USCA Certifying the Record is Complete ............App 464

Document 129, USCA Order as to Notice of Appeal Effective Date ..........App 466

Document 135, BCCF's Response to Motion for Reconsideration...............App 468

Document 136, CDOC's Response to Motion for Reconsideration.............App 474

Document 138, Order Granting Stay of Proceedings as to Governor Polis ..App 487

Document 139, Plaintiff's Reply in Support of Motion for Reconsideration
    regarding BCCF's Response............................................................App 490

Document 140, Plaintiff's Reply in Support of Motion for Reconsideration
    regarding CDOC's Response...........................................................App 494

Document 165, Order Denying Plaintiff's Motion for Reconsideration .......App 500

# U.S. District Court - District of Colorado
## District of Colorado (Denver)
## CIVIL DOCKET FOR CASE #: 1:21-cv-01269-KAS

Eaves v. Polis et al
Assigned to: Magistrate Judge Kathryn A. Starnella
Case in other court:  USCA, 23-01143
Cause: 42:1983 Prisoner Civil Rights

Date Filed: 05/10/2021
Jury Demand: Defendant
Nature of Suit: 550 Prisoner - Civil Rights
(U.S. not a defendant)
Jurisdiction: Federal Question

**Plaintiff**

**Rodney Douglas Eaves**                    represented by **David George Maxted**
Maxted Law LLC
1543 Champa Street
Suite 400
Denver, CO 80202
720-717-0877
Email: dave@maxtedlaw.com
*ATTORNEY TO BE NOTICED*

**Stephanie M. Frisinger**
Maxted Law LLC
1543 Champa Street
Suite 400
Denver, CO 80202
970-402-9310
Email: sfrisinger21@law.du.edu
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Jared Polis**                    represented by **Grant T. Sullivan**
Colorado Attorney General's Office
Ralph L. Carr Colorado Judicial Center
1300 Broadway
Denver, CO 80203
720-508-6349
Fax: 720-508-6038
Email: grant.sullivan@coag.gov
*TERMINATED: 01/03/2024*

**Michael T. Kotlarczyk**
Colorado Attorney General's Office
Ralph L. Carr Colorado Judicial Center
1300 Broadway
Denver, CO 80203
720-508-6187
Fax: 720-508-6041

App 37

Email: mike.kotlarczyk@coag.gov
*ATTORNEY TO BE NOTICED*

**Stefanie L. Mann**
Colorado Attorney General's Office
Ralph L. Carr Colorado Judicial Center
1300 Broadway
Denver, CO 80203
303-601-8937
Email: stefanie.mann@coag.gov
*TERMINATED: 05/17/2023*

**Defendant**

**Dean Williams**                    represented by    **Mark Christopher Lockefeer**
Colorado Department of Law
Civil Litigation and Employment Law
Section
1300 Broadway
10th Floor
Denver, CO 80203
720-508-6555
Email: mark.lockefeer@coag.gov
*ATTORNEY TO BE NOTICED*

**Philip Timothy Barrett**
Colorado Attorney General's Office
Ralph L. Carr Colorado Judicial Center
1300 Broadway
Denver, CO 80203
720-508-6659
Email: philip.barrett@coag.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**Gypsy Kelso**                    represented by    **Mark Christopher Lockefeer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Philip Timothy Barrett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Anthony A. DeCesaro**            represented by    **Mark Christopher Lockefeer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Philip Timothy Barrett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

App 38

**Marshall Griffith**          represented by  **Mark Christopher Lockefeer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Philip Timothy Barrett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Jerry Roark**          represented by  **Andrew David Ringel**
Hall & Evans LLC
1001 Seventeenth Street
Suite 300
Denver, CO 80202
303-628-3300
Fax: 303-293-3238
Email: ringela@hallevans.com
*ATTORNEY TO BE NOTICED*

**Edmund Martin Kennedy**
Hall & Evans LLC
1001 Seventeenth Street
Suite 300
Denver, CO 80202
303-628-3300
Fax: 303-628-3368
Email: kennedye@hallevans.com
*ATTORNEY TO BE NOTICED*

**Katherine Hoffman**
Hall & Evans LLC
1001 Seventeenth Street
Suite 300
Denver, CO 80202
617-838-8611
Email: hoffmank@hallevans.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**David Hestand**          represented by  **Andrew David Ringel**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Edmund Martin Kennedy**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Katherine Hoffman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

App 39

**Steven Salazar**                    represented by **Andrew David Ringel**
                                      (See above for address)
                                      *ATTORNEY TO BE NOTICED*

                                      **Edmund Martin Kennedy**
                                      (See above for address)
                                      *ATTORNEY TO BE NOTICED*

                                      **Katherine Hoffman**
                                      (See above for address)
                                      *ATTORNEY TO BE NOTICED*

**Defendant**

**Travis Trani**                      represented by **Mark Christopher Lockefeer**
                                      (See above for address)
                                      *ATTORNEY TO BE NOTICED*

                                      **Philip Timothy Barrett**
                                      (See above for address)
                                      *ATTORNEY TO BE NOTICED*

**Defendant**

**Andre Stancil**                     represented by **Philip Timothy Barrett**
                                      (See above for address)
                                      *ATTORNEY TO BE NOTICED*

**Defendant**

**Jason Smith**                       represented by **Mark Christopher Lockefeer**
                                      (See above for address)
                                      *ATTORNEY TO BE NOTICED*

                                      **Philip Timothy Barrett**
                                      (See above for address)
                                      *ATTORNEY TO BE NOTICED*

**Defendant**

**Clara Casebolt**                    represented by **Edmund Martin Kennedy**
*TERMINATED: 03/30/2023*              (See above for address)
                                      *ATTORNEY TO BE NOTICED*

**Defendant**

**Larry Cox**                         represented by **Edmund Martin Kennedy**
*TERMINATED: 03/30/2023*              (See above for address)
                                      *ATTORNEY TO BE NOTICED*

**Defendant**

**Justin Arrasmith**                  represented by **Edmund Martin Kennedy**
*TERMINATED: 03/30/2023*              (See above for address)
                                      *ATTORNEY TO BE NOTICED*

**Defendant**

**Derick Dockter**                    represented by **Edmund Martin Kennedy**
*TERMINATED: 03/30/2023*              (See above for address)

App 40

*ATTORNEY TO BE NOTICED*

**Defendant**

**Luke Holland**
*TERMINATED: 03/30/2023*

represented by **Edmund Martin Kennedy**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Tiffany Saldana**
*TERMINATED: 03/30/2023*

represented by **Edmund Martin Kennedy**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Colin Carson**
*TERMINATED: 03/30/2023*

represented by **Edmund Martin Kennedy**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Donny Britton**
*TERMINATED: 03/30/2023*

| Date Filed | # | Docket Text |
|---|---|---|
| 05/10/2021 | 1 | PRISONER COMPLAINT against Anthony A. DeCesaro, Marshall Griffith, David Hestand, Gypsy Kelso, Jared Polis, Jerry Roark, Steven Salazar, Dean Williams (Partial Filing Fee: $400.00, Receipt Number:COX099017), filed by Rodney Douglas Eaves. (jtorr, ) (Entered: 05/10/2021) |
| 05/10/2021 | 2 | Case assigned to Magistrate Judge Gordon P. Gallagher. Text Only Entry. (jtorr, ) (Entered: 05/10/2021) |
| 05/11/2021 | 3 | ORDER Directing Plaintiff to Cure Deficiency. If Mr. Eaves fails to cure the designated deficiency within thirty (30) days from the date of this order, the action will be dismissed without further notice. The dismissal shall be without prejudice, by Magistrate Judge Gordon P. Gallagher on 5/11/2021. (angar, ) (Entered: 05/11/2021) |
| 05/26/2021 | 4 | PAYMENT RECEIVED from Rodney Douglas Eaves in the amount of $ 2.00; Receipt Number COX099192 (angar, ) (Entered: 05/28/2021) |
| 06/01/2021 | 5 | ORDER Drawing Case, by Magistrate Judge Gordon P. Gallagher on 6/1/2021. This case is randomly reassigned to Magistrate Judge S. Kato Crews for all further proceedings. All future pleadings should be designated as **21-cv-1269-SKC** (angar, ) (Entered: 06/01/2021) |
| 06/01/2021 | 6 | Magistrate Judge consent form issued pursuant to D.C.COLO.LCivR 40.1, direct assignment of civil actions to full time magistrate judges. (angar, ) (Entered: 06/01/2021) |
| 06/02/2021 | 7 | CASE REASSIGNED. Pursuant to 5 Order Drawing Case. This case was drawn in error. This case has been reassigned to Magistrate Judge Kristen L. Mix. All future pleadings should be designated as **21-cv-1269-KLM**. (Text Only Entry) (angar, ) (Entered: 06/02/2021) |
| 06/02/2021 | 8 | CERTIFICATE of Service by Clerk of Court re 1 Complaint for Service of Process (Attachments: # 1 USM-285, # 2 Certified Mail) (jgonz, ) (Entered: 06/02/2021) |

App 41

| | | |
|---|---|---|
| 06/03/2021 | 9 | WAIVER OF SERVICE Returned Executed by Rodney Douglas Eaves. Anthony A. DeCesaro waiver sent on 6/2/2021, answer due 8/1/2021; Marshall Griffith waiver sent on 6/2/2021, answer due 8/1/2021; Gypsy Kelso waiver sent on 6/2/2021, answer due 8/1/2021; Dean Williams waiver sent on 6/2/2021, answer due 8/1/2021. (nmarb, ) (Entered: 06/03/2021) |
| 06/09/2021 | 10 | NOTICE of Entry of Appearance by Andrew David Ringel on behalf of David Hestand, Jerry Roark, Steven SalazarAttorney Andrew David Ringel added to party David Hestand(pty:dft), Attorney Andrew David Ringel added to party Jerry Roark(pty:dft), Attorney Andrew David Ringel added to party Steven Salazar(pty:dft) (Ringel, Andrew) (Entered: 06/09/2021) |
| 06/09/2021 | 11 | WAIVER OF SERVICE Returned Executed by David Hestand, Jerry Roark, Steven Salazar. David Hestand waiver sent on 6/2/2021, answer due 8/1/2021; Jerry Roark waiver sent on 6/2/2021, answer due 8/1/2021; Steven Salazar waiver sent on 6/2/2021, answer due 8/1/2021. (Ringel, Andrew) (Entered: 06/09/2021) |
| 06/10/2021 | 12 | Certified Mail Returned Executed, by Rodney Douglas Eaves, pursuant to entry [8-2]. (nmarb, ) (Entered: 06/11/2021) |
| 06/11/2021 | 13 | NOTICE of Entry of Appearance by Katherine Hoffman on behalf of David Hestand, Jerry Roark, Steven SalazarAttorney Katherine Hoffman added to party David Hestand(pty:dft), Attorney Katherine Hoffman added to party Jerry Roark(pty:dft), Attorney Katherine Hoffman added to party Steven Salazar(pty:dft) (Hoffman, Katherine) (Entered: 06/11/2021) |
| 06/16/2021 | 14 | LETTER for clarification re Judge, by Plaintiff Rodney Douglas Eaves. (jgonz, ) Modified on 6/22/2021 to add gavel pursuant to Minute Order dated 6/21/21. (nmarb, ). (Entered: 06/18/2021) |
| 06/16/2021 | 15 | CONSENT to Jurisdiction of Magistrate Judge by Plaintiff Rodney Douglas Eaves. (jgonz, ) (Entered: 06/18/2021) |
| 06/21/2021 | 16 | MINUTE ORDER by Magistrate Judge Kristen L. Mix on 6/21/21 granting 14 Motion for Clarification. The case has been reassigned to Magistrate Judge Mix as the presiding judge pursuant to D.C.COLO.LCivR 40.1(d)(1).(nmarb, ) Modified on 6/22/2021 to show copy of order mailed to plaintiff. (nmarb, ). (Entered: 06/22/2021) |
| 07/27/2021 | 17 | NOTICE of Entry of Appearance by Philip Timothy Barrett on behalf of Anthony A. DeCesaro, Marshall Griffith, Gypsy Kelso, Travis Trani, Dean WilliamsAttorney Philip Timothy Barrett added to party Anthony A. DeCesaro(pty:dft), Attorney Philip Timothy Barrett added to party Marshall Griffith(pty:dft), Attorney Philip Timothy Barrett added to party Gypsy Kelso(pty:dft), Attorney Philip Timothy Barrett added to party Travis Trani(pty:dft), Attorney Philip Timothy Barrett added to party Dean Williams(pty:dft) (Barrett, Philip) (Entered: 07/27/2021) |
| 07/27/2021 | 18 | MOTION for Extension of Time to File Answer or Otherwise Respond by Defendants Anthony A. DeCesaro, Marshall Griffith, Gypsy Kelso, Travis Trani, Dean Williams. (Barrett, Philip) (Entered: 07/27/2021) |
| 07/28/2021 | 19 | MOTION for Extension of Time to File Answer or Otherwise Respond re 1 Complaint, by Defendants David Hestand, Jerry Roark, Steven Salazar. (Hoffman, Katherine) (Entered: 07/28/2021) |
| 07/29/2021 | 20 | MINUTE ORDER by Magistrate Judge Kristen L. Mix on 07/29/2021. IT IS HEREBY ORDERED that the CDOC Defendants' Motion # 18 is GRANTED. The CDOC Defendants have up to and including August 31, 2021, to file responsive pleadings. IT IS FURTHER ORDERED that the BCCF Defendants' Motion # 19 is GRANTED. The |

App 42

| | | |
|---|---|---|
| | | BCCF Defendants have up to and including August 16, 2021, to file responsive pleadings. (alave, ) (Entered: 07/29/2021) |
| 08/10/2021 | 21 | NOTICE *CONCERNING MAGISTRATE JUDGE CONSENT FROM SERVED DEFENDANTS* by Defendants Anthony A. DeCesaro, Marshall Griffith, David Hestand, Gypsy Kelso, Jerry Roark, Steven Salazar, Travis Trani, Dean Williams (Ringel, Andrew) (Entered: 08/10/2021) |
| 08/13/2021 | 22 | MOTION to Dismiss *Plaintiff's Complaint* by Defendants David Hestand, Jerry Roark, Steven Salazar. (Attachments: # 1 Exhibit A - Unpublished Decisions)(Hoffman, Katherine) (Entered: 08/13/2021) |
| 08/30/2021 | 24 | LETTER, by Plaintiff Rodney Douglas Eaves. (angar, ) (Entered: 08/31/2021) |
| 08/31/2021 | 23 | MOTION to Dismiss *Pursuant To Rules 12(b)(1) & 12(b)(6) Of The Federal Rules Of Civil Procedure* by Defendants Marshall Griffith, Gypsy Kelso, Travis Trani, Dean Williams. (Attachments: # 1 Exhibit Exhibit A - Settlement Agreement)(Barrett, Philip) (Entered: 08/31/2021) |
| 09/07/2021 | 25 | Plaintiff's Oppisition to BCCF Defendants 22 MOTION to Dismiss filed by Plaintiff Rodney Douglas Eaves. (alave, ) (Entered: 09/07/2021) |
| 09/13/2021 | 26 | MOTION for Extension of Time to File Response/Reply as to 22 MOTION to Dismiss *Plaintiff's Complaint* by Defendants David Hestand, Jerry Roark, Steven Salazar. (Hoffman, Katherine) (Entered: 09/13/2021) |
| 09/14/2021 | 27 | MINUTE ORDER by Magistrate Judge Kristen L. Mix on 09/14/2021. IT IS HEREBY ORDERED that the Motion for Brief 7- Day Extension of Time to File Reply in Support of BCCF Defendants Motion to Dismiss Plaintiffs Complaint [ECF 22] 26 is GRANTED. The BCCF Defendants have up to and including September 21, 2021, to file the Reply in Support of their Motion to Dismiss Plaintiffs Complaint 22 .(alave, ) (Entered: 09/15/2021) |
| 09/20/2021 | 28 | REPLY to Response to 22 MOTION to Dismiss *Plaintiff's Complaint* filed by Defendants David Hestand, Jerry Roark, Steven Salazar. (Attachments: # 1 Exhibit A - Unpublished Decisions)(Hoffman, Katherine) (Entered: 09/20/2021) |
| 09/24/2021 | 29 | Plaintiff's RESPONSE to 23 MOTION to Dismiss filed by Plaintiff Rodney Douglas Eaves. (csarr, ) (Entered: 09/24/2021) |
| 10/04/2021 | 30 | MOTION for Extension of Time to File Response/Reply as to 23 MOTION to Dismiss *Pursuant To Rules 12(b)(1) & 12(b)(6) Of The Federal Rules Of Civil Procedure* by Defendants Marshall Griffith, Gypsy Kelso, Travis Trani, Dean Williams. (Barrett, Philip) (Entered: 10/04/2021) |
| 10/05/2021 | 31 | MINUTE ORDER by Magistrate Judge Kristen L. Mix on October 5, 2021. Motion # 30 is GRANTED. The CDOC Defendants have up to and including October 22, 2021, to file a Reply in Support of their Motion to Dismiss Plaintiff's Complaint.(cpomm, ) Modified on 10/5/2021 to correct docket text(cpomm, ). (Entered: 10/05/2021) |
| 10/12/2021 | 32 | MOTION for Summary Judgment *Under Rule 56 Of The Federal Rules Of Civil Procedure On The Issue Of Exhaustion* by Defendants Marshall Griffith, Gypsy Kelso, Travis Trani, Dean Williams. (Attachments: # 1 Exhibit Exhibit A - Declaration)(Barrett, Philip) (Entered: 10/12/2021) |
| 10/14/2021 | 33 | Joint MOTION to Stay *Discovery* by Defendants David Hestand, Jerry Roark, Steven Salazar. (Attachments: # 1 Exhibit A - Unpublished Cases)(Hoffman, Katherine) (Entered: 10/14/2021) |

App 43

| 10/20/2021 | [34](#) | JOINDER re [32](#) MOTION for Summary Judgment *Under Rule 56 Of the Federal Rules Of Civil Procedure On The Issue Of Exhaustion* by Defendants David Hestand, Jerry Roark, Steven Salazar. (Hoffman, Katherine) (Entered: 10/20/2021) |
|---|---|---|
| 10/21/2021 | [35](#) | Second MOTION for Extension of Time to File Response/Reply as to [23](#) MOTION to Dismiss *Pursuant To Rules 12(b)(1) & 12(b)(6) Of The Federal Rules Of Civil Procedure* by Defendants Anthony A. DeCesaro, Marshall Griffith, Gypsy Kelso, Travis Trani, Dean Williams. (Barrett, Philip) (Entered: 10/21/2021) |
| 10/22/2021 | [36](#) | MINUTE ORDER by Magistrate Judge Kristen L. Mix on 10/22/2021. IT IS HEREBY ORDERED that the Motion [35](#) is GRANTED. The CDOC Defendants have up to and including October 29, 2021, to file a Reply in Support of their Motion to Dismiss Plaintiffs Complaint.(alave, ) (Entered: 10/25/2021) |
| 10/29/2021 | [37](#) | REPLY to Response to [23](#) MOTION to Dismiss *Pursuant To Rules 12(b)(1) & 12(b)(6) Of The Federal Rules Of Civil Procedure* filed by Defendants Anthony A. DeCesaro, Marshall Griffith, Gypsy Kelso, Travis Trani, Dean Williams. (Barrett, Philip) (Entered: 10/29/2021) |
| 11/12/2021 | [38](#) | Plaintiff's Oppisition to BCCF Defendants' Joinder in CDOC Defendants' Motion for Summary Judgement [34](#) Joinder by Plaintiff Rodney Douglas Eaves. (csarr, ) (Entered: 11/15/2021) |
| 11/23/2021 | [39](#) | MOTION for Extension of Time to File Response/Reply as to [32](#) MOTION for Summary Judgment *Under Rule 56 Of the Federal Rules Of Civil Procedure On The Issue Of Exhaustion* by Defendants Anthony A. DeCesaro, Marshall Griffith, Gypsy Kelso, Travis Trani, Dean Williams. (Barrett, Philip) (Entered: 11/23/2021) |
| 11/23/2021 | [40](#) | MINUTE ORDER by Magistrate Judge Kristen L. Mix on 11/23/2021. IT IS HEREBY ORDERED that the Motion [39](#) is GRANTED. The CDOC Defendants have up to and including December 13, 2021, to file a Reply in Support of theirPartial Motion for Summary Judgment.(alave, ) (Entered: 11/24/2021) |
| 11/29/2021 | [41](#) | US Marshal form Returned Executed on Jared Polis served on 11/23/2021, answer due 12/14/2021. (alave, ). (Entered: 11/30/2021) |
| 12/09/2021 | [42](#) | Exhibits in Support of [32](#) MOTION for Summary Judgment *Under Rule 56 Of the Federal Rules Of Civil Procedure On The Issue Of Exhaustion (Corrected Exhibit A)* by Defendants Anthony A. DeCesaro, Marshall Griffith, Gypsy Kelso, Travis Trani, Dean Williams. (Barrett, Philip) (Entered: 12/09/2021) |
| 12/13/2021 | [43](#) | NOTICE of Entry of Appearance by Stefanie L. Mann on behalf of Jared PolisAttorney Stefanie L. Mann added to party Jared Polis(pty:dft) (Mann, Stefanie) (Entered: 12/13/2021) |
| 12/13/2021 | [44](#) | REPLY to Response to [32](#) MOTION for Summary Judgment *Under Rule 56 Of the Federal Rules Of Civil Procedure On The Issue Of Exhaustion of CDOC Defendants* filed by Defendants Anthony A. DeCesaro, Marshall Griffith, Gypsy Kelso, Travis Trani, Dean Williams. (Barrett, Philip) (Entered: 12/13/2021) |
| 12/14/2021 | [45](#) | MOTION to Dismiss *The Governor's Rule 12(b)(1) and (6) Motion to Dismiss* by Defendant Jared Polis. (Mann, Stefanie) (Entered: 12/14/2021) |
| 12/21/2021 | [46](#) | CONSENT to Jurisdiction of Magistrate Judge by Defendants David Hestand, Jerry Roark, Steven Salazar All parties consent.. (Ringel, Andrew) (Entered: 12/21/2021) |
| 12/22/2021 | 47 | ORDER OF REFERENCE. Pursuant to the consent of the parties to the jurisdiction of the magistrate judge [46](#) , this case is referred to Magistrate Judge Kristen L. Mix for all |

App 44

| | | purposes pursuant to 28 U.S.C. § 636(c), by Chief Judge Philip A. Brimmer on 12/22/2021. Text Only Entry (pabsec, ) (Entered: 12/22/2021) |
|---|---|---|
| 12/22/2021 | 48 | KLM CIVIL MOTIONS PRACTICE STANDARDS by Magistrate Judge Kristen L. Mix on 12/22/2021. (alave, ) (Entered: 12/22/2021) |
| 01/03/2022 | 49 | Plaintiff's ANSWER to CDOC Defendants' 44 Reply, by Plaintiff Rodney Douglas Eaves. (jsalz, ) (Entered: 01/04/2022) |
| 01/12/2022 | 50 | ORDER by Magistrate Judge Kristen L. Mix on 01/12/2022. IT IS HEREBY ORDERED that the Motion 33 is GRANTED. Discovery is stayed pending resolution of the Motions to Dismiss 22 , [23, 45 .(alave, ) (Entered: 01/12/2022) |
| 01/18/2022 | 51 | Plaintiff's Response to Governor's Motion to Dismiss 45 by Plaintiff Rodney Douglas Eaves. (alave, ) (Entered: 01/18/2022) |
| 01/18/2022 | 52 | Amendment to [doc 25] Plaintiff's Oppisition to CDOC Defendant's Motion to Dismiss by Plaintiff Rodney Douglas Eaves. (alave, ) (Entered: 01/18/2022) |
| 02/01/2022 | 53 | REPLY to Response to 45 MOTION to Dismiss *The Governor's Rule 12(b)(1) and (6) Motion to Dismiss* filed by Defendant Jared Polis. (Mann, Stefanie) (Entered: 02/01/2022) |
| 02/14/2022 | 54 | Plaintiff's Answer to Defendant Polis Reply for Rule 12(b)(1) and Motion to Dismiss 53 by Plaintiff Rodney Douglas Eaves. (csarr, ) (Entered: 02/15/2022) |
| 03/15/2022 | 55 | ORDER by Magistrate Judge Kristen L. Mix on March 15, 2022. IT IS HEREBY ORDERED that the BCCF Defendants' Motion to Dismiss Plaintiff's Complaint 22 , the CDOC Defendants' Motion to Dismiss Pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure 23 , and the Governor's Rule 12(b)(1) and (6) Motion to Dismiss 45 are GRANTED consistent with this Order. In accordance therewith, IT IS ORDERED that Plaintiff's request for declaratory relief, that seeks retrospective relief only, is DISMISSED AS MOOT. IT IS FURTHER ORDERED that the portion of Claim Five that seeks injunctive relief in regard to lifting COVID restrictions and resuming faith ceremonies is DISMISSED AS MOOT because such restrictions have been lifted. IT IS FURTHER ORDERED that the First Amendment and RLUIPA claims in Claim Ones, Three, Four, and Five (to the extent Claim Five asserts claims that were not dismissed as moot) are DISMISSED WITHOUT PREJUDICE. IT IS FURTHER ORDERED that the portion of Claim One that seeks relief under 18 U.S.C. § 1996 is DISMISSED WITH PREJUDICE. IT IS FURTHER ORDERED that the First Amendment free exercise and RLUIPA claims in Claim Two as well as the claims under 18 U.S.C. § 666 and Colo. Rev. Stat. §17-42-102 are DISMISSED WITH PREJUDICE. IT IS FURTHER ORDERED that Plaintiff's equal protection claims are DISMISSED WITHOUT PREJUDICE.15 IT IS FURTHER ORDERED that if Plaintiff wishes to file an amended complaint in an attempt to cure the deficiencies noted in claims that were dismissed without prejudice, this complaint shall be filed by April 5, 2022.(csarr, ) (Entered: 03/15/2022) |
| 04/04/2022 | 56 | MOTION for Brief 21-Day Extension of Time to File Amended Complaint as Ordered by the Court in [Doc 55] with Attached Declaration by Plaintiff Rodney Douglas Eaves. (csarr, ) (Entered: 04/04/2022) |
| 04/05/2022 | 57 | MINUTE ORDER by Magistrate Judge Kristen L. Mix on April 5, 2022. This matter is before the Court on Plaintiff's Motion for Brief 21-Day Extension of Time to File Amended Complaint as Ordered by the Court in [Doc 55] 56 (the "Motion"). IT IS HEREBY ORDERED that the Motion 56 is GRANTED. Plaintiff has up to and including April 26, 2022, to file an Amended Complaint.(csarr, ) (Entered: 04/05/2022) |
| 04/26/2022 | 58 | NOTICE to the Court Concerning Amended Complaint by Plaintiff Rodney Douglas Eaves (csarr, ) (Entered: 04/26/2022) |

App 45

| Date | No. | Description |
|------|-----|-------------|
| 04/26/2022 | 59 | AMENDED PRISONER COMPLAINT against Justin Arrasmith, Donny Britton, Colin Carson, Clara Casebolt, Larry Cox, Anthony A. DeCesaro, Derick Dockter, Marshall Griffith, David Hestand, Luke Holland, Gypsy Kelso, Jared Polis, Jerry Roark, Steven Salazar, Tiffany Saldana, Jason Smith, Travis Trani, Dean Williams, filed by Rodney Douglas Eaves.(csarr, ) (Entered: 04/26/2022) |
| 05/06/2022 | 60 | MOTION for Extension of Time to File Answer or Otherwise Respond re 59 Amended Complaint, by Defendants David Hestand, Jerry Roark, Steven Salazar. (Hoffman, Katherine) (Entered: 05/06/2022) |
| 05/06/2022 | 61 | MOTION for Leave to Restrict by Defendants Anthony A. DeCesaro, Marshall Griffith, Gypsy Kelso, Travis Trani, Dean Williams. (Barrett, Philip) (Entered: 05/06/2022) |
| 05/09/2022 | 62 | MOTION for Extension of Time to File Answer or Otherwise Respond re 59 Amended Complaint, by Defendants Anthony A. DeCesaro, Marshall Griffith, Gypsy Kelso, Travis Trani, Dean Williams. (Barrett, Philip) (Entered: 05/09/2022) |
| 05/09/2022 | 63 | MINUTE ORDER by Magistrate Judge Kristen L. Mix on May 9, 2022. This matter is before the Court on the BCCF Defendants' Motion for 14-Day Extension of Time to File Responsive Pleadings to Plaintiff's Amended Complaint 60 (the "Motion"). IT IS HEREBY ORDERED that the Motion 60 is GRANTED IN PART AND DENIED IN PART. While the BCCF Defendants request an extension of time from the date Plaintiff files a typewritten version of his Amended Complaint, as he represented he was going to do (see 58 ), the request is DENIED as the typewritten version has not been filed. Instead, the BCCF Defendants are GRANTED a 21-day extension of time to file a responsive pleading, up to and including May 30, 2022. IT IS FURTHER ORDERED that should Plaintiff filed a typewritten version of the Amended Complaint in before the deadline of May 30, 2022, the BCCF Defendants shall have fourteen days from the filing date of that Amended Complaint to file a responsive pleading.(csarr, ) (Entered: 05/09/2022) |
| 05/09/2022 | 64 | MOTION for Extension of Time to File Answer or Otherwise Respond re 59 Amended Complaint, by Defendant Jared Polis. (Mann, Stefanie) (Entered: 05/09/2022) |
| 05/11/2022 | 65 | MINUTE ORDER by Magistrate Judge Kristen L. Mix on May 11, 2022. This matter is before the Court on The Governor's Motion for Extension of Time to File Answer or Otherwise Respond 64 (the "Motion"). IT IS HEREBY ORDERED that the Motion 64 is GRANTED IN PART AND DENIED IN PART. While the Governor requests an extension of time running from the date Plaintiff files a typewritten version of his Amended Complaint, as he represented he was going to do (see 58 ), the request is DENIED as the typewritten version has not yet been filed. Instead, the Governor is GRANTED as 21-day extension of time to file a responsive pleading, up to and including May 31, 2022. IT IS FURTHER ORDERED that should Plaintiff file a typewritten version of the Amended Complaint before the deadline of May 31, 2022, the Governor shall have fourteen days from the filing date of that Amended Complaint to file a responsive pleading.(csarr, ) (Entered: 05/11/2022) |
| 05/12/2022 | 66 | AMENDED PRISONER COMPLAINT against Justin Arrasmith, Donny Britton, Colin Carson, Clara Casebolt, Larry Cox, Anthony A. DeCesaro, Derick Dockter, Marshall Griffith, David Hestand, Luke Holland, Gypsy Kelso, Jared Polis, Jerry Roark, Steven Salazar, Tiffany Saldana, Jason Smith, Travis Trani, Dean Williams, filed by Rodney Douglas Eaves.(csarr, ) (Entered: 05/13/2022) |
| 05/12/2022 | 67 | DECLARATION of Rodney Eaves Concerning Filing of Hand Written Amended Complaint by Plaintiff Rodney Douglas Eaves (csarr, ) (Entered: 05/13/2022) |

App 46

| 05/18/2022 | 68 | MINUTE ORDER by Magistrate Judge Kristen L. Mix on May 18, 2022. This matter is before the Court on the CDOC Defendants' Motion for Extension of Time to File Answer or Otherwise Respond 62 (the "Motion"). IT IS HEREBY ORDERED that the Motion 62 is GRANTED. The CDOC Defendants have 14-days from the filing of the typewritten version of the Amended Complaint 66, up to and including June 1, 2022, to file a responsive pleading.(csarr, ) (Entered: 05/18/2022) |
|---|---|---|
| 05/18/2022 | 69 | NOTICE of Entry of Appearance by Edmund Martin Kennedy on behalf of David Hestand, Jerry Roark, Steven SalazarAttorney Edmund Martin Kennedy added to party David Hestand(pty:dft), Attorney Edmund Martin Kennedy added to party Jerry Roark(pty:dft), Attorney Edmund Martin Kennedy added to party Steven Salazar(pty:dft) (Kennedy, Edmund) (Entered: 05/18/2022) |
| 05/20/2022 | 70 | CERTIFICATE of Service by Clerk of Court re 66 Amended Complaint for Service of Process. (csarr, ) (Entered: 05/20/2022) |
| 05/23/2022 | 71 | MOTION to Clarify re 59 Amended Complaint, 66 Amended Complaint, by Defendants Anthony A. DeCesaro, Marshall Griffith, Gypsy Kelso, Travis Trani, Dean Williams. (Barrett, Philip) (Entered: 05/23/2022) |
| 05/25/2022 | 72 | WAIVER OF SERVICE Returned Executed Jason Smith waiver sent on 5/25/2022, answer due 7/24/2022. (csarr, ) (Entered: 05/25/2022) |
| 05/26/2022 | 73 | MOTION to Dismiss *(the Governor's Rule 12(B)(1) and (6) Motion to Dismiss)* by Defendant Jared Polis. (Mann, Stefanie) (Entered: 05/26/2022) |
| 05/27/2022 | 74 | MOTION for Extension of Time to File Answer or Otherwise Respond re 66 Amended Complaint, by Defendants David Hestand, Jerry Roark, Steven Salazar. (Kennedy, Edmund) (Entered: 05/27/2022) |
| 05/31/2022 | 75 | USPS Certified Mail Receipt returned re 70 Certificate of Service. Addressed to Bent County Correctional Facility 11560 Road FF75, Las Animas, CO (csarr, ) (Entered: 05/31/2022) |
| 06/01/2022 | 76 | Partial MOTION to Dismiss *Plaintiff's Amended Complaint [Doc. 66] Pursuant To Rules 12(b)(1) & 12(b)(6) Of The Federal Rules Of Civil Procedure* by Defendants Anthony A. DeCesaro, Marshall Griffith, Gypsy Kelso, Jason Smith, Travis Trani, Dean Williams. (Attachments: # 1 Exhibit Exhibit A - AR 800-1)(Barrett, Philip) Modified on 12/21/2022 to reinstate motion due to clerical error. (alave, ). (Entered: 06/01/2022) |
| 06/01/2022 | 77 | MINUTE ORDER by Magistrate Judge Kristen L. Mix on June 1, 2022. This matter is before the Court on Defendants' Jerry Roark, David Hestand, and Steven Salazar's Motion for Extension of Time to File Responsive Pleading to Plaintiff's Amended Complaint [ECF 66] 74 (the "Motion"). IT IS HEREBY ORDERED that the Motion 74 is GRANTED. These three Defendants have up to and including June 15, 2022, to file a responsive pleading to the operative complaint.(csarr, ) (Entered: 06/01/2022) |
| 06/02/2022 | 78 | MINUTE ORDER by Magistrate Judge Kristen L. Mix on June 2, 2022. IT IS HEREBY ORDERED that the Motion 61 is GRANTED. The Clerk of the Court is directed to maintain the Amended Prisoner Complaint [#59, #66] UNDER RESTRICTION at LEVEL 1 until further order of the Court.(csarr, ) (Entered: 06/02/2022) |
| 06/13/2022 | 79 | MOTION to Dismiss *Plaintiffs Amended Complaint* by Defendants Justin Arrasmith, Colin Carson, Clara Casebolt, Larry Cox, Derick Dockter, David Hestand, Luke Holland, Jerry Roark, Steven Salazar, Tiffany Saldana. (Attachments: # 1 Exhibit A - Unpublished Cases)(Kennedy, Edmund) (Entered: 06/13/2022) |

App 47

| 06/21/2022 | 80 | MOTION for Extension to Respond to Governor's Motion to Dismiss, DOC 73 and CDOC's Motion to Dismiss, DOC 76 by Plaintiff Rodney Douglas Eaves. (csarr, ) (Entered: 06/21/2022) |
|---|---|---|
| 06/21/2022 | 81 | DECLARATION of Rodney Eaves Concerning Access to the Law Library in Support of Motion for Extension to Respond to DOC 73 & DOC 76 by Plaintiff Rodney Douglas Eaves (csarr, ) (Entered: 06/21/2022) |
| 06/23/2022 | 82 | MINUTE ORDER by Magistrate Judge Kristen L. Mix on June 23, 2022. This matter is before the Court on Plaintiff's Motion for Extension to Respond to Governor's Motion to Dismiss, Doc. 73 and CDOC's Motion to Dismiss, Doc. 76 80 (the "Motion"). IT IS HEREBY ORDERED that the Motion 80 is GRANTED. Plaintiff has up to and including July 22, 2022, to respond to the Motions to Dismiss filed by the Governor and the CDOC. (csarr, ) (Entered: 06/23/2022) |
| 07/11/2022 | 83 | Opposition to BCCF Defendants' Motion to Dismiss Plaintiff's Amended Complaint 79 by Plaintiff Rodney Douglas Eaves (alave, ) (Entered: 07/12/2022) |
| 07/20/2022 | 84 | MOTION to File an Oversized Response to CDOC'S Motion to DISMISS ABSENT LEAVE of The Court by Plaintiff Rodney Douglas Eaves. (alave, ) (Entered: 07/20/2022) |
| 07/25/2022 | 85 | REPLY *In Support of Motion to Dismiss Plaintiffs Amended Complaint* by Defendants Justin Arrasmith, Colin Carson, Clara Casebolt, Larry Cox, Derick Dockter, David Hestand, Luke Holland, Jerry Roark, Steven Salazar, Tiffany Saldana. (Kennedy, Edmund) (Entered: 07/25/2022) |
| 08/02/2022 | 86 | MOTION to Clarify *CDOC Defendants' Motion for Clarification Regarding Plaintiff's Motion to File an Oversized Response [Doc. 84] and Alternatively, Motion for Extension of Time* by Defendants Anthony A. DeCesaro, Marshall Griffith, Gypsy Kelso, Jason Smith, Travis Trani, Dean Williams. (Barrett, Philip) Modified on 10/13/2022 pursuant to Minute Order 89 . (alave, ). (Entered: 08/02/2022) |
| 08/03/2022 | 87 | MOTION for Leave to *CDOC Defendants' Motion for Leave to Exceed the Page Limitations in Their Partial Motion to Dismiss Plaintiff's Amended Complaint and to Accept Their Partial Motion to Dismiss [Doc. 76] as Filed* by Defendants Anthony A. DeCesaro, Marshall Griffith, Gypsy Kelso, Jason Smith, Travis Trani, Dean Williams. (Barrett, Philip) Modified on 10/13/2022 pursuant to Minute Order 89 . (alave, ). (Entered: 08/03/2022) |
| 08/03/2022 | 88 | MOTION to Clarify re 84 MOTION for Order to *THE GOVERNORS MOTION FOR CLARIFICATION REGARDING PLAINTIFFS MOTION TO FILE AN OVERSIZED RESPONSE [DOC. 84] AND ALTERNATIVELY, MOTION FOR EXTENSION OF TIME* by Defendant Jared Polis. (Mann, Stefanie) (Entered: 08/03/2022) |
| 08/04/2022 | 89 | MINUTE ORDER by Magistrate Judge Kristen L. Mix on 08/04/2022. IT IS HEREBY ORDERED that Plaintiff's Motion to File an Oversized Brief 84 is GRANTED. The two Response Briefs that Plaintiff attaches to the Motion 84 are accepted for filing, and shall be filed on the record by the Clerk of Court. IT IS FURTHER ORDERED that CDOC Defendants' Motion for Clarification 86 and the Governor's Motion for Clarification 88 are GRANTED. CDOC Defendants and the Governor have up to and including August 18, 2022, to file Replies to their respective Motions to Dismiss. IT IS FURTHER ORDERED that CDOC Defendants' Motion to Exceed Page Limitations 87 is GRANTED. The Partial Motion to Dismiss Plaintiff's Amended Complaint 76 is accepted as filed.(alave, ) (Entered: 08/04/2022) |
| 08/04/2022 | 90 | OPPOSITION TO CDOC DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. RULE 12(b)(l) & 12(b)(6),DOC 76 by Plaintiff Rodney Douglas Eaves. |

App 48

| | | (alave, ) (Entered: 08/04/2022) |
|---|---|---|
| 08/04/2022 | 91 | OPPOSITION TO GOVERNOR'S RULE 12(B)(l) AND (6) MOTION TO DISMISS [DOC 73 filed by Plaintiff Rodney Douglas Eaves. (alave, ) (Entered: 08/04/2022) |
| 08/04/2022 | 92 | EAVES' RESPONSE TO BCCF DEFENDANTS' REPLY TO 85 by Plaintiff Rodney Douglas Eaves. (alave, ) (Entered: 08/04/2022) |
| 08/16/2022 | 93 | MOTION for Extension of Time to *File Reply In Support of Partial Motion to Dismiss [Doc. 76]* by Defendants Anthony A. DeCesaro, Marshall Griffith, Gypsy Kelso, Jason Smith, Travis Trani, Dean Williams. (Barrett, Philip) (Entered: 08/16/2022) |
| 08/18/2022 | 94 | REPLY to Response to 73 MOTION to Dismiss *(the Governor's Rule 12(B)(1) and (6) Motion to Dismiss) Reply in Support of the Governor's Rule 129B)(1) and (6) Motion to Dismiss* filed by Defendant Jared Polis. (Mann, Stefanie) (Entered: 08/18/2022) |
| 08/22/2022 | 95 | MINUTE ORDER by Magistrate Judge Kristen L. Mix on August 22, 2022. This matter is before the Court on the CDOC Defendants' Motion for Extension of Time to File Reply in Support of Partial Motion to Dismiss [Doc. 76 ] 93 (the "Motion").IT IS HEREBY ORDERED that the Motion 93 is GRANTED. The CDOC Defendants have up to and including September 1, 2022, to file their Reply in Support of Partial Motion to Dismiss. (csarr, ) (Entered: 08/22/2022) |
| 09/01/2022 | 96 | MOTION for Leave to *Exceed The Page Limitations In Their Reply In Support Of Their Partial Motion To Dismiss Plaintiff's Amended Complaint And To Accept Their Reply As Filed* by Defendants Anthony A. DeCesaro, Marshall Griffith, Gypsy Kelso, Jason Smith, Travis Trani, Dean Williams. (Barrett, Philip) (Entered: 09/01/2022) |
| 09/01/2022 | 97 | REPLY to Response to 76 Partial MOTION to Dismiss *Plaintiff's Amended Complaint [Doc. 66] Pursuant To Rules 12(b)(1) & 12(b)(6) Of The Federal Rules Of Civil Procedure* filed by Defendants Anthony A. DeCesaro, Marshall Griffith, Gypsy Kelso, Jason Smith, Travis Trani, Dean Williams. (Barrett, Philip) (Entered: 09/01/2022) |
| 09/20/2022 | 98 | MINUTE ORDER by Magistrate Judge Kristen L. Mix on 09/20/2022. IT IS HEREBY ORDERED that the Motion for Summary Judgment 32 is DENIED AS MOOT. IT IS FURTHER ORDERED that the Motion for Clarification 71 is DENIED AS MOOT. (alave, ) (Entered: 09/20/2022) |
| 09/26/2022 | 99 | MOTION for Brief 21- Day Extension of Time to File a Response to CDOC'S Reply [Doc 97 by Plaintiff Rodney Douglas Eaves. (alave, ) (Entered: 09/26/2022) |
| 09/26/2022 | 100 | Declaration of Rodeny Eaves for Brie 21-Day Extension of Time to File Reply to CDOC Defendant's Reply [Doc 97 ] by Plaintiff Rodney Douglas Eaves (alave, ) (Entered: 09/26/2022) |
| 09/28/2022 | 101 | MINUTE ORDER by Magistrate Judge Kristen L. Mix on 09/28/2022. IT IS HEREBY ORDERED that the Plaintiff's Motion for Brief 21-Day Extension of Time to File Response to CDOC's Reply [Doc. 97] 99 is DENIED WITHOUT PREJUDICE.(alave, ) (Entered: 09/28/2022) |
| 09/28/2022 | 102 | NOTICE of Entry of Appearance by Mark Christopher Lockefeer on behalf of Anthony A. DeCesaro, Marshall Griffith, Gypsy Kelso, Travis Trani, Dean WilliamsAttorney Mark Christopher Lockefeer added to party Anthony A. DeCesaro(pty:dft), Attorney Mark Christopher Lockefeer added to party Marshall Griffith(pty:dft), Attorney Mark Christopher Lockefeer added to party Gypsy Kelso(pty:dft), Attorney Mark Christopher Lockefeer added to party Travis Trani(pty:dft), Attorney Mark Christopher Lockefeer added to party Dean Williams(pty:dft) (Lockefeer, Mark) (Entered: 09/28/2022) |

| 10/03/2022 | [103](#) | **STRICKEN** Plaintiff's RESPONSE to [Doc [97](#) ], CDOC Defendants' Reply in Support of Pretrial Motion to Dismiss Plaintiff's Amended Complaint [Doc [66](#) ] by Plaintiff Rodney Douglas Eaves. (alave, ) Modified on 10/14/2022 pursuant to Minute Order [104](#) . (alave, ). (Entered: 10/03/2022) |
|---|---|---|
| 10/13/2022 | [104](#) | MINUTE ORDER by Magistrate Judge Kristen L. Mix on 10/13/2022. IT IS HEREBY ORDERED that the CDOC Defendants' Motion for Leave to Exceed the Page Limitations in Their Reply in Support of Their Partial Motion to Dismiss Plaintiff's Amended Complaint and to Accept Their Reply as Filed [96](#) is GRANTED. The CDOC Defendants' Reply in Support of Partial Motion to Dismiss Plaintiff's Amended Complaint [95](#) is ACCEPTED FOR FILING. IT IS FURTHER ORDERED that Plaintiff's Response [103](#) , which the Court deems to be a Surreply to the CDOC Defendants' Partial Motion to Dismiss Plaintiff's Amended Complaint [66](#) , is STRICKEN. By Minute Order [101](#) of September 28, 2022, the Court denied without prejudice Plaintiff's Motion for Brief 21-Day Extension of Time to File Response to CDOC's Reply [99](#) , and advised Plaintiff that he could not file a surreply as of right. Instead, Plaintiff was informed that if he wished to file a surreply he must file a motion demonstrating why a surreply was justified. Plaintiff did not comply with that Minute Order [101](#) .(alave, ) Modified on 12/21/2022 to correct docket text. (alave, ). (Entered: 10/14/2022) |
| 03/22/2023 | [105](#) | MOTION TO ISSUE A "TRO" UNTIL A PRELIMINARY INJUNCTION HEARING CAN BE SCHEDULED by Plaintiff Rodney Douglas Eaves. (Attachments: # [1](#) Declaration of Rodney Eaves, # [2](#) Declaration of Oran J. Bazel, # [3](#) Envelope)(alave, ) (Entered: 03/23/2023) |
| 03/30/2023 | [106](#) | ORDER ON MOTIONS TO DISMISS by Magistrate Judge Kristen L. Mix on 03/29/2023. IT IS **ORDERED** that the Motions to Dismiss [73](#) , [76](#) , [79](#) are **GRANTED IN PART AND DENIED IN PART** as explained in this Order. Thus, IT IS **ORDERED** that the Motions to Dismiss are granted as to the official capacity claims asserted against the Governor and the CDOC Defendants under 42 U.S.C. § 1983 for monetary damages, and these claims are **DISMISSED WITHOUT PREJUDICE**. IT IS FURTHER **ORDERED** that the Motions to Dismiss are **GRANTED** as to the argument that the individual capacity claims against the Defendants under RLUIPA for monetary damages are barred, and these claims are **DISMISSED WITH PREJUDICE**. IT IS FURTHER **ORDERED** that the Motions to Dismiss are **DENIED** as premature as to the argument that the official capacity claims under 42 U.S.C. § 1983 against the BCCF Defendants should be dismissed. IT IS FURTHER **ORDERED** that the Governor's Motion [73](#) is **DENIED** as to the argument that the Eleventh Amendment bars Plaintiff's federal constitutional claims for equitable relief against the Governor. IT IS FURTHER **ORDERED** that the Motions to Dismiss are **GRANTED IN PART AND DENIED IN PART** as to the mootness argument. The Motions are **GRANTED** as to claims regarding alleged lack of access to the faith grounds during the COVID-19 restrictions, and such claims are **DISMISSED WITHOUT PREJUDICE**. The Motions are **DENIED** as to the other mootness arguments. IT IS FURTHER **ORDERED** that the Motions to Dismiss are **DENIED** as to the arguments that Plaintiff's request for damages for emotional distress are barred under the PLRA and that the BCCF Defendants are not necessary parties. IT IS FURTHER ORDERED that the Motions to Dismiss are **GRANTED** as to Plaintiff's request in his Prayer for Relief for joint and several liability, and this request is **DISMISSED**. IT IS FURTHER **ORDERED** that the Motions to Dismiss are **GRANTED IN PART AND DENIED** as to the First Amendment free exercise and RLUIPA claims. Specifically, the Motions are **DENIED** as to the First Amendment free exercise and RLUIPA claims asserted in Claims One, Three, Four, and Six. The Motions to Dismiss are **GRANTED** as to the First Amendment free exercise and RLUIPA claims asserted in Claims Two and Five, and these claims are **DISMISSED WITH PREJUDICE** , IT IS FURTHER **ORDERED** that the Motions to Dismiss are **GRANTED** as to the religious |

App 50

| | | |
|---|---|---|
| | | discrimination claims in Claims Two, Four, or any other claim that may allege religious discrimination, and these claims are **DISMISSED WITH PREJUDICE**. IT IS FURTHER **ORDERED** that the Motions to Dismiss are **GRANTED IN PART AND DENIED IN PART** as to Claim Seven alleging retaliation. Specifically, the Motions to Dismiss are **DENIED** as to the allegations against Defendant Salazar, but **GRANTED** as to all other allegations of retaliation. To the extent the retaliation claim is barred by Heck, this portion of Claim Seven is **DISMISSED WITHOUT PREJUDICE**. The remaining portion of Claim Seven subject to dismissal is **DISMISSED WITH PREJUDICE**. IT IS FURTHER **ORDERED** that the Motions to Dismiss are **GRANTED** as to the equal protection claims, Eighth Amendment claim, and due process claims, and these claims are **DISMISSED WITH PREJUDICE** . IT IS FURTHER **ORDERED** that the Motions to Dismiss are **GRANTED IN PART AND DENIED IN PART** as to the argument that certain of the injunctive and declaratory requests are overbroad or otherwise subject to dismissal. See Section III.D.6, supra. IT IS FURTHER **ORDERED** that Defendants Casebolt, Arrasmith, Dockter, Saldana, Holland, Britton, Cox, and Carson are dismissed from the case because there are no remaining claims against them.(alave, ) (Entered: 03/30/2023) |
| 04/07/2023 | 107 | MOTION for Extension of Time to *Respond To Motion To Issue A "TRO" [DOC. 105]* by Defendants Anthony A. DeCesaro, Marshall Griffith, Gypsy Kelso, Jason Smith, Travis Trani, Dean Williams. (Barrett, Philip) (Entered: 04/07/2023) |
| 04/07/2023 | 108 | First MOTION for Extension of Time to *Respond To Motion To Issue A "TRO" [DOC. 105]* by Defendant Jared Polis. (Mann, Stefanie) (Entered: 04/07/2023) |
| 04/10/2023 | 109 | MINUTE ORDER by Magistrate Judge Kristen L. Mix on 04/10/2023. IT IS HEREBY ORDERED that the Motions 107 and 108 are GRANTED. The CDOC Defendants and Jared Polis have up to and including **May 4, 2023**, to file their Responses.(alave, ) (Entered: 04/10/2023) |
| 04/10/2023 | 110 | MOTION for Extension of Time to *File a Response to Plaintiff's Motion for TRO and Response to Complaint* by Defendants Justin Arrasmith, Colin Carson, Clara Casebolt, Larry Cox, Derick Dockter, David Hestand, Luke Holland, Jerry Roark, Steven Salazar, Tiffany Saldana. (Kennedy, Edmund) (Entered: 04/10/2023) |
| 04/11/2023 | 111 | Joint MOTION for Extension of Time to File Answer or Otherwise Respond re 66 Amended Complaint, *DEFENDANT JARED POLIS AND CDOC DEFENDANTS JOINT MOTION FOR EXTENSION OF TIME TO RESPOND TO AMENDED COMPLAINT [DOC. 66]* by Defendants Anthony A. DeCesaro, Marshall Griffith, Gypsy Kelso, Jared Polis, Jason Smith, Travis Trani, Dean Williams. (Mann, Stefanie) (Entered: 04/11/2023) |
| 04/12/2023 | 112 | MINUTE ORDER by Magistrate Judge Kristen L. Mix on 04/12/2023. IT IS HEREBY ORDERED that the Defendant Jared Polis' and the CDOC Defendants' Joint Motion for Extension of Time to Respond to Amended Complaint [Doc. 66] 111 is GRANTED. Defendant Polis and the CDOC Defendants have up to and including May 4, 2023, to file their responsive pleading.(alave, ) (Entered: 04/12/2023) |
| 04/24/2023 | 113 | Minute ORDER by Magistrate Judge Kristen L. Mix on 24 April 2023. IT IS HEREBY ORDERED that the BCCF Defendants' Motion for Extension of Time to File Response to Plaintiff's Motion for "TRO" and Response to Complaint 110 is GRANTED. The BCCF Defendants have up to and including May 4, 2023, to file their response to Plaintiff's Motion for "TRO" and to respond to the remaining claims contained in the Complaint following this Court's Order on the Motions to Dismiss.(cmadr, ) (Entered: 04/24/2023) |
| 04/26/2023 | 114 | OBJECTIONS TO THE COURT'S ORDER TO DISMISS 106 AND REQUEST FOR AMENDED OR ADDITIONAL FINDINGS PURSUANT TO FRCRP RULE 52(b) AND |

|  |  | MOTION TO CORRECT PURSUANT TO FRCP RULE 60(a) by Plaintiff Rodney Douglas Eaves. (pklin, ) (Entered: 04/26/2023) |
|---|---|---|
| 04/28/2023 | 115 | NOTICE of Entry of Appearance by Michael T. Kotlarczyk on behalf of Jared PolisAttorney Michael T. Kotlarczyk added to party Jared Polis(pty:dft) (Kotlarczyk, Michael) (Entered: 04/28/2023) |
| 04/28/2023 | 116 | NOTICE OF APPEAL as to 106 Order on Motion to Dismiss,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,, by Defendant Jared Polis (Filing fee $ 505, Receipt Number ACODC-9073145) (Kotlarczyk, Michael) (Entered: 04/28/2023) |
| 04/28/2023 | 117 | MOTION to Withdraw as Attorney by Defendant Jared Polis. (Mann, Stefanie) (Entered: 04/28/2023) |
| 05/01/2023 | 118 | LETTER Transmitting Notice of Appeal to all counsel advising of the transmittal of the 116 Notice of Appeal filed by Jared Polis to the U.S. Court of Appeals. ( Retained Counsel, Fee paid,) (Attachments: # 1 Preliminary Record and Docket Sheet)(alave, ) (Entered: 05/01/2023) |
| 05/01/2023 | 119 | USCA Case Number 23-1143 for 116 Notice of Appeal filed by Jared Polis. (alave, ) (Entered: 05/01/2023) |
| 05/01/2023 | 120 | Joint MOTION for Extension of Time to *Respond to Motion To Issue A "TRO" [DOC. 105] And File An Answer To Plaintiff's Amended Complaint [DOC. 66]* by Defendants Anthony A. DeCesaro, Marshall Griffith, Gypsy Kelso, Jason Smith, Travis Trani, Dean Williams. (Barrett, Philip) (Entered: 05/01/2023) |
| 05/01/2023 | 121 | CERTIFICATE of Mailing/Service re 120 Joint MOTION for Extension of Time to *Respond to Motion To Issue A "TRO" [DOC. 105] And File An Answer To Plaintiff's Amended Complaint [DOC. 66]* by Defendants Anthony A. DeCesaro, Marshall Griffith, Gypsy Kelso, Jason Smith, Travis Trani, Dean Williams. (Barrett, Philip) (Entered: 05/01/2023) |
| 05/01/2023 | 122 | NOTICE of Entry of Appearance by Grant T. Sullivan on behalf of Jared PolisAttorney Grant T. Sullivan added to party Jared Polis(pty:dft) (Sullivan, Grant) (Entered: 05/01/2023) |
| 05/02/2023 | 123 | MINUTE ORDER by Magistrate Judge Kristen L. Mix on 05/02/2023. IT IS HEREBY ORDERED that the CDOC Defendants' and BCCF Defendants' Joint Second Motion for Extension of Time to Respond to Motion to Issue a "TRO" 105 and File an Answer to Plaintiff's Amended Complaint [Doc. 66] 120 is GRANTED. The CDOC and BCCF Defendants have up to and including May 26, 2023, to file their response to Plaintiff's Motion for "TRO" and to answer the remaining claims in the Amended Complaint.(alave, ) (Entered: 05/03/2023) |
| 05/03/2023 | 124 | MOTION to Stay *ALL PROCEEDINGS AS TO THE GOVERNOR PENDING RESOLUTION OF INTERLOCUTORY APPEAL* by Defendant Jared Polis. (Sullivan, Grant) (Entered: 05/03/2023) |
| 05/10/2023 | 125 | OBJECTIONS to CDOC DEFENDANTS' AND BCCF DEFENDANTS' 120 Joint MOTION for Extension of Time to *Respond to Motion To Issue A "TRO" 105 And File An Answer To Plaintiff's Amended Complaint 66* by Plaintiff Rodney Douglas Eaves. (Attachments: # 1 Declaration in Support of Objection) (pklin, ) (Entered: 05/11/2023) |
| 05/12/2023 | 126 | TRANSCRIPT ORDER FORM re 116 Notice of Appeal by Defendant Jared Polis (Kotlarczyk, Michael) (Entered: 05/12/2023) |
| 05/15/2023 | 127 | Joint MOTION for Extension of Time to File Response/Reply as to 114 MOTION for Order to by Defendants David Hestand, Jerry Roark, Steven Salazar. (Kennedy, Edmund) |

App 52

| | | |
|---|---|---|
| | | (Entered: 05/15/2023) |
| 05/16/2023 | 129 | ORDER of USCA as to 116 Notice of Appeal filed by Jared Polis. Once the district court has ruled on ECF No. 114: (1) the Clerk of the district court shall supplement the preliminary record as Tenth Circuit Rule 3.2(B) requires; and (2) this court will provide the parties with additional directives regarding the prosecution of this appeal.(USCA Case No. 23-1143) (alave, ) (Entered: 05/17/2023) |
| 05/17/2023 | 128 | LETTER TO USCA and all counsel certifying the record is complete as to 116 Notice of Appeal filed by Jared Polis. A transcript order form was filed stating that a transcript is not necessary. ( Appeal No. 23-1143) Text Only Entry. (alave, ) (Entered: 05/17/2023) |
| 05/17/2023 | 130 | MINUTE ORDER by Magistrate Judge Kristen L. Mix on May 17, 2023. IT IS HEREBY ORDERED that the Motion 117 is GRANTED. Attorney Mann is relieved of any further representation of Defendant Jared Polis in this case. The Clerk of Court is instructed to terminate Attorney Mann as counsel of record, and the Clerk of Court shall remove her name from the electronic certificate of mailing. Defendant Jared Polis continues to be represented by Attorney Grant T. Sullivan and the other named counsel of record.(csarr, ) (Entered: 05/17/2023) |
| 05/17/2023 | 131 | MINUTE ORDER by Magistrate Judge Kristen L. Mix on 05/17/2023. IT IS HEREBY ORDERED that the CDOC Defendants' and BCCF Defendants' Joint Motion for Extension of Time to File Response to Plaintiff's Objection to the Dismissal of Certain Claims [ECF NO 114] 127 is GRANTED. The CDOC and BCCF Defendants have up to and including May 26, 2023, to respond to Plaintiff's Objection to the Dismissal of Certain Claims. (alave, ) (Entered: 05/17/2023) |
| 05/23/2023 | 132 | Joint MOTION for Extension of Time to File Response/Reply as to 105 MOTION for Order to by Defendants Anthony A. DeCesaro, Marshall Griffith, Gypsy Kelso, Jason Smith, Travis Trani, Dean Williams. (Barrett, Philip) (Entered: 05/23/2023) |
| 05/23/2023 | 133 | MINUTE ORDER by Magistrate Judge Kristen L. Mix on 05/23/2023. IT IS HEREBY ORDERED that the CDOC Defendants' and BCCF Defendants' Third Joint Motion for Extension of Time to Respond to Motion to Issue a TRO [Doc. 105] 132 is GRANTED. The CDOC and BCCF Defendants have up to and including June 16, 2023, to respond to Plaintiff's Motion for "TRO".(alave, ) (Entered: 05/23/2023) |
| 05/24/2023 | 134 | Joint MOTION for Extension of Time to File Answer or Otherwise Respond re 66 Amended Complaint, by Defendants Anthony A. DeCesaro, Marshall Griffith, Gypsy Kelso, Jason Smith, Travis Trani, Dean Williams. (Barrett, Philip) (Entered: 05/24/2023) |
| 05/26/2023 | 135 | RESPONSE *TO PLAINTIFFS RULE 60(a) MOTION FOR RECONSIDERATION OF THIS COURTS MARCH 30, 2023 ORDER OF DISMISSAL OF CERTAIN CLAIMS* by Defendants David Hestand, Jerry Roark, Steven Salazar. (Kennedy, Edmund) (Entered: 05/26/2023) |
| 05/26/2023 | 136 | RESPONSE *CDOC Defendants' Response to Plaintiff's Objections to the Court's Order to Dismiss and Request for Amended Or Additional Finidings Pursuant to FRCP Rule 52(b) And Motion to Correct Pursuant to FRCP Rule 60(a) (Doc. 114)* by Defendants Anthony A. DeCesaro, Marshall Griffith, Gypsy Kelso, Jason Smith, Travis Trani, Dean Williams. (Barrett, Philip) (Entered: 05/26/2023) |
| 06/08/2023 | 137 | MINUTE ORDER by Magistrate Judge Kristen L. Mix on 06/08/2023. IT IS HEREBY ORDERED that the CDOC Defendants' and BCCF Defendants' Third Joint Motion for Extension of Time to Respond to Amended Complaint [Doc. 66] 134 is GRANTED. The CDOC and BCCF Defendants have seven (7) days after the Court has ruled on Plaintiff's "Objections to the Court's Order to Dismiss 106 and Request for Amended or Additional Findings Pursuant to FRCP Rule 52(b) and Motion to Correct Pursuant to FRCP Rule |

App 53

| | | |
|---|---|---|
| | | 60(a)" <u>114</u> .to answer or otherwise respond to the Amended Complaint <u>66</u> .(alave, ) (Entered: 06/08/2023) |
| 06/08/2023 | <u>138</u> | ORDER STAYING PROCEEDINGS AS TO DEFENDANT (GOVERNOR) JARED POLIS by Magistrate Judge Kristen L. Mix on June 8, 2023. IT IS HEREBY ORDERED that the proceedings in this case are STAYED as to Defendant Jared Polis pending resolution of his interlocutory appeal.(csarr, ) (Entered: 06/09/2023) |
| 06/08/2023 | <u>139</u> | PLAINTIFF'S REPLY TO BCCF DEFENDANTS' RESPONSE TO PLAINTIFF'S RULE 60(a) MOTION FOR RECONSIDERATION OF THIS COURT'S MARCH 30, 2023 ORDER OF DISMISSAL OF CERTAIN CLAIMS [DOC <u>135</u> ] by Plaintiff Rodney Douglas Eaves. (csarr, ) (Entered: 06/09/2023) |
| 06/09/2023 | <u>140</u> | PLAINTIFF'S REPLY TO CDOC DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTIONS TO THE COURT'S ORDER TO DISMISS AND REQUEST FOR AMENDED OR ADDITIONAL FINDINGS PURSUANT TO FRCP RULE 52(b) AND MOTION TO CORRECT PURSUANT TO FRCP RULE 60(a) (DOC. <u>114</u> )[DOC <u>136</u> ] by Plaintiff Rodney Douglas Eaves. (csarr, ) (Entered: 06/12/2023) |
| 06/14/2023 | <u>141</u> | Fourth MOTION for Extension of Time to File Response/Reply as to <u>105</u> MOTION for Order to by Defendants Anthony A. DeCesaro, Marshall Griffith, Gypsy Kelso, Jason Smith, Travis Trani, Dean Williams. (Barrett, Philip) (Entered: 06/14/2023) |
| 06/15/2023 | <u>142</u> | Minute ORDER by Magistrate Judge Kristen L. Mix on 15 June 2023. IT IS HEREBY ORDERED that the CDOC Defendants Fourth Motion for Extension of Time to Respond to Motion to Issue a "TRO" <u>141</u> is GRANTED. The CDOC Defendants have up to and including **June 30, 2023,** to respond to Plaintiffs Motion to Issue a TRO <u>105</u> .(cmadr, ) (Entered: 06/16/2023) |
| 06/16/2023 | <u>143</u> | RESPONSE to <u>105</u> MOTION for Order to filed by Defendants David Hestand, Jerry Roark, Steven Salazar. (Attachments: # <u>1</u> Exhibit A - Declaration and Exhibit 1 to Declaration)(Kennedy, Edmund) (Entered: 06/16/2023) |
| 06/26/2023 | <u>144</u> | RESPONSE to <u>105</u> MOTION for Order to *Issue A "TRO" Until A Preliminary Injunction Hearing Can Be Scheduled* Attorney Mark Christopher Lockefeer added to party Jason Smith(pty:dft) filed by Defendants Anthony A. DeCesaro, Marshall Griffith, Gypsy Kelso, Jason Smith, Travis Trani, Dean Williams. (Attachments: # <u>1</u> Exhibit Exhibit A - AR 800-01, # <u>2</u> Exhibit Exhibit B - Memorandum)(Lockefeer, Mark) (Entered: 06/26/2023) |
| 06/29/2023 | <u>145</u> | OBJECTION to <u>141</u> Fourth Fourth Motion for Extension of Time to Respond to <u>105</u> Motion to Issue a TRO, filed by Plaintiff Rodney Douglas Eaves. (Attachments: # <u>1</u> Envelope)(jtorr, ) (Entered: 06/30/2023) |
| 06/30/2023 | <u>146</u> | REPLY to <u>143</u> Response to <u>105</u> Motion to Issue a TRO, filed by Plaintiff Rodney Douglas Eaves. (Attachments: # <u>1</u> Envelope)(jtorr, ) (Entered: 07/03/2023) |
| 07/05/2023 | <u>147</u> | REPLY to <u>144</u> Response to <u>105</u> Motion to Issue a TRO, filed by Plaintiff Rodney Douglas Eaves. (jtorr, ) (Entered: 07/06/2023) |
| 07/05/2023 | <u>148</u> | DECLARATION by Plaintiff Rodney Douglas Eaves. (jtorr, ) (Entered: 07/06/2023) |
| 07/18/2023 | <u>149</u> | NOTICE of Entry of Appearance by Stephanie M. Frisinger on behalf of All Plaintiffs Attorney Stephanie M. Frisinger added to party Rodney Douglas Eaves(pty:pla) (Frisinger, Stephanie) (Entered: 07/18/2023) |
| 07/18/2023 | <u>150</u> | NOTICE of Entry of Appearance by David George Maxted on behalf of Rodney Douglas EavesAttorney David George Maxted added to party Rodney Douglas Eaves(pty:pla) (Maxted, David) (Entered: 07/18/2023) |

App 54

| 08/07/2023 | 151 | REASSIGNING MAGISTRATE JUDGE. This action is reassigned to Magistrate Judge Kathryn A. Starnella upon her appointment. All future pleadings should reference Magistrate Judge Starnella at the beginning of the civil action number (such as 21-cv-01269-KAS). Unless otherwise ordered, the dates and times for all previously scheduled matters will be maintained and will now be handled by Magistrate Judge Starnella in Courtroom C-204. Her chambers are located in Room C-253 of the Byron G. Rogers Courthouse. Her telephone number is 303-335-2770. (Text only entry) (agarc, ) (Entered: 08/07/2023) |
|---|---|---|
| 08/28/2023 | 152 | ORDER of USCA as to 116 Notice of Appeal filed by Jared Polis. (USCA Case No. 23-1143) Minute order filed by Clerk of the Court - On May 16, 2023, this court abated this appeal pending the district court's disposition of ECF No. 114 , plaintiff-appellee Rodney Douglas Eaves' pro se submission captioned Objections to the Court's Order to Dismiss [Doc. 106] and Request for Amended or Additional Findings Pursuant to FRCRP Rule 52(b) and Motion to Correct Pursuant to FRCP Rule 60(a). This matter is now before the court on review of the district court's docket, which shows that it has not yet ruled on ECF No. 114. Accordingly, the court continues the abatement of this appeal pending the district court's disposition of ECF No. 114. Once the district court has ruled on ECF No. 114: (1) the Clerk of the district court shall supplement the preliminary record as Tenth Circuit Rule 3.2(B) requires; and (2) this court will provide the parties with additional directives regarding how to proceed on appeal. Served on 08/28/2023. Text only entry - no attachment. (cmadr, ) (Entered: 08/29/2023) |
| 09/15/2023 | 153 | MOTION for Recusal by Plaintiff Rodney Douglas Eaves. (Frisinger, Stephanie) (Entered: 09/15/2023) |
| 11/28/2023 | 154 | Joint MOTION for Protective Order by Defendants Anthony A. DeCesaro, Marshall Griffith, Gypsy Kelso, Jason Smith, Travis Trani, Dean Williams. (Barrett, Philip) (Entered: 11/28/2023) |
| 11/28/2023 | 155 | Exhibits in Support of 154 Joint MOTION for Protective Order by Defendants Anthony A. DeCesaro, Marshall Griffith, Gypsy Kelso, Jason Smith, Travis Trani, Dean Williams. (Barrett, Philip) (Entered: 11/28/2023) |
| 11/29/2023 | 156 | Minute ORDER by Magistrate Judge Kathryn A. Starnella on 29 November 2023. IT IS HEREBY ORDERED that the Joint Motion for Stipulated Protective Order 154 is GRANTED. The Protective Order 155 supplied by the parties is accepted, with the Court's modifications, and entered as an Order of the Court as of the date of this Minute Order.(cmadr, ) (Entered: 11/30/2023) |
| 11/29/2023 | 157 | STIPULATED PROTECTIVE ORDER by Magistrate Judge Kathryn A. Starnella on 29 November 2023. (cmadr, ) (Entered: 11/30/2023) |
| 12/08/2023 | 158 | MOTION for Hearing/Conference by Plaintiff Rodney Douglas Eaves. (Frisinger, Stephanie) (Entered: 12/08/2023) |
| 12/22/2023 | 159 | MOTION to Withdraw as Attorney by Defendant Jared Polis. (Sullivan, Grant) (Entered: 12/22/2023) |
| 12/29/2023 | 160 | RESPONSE to 158 MOTION for Hearing/Conference filed by Defendants David Hestand, Jerry Roark, Steven Salazar. (Kennedy, Edmund) (Entered: 12/29/2023) |
| 12/29/2023 | 161 | RESPONSE to 158 MOTION for Hearing/Conference filed by Defendants Anthony A. DeCesaro, Marshall Griffith, Gypsy Kelso, Jason Smith, Travis Trani, Dean Williams. (Barrett, Philip) (Entered: 12/29/2023) |
| 01/02/2024 | 162 | ORDER Denying 153 Motion for Recusal by Magistrate Judge Kathryn A. Starnella on 2 January 2024.(cmadr, ) (Entered: 01/02/2024) |

App 55

| 01/03/2024 | 163 | ORDER granting [159](#) Motion to Withdraw as Attorney. Attorney Grant Sullivan is relieved of any further representation of Defendant Jared Polis. The Clerk of Court is instructed to terminate Attorney Sullivan as counsel of record, and to remove this name from the electronic certificate of mailing. Defendant Jared Polis shall continue to be represented by Attorney Michael T. Kotlarczyk. by Magistrate Judge Kathryn A. Starnella on 1/3/2024. Text Only Entry(kaslc2, ) (Entered: 01/03/2024) |
|---|---|---|
| 01/12/2024 | 164 | REPLY to Response to [158](#) MOTION for Hearing/Conference filed by Plaintiff Rodney Douglas Eaves. (Frisinger, Stephanie) (Entered: 01/12/2024) |
| 01/12/2024 | 165 | ORDER by Magistrate Judge Kathryn A. Starnella on 12 January 2024. IS HEREBY ORDERED that Plaintiff's Objections to the Court's Order to Dismiss (Doc 106) and Request for Amended or Additional Findings Pursuant to FRCP Rule 52(b) and Motion to Correct Pursuant to FRCP Rule 60(a) [114](#) is DENIED.(cmadr, ) (Entered: 01/16/2024) |
| 01/17/2024 | 166 | Fourth MOTION for Extension of Time to File Answer or Otherwise Respond re [66](#) Amended Complaint, by Defendants Anthony A. DeCesaro, Marshall Griffith, Gypsy Kelso, Jason Smith, Travis Trani, Dean Williams. (Barrett, Philip) (Entered: 01/17/2024) |
| 01/19/2024 | 167 | Unopposed MOTION for Extension of Time to File Answer or Otherwise Respond by Defendants David Hestand, Jerry Roark, Steven Salazar. (Kennedy, Edmund) (Entered: 01/19/2024) |
| 01/22/2024 | 168 | Minute ORDER by Magistrate Judge Kathryn A. Starnella on 22 January 2024. IT IS HEREBY ORDERED that the Unopposed Fourth Motion for Extension of Time to Respond to Amended Complaint [166](#) is GRANTED. The deadline for Defendants Dean Williams, Travis Trani, Gypsy Kelso, Anthony DeCesaro, Marshall Griffith, Jason Smith, Andre Stancil, and Matt Hansen Defendants to respond to the operative complaint is extended to **February 2, 2024.** (cmadr, ) (Entered: 01/23/2024) |
| 01/22/2024 | 169 | Minute ORDER by Magistrate Judge Kathryn A. Starnella on 22 January 2024. IT IS HEREBY ORDERED that the Defendants Jerry Roark, David Hestand, and Steven Salazar's Unopposed Motion to Joint CDOC Motion for Extension of Time to File Answer [167](#) is GRANTED. The deadline for the Defendants to respond to the operative complaint is extended to **February 2, 2024.**(cmadr, ) (Entered: 01/23/2024) |
| 02/01/2024 | 170 | ANSWER to [66](#) Amended Complaint, Attorney Philip Timothy Barrett added to party Andre Stancil(pty:dft) by Anthony A. DeCesaro, Marshall Griffith, Gypsy Kelso, Jason Smith, Andre Stancil, Travis Trani, Dean Williams.(Barrett, Philip) (Entered: 02/01/2024) |
| 02/01/2024 | 171 | ANSWER to [66](#) Amended Complaint, by David Hestand, Jerry Roark, Steven Salazar. (Kennedy, Edmund) (Entered: 02/01/2024) |

<table>
<tr><td colspan="4" align="center">**PACER Service Center**</td></tr>
<tr><td colspan="4" align="center">**Transaction Receipt**</td></tr>
<tr><td colspan="4" align="center">02/21/2024 10:02:57</td></tr>
<tr><td>**PACER Login:**</td><td>mkotlarczyk</td><td>**Client Code:**</td><td></td></tr>
<tr><td>**Description:**</td><td>Docket Report</td><td>**Search Criteria:**</td><td>1:21-cv-01269-KAS</td></tr>
<tr><td>**Billable Pages:**</td><td>19</td><td>**Cost:**</td><td>1.90</td></tr>
</table>

App 56

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-01269-KLM

RODNEY DOUGLAS EAVES,

       Plaintiff,

v.

JARED POLIS,
DEAN WILLIAMS,
TRAVIS TRANI,
GYPSY KELSO,
ANTHONY A. DECESARO,
MARSHALL GRIFFITH,
JERRY ROARK,
DAVID HESTAND,
JASON SMITH
STEVEN SALAZAR
CLARA CASEBOLT,
LARRY COX,
JUSTIN ARRASMITH,
DERICK DOCKTER,
LUKE HOLLAND,
TIFFANY SALDANA,
COLIN CARSON, and
DONNY BRITTON,

       Defendants.

---

**THE GOVERNOR'S RULE 12(B)(1) AND (6) MOTION TO DISMISS**

---

       Defendant Jared Polis, the Governor of the State of Colorado ("the Governor"),

by and through the Colorado Attorney General's Office and undersigned counsel,

hereby moves to dismiss the Amended Complaint (ECF No. 66) pursuant to F.R.C.P.

("Rule") 12(b)(1) and (6). In support thereof, the Governor states as follows:

**D.C.COLO.LCivR 7.1(b)(1) Certification**

Pursuant to D.C. COLO.LCivR 7.1(b)(1), undersigned counsel was not required to confer with Plaintiff before filing this Motion because it is brought under Rule 12 and Plaintiff is an unrepresented prisoner.

**ALLEGATIONS AND CLAIMS**

Plaintiff *pro se*, Rodney Douglas Eaves, an inmate at the Bent County Correctional Facility ("BCCF") during the timeframe relevant to his Amended Complaint, brings suit against the Governor under 42 U.S.C. § 1983 alleging violations of the First and Fourteenth Amendments and the Religious Land Use and Institutionalized Persons Act ("RLUIPA") based on his Native American religious faith and practices. Specifically, the Amended Complaint alleges that while incarcerated at BCCF he was (1) denied his "right to possess sacred items for personal religious practice." (ECF No. 66, ¶ 7); (2) he was "forced to pay for firewood and herbs" for his religious ceremonies but federal funds are used to provide materials for other faiths (*id.* ¶ ¶ 95, 102); (3) denied the right to spiritually cleanse [his] cell or embellish his headband and medicine bag with beads and stones (*id.* ¶¶ 105, 115); (4) he purchased firewood and herbs for his religious ceremonies, but the firewood was given to other faiths (*id.* ¶¶ 127, 134); (5) the funds he places in a trust account to purchase firewood and herbs for use in his religious ceremonies have been misused (*id.* ¶¶ 137-38); (6) prevented from practicing the "Sac and Fox" way of life because of BCCF's implementation of protocols for the COVID-19 pandemic (*id.* ¶¶ 149-50); and retaliated against for filing since the time he filed his original complaint this action (*id.* ¶ 166).

2

App 58

For relief, Eaves seeks the following injunctive relief: (1) allow Eaves to possess personal sacred objects; (2) recognize that beadwork is part of religious expression; (3) allow Eaves to embellish his medicine bag and headband; (4) allow Eaves to wear religious headwear and neckwear; (5) develop communication with the Native American faith communities; (6) rescind the Colorado Constitution; (7) allow Eaves to spiritually cleanse his cell; (8) stop "donating" materials belonging to the Native American faith group to other faiths; (9) provide a detailed account statement of who has donated and how much to the Native American faith fund for the past seven years; (10) provide a detailed account statement of the expenditures from the Native American faith fund for the past seven years; (11) develop a plan to allow Eaves to access the faith grounds at least once a week during lockdowns; and (12) stop the retaliation against Eaves. *Id.* at 31. Eaves also seeks compensatory and punitive damages. *Id.* at 31-32.

## LEGAL STANDARDS

The plaintiff bears the burden of establishing subject matter jurisdiction. *See Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). "Rule 12(b)(1) motions generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based." *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002) (citation omitted). Here, the Governor mounts a facial attack on the jurisdictional allegations in the Complaint based on Eleventh Amendment immunity. The Court must therefore "presume all of the allegations contained in the amended complaint to be true." *Id.* (citation omitted). "Because the State's assertion of

3

Eleventh Amendment immunity challenges the subject matter of the district court, the issue must be resolved before a court may address the merits of the underlying claim." *Joseph A. ex rel. Wolfe v. Ingram*, 275 F.3d 1253, 1259 (10th Cir. 2002).

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim on which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court should "disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Alpenglow Botanicals, LLC v. United States*, 894 F.3d 1187, 1195 (10th Cir. 2018) (quotations omitted).

**ARGUMENT**

The claims against the Governor must be dismissed for two reasons.  First, the Eleventh Amendment bars Eaves's federal constitutional claims for injunctive relief because the Governor does not manage the day-to-day operations of BCCF.  Second, even if the Court determines that it has jurisdiction over some or all of Eaves's federal constitutional claims, they still must be dismissed regardless of the type of relief sought for the reasons set forth in Colorado Department of Correction's forthcoming motion to dismiss, which the Governor hereby joins and adopts by reference herein in their entirety. Accordingly, the Governor respectfully requests dismissal of all of Eaves's claims pursuant to Rule 12(b)(1) and (6).

**I.     The Eleventh Amendment bars Eaves's federal constitutional claims for equitable relief because the Governor does not manage the day-to-day operations of BCCF.**

"The Eleventh Amendment is a jurisdictional bar that precludes unconsented suits in federal court against a state and arms of the state." *Peterson v. Martinez*, 707 F.3d 1197, 1205 (10th Cir. 2013) (quoting *Wagoner Cnty. Rural Water Dist. No. 2. v. Grand River Dam Auth.*, 577 F.3d 1255, 1258 (10th Cir. 2009)).  To be sure, *Ex parte Young*, 209 U.S. 123 (1908), created an exception that permits "suits against state officials seeking to enjoin alleged ongoing violations of federal law."  *Id.* (quotation omitted).  When a state official is named as "a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party." *Id*. (quoting *Ex parte Young*, 209 U.S. at 157).  Thus, to overcome Eleventh Amendment immunity, the state official who a plaintiff seeks to enjoin must have "a particular duty to enforce" a statute in question and "a demonstrated willingness to exercise that duty."  *Id.* (quotation omitted); *see also Chamber of Commerce of the United States v. Edmondson*, 594 F.3d 742 (10th Cir. 2010).

"But when a state law explicitly empowers one set of officials to enforce its terms, a plaintiff cannot sue a different official *absent some evidence* that the defendant is connected to the enforcement of the challenged law."  *Id.* at 1207 (emphasis added). The connection is sufficiently "particular" when the challenged law imposes a duty on the defendant to enforce its provisions, or "may come by way of another state law [that

imposes such a duty], an administrative delegation, or a demonstrated practice of enforcing a provision." *Peterson*, 707 F.3d at 1207.  Further, it is well-settled that the Governor may not be held vicariously liable for prison officials' alleged acts and omissions, so mere knowledge of or even acquiescence to the manner in which BCCF is allegedly managed is insufficient to establish a "particular" enforcement connection. *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("vicarious liability is inapplicable to ... § 1983 suits").  Accordingly, Eaves must legally or factually tie the Governor to the day-to-day management of BCCF. The inability to do so means the Eleventh Amendment absolutely bars his federal constitutional claims for injunctive relief against the Governor.

Here, the prerequisite legal connection is absent because Colorado law imposes no duty on the Governor to manage *any* of the day-to-day operations of BCCF. *See* § 17-1-103(1)(a), C.R.S. (2020) ("The duties of the executive director [of the Colorado Department of Corrections] shall be . . . to monitor and supervise the activities of private contract prisons . . . ."). The absence of any legal duty to run prisons on the part of the Governor strongly suggests that Eaves named the Governor as a defendant "merely . . . as a representative of the state, and thereby [is] attempting to make the state a party" in contravention of the Eleventh Amendment.  *Ex parte Young*, 209 U.S. at 157.

Moreover, the allegations against the Governor are implausible and none of the Governor's "specific duties would be affected by a judicial declaration respecting the challenged" wrongdoing. *Lucchesi v. State*, 807 P.2d 1185, 1194 (Colo. App. 1990) (upholding dismissal of the Governor as a defendant where plaintiff failed to

demonstrate how the Governor's duties would be affected by the requested judicial determination). Therefore, the Governor should be dismissed as a Defendant.

**II.     Even if the Court determines that it has jurisdiction over Eaves's federal constitutional claims, they still must be dismissed regardless of the type of relief sought for the reasons set forth in CDOC Defendants' Motion to Dismiss Pursuant to Rules 12(b)(1) & 12(b)(6) of the Federal Rules of Civil Procedure.**

Undersigned counsel represents that she spoke with counsel of record for Colorado Department of Corrections ("CDOC"), and CDOC plans to file a motion to dismiss in response to the Amended Complaint. Pursuant to Rule 10(c), the Governor hereby joins and adopts by reference herein the arguments raised in the CDOC's forthcoming motion to dismiss in their entirety.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the Governor respectfully requests that the Court dismiss all of Eaves's claims against him pursuant to Rule 12(b)(1) and (6).

DATED: May 26, 2022

PHILIP J. WEISER
Attorney General


s/ Stefanie Mann
STEFANIE MANN, Reg. No. 43774*
Senior Assistant Attorney General
Public Officials Unit / State Services Section
1300 Broadway, 6th Floor
Denver, CO 80203
Telephone: (720) 508-6500
Email: Stefanie.mann@coag.gov
*Attorney for Defendant Jared Polis*
*Counsel of Record

App 63

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on May 26, 2022, I served a true and complete copy of the foregoing **THE GOVERNOR'S RULE 12(B)(1) AND (6) MOTION TO DISMISS** upon all parties herein by e-filing with the CM/ECF system maintained by the court and/or email, addressed as follows:

Katherine N. Hoffman, Esq.
Andrew David Ringel, Esq.
Edmund Martin Kennedy, Esq
Hall & Evans, L.L.C.
1001 17th Street, Suite 300
Denver, CO  80202
hoffmank@hallevans.com
*Attorneys for Defendants Jerry Roark, David Hestand and Steven Salazar*

Philip Timothy Barrett
Ralph L. Carr Colorado Judicial Center
1300 Broadway
Denver, CO  80203
Philip.barrett@coag.gov
*Attorney for Defendants Dean Williams, Gypsy Kelso, Anthony A. DeCesaro, Marshall Griffith and Travis Trani*

and hereby certify that I have mailed the document to the following non-CM/ECF participant via U.S. Mail:

Rodney Douglas Eaves, #173190
Bent County Correctional Facility (BCCF)
11560 Road FF75
Las Animas, CO  81054-9573
*Pro Se Plaintiff*

<u>s/ Xan Serocki</u>
*Xan Serocki*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-01269-KLM

RODNEY DOUGLAS EAVES,

      Plaintiff,

v.

JARED POLIS,
DEAN WILLIAMS,
TRAVIS TRANI, in his individual capacity,
GYPSY KELSO,
ANTHONY A. DECESARO,
MARSHALL GRIFFITH,
JERRY ROARK,
DAVID HESTAND,
STEVEN SALAZAR,
JASON SMITH,
CLARA CASEBOLT,
LARRY COX,
JUSTIN ARRASMITH,
DERICK DOCKTER,
LUKE HOLLAND,
TIFFANY SALDANA,
COLIN CARSON,
DONNY BRITTON, and
ANDRE STANCIL, in his official capacity,

      Defendants.

---

**CDOC DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT [DOC. 66] PURSUANT TO RULES 12(b)(1) & 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

---

Defendants Dean Williams, Travis Trani, in his individual capacity only, Gypsy Kelso,

Anthony DeCesaro, Marshall Griffith, Jason Smith, and Andre Stancil, in his official capacity (the

1

App 65

"CDOC Defendants")[1], through the Colorado Attorney General, respectfully submit this Motion to Dismiss Plaintiff Rodney Eaves's Amended Complaint [DOC. 66] ("Motion").  In support of this Motion, CDOC Defendants state as follows:

## CERTIFICATE OF CONFERRAL

Because Eaves is an unrepresented prisoner and this Motion is submitted pursuant to Rule 12 of the Federal Rules of Civil Procedure, no conferral is required pursuant to D.C.COLO.LCivR 7.1(b)(1).

## INTRODUCTION

Eaves is a pro se inmate presently incarcerated at Bent County Correctional Facility ("BCCF") in the custody of the Colorado Department of Corrections ("CDOC"). BCCF is operated by CoreCivic, a private entity. (*See* DOC. 66, at 7). Eaves brings claims against CDOC Defendants in their individual and official capacities "jointly and severally." (*See* DOC. 66, at 2-4). He alleges that CDOC Defendants violated the First Amendment, Eighth Amendment, Fourteenth Amendment, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), based on his Native American religious faith and practices.

Eaves alleges that Defendants have denied him the personal possession of particularized Sac & Fox religious items. He alleges that communal religious items and services are insufficient, because the communal services adhere to the Native American Lakota tradition instead of his Sac & Fox beliefs. He also alleges that Defendants violated the above constitutional and statutory

---

[1] Pursuant to Rule 25(d), Andre Stancil has been automatically inserted as a defendant in his official capacity as the current Deputy Director of CDOC. *See* Fed. R. Civ. P. 25(d). Travis Trani is no longer a CDOC employee and therefore remains in this case in his individual capacity only. Jason Smith was added to the Amended Complaint. [*See* DOC. 66]. Service was waived on behalf of Smith on May 25, 2022. [DOC. 72].

provisions by requiring him to purchase firewood and herbs and by restricting his ability to wear religious head and neck wear outside of his cell. Eaves further alleges that Defendants restricted his religious exercise by suspending access to the faith grounds during the COVID-19 pandemic. Eaves seeks compensatory, punitive, and nominal damages for the alleged constitutional and RLUIPA violations. He also requests the Court to issue expansive injunctive and declaratory relief.

Eaves's Amended Complaint against the CDOC Defendants should be dismissed on several grounds.[2] First, because the temporary suspension of religious ceremonies in the faith grounds and the former policy regarding religious headwear are no longer in place, these claims should be dismissed under Rule 12(b)(1) of the Federal Rules of Civil Procedure. Additionally, Eaves seeks injunctive and declaratory relief that is not sufficiently tailored to the alleged constitutional violations and that CDOC Defendants do not have the authority to provide. His requests for damages are barred by the Eleventh Amendment and the PLRA, and he may not seek damages for RLUIPA violations. Moreover, Eaves fails to state a plausible claim for relief under Rule 12(b)(6) under the Free Exercise Clause of the First Amendment, under the First Amendment for retaliation, under the Equal Protection Clause of the Fourteenth Amendment, and under the Eighth Amendment. Finally, Eaves has failed to plausibly allege any CDOC Defendants' personal participation in the alleged constitutional and statutory violations.

---

[2] The only claim CDOC Defendants do not seek to dismiss in this Motion are Eaves's official capacity claims brought under RLUIPA for alleged violations of his religious exercise rights.

## LEGAL STANDARDS

### A.     Lack of jurisdiction under Rule 12(b)(1).

Rule 12(b)(1) authorizes a court to dismiss a complaint for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *American Fair Credit Ass'n v. United Credit Nat'l Bank*, 132 F. Supp. 2d 1304, 1308-09 (D. Colo. 2001). When reviewing a party's factual challenge to subject-matter jurisdiction, the Court "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)" without converting the motion to a Rule 56 motion. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995).

### B.     Failure to state a claim under Rule 12(b)(6).

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for failure to state a claim on which relief can be granted. Fed. R. Civ. P. 12(b)(6). To withstand a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility requires more than mere conceivability. *See Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012). Put simply, a plaintiff "must include enough facts to 'nudge [his] claims across the line from conceivable to plausible.'" *Dennis v. Watco Cos.*, Inc., 631 F.3d 1303, 1305 (10th Cir. 2011) (internal brackets omitted) (quoting *Twombly*, 550 U.S. at 570).

It is true that in considering a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pleaded factual allegations in the complaint as true and resolve all reasonable

4

inferences in the plaintiff's favor. *Morse v. Regents of the Univ. of Colo.,* 154 F.3d 1124, 1126-27 (10th Cir. 1998). That said, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. A complaint will not suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 555, 557). The ultimate duty of the Court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren,* 478 F.3d 1149, 1160 (10th Cir. 2007).

## ARGUMENT

### I.   The claims regarding Eaves's access to the faith grounds during COVID-19 restrictions and wearing religious headwear are moot.

Article III of the United States Constitution requires that a "justiciable case or controversy" remain present at all stages of litigation. *U.S. v. Juvenile Male,* 564 U.S. 932, 936 (2011). A court lacks subject matter jurisdiction if a cause of action is moot. *Rio Grande Silvery Minnow v. Bureau of Reclamation,* 601 F.3d 1096, 1109 (10th Cir. 2010).

"Under the constitutional mootness doctrine, the suit must present a real and substantial controversy with respect to which specific relief may be fashioned." *Fletcher v. U.S.,* 116 F.3d 1315, 1321 (10th Cir. 1997). A claim may become moot at any point in the controversy and deprive the Court of authority to decide questions which had previously been at issue. *Lewis v. Cont'l Bank Corp.,* 494 U.S. 472, 477-78 (1990). "Article III's requirement that federal courts adjudicate only cases and controversies necessitates that courts decline to exercise jurisdiction where the

award of any requested relief would be moot—i.e. where the controversy is no longer live and ongoing." *Green v. Branson*, 108 F.3d 1296, 1299 (10th Cir. 1997) (citation omitted).

If a plaintiff requests injunctive relief, the plaintiff "must show an ongoing, personal stake in the outcome of the controversy, a likelihood of substantial and immediate irreparable injury, and the inadequacy of remedies at law." *Rezaq v. Nalley*, 677 F.3d 1001, 1008 (10th Cir. 2012). A plaintiff requesting injunctive relief must show a personal continued susceptibility to injury that is reasonably certain. *Jordan v. Sosa*, 654 F.3d 1012, 1024 (10th Cir. 2011). If a plaintiff cannot show more than the mere possibility of a recurrence of the complained of conduct, the case ceases to be a real and live controversy. *Rio Grande Silvery Minnow*, 601 F.3d at 1117.

In his prayer for relief, Eaves requests an order requiring Defendants to "develop a plan to allow Mr. Eaves access to the faith grounds at least once a week even during lock downs or similar restrictions[.]" (DOC. 66, at 31). He also requests the Court to "[d]eclare the Defendants' duties with respect to these rights." (*Id.*). Eaves does not allege in his Amended Complaint that he is *currently* restricted from accessing the faith grounds in any way. (*See id.*, at 21-22 ¶¶ 149, 162) (alleging he was last unable to access faith grounds during a COVID lock down in January 2022 and his religious exercise was restricted between March 2020 and March 2022). As a result, his request involves the mere possibility of a reoccurrence of his faith grounds restrictions and does not present a live controversy. *See Rio Grande Silvery Minnow*, 601 F.3d at 1117 ("A case 'ceases to be a live controversy if the possibility of recurrence of the challenged conduct is only a speculative contingency.'") (internal brackets and quotations omitted).

Additionally, Eaves alleges that AR 800-01(IV)(R)(8) requires all religious head wear to be covered by a baseball or stocking cap and that he was not able to wear his eagle feathers as a

6

App 70

result. (DOC. 66, at 14 ¶ 59). He admits, however, that AR 800-01 *now* allows inmates to wear

religious headwear without a baseball cap or stocking cap to cover. (*See id.*, at 29 ¶ 229); *see also*

AR 800-01(IV)(R)(8) (effective March 1, 2021 and April 1, 2022), attached hereto as **Exhibit A**.[3]

CDOC Defendants, therefore, respectfully request this Court dismiss as moot Eaves's claims based

on (1) past restrictions from access to the faith grounds, (2) past policies requiring him to wear a

cap over his religious headwear, (3) his requests for injunctive relief to allow him future access to

the faith grounds during lockdowns or similar restrictions, and (4) his request for an injunction to

allow him to wear his eagle feathers as religious headwear.

## II.    Eaves's overbroad requests for injunctive relief and declaratory relief must be dismissed.

### A.    The requests are not narrowly tailored or sufficiently connected to the alleged constitutional violations.

"A party seeking… injunctive relief *must establish a relationship* between the injury

claimed . . . and the conduct asserted in the complaint." *Little v. Jones*, 607 F.3d 1245, 1251 (10th

Cir. 2010) (internal citations omitted; emphasis added); *see also Koehn v. Denham*, No. 17-CV-

00234-KMT, 2018 WL 10247016, at *1 (D. Colo. Jan. 24, 2018) (denying injunctive relief because

the "request for additional telephone minutes is not related to constitutional violations alleged in"

the complaint). It is well-settled in the Tenth Circuit that prospective relief "must be narrowly

tailored to remedy the harm shown." *Garrison v. Baker Hughes Oilfield Ops., Inc.*, 287 F.3d 955,

962 (10th Cir. 2002); *see also* 18 U.S.C. § 3626(a)(1) (stating PLRA requirements to grant

prospective relief).

---

[3] The court may take judicial notice of CDOC's Administrative Regulations. *See Reynolds v. Colo. Dep't of Corrs.*, No. 12-cv-02558-PAB-KMT, 2015 WL 5168783, at *2 n. 4 (D. Colo. Sept. 3, 2015) (taking judicial notice of AR 850-04).

7

"Declaratory judgment actions must be sustainable under the same mootness criteria that apply to any other lawsuit." *Rio Grande Silvery Minnow*, 601 F.3d at 1109. When applying the mootness doctrine in the context of considering a declaratory judgment, there must be a dispute settled that affects the behavior of the particular defendants in the complaint toward the plaintiff. *Jordan,* 654 F.3d at 1025. In this context, "a plaintiff must be seeking more than a retrospective opinion that he was wrongfully harmed by the defendant." *Id.*

Several of Eaves's requests fail to meet these well-settled requirements for injunctive and declaratory relief. Specifically, Eaves requests injunctive relief to "rescind the Colorado Constitution so it can no longer discriminate against 'Indians,'" "stop the 'donating' of materials specifically belonging to the Native American faith group to other faiths," to provide a "detailed account statement" of donations to the Native American faith fund for the past seven years, and to provide a "detailed account statement" of the funds expended from the Native American faith fund from the past seven years. (DOC. 66, at 31). As further expounded in Sections V through VIII, *infra*, Eaves's allegations do not state plausible constitutional violations on these issues; therefore, these requests have no relationship with any cognizable alleged constitutional violations. Additionally, the request to rescind the Colorado Constitution is not narrowly tailored to address the alleged infringements upon his ability to exercise his religion exercise. The requests regarding donating materials and accounting are also too broad in relation to the alleged infringements, which concern Eaves's ability to obtain firewood and herbs.[4] (*See* DOC. 66, at 14-15, 19-20).

---

[4] Eaves also requests a declaration of duties with respect to alleged rights under the First, Eighth, and Fourteenth Amendment to be protected from retaliation for asserting his religious rights. (*Id.*). This request for declaratory relief is overbroad on its face and, therefore, fails to satisfy the requirement that it be narrowly tailored to the alleged harm.

8

App 72

Eaves also requests that Defendants be required to "[r]ecognize that beadwork is not a 'hobby' for a Native American but is part of religious expression" and to "develop communication with the public Native American faith communities so items and materials are available for donation to the Native American faith group." (DOC. 66, at 31). There is no indication in the Amended Complaint that these requests would have any practical effect on the dispute, which concerns alleged constitutional and RLUIPA violations based on the outright denials of personal faith items. Consequently, this Court should dismiss Eaves's requests for injunctive relief identified herein.

Finally, Eaves requests a declaration that he "has a First, Eighth and Fourteenth Amendment right to be protected from retaliation for asserting his rights to practice his faith." (DOC. 66, at 31). This amounts to nothing more than a retrospective opinion that he was wrongfully harmed and must also be dismissed. *See Jordan,* 654 F.3d at 1025.

**B.     CDOC Defendants do not have the power to grant certain injunctive relief.**

A plaintiff may not obtain injunctive relief against official capacity defendants who lack the authority to provide such relief. *See Peterson v. Martinez*, 707 F.3d 1197, 1206-07 (10th Cir. 2013) (holding that an official capacity defendant must have some responsibility or authority to perform the injunctive relief being sought) (citing *Ex Parte Young*, 209 U.S. 123, 157 (1908)); *Bishop v. Oklahoma*, 333 Fed. Appx. 361, 365 (10th Cir. 2009) (holding same). In that regard, Eaves has not alleged or pointed to any authority indicating that any of the CDOC Defendants have authority to rescind the Colorado Constitution. Moreover, Eaves's allegations do not indicate that any CDOC Defendants can provide him with detailed accounting statements regarding the

Native American faith fund. These requests for injunctive relief, therefore, must also be dismissed for this reason.

## III.   Eaves is not entitled to damages against the CDOC Defendants.

### A.   The Eleventh Amendment bars monetary damages against CDOC Defendants in their official capacities.

Pursuant to Rule 12(b)(1), this Court should dismiss Eaves's claims to the extent they seek monetary damages from any of the CDOC Defendants acting in their official capacities. Under the Eleventh Amendment, a state is not subject to suit for damages by its own citizens in federal court absent a waiver. *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974); *Kentucky v. Graham*, 473 U.S. 159, 169-70 (1985). "[T]he Eleventh Amendment bars a suit brought in federal court by the citizens of a state against the state or its agencies, and applies 'whether the relief sought is legal or equitable.'" *Johns v. Stewart*, 57 F.3d 1544, 1552 (10th Cir. 1995) (citations omitted). The Eleventh Amendment "confers total immunity from suit, not merely a defense to liability." *Ambus v. Granit Bd. of Educ.*, 995 F.2d 992, 994 (10th Cir. 1993). "[A]bsent waiver by the state or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court." *Kentucky v. Graham*, 473 U.S. 159, 169 (1985).  Eleventh Amendment immunity applies to Section 1983 suits. *Quern v. Jordan*, 440 U.S. 332, 345 (1979).

The State of Colorado's immunity under the Eleventh Amendment also extends to State employees acting in their official capacities. "Suits against state officials in their official capacity . . . should be treated as suits against the State." *Hafer v. Melo,* 502 U.S. 21, 25 (1991). Such suits are equivalent to suits against a public entity and are barred by the Eleventh Amendment.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). The CDOC Defendants, in their official capacities, are immune from claims for monetary relief under the Eleventh Amendment. *See White*

10

*v. Colorado*, 82 F.3d 364, 366 (10th Cir. 1996). As such, to the extent that the Amended Complaint asserts a claim for monetary damages against any of the CDOC Defendants in their official capacities, it should be dismissed.

### B.   Eaves may not obtain damages under RLUIPA.

Eaves's claims under RLUIPA also must be dismissed to the extent he seeks relief against CDOC Defendants in their individual capacities or for damages, because such relief is unavailable under RLUIPA. *Stewart v. Beach*, 701 F.3d 1322, 1335 (10th Cir. 2012) ("[T]here is no cause of action under RLUIPA for individual-capacity claims."); *Pfeil v. Lampert*, 603 Fed. Appx. 665, 668 (10th Cir. 2015) ("RLUIPA is limited to official capacity claims for [prospective] equitable relief."); *Alamiin v. Morton*, 528 Fed. Appx. 838, 842 (10th Cir. 2013). As the Tenth Circuit has held that the only relief available under RLUIPA is prospective injunctive relief, this is the only relief Eaves may seek under RLUIPA. *Pfeil*, 603 Fed. Appx. at 668; *Alamiin*, 528 Fed. Appx. at 842; *see also Boles v. Neet*, 402 F. Supp. 2d 1237, 1241 (D. Colo. 2005).

### C.   Any damages for emotional distress are barred under the PLRA, because Eaves has not alleged a physical injury.

The PLRA prohibits a prisoner confined in a correctional facility from bringing a federal civil action "for mental or emotional injury suffered while in custody without a prior showing of physical injury."  42 U.S.C. § 1997e(e).  The PLRA does not define the term "physical injury." *Id.*

Here, Eaves alleges that he is "constantly depressed and stressed without being able to pray in my language. This brings on both physical and spiritual harm as some refer to as bad karma." (DOC. 66, at 9 ¶ 23). Eaves also requests compensatory damages for "physical and emotional suffering, loss of property and loss of liberty[.]" (DOC. 66, at 31). Consequently, Eaves offers only

vague allegations of physical harm, and he does not allege any facts to state that he sustained any physical injuries as a result of CDOC's alleged actions. His allegations, therefore, amount mental or emotional injury, and his requested damages must be dismissed.

>      **D.      Joint and several liability is unavailable.**

Joint and several liability is a matter of state tort law. *See, e.g., Slack v. Farmers Ins. Exchange*, 5 P.3d 280, 284 (Colo. 2000) (joint and several liability concerns situations in which "one tortfeasor might be liable in damages for the acts of another tortfeasor"). Colorado, however, has abolished joint and several liability for personal injury cases, except in cases involving conspiracy. *Id.*; *see also* Colo. Rev. Stat. § 13-21-111.5. There are no such allegations in the Amended Complaint. Even if joint and several liability were not abolished in Colorado, the Colorado Governmental Immunity Act ("CGIA") would still bar any alleged tort claims. *See* C.R.S. § 24-10-106(1.5)(a). Eaves's requests for "joint and several" liability against CDOC Defendants, therefore, should be dismissed with prejudice

**IV.      This Court should dismiss Claim Seven because Eaves has not alleged CDOC Defendants engaged in any retaliatory actions.**

To state a First Amendment claim for retaliation, a plaintiff must allege: (1) that he or she was engaged in constitutionally protected activity; (2) that the actions in question caused the individual to suffer an injury "that would chill a person of ordinary firmness from continuing to engage in that activity"; and (3) that the adverse actions were substantially motivated as a response to the individual's exercise of constitutionally protected conduct. *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1203 (10th Cir. 2007). In a First Amendment retaliation claim, a plaintiff is required to allege specific facts showing that "but for" the retaliatory motive, the adverse incidents in question would not have taken place. *Guy v. Lampert*, 748 Fed. Appx. 178, 180 (10th Cir. 2018).

There are no allegations in Eaves's Claim Seven that any of the CDOC Defendants engaged *at all* in the alleged retaliatory actions. As a result, Eaves has not alleged facts to state that CDOC Defendants had a retaliatory motive that was the "but for" cause of the alleged retaliatory acts, and his retaliation claim against CDOC Defendants must be dismissed. It follows that he has also failed to state a plausible claim of CDOC Defendants' personal participation in the alleged retaliation. Eaves's claim for damages against CDOC Defendants in their individual capacities based on his retaliation claim, therefore, must fail. *See Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (stating the Tenth Circuit precedent is well-established on the issue that "'[i]ndividual liability under § 1983 must be based on personal involvement in the alleged constitutional violation.'") (quoting *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997)).

## V.    Eaves fails to allege a plausible claim for relief under the First Amendment against CDOC Defendants.

In Claims One, Two, Three, Four, and Six of the Amended Complaint, Eaves alleges that CDOC Defendants denied him the possession of certain religious items as personal property and that such denial violated his rights under the First Amendment and RLUIPA. (DOC. 66, at 7-22).[5] To state a claim under the Free Exercise Clause of the First Amendment, a plaintiff must first allege facts showing a substantial burden of sincerely-held religious beliefs. *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007). "Inmates' free exercise rights are, however, subject to prison

---

[5] In Claims Two and Four, Eaves alleges that he should be entitled to free firewood and herbs in order to conduct religious ceremonies and that his religious exercise has been substantially burdened under the First Amendment and RLUIPA as a result. (DOC. 66, at 14-15). These claims are not properly before the Court, because the same claim has been dismissed with prejudice. (*See* DOC. 55, at 15).

restrictions rationally related to legitimate penological interests." *Hammons v. Saffle*, 348 F.3d 1250, 1254 (10th Cir. 2003).

### A.   Eaves fails to articulate facts to allege any indication that CDOC Defendants' policies and actions are unrelated to legitimate penological interests.

Because Eaves complains of restrictions imposed upon prisoners under the Free Exercise Clause, he also "must include sufficient facts to indicate the plausibility that the actions of which he complains were *not* reasonably related to legitimate penological interests." *Gee v. Pacheco*, 627 F.3d 1178, 1188 (10th Cir. 2010). Eaves has not done so in this case.

In Claim One, Eaves alleges that CDOC Defendants Gypsy Kelso, Marshall Griffith, and Jason Smith denied his request to personally possess sacred items for his personal religious ceremonies and practices consisting of a ceremonial pipe, a hand drum, a rattle, a flute, a ribbon shirt, and bells. (DOC. 66, at 7-9, 12, 14 ¶¶ 8-9, 47, 72). He also alleges that Kelso denied his request with a memorandum issued from Williams and Defendant Polis (*Id.* at 8 ¶ 8). Eaves claims that utilizing the personal pipe requires a pinch of tobacco and smoking the pipe. (*Id.* at 9 ¶ 19).

Here, Eaves has failed to allege any facts indicating how or why a denial of a personal ceremonial pipe is not reasonably related to a legitimate penological interest, and he fails to assert why CDOC's legitimate penological interest in health and safety would not apply to an inmate's possession of a personal pipe that the inmate intends to smoke. *See Dayson v. Caruso*, No. 2:12-cv-455, 2013 WL 1857445, at *5 (W.D. Mich. May 2, 2013) ("Prison officials have a legitimate governmental interest in preventing prisoners from possessing tobacco and matches in their personal property, as those items possess a clear danger to the health and safety of prisoners and prison staff."). Courts that have directly addressed similar issues have found that prisons have legitimate penological interests in denying personal possession of similar items. For example, in

*Dayson*, the Native American prisoner alleged that tobacco and matches were required as sacred items for the smudging ritual, and tobacco was the only way to pray to certain deities in the Native American religion. *Dayson*, 2013 WL 1857445, at *4. The district court, however, held the prison's policy of not allowing Native American prisoners to possess materials to engage in a smudging ritual in their own cells, including tobacco, as personal property did not violate the prisoner's First Amendment free exercise rights. *Id.* at *5.

Similarly, Eaves also alleges in Claim Three that CDOC Defendants Kelso, Trani, and Williams did not accept his request to change AR 800-01 to allow him to "Wazila" his living space with sage smoke and cedar burnt inside unit cells and to embellish his headband and medicine bag with beads and stones. (DOC. 66, at 17-18 ¶¶ 105-08, 111). Eaves makes the conclusory allegation that "[t]here is no threat to the safety or security" to allow him to embellish his headband and medicine bag. (DOC. 66, at 19 ¶ 124). He also alleges, without supporting factual averments, that "there is no threat to the safety or security" to allow him to Wazila his living space under direct controlled supervision. (*Id.* at 19 ¶ 123). As Eaves merely relies on these conclusory statements, he fails to plausibly allege that the denials of his ability to Wazila his living space and to embellish his headband and medicine bag were not reasonably related to legitimate penological interests. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555, 557) (holding a complaint will not suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement"). Because Eaves has failed to allege sufficient facts that CDOC Defendants' denial of his personal possession of religious items are not reasonably related to a legitimate penological interest, this Court should dismiss the Free Exercise Clause claim based on these allegations.

**B.      Eaves fails to allege the faith grounds restrictions were unrelated to legitimate penological interests in protecting the health and safety of CDOC's citizens.**

In Claim Six, Eaves alleges that Phase III lockdowns that CDOC Defendants Williams and Trani instituted or enforced from March 2020 to March 2022 due to the COVID-19 pandemic violated his free exercise rights because he could not practice his religion on the faith grounds. (DOC. 66, at 21-23). He also alleges that the amended AR 800-01 policy that CDOC Defendants Williams, Trani, and Kelso created and enforced on March 1, 2021, prevented him from practicing in his cell during this time period because he could not possess personal faith items. (*Id.*, at 22 ¶ 157). Eaves does not allege any facts to indicate that the creation or enforcement of AR 800-01 related to the practice in his cell was unrelated to legitimate penological interests. Additionally, the allegations that BCCF Defendants Roark and Salazar allowed accommodations for access to recreation and law library in July 2020 do not create an inference that restrictions on the faith grounds were unrelated to legitimate penological interests. (*See id.* at 22 ¶ 153). This is because Eaves provides no further factual support stating that sufficient similarities exist between these areas and their accompanying accommodations to create the inference that similar accommodations should have been made for faith grounds access.

Further, the State of Colorado has a fundamental interest in protecting the health and welfare of its citizens, including inmates in its prisons, and this interest is particularly pronounced in times of public health emergencies. *See, e.g.*, § 2-3-1501, C.R.S. (declaring that the general assembly must be prepared to respond to an emergency epidemic "to assist in the protection of the health, safety, and welfare of the public"); § 24-33.5-704, C.R.S. (requiring Governor to declare a disaster emergency upon occurrence or imminent threat of a disaster). In fact, this Court has recently held that restrictions of access to portions of a prison facility to minimize the spread of

COVID-19 among inmates and staff are reasonably related to this legitimate penological interest. *See Harris v. Polis*, No. 20-cv-02999-CMA-STV, 2021 WL 3024664, at *4 (D. Colo. June 23, 2021), *report and recommendation adopted by* No. 20-cv-02999-CMA-STV, 2021 WL 3021466 (D. Colo. July 16, 2021). This Court, therefore, should dismiss Eaves's free exercise claims regarding his access to the faith grounds.

**VI.    The allegations regarding disparity in treatment for payment of firewood to conduct Eaves's religious ceremonies do not state a plausible claim for religious discrimination under the First Amendment.**

To state a claim for religious discrimination in violation of the First Amendment, a plaintiff must plead "that the defendant acted with discriminatory purpose," which "requires more than intent as volition or intent as awareness of consequences." *Iqbal*, 556 U.S. at 676 (internal quotation marks and citations omitted). "It instead involves a decisionmaker's undertaking a course of action 'because of,' not merely 'in spite of,' [the action's] adverse effects upon an identifiable group." *Id.* at 676–77 (citation omitted; alteration in original). To state a discrimination claim under RLUIPA, Eaves must also make allegations of discriminatory intent. *See* 42 U.S.C. § 2000cc(b)(2); *Chabad Lubavitch of Litchfield Cnty., Inc. v. Litchfield Historic Dist. Comm'n*, 768 F.3d 183, 198 (2d Cir. 2014) (holding evidence of "discriminatory intent" is required to establish a RLUIPA discrimination claim).

Eaves only generically refers to his claims as brought under the "First Amendment" and RLUIPA, and he does not specify whether he brings any claims for religious discrimination. To the extent Eaves attempts to bring such a claim under the First Amendment, it appears he seeks

relief based on the policies allegedly requiring the procurement of firewood and herbs;[6] however, he fails to allege a plausible religious discrimination claim on this basis. Here, Eaves alleges that Christian groups were allowed to use electricity for their religious services, that Native American groups were allowed to use water for their ceremonies, and that other religions were provided with meals in accordance with their religious diets. (*See* DOC. 66, at 16 ¶¶ 92-94). He also alleges that wood purchased is considered donated, and that the Asatru, North Western European Paganism, and Wiccan faiths were allowed to use firewood donated into a common fund and that on some occasions the firewood runs out as a result. (*Id.* at 18, ¶¶ 129-131). He includes no facts, however, to indicate the firewood and herbs procurement policies were adopted or implemented for anything other than religious-neutral purposes. The allegations regarding the provision of food and basic utilities to other faith groups, therefore, do not evidence discrimination "because of" Eaves's Sac & Fox religion. *See Iqbal*, 556 U.S. at 676 (holding the plaintiff failed to "plead sufficient factual matter to show that [Defendants] adopted and implemented the . . . policies at issue not for a neutral . . . reason but for the purpose of discriminating on account of race, religion, or national origin.").

Eaves's religious discrimination claim is also deficient because he only offers conclusory allegations that CDOC Defendants acted with discriminatory intent toward his religion (*see* DOC. 66 ¶ 50 ("The defendants listed above for their own reasons, lack of knowledge, purposely, or negligently, continue to attempt the cultural genocide of the Sac and Fox and my way of life"), which are not entitled to presumption of truth. *See Iqbal*, 556 U.S. at 681. Further, any argument

---

[6] Eaves's claims under the Equal Protection Clause also are apparently based on the procurement of firewood and herbs. The equal protection claim, therefore, may also be dismissed, as it is a mere recitation of the First Amendment discrimination claim regarding the firewood and herbs policy. *See Williams v. Wilkinson*, 645 Fed. Appx. 692, 707 n. 18 (10th Cir. 2016) (collecting cases).

18

App 82

that the requirement to pay was "because of" Eaves's religion is even less plausible, because Eaves alleges CDOC Defendant Griffith told him the basis for the requirement that he pay for firewood and herbs was that "'[e]ach faith group is financially responsible for procuring faith based property" under the Colorado Constitution. (DOC. 66, at 15 ¶ 87). Consequently, to the extent Eaves asserts a religious discrimination claim under the First Amendment for the requirement that he pay for firewood and herbs, such claim must be dismissed for failure to state a claim.

## VII.    The First Amendment claims against CDOC Defendants in their individual capacities should be dismissed for lack of personal participation.

"A defendant cannot be liable under § 1983 unless personally involved in the deprivation." *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993); *see also Gallagher*, 587 F.3d at 1069 (stating the Tenth Circuit precedent is well-established on the issue that "'[i]ndividual liability under § 1983 must be based on personal involvement in the alleged constitutional violation.'") (quoting *Foote*, 118 F.3d at 1423). A plaintiff demonstrates that a defendant personally participated in an alleged violation only if the plaintiff establishes that there is an "affirmative link" between the defendant's conduct and the described violation. *Stidham v. Peace Officer Stds. & Training*, 265 F.3d 1144, 1157 (10th Cir. 2001). This "affirmative link" requires a plaintiff to show a defendant's "(1) personal involvement, (2) sufficient causal connection, and (3) culpable state of mind." *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010).

The mere fact that a government official has supervisory or managerial authority does not create Section 1983 liability. *Gallagher*, 587 F.3d at 1069 (citing *Duffield v. Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008)). Rather, there must be "an affirmative link... between the constitutional deprivation and either the supervisor's personal participation, his exercise of control

or direction, or his failure to supervise." *Id.* (quoting *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997)).

A.    **Eaves fails to allege any facts in Claims Three and Six to infer CDOC Defendants' personal involvement in the alleged constitutional violations.**

CDOC Defendants cannot be liable in their individual capacities under Section 1983 based on their alleged creation or enforcement of policies. In Claim Three, Eaves alleges that CDOC Defendants Kelso, Trani, and Williams did not accept his request to change AR 800-01 to allow him (1) to "Wazila" his living space with sage smoke and cedar burnt inside unit cells and (2) to embellish his headband and medicine bag with beads and stones. (DOC. 66, at 17-18 ¶¶ 105-08, 111). He alleges that he was forced to live in cells that he had not conducted a Wazila in contravention of his beliefs. (*Id.* at 18 ¶ 112). That an inmate sent a defendant correspondence is insufficient to show personal participation for Section 1983 claims. *Davis v. Arkansas Valley Corr. Facility*, 99 Fed. App'x 838, 843 (10th Cir. 2004) (holding that copying the warden on correspondence did not demonstrate warden's personal participation in an alleged constitutional violation). Thus, these particular allegations fail, because Eaves's allegations infer at most that he sent correspondence to Kelso, Trani, and Williams.

Additionally, in Claim Six, Eaves alleges that Phase III lockdowns CDOC Defendants Williams and Trani instituted or enforced from March 2020 to March 2022 due to the COVID-19 pandemic violated his free exercise rights because he could not practice his religion on the faith grounds. (DOC. 66, at 21-23). He also alleges that the amended AR 800-01 policy CDOC Defendants Williams, Trani, and Kelso created and enforced on March 1, 2021 prevented him from practicing in his cell during this time period because he could not possess personal faith items. (*Id.*, at 22 ¶ 157).

Claims Three and Six wholly lack any allegations that Kelso, Trani, or Williams acted with intent to violate Eaves's free exercise rights or that they acted with intent to discriminate against Eaves in developing, changing, or enforcing these policies. Further, Eaves included no specific allegations against DeCesaro, Griffith, and Smith in Claims Three and Six, and, he therefore has not alleged they were personally involved in any of these alleged constitutional violations. As such, Claims Three and Six should be dismissed as to all CDOC Defendants in their individual capacities.

**B.     The allegations in Claims One and Two solely relate to denials of grievances and responses to Eaves's correspondence.**

Eaves's other constitutional and RLUIPA claims against CDOC Defendants consist of allegations that they denied his grievances or requests for accommodations. In Claim One, Eaves alleges that Kelso, Griffith, and Smith denied his request to personally possess sacred items for his personal religious ceremonies and practices consisting of a ceremonial pipe, a hand drum, a rattle, a flute, a ribbon shirt, and bells. (DOC. 66, at 7-9, 12, 14 ¶¶ 8-9, 47, 72). He also alleges that Kelso denied his request with a memorandum issued from Williams and Defendant Polis (*Id.* at 8 ¶ 8). In Claim Two, Eaves alleges that Griffith denied him free firewood and herbs "without doing his duty to research" or "attempt a resolution." (DOC. 66, at 15 ¶ 86).[7] He also alleges that "on a letter head from" Polis and Williams, DeCesaro informed Eaves that each faith group was financially

---

[7] The only claims related to the procurement of firewood and herbs that CDOC Defendants must address are those asserted for religious discrimination and equal protection, because the religious exercise claims under the First Amendment and RLUIPA were dismissed *with* prejudice. (*See* DOC. 55, at 15). The personal participation in the alleged equal protection violations related to firewood and herbs is addressed below in Section VIII.

App 85

responsible for procuring religious property and that BCCF was compliant with AR 800-01. (*Id.* at 15 ¶ 87).

Eaves has only alleged that Williams's name was included on memoranda and/or letterhead. He alleges no other facts regarding Williams's lack of control or failure to supervise. Thus, even providing reasonable inferences in his favor, with regard to the denials of requests and grievances, Eaves has alleged no more as to Williams than that he had supervisory or managerial authority. Claims One and Two against Williams in his individual capacity, therefore, should be dismissed for lack of personal participation under Section 1983. *Gallagher*, 587 F.3d at 1069.

Similarly, Eaves's allegations against Griffith, Smith, Kelso, and DeCesaro, who do not work at BCCF, also fail for lack of personal involvement because the allegations state that Griffith, Smith, Kelso, and DeCesaro at most denied grievances or requests for accommodations, or they re-stated policies. *See Baird v. Corrs. Corp. of Am.*, No. 10-cv-00537-ZLW-CBS, 2011 WL 742468, at *5 (D. Colo. Jan. 5, 2011) (dismissing complaints against prison employees in their individual capacity and holding that the prison employees could not be held liable for an alleged constitutional violation "on the basis that they were aware of or denied grievances, without an allegation or evidence of direct responsibility for the alleged violations"); *Davis*, 99 Fed. App'x at 842 (holding that signing a grievance denying the inmate's relief did not demonstrate the defendants' personal participation in an alleged constitutional violation). Consequently, Claims One and Two should also be dismissed as to Griffith, Smith, Kelso, and DeCesaro in their individual capacities.

Eaves does not include any allegations against Trani in Claims One and Two and, therefore, any requests for damages against Trani under these claims must be dismissed. Finally, it appears

22

App 86

that Eaves solely asserts Claim Five against the BCCF Defendants, because no CDOC Defendants were mentioned in this claim. To the extent Eaves seeks relief against any CDOC Defendants for Claim Five, therefore, this relief should be barred.

**VIII.    Eaves fails to state a plausible claim for relief under the Equal Protection Clause.**

Eaves's allegations do not align with a plausible equal protection claim. The Equal Protection Clause of the Fourteenth Amendment commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Equal protection "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). To state an equal protection claim, the inmate "must establish that others, 'similarly situated in every material respect' were treated differently." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1216 (10th Cir. 2011) (quoting *Jicarilla Apache Nation v. Rio Arriba County*, 440 F.3d 1202, 1210 (10th Cir. 2006)).

Eaves bases his equal protection claim in Claim One upon his alleged inability to wear his religious head and neck wear. He alleges that "other faiths" are allowed to wear religious head and neck wear outside their cells, but he is only allowed to do so in his cell or at approved religious gatherings. (DOC. 66, at 14 ¶ 72). Eaves also alleges that he has not been allowed to wear his choker or a medicine bag around his neck or his eagle feathers on his head, except if covered by a baseball or stocking cap. (*Id.* at ¶¶ 57-62).[8] However, because Eaves fails to identify with any

---

[8] Eaves alleges he was told he could not wear his eagle feathers on his head without a cap pursuant to AR 800-01(IV)(R)(8); however, he acknowledges this policy is no longer in place. (*Id.*, at 14 ¶ 59, 29 ¶ 229). He also alleges that AR Form 800-01G provides appropriate neck wear for every faith but Native Americans. (*Id.* at ¶ 64); *see* **Ex. A**, at 30 (Attachment G). Nothing in AR Form 800-01G, which states "Personal faith property is not faith specific," however, supports this

factual specificity the individuals of other faiths who are allowed to wear religious head and neck wear, or what they are allowed to wear, he has not identified any similarly situated individuals for the purposes of his equal protection claim. *See Collins*, 656 F.3d at 1216; *see also Rudnick v. Raemisch*, No. 16-cv-02071-RM-KLM, 2018 WL 1084377, at *6 (D. Colo. Feb. 27, 2018) ("The mere fact that they are also inmates does not meet the 'similarly situated' requirement.").

Eaves also asserts an equal protection claim in Claims Two and Four related to the requirement that he purchase firewood and herbs. (DOC. 66, at 16 ¶ 95, 19-20 ¶¶ 127-35).[9] He alleges that Christian groups were allowed to use electricity for their religious services, that other Native American groups were allowed to use water for their ceremonies, and that other religions were provided with meals in accordance with their religious diets. (*See* DOC. 66, at 16 ¶¶ 92-94). Eaves alleges that wood purchased is considered donated, and that the Asatru, North Western European Paganism, and Wiccan faiths were allowed to use firewood donated into a common fund and that on some occasions the firewood runs out as a result. (*Id.* at 18, ¶¶ 129-131).

Regarding the allegations in Claims Two and Four, Eaves has only identified inmates who (1) belong to other religions and (2) engage in religious practices that require the use of certain materials or particular diets. These characteristics do not establish that the inmates in these groups

---

allegation, and it is not entitled to the presumption of truth as a result. *See* AR Form 800-01G; *see also Cunningham v. Bank of Am., N.A.*, No. 12-cv-03316-MSK-GPG, 2013 WL 2455945, at *3 (D. Colo. June 6, 2013) ("'If the documents contradict the allegations of the complaint, the documents control and the court need not accept as true the allegations in the complaint.'") (quoting *Rapoport v. Asia Electronics Holding Co.*, 88 F. Supp. 2d 179, 184 (S.D.N.Y. 2000) (internal brackets and ellipses omitted).

[9] Although Eaves also appears to assert violations of the Equal Protection Clause in Claim Five, none of the allegations in Claim Five are asserted against conduct of the CDOC Defendants. (*See* DOC. 66, at 20-21).

are similarly situated in every material respect to the requirement to purchase firewood and herbs – they at most plausibly allege that they are also inmates who practice a religion. Eaves has failed to state a plausible equal protection claim as a result. *See Collins*, 656 F.3d at 1218 (holding a plaintiff must account for "a wide range of differing characteristics" in order to identify similarly situated individuals due potential material distinctions as rational acceptable bases for different treatment). Moreover, Eaves actually alleges that he was *not* treated differently than the Asatru, North Western European Paganism, and Wiccan faiths who had to use firewood obtained from a common fund. (DOC. 66, at 18, ¶¶ 129-131). As such, Eaves has failed to allege in this regard (1) the existence of any similarly situated inmate(s), and (2) that any similarly situated inmate was treated differently. Consequently, any claim for equal protection based on the procurement of firewood and herbs must be dismissed.

Additionally, he alleges that federal funds have been used to develop other programs, including non-religious programs such as "Gender, Race, Ability, Awareness, Culture and Equity") ("GRAACE") and religious programming such as the Christian "college" at Limon Correctional facilities, but no funds have been used to promote Native American beliefs. (*Id.*, at ¶¶ 96-101). These allegations fail to state that the individuals who benefit from these programs are similarly situated in all material respects. For instance, Eaves is not an inmate at Limon, and there is no indication in the Amended Complaint that these programs exist at BCCF. (*See id.*). As such, there is no reasonable inference that Eaves was treated differently than Christians, or any other religious or non-religious inmates, at BCCF with respect to programming.

The equal protection claims should also be dismissed because Eaves fails to allege any facts asserting that the alleged disparate treatment lacked any rational relationship to a legitimate

penological interest. *See Collins*, 656 F.3d at 1216 (holding that to state an equal protection claim, the plaintiff must show the government action was "without rational basis"); *see also Murphy v. Mo. Dep't of Corrs.*, 372 F.3d 979 (8th Cir. 2004) (holding that under an equal protection claim, the inmate must show "the different treatment bears no rational relation to any legitimate penal interest.").

The allegations that Williams and Trani developed a policy requiring firewood to be purchased and donated into a common account are also insufficient to confer Section 1983 liability. Because there are no factual allegations to indicate that Williams and Trani developed the policy with intent to discriminate against Eaves or violate his equal protection rights, Claim Four should be dismissed against Williams and Trani for lack of personal participation as stated above in Section VII. Additionally, there are no allegations in Claim Four pertaining to any conduct of Kelso, DeCesaro, Griffith, or Smith, and this claim must be dismissed against these CDOC Defendants in their individual capacities for lack of personal participation.

## IX.     Eaves alleged no facts to support a claim under the Eighth Amendment.

Eaves references the Eighth Amendment in his requests for relief; however, he pleads no facts in his Amended Complaint that pertain to causes of action under the Eighth Amendment. (*See* DOC. 66, at 31). Consequently, any claims asserted against CDOC Defendants for violations of the Eighth Amendment must be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, CDOC Defendants respectfully requests that the Court grant the instant Motion to Dismiss.

Respectfully submitted on June 1, 2022.

PHILIP J. WEISER
Attorney General

/s/ Philip T. Barrett

PHILIP T. BARRETT*
Assistant Attorney General
Civil Litigation & Employment Section
Colorado Department of Law
1300 Broadway, 10th Floor
Denver, Colorado 80203
Telephone: 720-508-6659
E-Mail:  philip.barrett@coag.gov;
*Attorney for the Defendants Dean Williams, Travis Trani, Gypsy Kelso, Anthony Decesaro, Marshall Griffith, Jason Smith, and Andre Stancil*

27

**CERTIFICATE OF SERVICE**

This is to certify that I have duly served the foregoing upon all parties herein by e-filing with

the CM/ECF system maintained by the court on June 1, 2022, and/or by depositing same in the

United States mail, postage prepaid, at Denver, Colorado, on June 2, 2022, addressed as follows:

Rodney Eaves #173190
Bent County Correctional Facility (BCCF)
11560 Road FF75
Las Animas, CO 81504-9573
*Plaintiff Pro Se*

*Courtesy copy e-mailed to:*
Adrienne Sanchez, CDOC

Andrew Ringel
Katherine Hoffman
Hall & Evans, LLC – Denver
1001 Seventeenth Street Suite 300
Denver, CO 80202
Email:  ringela@hallevans.com
hoffmank@hallevans.com
*Attorneys for Defendants Roark, Hestand, and
Salazar*

Stefanie L. Mann
Colorado Attorney General's Office
1300 Broadway
Denver, CO 80203
Email:  Stefanie.mann@coag.gov
*Attorney for Jared Polis*

s/  Jim L. Mules

28

App 92

| ADMINISTRATIVE REGULATION | REGULATION NUMBER | PAGE NUMBER |
|---|---|---|
| | 800-01 | 1 OF 13 |

| | |
|---|---|
| COLORADO DEPARTMENT OF CORRECTIONS | **CHAPTER:**  Offender Pastoral Care |
| | **SUBJECT:**   Religious Programs, Services, Clergy, Faith Group Representatives, and Practices |

| RELATED STANDARDS: ACA Standards: 2-CO-1G-02, 2-CO-5E-01, 2-CO-5E-02, 5-ACI-1G-06, 5-ACI-7F-01, 5-ACI-7F-02, 5-ACI-7F-03, 5-ACI-7F-04, 5-ACI-7F-05, 5-ACI-7F-06, 5-ACI-7F-07, 5-ACI-7F-08 | **EFFECTIVE DATE:**     March 1, 2021 |
|---|---|
| | **SUPERSESSION:**     04/01/20 |

| OPR:  DOP | REVIEW MONTH:  JANUARY | *Dean Williams* |
|---|---|---|
| | | Dean Williams<br>Executive Director |

I.  POLICY

*It is the policy of the Department of Corrections (DOC) to allow religious programs for offenders, including program coordination and supervision, opportunities to practice the requirements of one's faith, and use of community resources. [2-CO-5E-01]*

II.  PURPOSE

It is the purpose of this administrative regulation (AR) to establish guidelines and consistent standards for the practice of recognized faith groups through Faith and Citizen Programs (FCP). It is also the purpose of this AR to *ensure that offenders have the opportunity to participate in practices of their faith group, individually or corporately as authorized, [2-CO-5E-01] that are deemed essential by the faith judicatory of that faith without being subjected to coercion, harassment, or ridicule due to their religious affiliation. [2-CO-5E-02] This will only be limited by documentation showing threat to the safety of employees, contract workers, volunteers, offenders, or other persons involved in such activity, or that the activity itself disrupts the security or good order of the facility. [5-ACI-7F-05]* Faith based programs/observances will be accommodated, within available time and space, unless an overriding compelling governmental interest exists.

III.  DEFINITIONS

A.  Altar:  A structure or surface used as the focus for a religious ritual whose dimensions do not exceed those of an offender footlocker. Altars may be made of available material, (i.e., a stump or locker box for an outside ceremony; a chair, table, group property box, or cardboard box for an inside ceremony).

B.  Associate Chaplain: A faith group representative, approved by Faith and Citizen Programs, in consultation with the administrative head/designee, endorsed by an approved faith group organization, and upon completion of required training. Associate chaplains shall provide no more than 20 hours of service, per week.

C.  Compelling Governmental Interests: Overriding concerns driven by the DOC Mission Statement that must be maintained, regardless of other issues or requests. These include but are not limited to: safety, security, consistency, health, and discipline, using the least restrictive means of furthering those compelling governmental interests.

D.  Facility Access Check:  A review of records collected and stored in the criminal record repository of the National Crime



| CHAPTER | SUBJECT | AR # | Page 2 |
|---|---|---|---|
| Offender Pastoral Care | Religious Programs, Services, Clergy, Faith Group Representatives, and Practices | 800-01 | EFFECTIVE 03/01/21 |

Information Center (NCIC), Colorado Crime Information System (CCIS), Colorado Department of Corrections offender visiting database, and, if necessary, the Colorado Integrated Criminal Justice Information Center (CICJIS).

E. <u>Faith and Citizen Programs Coordinator</u> : A full-time, qualified DOC employee who is responsible for coordinating the DOC Faith and Citizen Program. *[2-CO-1G-02]*

F. <u>Faith Based Correspondence Course</u>: A faith based course, approved by Faith and Citizen Programs, conducted through the mail by a correspondence school. Approved courses are considered to be personal enrichment and not a formal academic pathway or post-secondary education.

G. <u>Faith Group Advisor</u>: A qualified individual approved by the Faith and Citizen Programs Coordinator as having the necessary knowledge and recognized status in a specific faith group to provide expertise relevant to faith group practices, property items, dietary requirements, and programs.

H. <u>Faith Group Volunteer</u>: An individual who is approved by Faith and Citizen Programs and the facility administrative head/designee. This person is affiliated with a specific faith group and facilitates that faith group's program without compensation. *[2-CO-5E-01]*

I. <u>Faith Practices (Group):</u>  Occurs when two or more offenders are gathered to practice their DOC recognized faith in an approved, scheduled program/observance. Group number may not be required to meet essential faith practices

J. <u>Faith Practices (Personal):</u>  Occurs when offenders practice/observe their faith alone in their cell.

K. <u>Faith Property (Group):</u> Items defined by faith group tenets that are permitted within security constraints for use in group faith practices.

L. <u>Faith Property (Personal):</u> Items defined by faith group tenets that are permitted within security constraints for use in personal faith practices.

M. <u>Holy Day Observance</u>: A faith based observance, supported by faith tenet, which may or may not support accommodation of group gatherings. (See Attachment "E.")

   1. Allow up to two hours for group gatherings on non-work proscription days.
   2. Allow up to four hours for group gatherings on work proscription days.

N. <u>Outside Multi-Faith Area</u>: An outside area designated by the facility administrative head/designee for the purpose of accommodating open air meetings for offender programs. When not prohibited by city/county ordinance, the outside multi-faith area will contain only one fire pit which will be used by each group.

O. <u>Proselytizing</u>: Approaching someone with the intent to persuade that person to convert to another faith.

P. <u>Umbrella Faith Group:</u>  An approved grouping of faith groups that share similar practices and beliefs who worship at the same time, in the same location.

IV. <u>PROCEDURES</u>

A. All volunteer group programs will be coordinated and approved by the Faith and Citizen Programs coordinator. Program acceptance and facility approval will be by the facility administrative head/designee.

B. Offenders requesting amendments to currently recognized faith group practices or property items must complete and submit AR Form 800-01J,  Establishing New or Amending Current Faith Group Practices. The request will be reviewed and approved/denied by the Faith and Citizen Programs coordinator.

| CHAPTER | SUBJECT | AR # | Page 3 |
|---|---|---|---|
| Offender Pastoral Care | Religious Programs, Services, Clergy, Faith Group Representatives, and Practices | 800-01 | EFFECTIVE 03/01/21 |

C.  Offenders requesting to establish a new faith group must fully complete and submit AR Form 800-01J, Establishing New or Amending Current Faith Group Practices, to the facility volunteer coordinator for submission to the Faith and Citizen Programs. The request will be reviewed and approved/denied by the Faith and Citizen Programs coordinator and the deputy executive director or designee.

D.  Volunteers observed proselytizing will be suspended or terminated from volunteering at DOC facilities. Incidents of proselytizing will be documented on an incident report form and copied to Faith and Citizen Programs.

E.  ***The DOC will require that each facility provide space adequate for the conduct and administration of faith based programs. [2-CO-5E-01] [5-ACI-7F-07]*** Each administrative head or designee will designate areas within the facility in which faith based programs may be conducted.

1.  Structures in multi-faith areas will be temporary.

2.  Multi-faith areas will be returned to neutral upon the completion of a group meeting.

F.  ***The facility will make available non-offender clerical employees for confidential information. [5-ACI-7F-07]***

G.  ***In facilities with an average daily population of 500 or more offenders, there is a full-time chaplain (or chaplains). In facilities with less than 500 offenders, adequate religious volunteer staffing is available. [5-ACI-7F-02]*** If resources are not available to provide for a full-time chaplain/associate chaplain, employees, and/or volunteers will make reasonable efforts to assure appropriate faith based programs and/or resources are available for all offenders.

H.  ***The Faith and Citizen Program will ensure that qualified chaplains have minimum qualifications as outlined and complete the following:***

1.  ***Endorsement by the appropriate faith group certifying body in the community which is supporting the affiliated candidate as an institutional chaplain. The chaplain ensures equal status and protections for all religions. [5-ACI-7F-01]***

2.  Provide supporting documents, certifications, diplomas and licenses related to pastoral training, education or the equivalent.  Formal ordination is preferred but not required.

3.  Successful completion of the DOC pre-employment process and designated portion of the DOC basic training academy within the first six months after acceptance.

4.  Sign AR Form 800-01C, the Memorandum of Agreement with the DOC outlining their responsibilities and authority and then will work under the direct supervision of Faith and Citizen Programs, in consultation with the administrative head/designee.

I.  ***The Faith and Citizen Programs will be responsible for screening (AR Form 800-01A, Qualifications for Chaplains/Candidate Protocol) and overall supervision of chaplains. [2-CO-5E-02]*** On-site supervision will be provided collaboratively between the administrative head/designee and the Faith and Citizen Programs. NOTE: Collaborative supervision will not impinge on the administrative head's rights and responsibilities under AR 300-27, *Access and Control.*

1.  Faith and Citizen Programs will maintain a central personnel file.

2.  The respective Faith and Citizen Programs Regional coordinator, in collaboration with the administrative head/designee, will document and forward all pending or corrective actions to Faith and Citizen Programs. The

| CHAPTER | SUBJECT | AR # | Page 4 |
|---------|---------|------|--------|
| Offender Pastoral Care | Religious Programs, Services, Clergy, Faith Group Representatives, and Practices | 800-01 | EFFECTIVE 03/01/21 |

Faith and Citizen Programs coordinator, along with the administrative head or designee, will be responsible to administer these actions.

3. ***The chaplain/associate chaplain will:***

    a. Successfully complete the facility access check conducted by Faith and Citizen Programs.

    b. ***Sign a memorandum of agreement (AR Form 800-01C, Chaplain Memorandum of Agreement) with the DOC outlining his/her responsibilities and authority, and will work under the direct supervision of Faith and Citizen Programs, in consultation with the administrative head or designee. [2-CO-5E-02]***

    c. Be subject to the provisions of all ARs.

    d. Successfully complete the designated portion of Basic Training Academy and/or the Basic Volunteer Training as outlined on AR Form 800-01A, Qualifications for Chaplains/Candidate Protocol.

    e. Submit monthly calendars, activity reports, and time sheets to the Faith and Citizen Programs coordinator, the respective regional coordinator, and the administrative head.

    f. When designated by the administrative head/designee, in accordance with AR 850-10, *Emergency Notification* relay information to emergency notification/next of kin in cases of offender injury, serious illness, or death.

    g. When designated by the administrative head/designee, notify offenders in cases of serious family illness, accident, or death, when verified, in a timely manner. (See AR 850-10, *Emergency Notification*.)

    h. ***Develop and maintain close relationships with community religious resources. [2-CO-5E-01] [5-ACI-7F-04]***

    i. ***Have physical access to all areas of the institution to minister to offenders and employees and contract workers. [2-CO-5E-01]***

    j. ***Be available to all offenders, regardless of faith persuasion or affiliation, and will serve without prejudice. [2-CO-5E-02]***

J. ***When a religious representative of an offender's faith is not represented through chaplaincy employees, contract workers, or volunteers, the chaplain or designated employee assists the offender in contacting a person who has the appropriate credential from the faith judicatory. That person ministers to the offender under the supervision of the chaplain [5-ACI-7F-06] or visiting room employees. These visits will be consistent with the AR 300-01, Offender Visiting Program. [2-CO-5E-01]***

K. ***The Faith and Citizen Programs, in consultation with the administrative head/designee and the chaplain, plans, directs, and coordinates all aspects of faith based programs, including approval and training of both lay and clergy volunteers from faiths represented by the offender population. [2-CO-5E-02] [5-ACI-7F-03]***

L. ***The Faith and Citizen Programs will strive to provide for adequate faith group representation through trained qualified chaplains, faith group representatives, and volunteers. [2-CO-5E-01]***

M. ***The Faith and Citizen Programs, the chaplain, and the administrative head or designee, develop and maintain communication with faith communities and approve donations of equipment or materials for use in faith based programs. [2-CO-5E-01] [5-ACI-7F-08]***

| CHAPTER | SUBJECT | AR # | Page 5 |
|---|---|---|---|
| Offender Pastoral Care | Religious Programs, Services, Clergy, Faith Group Representatives, and Practices | 800-01 | EFFECTIVE 03/01/21 |

1. The DOC will not be responsible for the financial procurement of faith based property as prohibited by the Constitution of the State of Colorado.

2. Approved individuals/organizations may donate items only through Faith and Citizen Programs, utilizing AR Form 800-01I, Donation Request/Chain of Custody Forms.

3. Once a donation is made, it becomes the property of the DOC. Distribution will be determined by Faith and Citizen Programs and based on statewide needs.

4. Donations of funds to the faith group trust fund accounts will comply with AR 800-02, *Religious Trust Fund Accounts*.

5. Offenders may not donate their personal faith property to a faith group, umbrella faith group or other offenders.

6. <u>General Donation Process</u>:

    a. AR Form 800-01I, Donation Request/Chain of Custody Forms will be utilized for all donations.

    b. Approval by the Faith and Citizen Programs must occur *before* a facility takes custody of the item(s).

    c. With the exception of books, when an offender requests a donated item, they must be listed as that faith to receive the item. Only one donated item will be issued each quarter based on item availability.

    d. A property donation request/approval form will be filled out by a faith specific affiliated offender.

        1) The facility volunteer coordinator will ensure the request is valid and will sign off on it.

        2) The facility volunteer coordinator will forward the request to Faith and Citizen Programs. Faith and Citizen Programs will approve or deny all requests.

        3) Facility volunteer coordinator is responsible to ensure the item is placed on the offender property list.

    e. If the facility is approved to receive donated items directly, the facility volunteer coordinator will complete AR Form 800-01I, Donation Request/Chain of Custody Forms Part II, and forward it to the Faith and Citizen Programs.

7. Offenders may not solicit and/or receive donations of faith items for themselves, or for specific faith groups or umbrella faith groups with the exception of books and literature from religious organizations for individual use.

8. Individual offenders may not purchase group items for a faith group or umbrella faith group.

9. If religious trust funds are used to purchase such items as musical, religious, chapel equipment or educational faith specific literature that is not listed as approved group property, it will be done with the understanding that such items are not considered legitimate faith group needs and will become the property of the facility for use by any faith group. All items must be approved by the administrative head or designee in advance.

N. ***The facility administrative head/designee will publish a schedule of all faith group or umbrella faith group services and programs in the facility where they are assigned. This schedule will be posted in areas of the facility that offenders have access. [2-CO-5E-01] [5-ACI-1G-06]***

O. ***The DOC will:***

| CHAPTER | SUBJECT | AR # | Page 6 |
|---|---|---|---|
| Offender Pastoral Care | Religious Programs, Services, Clergy, Faith Group Representatives, and Practices | 800-01 | EFFECTIVE 03/01/21 |

1. ***Allow an offender the opportunity to declare a faith group affiliation. [2-CO-5E-02]*** Offenders will not be required to document their ethnicity in order to declare a faith group affiliation.

2. ***Permit offenders to change faith group affiliation once, annually. [2-CO-5E-02]*** Faith and Citizen Programs recognizes an offender is eligible for a faith change 12 months after the approval of his/her current faith affiliation selection. (Refer to AR Form 800-01F, Request for Change of Faith Group Affiliation) A change of faith exception is allowed for offenders within 12 months of initial diagnostic classification.

3. ***Provide appropriate religious diets, [2-CO-5E-01]*** in accordance with AR 1550-15, *Medical and Religious Diets.*

4. ***Ensure that offenders have the opportunity to participate in practices deemed essential by the faith judicatory of that faith group, individually or corporately, as authorized. This will be limited only by documentation showing threat to the safety of employees, contract workers, volunteers, offenders, or other persons involved in such activity, or that the activity itself disrupts the security or good order of the facility. [2-CO-5E-01] [5-ACI-7F-05]***

   a. In order to ensure adequate meeting space and volunteer and/or employee coverage for group faith practice, certain faith groups will be combined into umbrella faith groups. When multiple faith groups and/or umbrella faith groups share similar gatherings the facility may conduct a large volunteer led communal event to accommodate several groups.  (i.e. Easter, Christmas, etc.)

   b. Offenders will be permitted to gather as a group when a volunteer is present to conduct the program.

      1) When a volunteer is present, any offender, regardless of their faith group affiliation, can attend any group gathering, except the American Indian pipe ceremony (refer to AR Form 800-01K, American Indian Group Practices).

      2) The number of offenders allowed to gather to practice their faith in a group setting will be limited based on the classification of the offenders and whether or not employees and/or volunteers are supervising the event. The offender to volunteer ratios listed below do not apply if there is direct DOC employee supervision. If only volunteer(s) are providing supervision, limitations will be as follows:

| Group Gathering | MCC, MCU/HR, MCU, CCTU | Close | Medium | Minimum Restricted | Minimum |
|---|---|---|---|---|---|
| With Volunteer | None | 12:1  * | 20:1 * | 30:1 * | 35:1 * |

   *Ratios are subject to the number of volunteers in attendance but facilities will designate in policy a maximum number of offenders allowed to gather under volunteer supervision.

   c. Volunteer presence will not be required for specified group gathering days as outlined in AR Form 800-01E, Faith Group Overview.  Group gatherings should not be allowed outside of the identified gathering days for any faith group without a volunteer present.

      1) When a volunteer is not present, only offenders listed on PCDCIS as affiliated to that faith group or umbrella faith group can attend the group gathering.  When a volunteer is not present the group gathering limits will be as follows;

| Group Gathering | MCC,  MCU/HR, MCU, CCTU | Close | Medium | Minimum Restricted | Minimum |
|---|---|---|---|---|---|
| Without Volunteer | None ** | None * | 15 | 20 | 25 |

   *Level 4 facilities will have employee supervision to monitor the group gathering.

App 98

| CHAPTER | SUBJECT | AR # | Page 7 |
|---|---|---|---|
| Offender Pastoral Care | Religious Programs, Services, Clergy, Faith Group Representatives, and Practices | 800-01 | EFFECTIVE 03/01/21 |

**Restrictive Housing status offenders will not be allowed to attend any group gathering.

d. Level 5 facilities which houses multi-custody offenders (SCF, DWCF, DRDC, CCF, CSP) will specify gathering limits in facility policy as designated by the administrative head. Facilities can further restrict gathering size based on room capacities, number of volunteers present, supervision available, time and space, and compelling government interest.

e. Large special events, seminars, and gatherings other than scheduled weekly services will be supervised utilizing a combination of employees and volunteers as determined by the administrative head.

f. Offenders will not be allowed to act in a position of spiritual leadership, supervision, or authority over other offenders. In the absence of a volunteer or faith advisor, an offender (on a rotating basis) may conduct approved holy day observances.

g. Offenders possessing faith based credentials or titles obtained prior to, or during, incarceration in the DOC will have such credentials/titles deemed inactive during the term of incarceration.

h. Essential practices that are required of an individual and cannot be accomplished in the confines of an offender's cell (Shabbat, Havdalah or Chanukah candle lighting) will be treated similarly to other group gatherings as governed by this policy, facility policy and the facility security level. Group gatherings may be limited for safety and security reasons but one offender may be considered a group to conduct essential practices.

 1) Offenders will be allowed to access and light wax candles for essential practices in approved holy day observances consistent with the reasonable safety and security needs of the facility.

 2) Alternate service accommodations will be offered if lighting a wax candle for an essential practice cannot be accommodated at a specific time due to a compelling governmental interest. Alternate service accommodations will be prioritized as (1) an alternate wax candle lighting service time (2) alternatives to wax candles. An incident report will be completed to document when an alternate service is conducted.

i. The appointing authority will retain the right to limit participation in programs. This will be based upon documentation that an individual has shown a threat to the safety of employees, contract workers, volunteers, offenders, or others persons involved in such activity; or the individual's conduct disrupts the security or good order of the facility, based upon facility needs or documentation of a compelling governmental interest.

j. All group gatherings may be subject to audio and/or video recording at any time for security purposes.

5. ***Permit holy days as documented by faith tenet, within available time, space, and security resources. [2-CO-5E-01]*** (For currently approved holy days refer to AR Form 800-01E, Faith Group Overview) With the exception of Passover and Ramadan, the following protocol will be observed:

a. At least 30 calendar days prior to an approved holy day, fast day, or work proscription day observance, the administrative head/designee will post accessible notification for the offender population.

b. Fifteen calendar days prior to the observance, the administrative head or designee will generate a list of participants, in accordance with stated limitations, and appropriate memorandums to the facility's management team, housing, security, offender work assignment supervisor, and other affected areas. The sign-up for Passover/Ramadan will be facilitated by the Food Service and Laundry Program administrator or designee.

| CHAPTER | SUBJECT | AR # | Page 8 |
|---------|---------|------|--------|
| Offender Pastoral Care | Religious Programs, Services, Clergy, Faith Group Representatives, and Practices | 800-01 | EFFECTIVE 03/01/21 |

   c.   Once a list of participants is generated, only new arrivals to the facility who are currently affiliated with the affected faith group will be eligible to sign up. Modifications to the approved list will be subject to review by the administrative head/designee on a case by case basis.

   d.   ***Offenders of the same faith group or umbrella faith group assigned to a facility or custody level should be permitted to gather for holy day observances within allowable safety and security policies. [2-CO-5E-01].***

   e.   Offenders involved in any approved program that requires participation without shoes may remove their shoes while in a secure, supervised area (e.g., sweat lodge, Muslim Jumah service, Buddhist service, Yoga), in accordance with AR 850-11, *Offender Clothing and Bedding Issue, Dress Code, Hygiene, and Grooming*.

   f.   Food items purchased or provided from outside sources for holy day observances will only be allowed if one of the following applies:

      1)   An approved outside volunteer(s) provides food item(s), in accordance with AR 300-43, *Authorization to Provide Food Items for Offenders,* and is present to conduct the observance.

      2)   Where security permits and when requested in advance of the observance, offenders will be allowed to purchase and bring unopened canteen food items to holy day observances. All food must be consumed during the observance; remaining food items will be destroyed.

   g.   If a mandated service cannot be accommodated due to a compelling governmental interest on the specific date every effort should be made to schedule it within 7 days before or after the mandated date.

   h.   Fire ban information

      1)   Fires in the outside faith areas are permitted when the fire ban stage defined by county or city ordinance allows fires in developed areas.

      2)   No fire if the wind speed exceeds 10 mph.

      3)   Water must be available at all times (enough to extinguish the fire).

      4)   Shift Commanders should use discretion if safety and or security concerns arise.

6.   <u>Permit Work Proscription Days</u>: ***Offenders who are affiliated to the faith groups that require work proscription days will be allowed to miss work, [2-CO-5E-01]*** or programs, without pay, for those days (per AR Form 800-01E, Faith Group Overview) Offenders are responsible to inform their work/program supervisor in advance of any schedule conflicts with their mandatory faith gathering.

7.   Staff will conduct documented security inspections of the program area before and after authorized faith programs and will show professional respect for faith group program areas and property.

8.   Permit offenders to select one faith medallion **or** a medicine bag.

   a.   Medallion: Size will be a maximum diameter of 2 ½", made of pressed or stamped metal. The overall design should be circular (solid) and not cut-out to create the design. The medallion will be worn on an approved lightweight chain.

   b.   Medicine Bag: Size will be a maximum of 2 ½" in length, made of leather, may not be embellished after purchase, and will suspend from a leather strap.

| CHAPTER | SUBJECT | AR # | Page 9 |
|---|---|---|---|
| Offender Pastoral Care | Religious Programs, Services, Clergy, Faith Group Representatives, and Practices | 800-01 | EFFECTIVE 03/01/21 |

    c.   Medallions/medicine bags must be worn under clothing or carried in a pocket.

    d.   The length of chain/leather strap may be 18", 20", or 24".

    e.   Prayer beads and rosaries are not considered medallions and may not be worn around the neck, but may be carried in a pocket.

P.   Searches of faith property will be conducted using visual/physical inspections, in accordance with AR 300-06, *Searches and Contraband Control*. Searches of personal faith property may be conducted with or without the offender present. While searching personal faith property, employees will treat said property with professional respect. Upon request, all faith property will be opened and presented for inspection. Refusal will result in confiscation and subsequent inspection.

Q.   The DOC will permit group faith property, as identified in AR Form 800-01E, Faith Group Overview. Some group faith property will be restricted based on facility security level. Homemade, found, or altered items are not allowed and will be deemed as contraband. Group faith property will:

    1.   Be approved by the administrative head/designee so that a canteen order, a requisition or donation request form (AR Form 800-01I, Donation Request/Chain of Custody Forms) can be submitted.

        a.   ***Group faith property is available through Canteen, donation or an approved vendor. [2-CO-5E-01]*** A list of DOC recognized vendors will be maintained by Faith and Citizen Programs and only the items listed on AR Form 800-01E, Faith Group Overview may be purchased. Stamps are not an approved form of legal tender to purchase faith group items*.*

        b.   The facility volunteer coordinator or designee, will approve all outside purchases to ensure the items meet all appropriate security guidelines. All items purchased from an outside vendor will be consistent with Canteen items in color, size, shape, adornment, etc. Outside purchases will be made available when the approved items listed on Attachment E are not available from Canteen or the donation process. If an approved item is not available from an approved vendor, it may be purchased from an approved source of supply. Books, literature, and other publications may be purchased from an approved source of supply, in accordance with AR 300-38, *Offender Mail* and AR 850-06, *Offender Property*.

    2.   Be stored in a secure designated location for use during faith group related programs only. Items must fit into an area the size of a foot locker. Exceptions must be requested, in writing, by the offender faith group. Approval or denial must be in writing and maintained by the offender faith group. Approval or denial will be based on space available and facility security. Faith group items, including books, will not be removed from the area for personal use.

    3.   Have an inventory list, issued by the administrative head/designee, on or in the storage area/box. Any items not on the inventory list will be considered contraband and will be confiscated. The inventory list will be typed and dated.

    4.   Be reviewed for appropriateness at each security level, and be subject to approval by the administrative head/designee, in consultation with the Faith and Citizen Programs coordinator. If approved faith property is restricted, a report will be submitted annually to Faith and Citizen Programs detailing the compelling governmental interests for the restriction and if a less restrictive alternative would be appropriate.

    5.   Faith group items/property, obtained from approved authorized sources, should be related to items needed for group worship or celebration and may be stored with faith group property. Educational and other items not related to worship or celebration will be maintained in the chapel library consistent with other chapel property. (Amount specific to facility space availability. No personal faith items will be stored with group property.)

| CHAPTER | SUBJECT | AR # | Page 10 |
|---|---|---|---|
| Offender Pastoral Care | Religious Programs, Services, Clergy, Faith Group Representatives, and Practices | 800-01 | EFFECTIVE 03/01/21 |

R. **DOC will permit personal faith property, [2-CO-5E-01]** as identified in AR Form 800-01G, Allowable Personal Faith Group Property.  Some personal faith property items will be restricted if the offender is removed from general population status (e.g. Restrictive Housing, MCU, special housing). Homemade, found, or altered items are not allowed and will be deemed as contraband. Personal faith property items will:

1. Conform to AR 850-06, *Offender Property*.

2. **Personal faith property is available through Canteen, donation or an approved vendor. [2-CO-5E-01]** A list of DOC recognized vendors will be maintained by Faith and Citizen Programs and only the items listed on AR Form 800-01G, Allowable Personal Faith Group Property may be purchased.  Stamps are not an approved form of legal tender to purchase faith items**.**

3. The facility volunteer coordinator or designee, will approve all outside purchases to ensure the items meet all appropriate security guidelines.  All items purchased from an outside vendor will be consistent with Canteen items in color, size, shape, adornment, etc.  Outside purchases will be made available when the approved items listed on AR Form 800-01G, Allowable Personal Faith Group Property are not available from the Canteen or the donation process. If an approved item is not available from an approved vendor, it may be purchased from an approved source of supply. Books, literature, and other publications may be purchased from an approved source of supply, in accordance with AR 300-38, *Offender Mail* and AR 850-06, *Offender Property*.

4. The offender will be brought into property compliance pursuant to AR 850-06, *Offender Property*.

5. Be stored in the offender's cell.  Personal faith items will be stored in a clear plastic box available from canteen or a clear plastic or a paper bag issued by the facility. This container will be clearly marked "faith property items." The items will be included on the offender property list (see AR 850-06, *Offender Property*).

6. Be limited to that which fits within the faith property container.  Exceptions: Approved personal faith property items that are too large in size, including prayer rug/meditation cushion/etc., which must be stored on, under, or next to faith property container. Personal tefillin to be stored in living unit control center.

7. Be worn, displayed, or used only in the offender's cell, or during authorized faith group programs. When items are not in use, they must be stored in the faith items box. Personal faith property will not be displayed or used in general population.

   **EXCEPTIONS:**

   a. Medicine bags, medallions, and the "Tallit Katan" may be worn under the clothing, but will not be displayed in the general population.

   b. Prayer beads and rosaries may be carried in a pocket.

8. Religious head wear may be worn while outside of the cell and religious services. Offenders will not be required to wear a baseball cap or a stocking cap over their religious headwear.

9. Be reviewed for appropriateness at each security level, and be subject to approval by the administrative head/designee, in consultation with the Faith and Citizen Programs coordinator. If approved personal faith property is restricted, a report will be submitted annually to Faith and Citizen Programs detailing the compelling governmental interests for the restriction and if a less restrictive alternative would be appropriate.

10. Jewish, Muslim and Messianic Believer offenders, as mandated by faith tenet, will be allowed to wear the "Yarmulke" (skull cap), the kufi (Islamic religious headwear), and the "Tallit Katan" (worn under the clothing), while being transported to locations outside the facility.

| CHAPTER | SUBJECT | AR # | Page 11 |
|---|---|---|---|
| Offender Pastoral Care | Religious Programs, Services, Clergy, Faith Group Representatives, and Practices | 800-01 | EFFECTIVE 03/01/21 |

11. Battery powered tea lights are authorized personal property and may be acquired in accordance with this policy.

S. Faith group correspondence studies will be reviewed and approved by Faith and Citizen Programs and the materials must follow the guidelines and limits provided in ARs 300-26, *Publications*, 300-38, *Offender Mail* and 850-06, *Offender Property*. All courses of studies are considered to be for the purpose of personal enrichment and all must comply with the following:

1. Course materials must be presented in an organized format and must contain an external testing component.

2. The mailing of the course materials must be sent from the initiated author, organization or publisher with proper mailing labels and not be derived from a private citizen's mailing.

3. It is the responsibility of the participant to cover any necessary cost associated with course materials and postage.

4. All courses must be listed on the "Approved Correspondence Course" list which is available for each facility and updated quarterly.

5. Offenders who wish to engage in a new (presently unlisted) faith related correspondence course/study must work co-operatively with the facility chaplain or facility volunteer coordinator. It is the responsibility of the offender to obtain a complete and accurate list of materials, books and costs (including tuition costs) associated with each course.

   a. The information will be forward to the Faith and Citizens Programs through the facility volunteer coordinator

   b. The Faith and Citizens Programs will ensure the course meets the intended guidelines and will make determination on final approval.

   c. Faith and Citizens Programs will inform the requesting facility as to the approval and listing on the "Approved List". The facility will inform the requesting offender.

6. All materials associated with a correspondence course are subject to facility property limits.

7. Offenders will be familiar with facility requirements and approval processes prior to requesting any correspondence course.

8. If the offender is expecting a degree or college credit from any correspondence courses or study, they should refer to the facility education department and AR 500-01, *Offender Education System.*

9. The presence of an organization or ministry on the approved list does not indicate that all materials, books and other items are automatically approved materials. A facility has the final authority to determine the appropriateness of material allowed into its secure environment. Written documentation should be maintained as to the justification for disallowing any materials.

10. Organizations, ministries or publishers may initiate a request (independent of an offender's request) to include their courses on the "Approved Correspondence" list by notifying Faith and Citizens Programs.

11. A periodic verification of contact information for all ministries and organizations on the approved list will be conducted and documented.

V. <u>RESPONSIBILITY</u>

| CHAPTER | SUBJECT | AR # | Page 12 |
|---|---|---|---|
| Offender Pastoral Care | Religious Programs, Services, Clergy, Faith Group Representatives, and Practices | 800-01 | EFFECTIVE 03/01/21 |

A. ***The Faith and Citizen Programs coordinator is responsible for the coordination of all DOC religious programs. Administrative heads/designees and the facility chaplains(s) will ensure the initiation, coordination, and supervision of all faith group services and programs are carried out within the guidelines of Faith and Citizen Programs. [2-CO-5E-02]***

B. The Food Service and Laundry Program administrator will be responsible for review of faith group related diet issues, in accordance with AR 1550-15, *Medical and Religious Diets.*

C. The director of Prisons or designee will ensure that this AR is reviewed annually and updated as necessary.

VI. <u>AUTHORITY</u>

A. First Amendment of the Constitution of the United States: "Congress shall make no law respecting the establishment of religion, or prohibiting the free exercise thereof …"
B. The Religious Land Use and Institutional Persons Act of 2000. (RLUIPA)
C. Cruz vs. Beto, 405 U.S. 319 (1972):  Prisoners must be afforded "a reasonable opportunity of pursuing their faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts."
D. C.R.S. 17-42-101. Freedom of worship.

VII. <u>HISTORY</u>

April 1, 2020
April 1, 2019
March 15, 2018
March 15, 2017
January 1, 2015
January 1, 2014
March 15, 2011
March 15, 2010
January 15, 2009
December 1, 2008
January 15, 2008
June 1, 2007
March 15, 2007
March 15, 2006

ATTACHMENTS:

A. AR Form 800-01A, Qualifications for Chaplains/Candidate Protocol
B. AR Form 800-01B, Facility Monthly Chaplain's Report
C. AR Form 800-01C, Chaplain Memorandum of Agreement
D. AR Form 800-01D, Faith Group Endorsement.
E. AR Form 800-01E, Faith Group Overview
F. AR Form 800-01F, Request for Change of Faith Group Affiliation
G. AR Form 800-01G, Allowable Personal Faith Group Property
I. AR Form 800-01I, Donation Request/Chain of Custody Forms
J. AR Form 800-01J, Establishing New or Amending Current Faith Group Practices
K. AR Form 800-01K, American Indian Group Practices

| CHAPTER | SUBJECT | AR # | Page 13 |
|---------|---------|------|---------|
| Offender Pastoral Care | Religious Programs, Services, Clergy, Faith Group Representatives, and Practices | 800-01 | EFFECTIVE 03/01/21 |

L.  AR Form 800-01L, Umbrella Faith Groups

M. AR Form 100-01A, Administrative Regulation Implementation/Adjustments

Qualifications for Chaplains

**CHAPLAIN:**

A.  Faith group representative approved by Faith and Citizen Programs to provide chaplaincy services, 21 or more hours per week, to all offenders, regardless of faith affiliation and without prejudice, at no cost to the Colorado Department of Corrections.

    1.  Endorsement by the appropriate faith group certifying body in the community which is supporting the affiliated candidate as an institutional chaplain. The chaplain ensures equal status and protections for all religions.

    2.  Provide supporting documents, certifications, diplomas and licenses related to pastoral training, education or the equivalent. Formal ordination is preferred but not required.

    3.  Successful in completing the facility access check conducted by Faith and Citizen Programs and the designated portion of the basic training academy within the first six months after acceptance.

    4.  Sign a memorandum of agreement (*AR Form 800-01C, Chaplain Memorandum of Agreement*") with the DOC outlining their responsibilities and authority, and will work under the direct supervision of Faith and Citizen Programs, in consultation with the administrative head/designee.

B.  **Must meet the requirements defined in administrative regulation 900-01, *Volunteer Programs.***

**ASSOCIATE CHAPLAIN:**

A.  Faith group representative approved by Faith and Citizen Programs to provide chaplaincy services, up to 20 hours per week, to all offenders, regardless of faith affiliation and without prejudice, at no cost to the Colorado Department of Corrections.

    1.  Endorsement by the appropriate faith group certifying body in the community which is supporting the affiliated candidate as an institutional chaplain. The chaplain ensures equal status and protections for all religions.

    2.  Provide supporting documents, certifications, diplomas and licenses related to pastoral training, education or the equivalent. Formal ordination is preferred but not required.

    3.  Successful in completing the facility access check conducted by Faith and Citizen Programs and the Basic Volunteer Training class.

    4.  Sign a memorandum of agreement (*AR Form 800-01C, Chaplain Memorandum of Agreement*") with the DOC outlining their responsibilities and authority, and will work under the direct supervision of Faith and Citizen Programs, in consultation with the administrative head/designee.

B.  **Must meet the requirements defined in administrative regulation 900-01, *Volunteer Programs*.**

Attachment A
Page 1 of 2

## Chaplain Candidate Protocol

A.  Candidates for the position of chaplain/associate chaplain must meet the criteria of a volunteer, as defined in AR 900-01, *Volunteer Programs*, prior to being considered as a candidate.

B.  Candidates for the position of chaplain/associate chaplain must provide the following documentation to Faith and Citizen Programs before being considered for candidacy:

   1.  Appropriately credentialed (ordination, license, commission) by a governing faith body, local/national, and/or endorsed to function in a prison chaplaincy capacity (refer to *AR Form 800-01D, Faith Group Endorsement*).

   2.  A signed memorandum of agreement. (*AR Form 800-01C, Chaplain Memorandum of Agreement*).

C.  Pre-Assignment Interview:

   1.  The chaplain/associate chaplain candidate will schedule a meeting with the Faith and Citizen Programs coordinator and the appropriate regional coordinator. They will bring the above referenced documentation for a screening interview.

   2.  Training scheduling and requirements will be addressed.

D.  The Faith and Citizen Programs coordinator and the appropriate regional coordinator will:

   1.  Meet with the administrative head/designee to discuss possibility of the candidate.

   2.  Upon approval of the candidate, by the facility administrative head, and the successful completion of employment requirements, schedule appropriate training.

Attachment A
Page 2 of 2

AR Form 800-01B (04/01/19)

## Faith and Citizen Programs Facility Monthly Chaplain Report

Chaplain
Name: _____     Mo./Yr.
Report: _____ of _____     Facility: _____

| Hrs. in Facility | Hrs. Worked Outside Facility | Count of Request for Interview (Kites) answered | Training Hrs. |
|---|---|---|---|
|  |  |  | In Facility: |
|  |  |  | Outside Facility : |

1.  Please list the programs, classes, religious services that you have facilitated or coordinated this month. Please comment on any challenges, concerns or issues related to them.

2.  Did you facilitate/coordinate a holy day observance? Yes _____ No _____ If yes, describe the observance, offender participation, etc.

3.  Please approximate the number of "one to one" sessions with offenders (scheduled or impromptu). Examples: face to face discussions on grief and loss, struggle with incarceration, pastoral care, etc.

4.  Please detail your involvement in any new programs or changes to existing programs.

5.  Did you attend, observe, or facilitate any "special events" this month? Yes ___ No ___ If yes, please detail the event and include any observations.

6.  Number of emergency notifications you administered. Include relevant details or issues.

7.  Did you provide any services to DOC employees? Yes ___ No ___

8.  What areas of the facility did you access in order to provide services to either offenders or DOC employees?

9.  Please detail any other items of concern for the month.

_____
Chaplain signature                              Date

_____
Volunteer Coordinator Signature                 Date

Original:  Faith and Citizen Programs
Copy:  FCP Regional Coordinator

Attachment B
Page 1 of 1

App 108

## Memorandum of Agreement

This is an agreement between the Colorado Department of Corrections, hereinafter referred to as the "Department of Corrections";
**AND**

Chaplain/Associate Chaplain _____

Organization _____

Address _____

WHEREAS, the Department of Corrections operates and controls the state corrections facilities located throughout the borders of the state of Colorado, and

WHEREAS, as a part of the duties and responsibilities associated with operation of said facilities the Department of Corrections is responsible to make chaplaincy services available to the offenders in said facilities.

NOW, THEREFORE, the parties do agree as follows:

I.  DEPARTMENT OF CORRECTIONS.

    A.  <u>Duties and Responsibilities</u>

        1.  Provide professional, pastoral care services for offenders, and DOC employees when requested, exercising pluralistic sensitivity. These services are to include, but are not limited to:

            a.  spiritual counseling
            b.  crisis intervention
            c.  grief counseling
            d.  performance of worship and study services appropriate to the individual chaplain's faith expertise
            e.  notification of offenders in times of family medical emergency or death
            f.  as directed by the facility administrative head or designee, notification of offender families in times of offender sickness or death
            g.  ***maintain availability of faith based reading materials for offenders [2-CO-5E-01]***, where appropriate.

        2.  Assist in planning, developing, and implementing chaplain and religious programs.

        3.  Recruit and coordinate individuals to participate in these programs.

        4.  Interface with the community resources recruited to participate in these religious programs.

        5.  Compile and maintain records and documentation of chaplaincy activity; make reports as required by the facility administrative head/designee and the Department of Corrections.

        6.  Maintain relationships with resources in the faith community and the Department of Corrections to enable the referral of current and post-release offenders to resources, where available, that are appropriate to their individual situation and need.

        7.  As appropriate, maintain professional contact with post-release offenders, with prior written approval of the Faith and Citizen Programs coordinator and the facility administrative head where assigned.

Attachment C
Page 1 of 2

App 109

B.   Support Requirements

    1.   ***Appropriate office space, equipment, and office supplies to enable the chaplain to function within the facility. [5-ACI-7F-07]***

    2.   A telephone with long distance access and Internet access, where security permits.

C.   Stipulations and Recognitions

    1.   Chaplains must provide appropriate credentials, per AR 800-01.

    2.   Chaplains must successfully complete Basic Training at the Colorado Department of Corrections Training Academy. Associate chaplains must complete the designated portions of the Training Academy, within six months after acceptance.

    3.   Chaplains will be recognized as DOC employees in accordance with, and as defined by, AR 1450-01, *Code of Conduct*.

    4.   Understanding that chaplains are not state supported, the Department of Corrections recognizes that a chaplain's absence from the facility for the purpose of raising financial support is necessary for the continued provision of chaplaincy services.

    5.   Chaplains will participate in appropriate Department of Corrections and facility training.

    6.   Security is the paramount concern of the Department of Corrections and is the primary factor in the planning and implementation of any program or service provided within the correctional facility. It is the desire of the Department of Corrections to give chaplains the greatest possible latitude in the implementation and conduct of chaplaincy programs and services, within the security requirements of each facility.

II.   CHAPLAIN/ASSOCIATE CHAPLAIN

A.   Duties and Responsibilities

    1.   Provide chaplaincy services that fully meet the requirements, established in paragraph I.A. above.

    2.   ***Immediately report any information related to criminal activity, or misconduct, to their appointing authority, even if such information was received during pastoral counseling. [2-CO-5E-02]***

B.   Stipulations and Recognitions

    1.   On occasion a situation or circumstance may arise requiring that disciplinary action be taken with regard to a chaplain. Once the specifics have been determined, the administrative head/designee, in conjunction with Faith and Citizen Programs' representative, is responsible for taking the appropriate disciplinary action.

    2.   The very nature of chaplaincy ministry requires that a chaplain do what needs to be done to meet the needs. The chaplain will work with the Department of Corrections and each facility administrative head to strike the balance that allows the chaplain to meet the needs of the ministry both within the facility and within the community.

FOR THE COLORADO DEPARTMENT OF CORRECTIONS:

_____    _____
Signature    Date
Faith and Citizen Programs Coordinator

CHAPLAIN:

_____    _____
Signature    Date

AR Form 800-01D (03/15/18)

## Faith Group Endorsement

RETURN TO: Colorado Department of Corrections
1250 Academy Park Loop
Colorado Springs, Colorado 80910
ATTN: Faith and Citizen Programs Coordinator

**(Chaplain)** _____ is a member of our faith group, and has our support as an institutional chaplain to serve in the Colorado Department of Corrections.

_____        _____
Signature of Authorized Agent                Date

_____        _____
Print Authorized Agent Name                  Position

_____        _____
Faith Group Name                            Telephone

Official Mailing
Address

Attachment D
Page 1 of 1

App 111

| | | | | AR Form 800-01E (03/01/21) |
|---|---|---|---|---|
|  | **Colorado Department of Corrections**<br>**Faith Groups – Diet and Holy Days** |
| **FAITH GROUP** | **DIET/FAST DAYS** | **HOLY DAYS** | **GROUP GATHERINGS** | **COMMUNAL WORSHIP PROPERTY** |
| Agnostic | No special dietary standard exists | None | None | None |
| **American Indian/Alaska Native** | No special dietary standard exists | <u>**Work Proscription**</u><br><br>Sweat lodge ceremonies – Offenders may work prior to and after ceremony<br><br><u>**Non-Work Proscription**</u><br><br>None | **No volunteer presence is required to allow a group gathering.**<br><br>Weekly sweat lodge ceremony (up to 8 hours)<br>Includes:<br>Sweat Lodge Ceremony<br>Smudging<br>Pipe Ceremony<br><br>If there are no compelling governmental reasons to disallow it, special sweat lodge ceremonies may be held, instead of regularly scheduled sweat lodge ceremonies, to honor the following days:<br>Spring – Equinox<br>Summer – Solstice<br>Fall – Equinox<br>Winter – Solstice<br><br>If wood is not available, or if a sweat lodge ceremony is not conducted for any other reason, up to 2 hours 1x week should be allowed for Smudging/Pipe Ceremony. The inipi (sweat lodge) will be covered only during a sweat lodge ceremony.<br><br>Sweat lodge ceremonies, pipe ceremonies, and smudging are all subject to fire ban limitations. | Antler sets – 2<br>Blankets – lodge cover up to 2 layers<br>Books and/or CDs used during celebration or worship<br>Buffalo/cow skull – 1<br>Canvas – lodge cover 1 layer<br>Ceremonial pipe with or without wrap/bag– 1<br>Drum sticks – 20<br>Drums – 2 (Maximum diameter 14")<br>Feather fans – 3<br>Firewood – amount contingent to facility space, security<br>Forked stick sets – up to 4<br>Herbs – amount contingent to facility space, security<br>Sweetgrass<br>Sage<br>Cedar<br>Lava rock - amount contingent to facility space, security<br>Indigenous rock - amount contingent to facility space, security<br>Lodge pole – 1<br>Lodge pole flags – 4<br>Pitchfork, modified with end blunted – 1<br>Prayer ties – up to 10 per gathering 4"x4" in size, multicolor<br>Rattles – 4<br>Shells – 2<br>Shovel – 1<br>Song sheets – 20<br>Stones, rounded/tumbled no larger than 1" diameter – 6<br>Stones, rounded turquoise no larger than 2" diameter – 6<br>Tobacco blend – up to 1 oz per gathering<br>Water<br>Water bucket(s) - amount contingent to facility space, security<br>Water dipper – 1<br><br>No non-indigenous plants will be allowed to be planted or grown in the sweat lodge area. |

Attachment E
Page 1 of 9

App 112

| | | | | AR Form 800-01E (03/01/21) |
|---|---|---|---|---|
| | | **Colorado Department of Corrections**<br>**Faith Groups – Diet and Holy Days** | | |
| **FAITH GROUP** | **DIET/FAST DAYS** | **HOLY DAYS** | **GROUP GATHERINGS** | **COMMUNAL WORSHIP PROPERTY** |
| Ásatrú<br>(Odinism) | No special dietary<br>standard exists | **Work Proscription**<br><br>Charming of the Plow<br>High Feast of Osatra<br>May Day<br>Midsummer<br>Freyfaxi<br>Winter Finding<br>Winter Nights<br>Yule<br><br>**Non-Work Proscription**<br>None | **No volunteer presence is required to allow<br>a group gathering.**<br><br>Charming of the Plow<br>High Feast of Osatra<br>May Day<br>Midsummer<br>Freyfaxi<br>Winter Finding<br>Winter Nights<br>Yule<br><br>Fire allowed contingent upon<br>time, space, security, physical plant<br>and city or county fire ban ordinance.<br>Group gatherings may be held<br>indoors. Use of outside multi-faith area is<br>preferred. | Altar – 1<br>Altar cloth – 1<br>Books and/or CDs used during celebration or worship<br>Bowl (offering) – 1<br>Candles with holders (electric, battery, wax) various colors –<br>6<br>Drum – 1 (Maximum diameter 14")<br>Firewood – amount contingent to facility space, security<br>Gjallarhorn (up to 18") – 1<br>Libation horn (up to 18") – 1<br>Picture (Thor's Hammer up to 12"x10") – 1<br>Pictures of Deities (up to 8"x10") – 6<br>Shells - 2<br>Sprig (evergreen) – 1<br>Statue (up to 6") – 1 |
| **Astara** | No special dietary<br>standard exists | None | None | None |
| **Athiest** | No special dietary<br>standard exists | None | None | None |
| **Ausar Auset Society** | Vegetarian<br>Vegan | **Work Proscription**<br><br>Spring Equinox<br>Summer Solstice<br>Fall Equinox<br>Winter Solstice<br><br>**Non-Work Proscription**<br>Celebration of each full<br>moon<br>Twice monthly study to<br>discuss Metu Neter | **No volunteer presence is required to allow<br>a group gathering.**<br><br>Spring Equinox<br>Summer Solstice<br>Fall Equinox<br>Winter Solstice<br>Celebration of each full moon<br><br>**Volunteer presence is required to allow a<br>group gathering.**<br><br>Twice monthly study to discuss<br>Metu Neter | Books and/or CDs used during celebration or worship<br>Candles with holders (electric, battery, wax) various colors – 2 |

AR Form 800-01E (03/01/21)

## Colorado Department of Corrections
## Faith Groups – Diet and Holy Days

| FAITH GROUP | DIET/FAST DAYS | HOLY DAYS | GROUP GATHERINGS | COMMUNAL WORSHIP PROPERTY |
|---|---|---|---|---|
| Baha'i | No special dietary standard exists<br><br>**Fast: March 2-21** | **Work Proscription**<br><br>Naw Ruz<br><br>**Non-Work Proscription**<br>Ridvan<br>Declaration of the Bab<br>Ascension of Baha'u'llah<br>Martydom of Bab<br>Birth of Bab<br>Birth of Baha'u'llah<br>Day of Covenant<br>Ascension of Abdu'l Baha | **Volunteer presence is required to allow a group gathering.**<br><br>Naw Ruz<br>Ridvan<br>Declaration of the Bab<br>Ascension of Baha'u'llah<br>Martydom of Bab<br>Birth of Bab<br>Birth of Baha'u'llah<br>Day of Covenant<br>Ascension of Abdu'l Baha | None |
| Buddhism | Vegetarian<br>Vegan | **Work Proscription**<br><br>Nirvana<br>Sangha Day<br><br>**Non-Work Proscription**<br><br>Birthday of Buddha –<br>(Vesak (Buddha Day))<br>Dharma Day<br>Pavarana<br>Bodi Enlightenment Day<br>Sangha | **No volunteer presence is required to allow a group gathering.**<br><br>Sangha (Twice monthly)<br>Nirvana<br>Sangha Day<br>Birthday of Buddha – (Vesak (Buddha Day))<br>Dharma Day<br>Pavarana<br>Bodi Enlightenment Day | Altar – 1<br>Altar cloth – 1<br>Bell/Gong (small) – 1<br>Books and/or CDs used during celebration or worship<br>Bowls (offering) – 7<br>Box (covered in brocade/cloth) – 1<br>Candles with holders (electric, battery, wax) various colors – 2<br>Pictures (Buddhist) – 6<br>Pitcher (small, clear plastic) – 1<br>Statue (Buddha up to 6") – 1<br>Text (small scroll or book wrapped in cloth) - 1 |
| Catholic | Meatless entrée on Fridays during Lent, Ash Wednesday & Good Friday | **Work Proscription**<br><br>None<br><br>**Non-Work Proscription**<br>Octave of Christmas<br>Ash Wednesday<br>Palm Sunday<br>Good Friday<br>Easter<br>Ascension of Jesus<br>Assumption of Mary<br>All Saints Day<br>Immaculate Conception<br>Christmas | **Volunteer presence is required to allow a group gathering.**<br><br>Weekly service<br>Octave of Christmas<br>Ash Wednesday<br>Palm Sunday<br>Good Friday<br>Easter<br>Ascension of Jesus<br>Assumption of Mary<br>All Saints Day<br>Immaculate Conception<br>Christmas | Altar – 1<br>Altar cloth – 1<br>Books and/or CDs used during celebration or worship<br>Bowl/cup (offering) – 1<br>Candles with holders (electric, battery, wax) various colors – 6<br>Cross/crucifix (up to 6") – 1<br>Holy water – up to 6 oz<br>Stations of the Cross (paper or cardboard) up to 12'x10" – 1 set<br>Statues (Saints up to 6") – 2<br><br>**The officiating priest, deacon, or Eucharistic minister may bring in the following items:**<br>Wafers for Eucharist<br>Wine – 2 oz for Eucharist **(For use by officiating priest only)** |

Attachment E
Page 3 of 9

## App 114

| | | | | AR Form 800-01E (03/01/21) |
|---|---|---|---|---|
| **Colorado Department of Corrections** | | | | |
| **Faith Groups – Diet and Holy Days** | | | | |
| **FAITH GROUP** | **DIET/FAST DAYS** | **HOLY DAYS** | **GROUP GATHERINGS** | **COMMUNAL WORSHIP PROPERTY** |
| **Church of Christ Scientist** | No special dietary standard exists | None | None | None |
| **Church of Jesus Christ of Latter Day Saints** (Mormon) | Vegetarian Vegan | **Work Proscription** None **Non-Work Proscription** Palm Sunday Good Friday Easter Christmas | **Volunteer presence is required to allow a group gathering.** Weekly service Palm Sunday Good Friday Easter Christmas | Books and/or CDs used during celebration or worship Bowl/cup (offering) – 1 Bread/wafer Grape juice |
| **Church of Scientology** | No special dietary standard exists | **Work Proscription** None **Non-Work Proscription** International Auditors Day International Association of Scientology | **Volunteer presence is required to allow a group gathering.** International Auditors Day International Association of Scientology | None |
| **Church Universal and Triumphant** | Vegetarian Vegan | **Work Proscription** None **Non-Work Proscription** Ascension of Church's founder Easter Wesak Christmas Day | **Volunteer presence is required to allow a group gathering.** Ascension of Church's founder Easter Wesak Christmas Day | None |
| **Eastern Orthodox Christian** | Regular fasting to include fasting most Wednesdays and Friday. Fasting may require abstinence from animal products, including fish, chicken, and dairy products. Fasting periods also include: Lent, Advent, Nativity, Dormition, Assumption, The Feast of the Holy Apostles. | **Work Proscription** None **Non-Work Proscription** Theophany (Epiphany) Presentation of Christ Palm Sunday Pascha (Easter) Ascension Pentecost Transfiguration Dormition (Assumption) Nativity of Christ (Christmas) | **Volunteer presence is required to allow a group gathering.** Theophany (Epiphany) Presentation of Christ Palm Sunday Pascha (Easter) Ascension Pentecost Transfiguration Dormition (Assumption) Nativity of Christ (Christmas) NOTE: Orthodox holy days often occur on different days than their western counterparts. Please review the calendar for correct dates. | Altar – 1 Altar cloth – 1 Books and/or CDs used during celebration or worship Chalice – 1 Pictures (Jesus Christ and Mary, with stands, up to 8"x10") – 2 Candles with holders (electric, battery, wax) various colors – 6 **The officiating priest may bring in the following items:** Incense – **May not be burned** Leavened bread – for Communion Olive oil Red cloth napkins Star (small metal cover over bread) - 1 Wine – 2 oz for Eucharist **(For use by officiating priest only)** Liturgical vestments and service booklets |

AR Form 800-01E (03/01/21)

## Colorado Department of Corrections
### Faith Groups – Diet and Holy Days

| FAITH GROUP | DIET/FAST DAYS | HOLY DAYS | GROUP GATHERINGS | COMMUNAL WORSHIP PROPERTY |
|---|---|---|---|---|
| **Hindu** | Vegetarian<br>Vegan | **Work Proscription**<br>Dashera<br>Diwali<br>**Non-Work Proscription**<br>None | **Volunteer presence is required to allow a group gathering.**<br>Dashera<br>Diwali | None |
| **Islam/Muslim** | Vegetarian<br>Vegan<br>Halal<br><br>**Ramadan Fast sunup to sundown – 29 to 30 days** | **Work Proscription**<br>Eid-Ul-Fitr<br>Eid-Ul-Adha<br>Jumah – Offender may work prior to and after service<br>**Non-Work Proscription**<br>Ramadan | **No volunteer presence is required to allow a group gathering.**<br>Ramadan<br>Eid-Ul-Fitr<br>Eid-Ul-Adha<br>Jumah Prayer –<br>• Offenders should be allowed to shower prior to service.<br>• Allow up to a two hour observance starting after 1:00pm | Books and/or CDs used during celebration or worship |
| **Jehovah's Witness** | No special dietary standard exists | **Work Proscription**<br>None<br>**Non-Work Proscription**<br>Lord's Evening Meal | **Volunteer presence is required to allow a group gathering.**<br>Weekly Service<br>Lord's Evening Meal | None |
| **Jewish** | Kosher<br><br>**Fast days:**<br>**Tevet**<br>**Ester**<br>**Tammuz**<br>**Fast of 9th of AV**<br>**Gedeliah**<br>**Yom Kippur** | **Work Proscription**<br>Shabbat – weekly<br>Havdalah<br>Purim<br>Passover – day 1<br>Passover – day 2<br>Passover – day 7<br>Passover – day 8<br>Shavuot – day 1<br>Shavuot – day 2<br>Fast of 9th of AV<br>Rosh Hashanah – day 1<br>Rosh Hashanah – day 2<br>Yom Kippur<br>Sukkot – day 1<br>Sukkot – day 2<br>Shemini Atzeret<br>Simchat Torah<br>**Non-Work Proscription**<br>Chanukah | **No volunteer presence is required to allow a group gathering.**<br>Shabbot – weekly<br>Havdalah<br>Purim<br>Passover – day 1<br>Passover – day 2<br>Passover – day 7<br>Passover – day 8<br>Shavuot – day 1<br>Shavuot – day 2<br>Fast of 9th of AV<br>Rosh Hashanah – day 1<br>Rosh Hashanah – day 2<br>Yom Kippur<br>Sukkot – day 1<br>Sukkot – day 2<br>Shemini Atzeret<br>Simchat Torah<br>Chanukah | Books and/or CDs used during celebration or worship<br>Candle (Havdalah) with holder – 1 (no more than 2 wicks)<br>Candles with holders (electric, battery, wax) various colors – 8<br>Candles – Chanukah<br>Cup (Kiddish) – 1<br>Grape juice<br>Lulav and Etrog<br>Matzot<br>Matzot cover (linen) – 1<br>Menorah (at Chanukah only) – 1<br>Shofar (up to 18") – 1<br>Spice holder with spices (pleasant smelling, such as clove/cinnamon/bay) – 1<br>Seder Plate - 1<br>Sukkah |

Attachment E
Page 5 of 9

App 116

| AR Form 800-01E (03/01/21) |
|---|

### Colorado Department of Corrections
### Faith Groups – Diet and Holy Days

| FAITH GROUP | DIET/FAST DAYS | HOLY DAYS | GROUP GATHERINGS | COMMUNAL WORSHIP PROPERTY |
|---|---|---|---|---|
| **Krishna Consciousness** | Vegetarian<br>Vegan | **Work Proscription**<br>None<br><br>**Non-Work Proscription**<br>Jagannatha<br>Janmastami<br>Vyasa Puja | **Volunteer presence is required to allow a group gathering.**<br>Jagannatha<br>Janmastami<br>Vyasa Puja | None |
| **Messianic Believers** | Kosher<br><br>**Fast days:**<br>**Tevet**<br>**Ester**<br>**Tammuz**<br>**Fast of 9ᵗʰ of AV**<br>**Gedeliah**<br>**Yom Kippur** | **Work Proscription**<br>Shabbot/Havdalah–weekly<br>Purim<br>Passover – day 1<br>Passover – day 2<br>Passover – day 7<br>Passover – day 8<br>Shavuot – day 1<br>Shavuot – day 2<br>Fast of 9ᵗʰ of AV<br>Rosh Hashanah – day 1<br>Rosh Hashanah – day 2<br>Yom Kippur<br>Sukkot – day 1<br>Sukkot – day 2<br>Shemini Atzeret<br>Simchat Torah<br><br>**Non-Work Proscription**<br>Palm Sunday<br>Good Friday<br>Easter<br>Chanukah<br>Christmas | **No volunteer presence is required to allow a group gathering.**<br>Shabbot – weekly Havdalah<br>Purim<br>Passover – day 1<br>Passover – day 2<br>Passover – day 7<br>Passover – day 8<br>Shavuot – day 1<br>Shavuot – day 2<br>Fast of 9ᵗʰ of AV<br>Rosh Hashanah – day 1<br>Rosh Hashanah – day 2<br>Yom Kippur<br>Sukkot – day 1<br>Sukkot – day 2<br>Shemini Atzeret<br>Simchat Torah<br>Chanukah<br>**Volunteer presence is required to allow a group gathering.**<br>Palm Sunday<br>Good Friday<br>Easter<br>Christmas | Books and/or CDs used during celebration or worship<br>Candle (Havdalah) with holder – 1 (no more than 2 wicks)<br>Candles with holders (electric, battery, wax) various colors – 8<br>Candles – Chanukah<br>Communion wafers<br>Cup (Kiddish) – 1<br>Grape juice<br>Lulav and Etrog<br>Matzot<br>Matzot cover (linen) – 1<br>Menorah (at Chanukah only) – 1<br>Shofar (up to 18") – 1<br>Spice holder with spices (pleasant smelling, such as clove/cinnamon/bay) – 1<br>Seder Plate - 1<br>Sukkah |

Attachment E
Page 6 of 9

App 117

| Colorado Department of Corrections | | | | |
|---|---|---|---|---|
| **Faith Groups – Diet and Holy Days** | | | | AR Form 800-01E (03/01/21) |
| **FAITH GROUP** | **DIET/FAST DAYS** | **HOLY DAYS** | **GROUP GATHERINGS** | **COMMUNAL WORSHIP PROPERTY** |
| **Moorish Science Temple of America** | Vegetarian<br>Vegan | <u>**Work Proscription**</u><br>Noble Drew Ali's Birthday<br>Tag Day<br>Authority Day<br><u>**Non-Work Proscription**</u><br>Weekly Divine Service/Koran Study<br>Ramadan | **No volunteer presence is required to allow a group gathering.**<br>Noble Drew Ali's Birthday<br>Tag Day<br>Authority Day<br>Weekly Divine Service<br>• Offenders may work prior to and after service<br>**Volunteer presence is required to allow a group gathering.**<br>Ramadan | Books and/or CDs used during celebration or worship<br>Moorish Holy Koran<br>Picture of Noble Drew Ali – 1<br>Picture of Flag (American 8"x10") – 1<br>Picture of Flag (MST 8"x10") – 1<br>Booklets:<br>  Affirmation of Authority, Branch Temple Information, Humanity, Moorish Literature, Koran Questions for Moorish, The Great Meeting is On |
| **No Preference** | No special dietary standard exists | None | None | None |
| **None** | No special dietary standard exists | None | None | None |
| **North Western European Paganism** | Vegetarian<br>Vegan | <u>**Work Proscription**</u><br>Imbloc<br>Spring Equinox<br>Beltane<br>Summer Solstice<br>Lughnassad<br>Fall Equinox<br>Samhain<br>Winter Solstice<br><u>**Non-Work Proscription**</u><br>Celebration of each full moon | **No volunteer presence is required to allow a group gathering.**<br>Imbloc<br>Spring Equinox<br>Beltane<br>Summer Solstice<br>Lughnassad<br>Fall Equinox<br>Samhain<br>Winter Solstice<br><br>Celebration of each full moon<br>• Offenders may work prior to and after service<br><br>Fire allowed contingent upon time, space, security, physical plant, and city or county fire ban ordinance.<br><br>Group gatherings may be held indoors. Use of outside multi-faith area is preferred. | Altar – 1<br>Altar cloth – 1<br>Bells (small) – 2<br>Books and/or CDs used during celebration or worship<br>Bowl (small) – 1<br>Candles with holders (electric, battery, wax) various colors – 6<br>Cards (Tarot or Rune) – 1 set<br>Chalice – 1<br>Chalk (various colors) – 12 pc<br>Charcoal – 1 pc    Charcoal burner – 1<br>Deity Pictures – 6<br>Drum – 1    Drum stick – 1<br>Earth – 2 oz<br>Feathers – 6<br>Firewood – amount contingent to facility space, security<br>Herbs – amount contingent to facility space, security<br>Libation horn (up to 18") – 1<br>Mirror (black) – 1<br>Paper tablet – 1<br>Pentacle or Pentagram – 1<br>Rattle – 1<br>Ribbon (various colors up to 12") – 5<br>Salt/sea salt – 2 oz<br>Sprig (oak) – 1<br>Stones, rounded/tumbled no larger than 1" diameter – 6<br>Crystals, rounded/tumbled no larger than 1" in diameter – 6<br>Wand (10"x¼") – 1<br>Whisk broom - 1 |

Attachment E
Page 7 of 9

App 118

| | | | | AR Form 800-01E (03/01/21) |
|---|---|---|---|---|
| | | **Colorado Department of Corrections**<br>**Faith Groups – Diet and Holy Days** | | |
| **FAITH GROUP** | **DIET/FAST DAYS** | **HOLY DAYS** | **GROUP GATHERINGS** | **COMMUNAL WORSHIP PROPERTY** |
| **Ordo Templi Orientis** | No special dietary standard exists | None | None | None |
| **Other** | No special dietary standard exists | None | None | None |
| **Protestant**<br>(General Christian) | Vegetarian<br>Vegan | **Work Proscription**<br>None<br>**Non-Work Proscription**<br>Palm Sunday<br>Good Friday<br>Easter<br>Christmas | **Volunteer presence is required to allow a group gathering.**<br>Weekly worship service<br>Palm Sunday<br>Good Friday<br>Easter<br>Christmas | Books and/or CDs used during celebration or worship<br>Bowl/cup (offering) – 1<br>Bread/wafer<br>Grape juice |
| **Rastafarian** | Vegetarian<br>Vegan | **Work Proscription**<br>None<br>**Non-Work Proscription**<br>Haile Selassie's<br>  birthday<br>Jamaican Independence<br>  Day<br>Marcus Garvey's birthday | **Volunteer presence is required to allow a group gathering.**<br>Haile Selassie's birthday<br>Jamaican Independence Day<br>Marcus Garvey's birthday | None |
| **Satan/Satanism** | No special dietary standard exists | None | None | None |
| **Seventh Day Adventist** | Vegetarian<br>Vegan | **Work Proscription**<br>Weekly Sabbath –<br>Sun down Friday to<br>  sundown Saturday<br>**Non-Work Proscription**<br>Palm Sunday<br>Good Friday<br>Easter<br>Christmas | **Volunteer presence is required to allow a group gathering.**<br>Weekly Sabbath<br>Palm Sunday<br>Good Friday<br>Easter<br>Christmas | Books and/or CDs used during celebration or worship<br>Bowl/cup (offering) – 1<br>Bread/wafer<br>Grape juice |
| **Sikh** | Vegetarian<br>Vegan | **Work Proscription**<br>None<br>**Non-Work Proscription**<br>Vaisakhi: New Year<br>Birth of Guru Nanak Dev Ji | **Volunteer presence is required to allow a group gathering.**<br>Vaisakhi: New Year<br>Birth of Guru Nanak Dev Ji | None |

| AR Form 800-01E (03/01/21) | | | | |
|---|---|---|---|---|
| **Colorado Department of Corrections**<br>**Faith Groups – Diet and Holy Days** | | | | |
| **FAITH GROUP** | **DIET/FAST DAYS** | **HOLY DAYS** | **GROUP GATHERINGS** | **COMMUNAL WORSHIP PROPERTY** |
| **Taoism** | Vegetarian<br>Vegan | **Work Proscription**<br>None<br><br>**Non-Work Proscription**<br>Chinese New Year<br>Jade Emperor's Birthday<br>Kwan Yin's Birthday<br>Ching Ming Festival<br>Festival of Immortal Lu<br>Hungry Ghost Festival<br>Chung Yeung Festival | **Volunteer presence is required to allow a group gathering.**<br>Jade Emperor's Birthday<br>Kwan Yin's Birthday<br>Festival of Immortal Lu<br><br>**No volunteer presence is required to allow a group gathering.**<br>Chinese New Year<br>Ching Ming Festival<br>Hungry Ghost Festival<br>Chung Yeung Festival | Altar – 1<br>Altar cloth – 1<br>Bell/Gong (small) – 1<br>Books and/or CDs used during celebration or worship<br>Bowls (offering) – 7<br>Candles with holders (electric, battery, wax) various colors – 2<br>Pictures, Deity (8 ½" x 11" max) – 6<br>Statue (up to 6") – 1 |
| **Unitarian/Universalism** | No special dietary standard exists | **Work Proscription**<br>None<br><br>**Non-Work Proscription**<br>New Years Day<br>Martin Luther King, Jr.<br>Easter<br>Rosh Hashanah<br>Yom Kippur<br>Thanksgiving<br>Christmas | **Volunteer presence is required to allow a group gathering.**<br>New Years Day<br>Martin Luther King, Jr. Birthday<br>Easter<br>Rosh Hashanah<br>Yom Kippur<br>Thanksgiving<br>Christmas | Books and/or CDs used during celebration or worship<br>Candles with holders (electric, battery, wax) various colors – 6<br>Chalice – 1 |

AR Form 800-01F (03/15/17)

## Request for Change of Faith Group Affiliation

**(Print clearly, unreadable requests will not be processed)**

| Date: | | Facility/Center: | |
|---|---|---|---|
| Name: | | DOC#: | |
| Case Manager: | | | |
| Living Unit: | | | |

Change Faith Group Affiliation To: _____

(choose from list below)

| | | |
|---|---|---|
| Agnostic | Church of Scientology | North Western European Paganism |
| American Indian/Alaskan Native | Church Universal and Triumphant | Ordo Templi Orientis |
| Ásatrú | Eastern Orthodox Christian | Other |
| Astara | Hindu | Protestant (General Christian) |
| Atheist | Islam/Muslim | Rastafarian |
| Ausar Auset Society | Jehovah's Witnesses | Satan/Satanism |
| Baha'i | Jewish | Seventh Day Adventist |
| Buddhism | Krishna Consciousness | Sikh |
| Catholic | Messianic Believers | Taoism |
| Church of Christ Scientist | Moorish Science Temple of America | Unitarian/Universalism |
| Church of Jesus Christ of Latter Day Saints (Mormons) | No Preference | None |

**NOTE: You may not make another faith group affiliation change for 12 months from the approved date.**

Offender Signature: _____

_____   _____   _____
Volunteer Coordinator/designee – Print/Sign    Date Received      Date Forwarded

_____   _____   Approved  Denied
Regional Coordinator/designee – Print/Sign    Date    (*Circle one*)

Reason for Denial/Notes:

_____
_____
_____

Eligible for Faith Group Affiliation Change On: _____

Original:   Regional Coordinator
     Notification: Facility Volunteer Coordinator - Offender

Attachment F
Page 1 of 1

App 121

AR Form 800-01G (04/01/20)

# Allowable Personal Faith Property

**PERSONAL FAITH PROPERTY IS NOT FAITH SPECIFIC**
**LIMITED TO THAT WHICH FITS WITHIN DESIGNATED CONTAINMENT SPACE OF FAITH PROPERTY BOX/BAG**

**GENERAL**
**AVAILABLE ON CANTEEN**
- Altar cloth (1)
- Bear root (2 oz)
- Bitter root (2 oz)
- Chalice (1)
- Corn meal (2 oz)
- Earth (2 oz)
- Faith Property Container (1)
- Herb Chamomile (2 oz)
- Herb Fennel (2 oz)
- Herb Jasmine (2 oz)
- Herb Lavender (2 oz)
- Herb Rosemary (2 oz)
- Herb Sage (2 oz)
- Herb Vervain (2 oz)
- Meditation cushion (1)
- Citron lotion
- Frankincense lotion
- Lavender lotion
- Myrrh lotion
- Sandalwood lotion
- Paper tablet journal (1)
- Prayer rug (1)
- Prayer ties (size up to 4"x4") (10)
- Sage bundle (2 oz)
- Salt/sea salt (2 oz)
- Scapular (1)
- Sweet grass braid (1)
- Tea Lights, Battery powered (2)
- Wand [wood 10x ¼"] (1)

**NOT AVAILABLE ON CANTEEN**
- Bell [small] (1)
- Bowl [small] (1)
- Faith Calendar (1) (some faiths require faith specific dates and times)
- Corn pollen (2 oz)
- Crystals, tumbled/rounded[1x2"] (6)
- Deity pictures (up to 6, 8 ½" x 11" Max)
- Feathers [up to 6](1)
- Gong [small] (1)
- Herb Cedar Bundle (2 oz)
- Herb Cedar Shavings (2 oz)
- Herb Citron (2 oz)
- Kanga [wood comb] (1)
- Matzot
- Palm frond (1)
- Prayer wheel [or picture] (1)
- Ribbons [up to 12"] (5)
- Runes, Ogham (1)
- Runes set, Elder Futhark, with bag (1)
- Sigils/Symbols (3)
- Stones, round/ polished [1x2"] (6)
- Stones turquoise 1 x 2 inch (6)
- Tallis [prayer shawl] (1)
- Tallis bag (1)
- Tallit Katan [Tzizit] (2)
- Tefillin [phylacteries] (2 sets)
- Tefillin bag (2)
- Yarrow stick [bundle 50] (1)

**HEAD COVERINGS** – one only
**AVAILABLE ON CANTEEN**
- Head band
- Hijab
- Kufi
- Skull cap (yarmulke)

**NOT AVAILABLE ON CANTEEN**
- Turban
- Tam

**CARDS -** one only
**AVAILABLE ON CANTEEN**
- Sacred Path w/ book
- Tarot – Universal Waite

**NOT AVAILABLE ON CANTEEN**
- Rune
- Oracle
- Thoth Tarot
- Tree of Life Meditation

**MEDALLION** – one only
**AVAILABLE ON CANTEEN**
- Allah (metal)
- Ankh (metal)
- Baphomet (metal)
- Cross (metal)
- Crucifix (metal)
- Lion of Judah (metal)
- Pentagram (metal)
- Medicine Bag w/leather strap.
- Star of David (metal)
- Messianic Star of David (metal)
- Thor's Hammer (metal)
- Yin Yang (metal)
- Khanda (metal)
- Buddha (medal)
- Flaming Chalice (metal)

**MEDALLION CHAIN**
**Medallion chain must be in conjunction with Medallion** – one only

**AVAILABLE ON CANTEEN**
- 18" (silver)
- 20" (silver)
- 24" (silver)

**BEADS** – one strand only

**NOT AVAILABLE ON CANTEEN**
- Japamala
- Prayer beads
- Standard Rosary

**PINS** – one only
**NOT AVAILABLE ON CANTEEN**
- Moorish Science

**Special Notes**
**MCU Units will designate allowable items from this attachment. Allowable personal property will be identified in their facility policy.**
**Apparel (Tallis, Tallit Katan, Head Covering) – black or white**
**Cloth Scapular-brown or green or black or white**
**Prayer bead color: black, white or natural wood tone**
**Prayer ties – various colors**
**Tefillin stored in living unit control center**

**No acquisition of new personal pipes will be allowed**

AR Form 800-01I (03/15/17)

## Faith and Citizen Programs
### Part I: Offender Donation Request Form

Requesting a donation does not guarantee the receipt of such item. An item will be approved and sent to an individual only one time unless approved by Faith and Citizen Programs. A request for a previously issued item will require additional information from the offender. The item will be sent out to the group/individual based on availability.

| Name | | DOC # | |
|---|---|---|---|
| Date | | Facility | | Unit | |
| Faith Affiliation | | Case Manager | |

| Please check one: | | Individual Faith Property Item | | Group Faith Property Item | | Other |
|---|---|---|---|---|---|---|

Item(s) requested:

If item has been previously issued, please explain the reason why the item should be issued to you again:

Offender signature

| Is the item allowable per *facility* OM/IA? | Yes | No |
|---|---|---|
| Is the item available at the facility? | Yes | No |

| Facility Volunteer Coordinator | | |
|---|---|---|
| | Signature | Date |

Faith and Citizen Programs Approval (FCP will verify information below)

| Is item already listed on offender's property list? | Yes | No |
|---|---|---|
| Is the offender affiliated with appropriate faith? | Yes | No |
| Is the item allowable per AR 800-01? | Yes | No |
| Item donated to offender? | Yes | No |

Comments:

| Regional Volunteer Coordinator | | |
|---|---|---|
| | Signature | Date |

Attachment I
Page 1 of 2

App 123

AR Form 800-01I (03/15/17)

Faith and Citizen Programs
Part II:  Donation Chain of Custody Form

| Donor: | | Approved Source: | ☐ Yes | ☐ No |
|---|---|---|---|---|
| Address | | | | |
| | | | | |
| | | | | |
| Phone: | | | | |

| Faith Group Affiliation: | |
|---|---|

| Description of Item(s): | Monetary Value of Item: |
|---|---|
| | |
| | |
| | |
| | |

| Title of Book(s)/DVD(s)/Video(s), etc.: | Monetary Value of Item: |
|---|---|
| | |
| | |
| | |

☐ Group Item          ☐ Personal Item          ☐ Other:

| Facility Volunteer Coordinator/Designee: | Date: |
|---|---|

| Offender/Group to receive item: | DOC Number: |
|---|---|
| Facility: | Unit: |

| Quantity: | Relinquished by: | Received by: | Date |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

*Facility Volunteer Coordinator, Please Sign And Return Original To Faith And Citizen Programs*

*Facility Volunteer Coordinator Is Responsible To Ensure Non-Consumable Items Are Added To Offender DCIS Property List.*

Attachment I
Page 2 of 2

App 124



AR Form 800-01J (03/15/18)

# ESTABLISHING NEW OR AMENDING CURRENT FAITH GROUP PRACTICES

Instructions:     Please print or type all information in black or blue ink. Illegible/incomplete requests will not be considered.  Use only the space provided. **No additional pages may be used or attached.  Only one request per form will be considered and addressed.**

A.   Offender Name _____     DOC # _____     Facility _____

PCDCIS Listed
Faith Affiliation _____     Case Manager _____     Unit _____

B.     Yes or No: Are you requesting to establish a new religion/faith group that is not currently recognized by DOC? _____

C.    If yes in section B, state the religion that you are requesting to be recognized. If no, what faith practice would you like to change or add?

D.    If yes in section B, identify basic tenets or teachings associated with the faith group. If no, provide a source, reference, or documentation which supports and shows the significance of this requested change to current practice. Listing the first amendment, or stating the understanding of it does not constitute a source.

E.    If yes in section B, identify any recognized governing body associated with the faith group. Provide a name, address, and phone number, if known.

F.    If yes in section B, identify any documentation (books, literature, etc.) associated or referenced with this faith group.

Offender Signature _____     Date Submitted _____

Facility Volunteer Coordinator - Print/Sign _____     Date Forwarded _____

Response CC: DOC office of Faith and Citizen Programs     Offender
            Facility Volunteer Coordinator               Chaplain
            Case Manager                                 File

Attachment J
Page 1 of 1

App 125

AR Form 800-01K (02/01/19)

## American Indian Group Practices

This exception pertains to administrative regulations 100-04, *Tobacco Use in Buildings and Vehicles*, and 800-01, *Religious Programs, Services, Clergy, Faith Group Representatives, and Practices*.

**A.  TOBACCO BLEND**: That an exception to the tobacco ban be placed in effect for American Indian practitioners.

   1.  That native tobacco blend be allowed in prepackaged and controlled amounts, not to exceed one ounce per ceremony.  The tobacco in the blend should not be more than 25% of the overall mixture.

   2.  That facility administrative head designates appropriate security protocols for receipt and distribution.

   3.  That American Indian offenders be allowed to participate in one pipe ceremony, per week, annually, as outlined in AR 800-01.

   4.  That only offenders designated American Indian religion on the DCIS system be allowed to participate in pipe ceremonies.

   5.  That only the pipe ceremony be restricted to offenders designated as American Indian, and that all other ceremonies, *not involving tobacco blend*, be open for attendance to the general offender population when a volunteer is present.

   6.  That if a pipe ceremony is conducted in conjunction with the sweat lodge ceremony, offenders not designated as American Indian, be restricted access to the sweat lodge area until the pipe ceremony is concluded.

   7.  That medicine bags found to contain tobacco and/or tobacco blend, be deemed contraband until the tobacco and/or tobacco blend is removed. If refusal to remove the tobacco and/or tobacco blend is encountered, the medicine bag will be confiscated. Disposition of the medicine bag will be determined by the facility administrative head, in accordance with relative administrative regulations.

**B.  PERSONAL PIPES**: Due to the March 1, 1999, tobacco ban, no personal pipes will be allowed in the Colorado Department of Corrections.

**C.  SMUDGING**: That smudging be allowed on the sweat lodge grounds. That if there is no sweat lodge, an area be designated by the administrative head for the purpose. That smudging using non tobacco plants be allowed during American Indian ceremonies.

**D.  THE SWEAT LODGE AREA**:
An area approximately 40 feet by 40 feet, (*where possible and physical plant permits)* is needed for the sweat lodge in order to provide for traditional East-West door orientation. It should be situated in an area that affords as much privacy as the facility/center will permit. Consideration should also be given to ventilation of smoke from the wood fire, and so that drumming during the ceremony does not interfere with other facility operations. **(In facilities where sweat lodges already exist, no changes will be made to accommodate the above dimensions.)**

Dimensions of the sweat lodge (inipi) will depend on the average number of people expected to use it. Ordinarily it would be 7 to 12 feet in diameter and 4 to 5 feet high.

For the (1) fire pit, approximately 15-40 rocks should be on hand. Rocks will have to be replaced periodically as they break. Lava rocks will be used in the fire. Up to 50-100 rocks are commonly used for the Medicine Wheel. The Medicine Wheel may be spent lava rock, in conjunction with indigenous rock.

Wood that is free from nails and safe for burning should be on hand prior to the beginning of each ceremony. An adequate amount of wood is needed to heat the rocks.

Attachment K
Page 1 of 2

At least 25-30 willow branches 12-14 feet long are needed to construct the sweat lodge frame. The sweat lodge frame needs to be refreshed annually with new branches, preferably in the spring, if new willows are available.  A lodge pole may also be erected utilizing the willow branches.

FIRE BAN INFORMATION
- Fires in the outside faith areas are permitted when the fire ban stage defined by county or city ordinance allows fires in developed areas.
- Pipe ceremonies are permitted when the fire ban stage defined by county or city ordinance allows outdoor smoking in areas that are considered developed.
- Smudging is not considered an open fire or agricultural burning unless otherwise specifically defined by county or city ordinance.
- No fire if the wind speed exceeds 10 mph
- Water must be available at all times (enough to extinguish the fire).
- Shift commanders should use discretion if safety and or security concerns arise.

Minimum dress for offenders in the inipi is as follows: male offenders – boxers; female offenders or transgender as approved by clinical – gym shorts and undergarments must be worn at all times.

The minimum number of offender participants to conduct a sweat lodge ceremony is three. One participant must monitor the fire at all times. There will be a minimum of two offenders inside the inipi at all times when the inipi is in use during a sweat lodge ceremony.

E. **FEATHERS:**
According to federal law the only persons permitted to own raptor feathers are of American Indian ancestry who are registered with a tribe. Eagle feathers require a permit issued to the offender by the National Eagle Repository. Offenders in possession of other raptor feathers must have acquired them through a legitimate source verified by Faith and Citizen Programs.  Offenders are required to maintain all documentation allowing the possession of eagle/raptor feathers.  Family members may not send such items to offenders.  Raptor feathers may not be sold or purchased by anyone.

Found feathers are not acceptable property items.

F. **PRAYER TIES:**
Prayer ties are no larger than four inch by four inch cloth squares tied with light string. Ties are not to be taken back into the facility

G. **HAIR CUTTING:**
Offenders are permitted to cut their hair as a religious act of mourning.  Any offender wishing to mail out their cut hair to a family member must receive approval from the facility volunteer coordinator prior to receiving the hair cut.  DOC employees will oversee the process.

AR Form 800-01L (03/15/17)

## Umbrella Faith Groups List

**American Indian**
    All

**Christian, Protestant**
    Anglican
    Baptist
    Christian
    Church of Christ
    Quaker
    Presbyterian
    Pentecostal

**Islamic**
    Sunni
    Sh'ite
    Sufi

**Jewish**
    Orthodox
    Conservative
    Reform
    Kabbalah

**Messianic Believer**
    Biblical-Christianity
    Christian Identity
    Messianic Jewish
    Judeo-Christianity
    Hebrew Christian

**North Western European Paganism**
    Druid
    Wicca

Attachment L
Page 1 of 1

App 128

ADMINISTRATIVE REGULATION
IMPLEMENTATION/ADJUSTMENTS

AR Form 100-01A (04/15/08)

| CHAPTER | SUBJECT | AR # | EFFECTIVE |
|---------|---------|------|-----------|
| Offender Pastoral Care | Religious Programs, Services, Clergy, Faith Group Representatives, and Practices | 800-01 | 03/01/21 |

(FACILITY/WORK UNIT NAME) _____

WILL ACCEPT AND IMPLEMENT THE PROVISIONS OF THE ABOVE ADMINISTRATIVE REGULATION:

[ ] AS WRITTEN   [ ] NOT APPLICABLE   [ ] WITH THE FOLLOWING PROCEDURES TO ACCOMPLISH THE INTENT
OF THE AR

(SIGNED) _____   (DATE) _____
                        Administrative Head

Attachment M
Page 1 of 1

App 129

| ADMINISTRATIVE REGULATION | REGULATION NUMBER | PAGE NUMBER |
|---|---|---|
| | 800-01 | 1 OF 13 |

| | CHAPTER:   Offender Pastoral Care |
|---|---|
| COLORADO DEPARTMENT OF CORRECTIONS | SUBJECT:   Religious Programs, Services, Clergy, Faith Group Representatives, and Practices |

| RELATED STANDARDS:   ACA Standards: 2-CO-1G-02, 2-CO-5E-01, 2-CO-5E-02, 5-ACI-1G-06, 5-ACI-7F-01, 5-ACI-7F-02, 5-ACI-7F-03, 5-ACI-7F-04, 5-ACI-7F-05, 5-ACI-7F-06, 5-ACI-7F-07, 5-ACI-7F-08 | EFFECTIVE DATE:   April 1, 2022 |
|---|---|
| | SUPERSESSION:   03/01/21 |
| OPR:  DOP       REVIEW MONTH:  MARCH | Dean Williams Executive Director |

## I.   POLICY

***It is the policy of the Department of Corrections (DOC) to allow religious programs for offenders, including program coordination and supervision, opportunities to practice the requirements of one's faith, and use of community resources. [2-CO-5E-01]***

## II.   PURPOSE

It is the purpose of this administrative regulation (AR) to establish guidelines and consistent standards for the practice of recognized faith groups through Faith and Citizen Programs (FCP). It is also the purpose of this AR to ***ensure that offenders have the opportunity to participate in practices of their faith group, individually or corporately as authorized, [2-CO-5E-01] that are deemed essential by the faith judicatory of that faith without being subjected to coercion, harassment, or ridicule due to their religious affiliation. [2-CO-5E-02] This will only be limited by documentation showing threat to the safety of employees, contract workers, volunteers, offenders, or other persons involved in such activity, or that the activity itself disrupts the security or good order of the facility. [5-ACI-7F-05]*** Faith based programs/observances will be accommodated, within available time and space, unless an overriding compelling governmental interest exists.

## III.   DEFINITIONS

A.   Altar:   A structure or surface used as the focus for a religious ritual whose dimensions do not exceed those of an offender footlocker. Altars may be made of available material, (i.e., a stump or locker box for an outside ceremony; a chair, table, group property box, or cardboard box for an inside ceremony).

B.   Associate Chaplain: A faith group representative, approved by Faith and Citizen Programs, in consultation with the administrative head/designee, endorsed by an approved faith group organization, and upon completion of required training. Associate chaplains shall provide no more than 20 hours of service, per week.

C.   Compelling Governmental Interests: Overriding concerns driven by the DOC Mission Statement that must be maintained, regardless of other issues or requests. These include but are not limited to: safety, security, consistency, health, and discipline, using the least restrictive means of furthering those compelling governmental interests.

D.   Facility Access Check: A review of records collected and stored in the criminal record repository of the National Crime

| CHAPTER | SUBJECT | AR # | Page 2 |
|---|---|---|---|
| Offender Pastoral Care | Religious Programs, Services, Clergy, Faith Group Representatives, and Practices | 800-01 | EFFECTIVE 04/01/22 |

Information Center (NCIC), Colorado Crime Information System (CCIS), Colorado Department of Corrections offender visiting database, and, if necessary, the Colorado Integrated Criminal Justice Information Center (CICJIS).

E. <u>Faith and Citizen Programs Administrator:</u> A full-time, qualified DOC employee who is responsible for coordinating the DOC Faith and Citizen Program. *[2-CO-1G-02]*

F. <u>Faith Based Correspondence Course</u>: A faith based course, approved by Faith and Citizen Programs, conducted through the mail by a correspondence school. Approved courses are considered to be personal enrichment and not a formal academic pathway or post-secondary education.

G. <u>Faith Group Advisor</u>: A qualified individual approved by the Faith and Citizen Programs Administrator as having the necessary knowledge and recognized status in a specific faith group to provide expertise relevant to faith group practices, property items, dietary requirements, and programs.

H. <u>Faith Group Volunteer</u>: An individual who is approved by Faith and Citizen Programs and the facility administrative head/designee. This person is affiliated with a specific faith group and facilitates that faith group's program without compensation. *[2-CO-5E-01]*

I. <u>Faith Practices (Group):</u>  Occurs when two or more offenders are gathered to practice their DOC recognized faith in an approved, scheduled program/observance. Group number may not be required to meet essential faith practices

J. <u>Faith Practices (Personal):</u>  Occurs when offenders practice/observe their faith alone in their cell.

K. <u>Faith Property (Group):</u> Items defined by faith group tenets that are permitted within security constraints for use in group faith practices.

L. <u>Faith Property (Personal):</u> Items defined by faith group tenets that are permitted within security constraints for use in personal faith practices.

M. <u>Holy Day Observance</u>: A faith based observance, supported by faith tenet, which may or may not support accommodation of group gatherings. (See Attachment "E.")

  1. Allow up to two hours for group gatherings on non-work proscription days.
  2. Allow up to four hours for group gatherings on work proscription days.

N. <u>Outside Multi-Faith Area</u>: An outside area designated by the facility administrative head/designee for the purpose of accommodating open air meetings for offender programs. When not prohibited by city/county ordinance, the outside multi-faith area will contain only one fire pit which will be used by each group.

O. <u>Proselytizing</u>: Approaching someone with the intent to persuade that person to convert to another faith.

P. <u>Umbrella Faith Group:</u>  An approved grouping of faith groups that share similar practices and beliefs who worship at the same time, in the same location.

IV. <u>PROCEDURES</u>

A. All volunteer group programs will be coordinated and approved by the Faith and Citizen Programs Administrator. Program acceptance and facility approval will be by the facility administrative head/designee.

B. Offenders requesting amendments to currently recognized faith group practices or property items must complete and submit AR Form 800-01J,  Establishing New or Amending Current Faith Group Practices. The request will be reviewed and approved/denied by the Faith and Citizen Programs Administrator.

App 131

| CHAPTER | SUBJECT | AR # | Page 3 |
|---|---|---|---|
| Offender Pastoral Care | Religious Programs, Services, Clergy, Faith Group Representatives, and Practices | 800-01 | EFFECTIVE 04/01/22 |

C.  Offenders requesting to establish a new faith group must fully complete and submit AR Form 800-01J, Establishing New or Amending Current Faith Group Practices, to the facility volunteer coordinator for submission to the Faith and Citizen Programs. The request will be reviewed and approved/denied by the Faith and Citizen Programs Administrator and the deputy executive director or designee.

D.  Volunteers observed proselytizing will be suspended or terminated from volunteering at DOC facilities. Incidents of proselytizing will be documented on an incident report form and copied to Faith and Citizen Programs.

E.  ***The DOC will require that each facility provide space adequate for the conduct and administration of faith based programs. [2-CO-5E-01] [5-ACI-7F-07]*** Each administrative head or designee will designate areas within the facility in which faith based programs may be conducted.

    1.  Structures in multi-faith areas will be temporary.

    2.  Multi-faith areas will be returned to neutral upon the completion of a group meeting.

F.  ***The facility will make available non-offender clerical employees for confidential information. [5-ACI-7F-07]***

G.  In facilities with an average daily population of 500 or more offenders, there is a full-time chaplain (or multiple associate chaplains that can provide coverage equivalent to that of a full-time chaplain). In facilities with less than 500 offenders, adequate religious volunteer staffing is available. ***[5-ACI-7F-02]*** If resources are not available to provide for a full-time chaplain/associate chaplain, employees, and/or volunteers will make reasonable efforts to assure appropriate faith based programs and/or resources are available for all offenders.

H.  ***The Faith and Citizen Program will ensure that qualified chaplains have minimum qualifications as outlined and complete the following:***

    1.  ***Endorsement by the appropriate faith group certifying body in the community which is supporting the affiliated candidate as an institutional chaplain. The chaplain ensures equal status and protections for all religions. [5-ACI-7F-01]***

    2.  Provide supporting documents, certifications, diplomas and licenses related to pastoral training, education or the equivalent.  Formal ordination is preferred but not required.

    3.  Successful completion of the DOC pre-employment process and designated portion of the DOC basic training academy within the first six months after acceptance.

    4.  Sign AR Form 800-01C, the Memorandum of Agreement with the DOC outlining their responsibilities and authority and then will work under the direct supervision of Faith and Citizen Programs, in consultation with the administrative head/designee.

I.  ***The Faith and Citizen Programs will be responsible for screening (AR Form 800-01A, Qualifications for Chaplains/Candidate Protocol) and overall supervision of chaplains. [2-CO-5E-02]*** On-site supervision will be provided collaboratively between the administrative head/designee and the Faith and Citizen Programs. NOTE: Collaborative supervision will not impinge on the administrative head's rights and responsibilities under AR 300-27, *Access and Control.*

    1.  Faith and Citizen Programs will maintain a central personnel file.

    2.  The respective Faith and Citizen Programs Regional coordinator, in collaboration with the administrative head/designee, will document and forward all pending or corrective actions to Faith and Citizen Programs. The

| CHAPTER | SUBJECT | AR # | Page 4 |
|---|---|---|---|
| Offender Pastoral Care | Religious Programs, Services, Clergy, Faith Group Representatives, and Practices | 800-01 | EFFECTIVE 04/01/22 |

Faith and Citizen Programs Administrator, along with the administrative head or designee, will be responsible to administer these actions.

3. ***The chaplain/associate chaplain will:***

    a. Successfully complete the facility access check conducted by Faith and Citizen Programs.

    b. ***Sign a memorandum of agreement (AR Form 800-01C, Chaplain Memorandum of Agreement) with the DOC outlining his/her responsibilities and authority, and will work under the direct supervision of Faith and Citizen Programs, in consultation with the administrative head or designee. [2-CO-5E-02]***

    c. Be subject to the provisions of all ARs.

    d. Successfully complete the designated portion of Basic Training Academy and/or the Basic Volunteer Training as outlined on AR Form 800-01A, Qualifications for Chaplains/Candidate Protocol.

    e. Submit monthly calendars, activity reports, and time sheets to the Faith and Citizen Programs Administrator, the respective regional coordinator, and the administrative head.

    f. When designated by the administrative head/designee, in accordance with AR 850-10, *Emergency Notification* relay information to emergency notification/next of kin in cases of offender injury, serious illness, or death.

    g. When designated by the administrative head/designee, notify offenders in cases of serious family illness, accident, or death, when verified, in a timely manner. (See AR 850-10, *Emergency Notification*.)

    h. ***Develop and maintain close relationships with community religious resources. [2-CO-5E-01] [5-ACI-7F-04]***

    i. ***Have physical access to all areas of the institution to minister to offenders and employees and contract workers. [2-CO-5E-01]***

    j. ***Be available to all offenders, regardless of faith persuasion or affiliation, and will serve without prejudice. [2-CO-5E-02]***

J. ***When a religious representative of an offender's faith is not represented through chaplaincy employees, contract workers, or volunteers, the chaplain or designated employee assists the offender in contacting a person who has the appropriate credential from the faith judicatory. That person ministers to the offender under the supervision of the chaplain [5-ACI-7F-06] or visiting room employees. These visits will be consistent with the AR 300-01, Offender Visiting Program. [2-CO-5E-01]***

K. ***The Faith and Citizen Programs, in consultation with the administrative head/designee and the chaplain, plans, directs, and coordinates all aspects of faith based programs, including approval and training of both lay and clergy volunteers from faiths represented by the offender population. [2-CO-5E-02] [5-ACI-7F-03]***

L. ***The Faith and Citizen Programs will strive to provide for adequate faith group representation through trained qualified chaplains, faith group representatives, and volunteers. [2-CO-5E-01]***

M. ***The Faith and Citizen Programs, the chaplain, and the administrative head or designee, develop and maintain communication with faith communities and approve donations of equipment or materials for use in faith based programs. [2-CO-5E-01] [5-ACI-7F-08]***

| CHAPTER | SUBJECT | AR # | Page 5 |
|---|---|---|---|
| Offender Pastoral Care | Religious Programs, Services, Clergy, Faith Group Representatives, and Practices | 800-01 | EFFECTIVE 04/01/22 |

1. The DOC will not be responsible for the financial procurement of faith based property as prohibited by the Constitution of the State of Colorado.

2. Approved individuals/organizations may donate items only through Faith and Citizen Programs, utilizing AR Form 800-01I, Donation Request/Chain of Custody Forms.

3. Once a donation is made, it becomes the property of the DOC. Distribution will be determined by Faith and Citizen Programs and based on statewide needs.

4. Donations of funds to the faith group trust fund accounts will comply with AR 800-02, *Religious Trust Fund Accounts*.

5. Offenders may not donate their personal faith property to a faith group, umbrella faith group or other offenders.

6. <u>General Donation Process</u>:

   a. AR Form 800-01I, Donation Request/Chain of Custody Forms will be utilized for all donations.

   b. Approval by the Faith and Citizen Programs must occur *before* a facility takes custody of the item(s).

   c. With the exception of books, when an offender requests a donated item, they must be listed as that faith to receive the item. Only one donated item will be issued each quarter based on item availability.

   d. A property donation request/approval form will be filled out by a faith specific affiliated offender.

      1) The facility volunteer coordinator will ensure the request is valid and will sign off on it.

      2) The facility volunteer coordinator will forward the request to Faith and Citizen Programs. Faith and Citizen Programs will approve or deny all requests.

      3) Facility volunteer coordinator is responsible to ensure the item is placed on the offender property list.

   e. If the facility is approved to receive donated items directly, the facility volunteer coordinator will complete AR Form 800-01I, Donation Request/Chain of Custody Forms Part II, and forward it to the Faith and Citizen Programs.

7. Offenders may not solicit and/or receive donations of faith items for themselves, or for specific faith groups or umbrella faith groups with the exception of books and literature from religious organizations for individual use.

8. Individual offenders may not purchase group items for a faith group or umbrella faith group.

9. If religious trust funds are used to purchase such items as musical, religious, chapel equipment or educational faith specific literature that is not listed as approved group property, it will be done with the understanding that such items are not considered legitimate faith group needs and will become the property of the facility for use by any faith group. All items must be approved by the administrative head or designee in advance.

N. ***The facility administrative head/designee will publish a schedule of all faith group or umbrella faith group services and programs in the facility where they are assigned. This schedule will be posted in areas of the facility that offenders have access. [2-CO-5E-01] [5-ACI-1G-06]***

O. ***The DOC will:***

| CHAPTER | SUBJECT | AR # | Page 6 |
|---|---|---|---|
| Offender Pastoral Care | Religious Programs, Services, Clergy, Faith Group Representatives, and Practices | 800-01 | EFFECTIVE 04/01/22 |

1. ***Allow an offender the opportunity to declare a faith group affiliation. [2-CO-5E-02]*** Offenders will not be required to document their ethnicity in order to declare a faith group affiliation.

2. ***Permit offenders to change faith group affiliation once, annually. [2-CO-5E-02]*** Faith and Citizen Programs recognizes an offender is eligible for a faith change 12 months after the approval of his/her current faith affiliation selection. (Refer to AR Form 800-01F, Request for Change of Faith Group Affiliation)  A change of faith exception is allowed for offenders within 12 months of initial diagnostic classification.

3. ***Provide appropriate religious diets, [2-CO-5E-01]*** in accordance with AR 1550-15, *Medical and Religious Diets.*

4. ***Ensure that offenders have the opportunity to participate in practices deemed essential by the faith judicatory of that faith group, individually or corporately, as authorized. This will be limited only by documentation showing threat to the safety of employees, contract workers, volunteers, offenders, or other persons involved in such activity, or that the activity itself disrupts the security or good order of the facility. [2-CO-5E-01] [5-ACI-7F-05]***

   a. In order to ensure adequate meeting space and volunteer and/or employee coverage for group faith practice, certain faith groups will be combined into umbrella faith groups. When multiple faith groups and/or umbrella faith groups share similar gatherings the facility may conduct a large volunteer led communal event to accommodate several groups.  (i.e. Easter, Christmas, etc.)

   b. Offenders will be permitted to gather as a group when a volunteer is present to conduct the program.

      1) When a volunteer is present, any offender, regardless of their faith group affiliation, can attend any group gathering, except the American Indian pipe ceremony (refer to AR Form 800-01K, American Indian Group Practices).

      2) The number of offenders allowed to gather to practice their faith in a group setting will be limited based on the classification of the offenders and whether or not employees and/or volunteers are supervising the event. The offender to volunteer ratios listed below do not apply if there is direct DOC employee supervision. If only volunteer(s) are providing supervision, limitations will be as follows:

| Group Gathering | MCC, MCU/HR, MCU, CCTU | Close | Medium | Minimum Restricted | Minimum |
|---|---|---|---|---|---|
| With Volunteer | None | 12:1  * | 20:1 * | 30:1 * | 35:1 * |

   *Ratios are subject to the number of volunteers in attendance but facilities will designate in policy a maximum number of offenders allowed to gather under volunteer supervision.

   c. Volunteer presence will not be required for specified group gathering days as outlined in AR Form 800-01E, Faith Group Overview.  Group gatherings should not be allowed outside of the identified gathering days for any faith group without a volunteer present.

      1) When a volunteer is not present, only offenders listed on PCDCIS as affiliated to that faith group or umbrella faith group can attend the group gathering.  When a volunteer is not present the group gathering limits will be as follows;

| Group Gathering | MCC,  MCU/HR, MCU, CCTU | Close | Medium | Minimum Restricted | Minimum |
|---|---|---|---|---|---|
| Without Volunteer | None ** | None * | 15 | 20 | 25 |

   *Level 4 facilities will have employee supervision to monitor the group gathering.

| CHAPTER | SUBJECT | AR # | Page 7 |
|---|---|---|---|
| Offender Pastoral Care | Religious Programs, Services, Clergy, Faith Group Representatives, and Practices | 800-01 | EFFECTIVE 04/01/22 |

\*\*Restrictive Housing status offenders will not be allowed to attend any group gathering.

d.   Level 5 facilities which houses multi-custody offenders (SCF, DWCF, DRDC, CCF, CSP) will specify gathering limits in facility policy as designated by the administrative head. Facilities can further restrict gathering size based on room capacities, number of volunteers present, supervision available, time and space, and compelling government interest.

e.   Large special events, seminars, and gatherings other than scheduled weekly services will be supervised utilizing a combination of employees and volunteers as determined by the administrative head.

f.   Approved offenders will be allowed to act in a peer support position for spiritual leadership, but will not have supervision, or authority over other offenders. In the absence of a volunteer or faith advisor, an offender (on a rotating basis) may conduct approved holy day observances.

g.   Essential practices that are required of an individual and cannot be accomplished in the confines of an offender's cell (Shabbat, Havdalah or Chanukah candle lighting) will be treated similarly to other group gatherings as governed by this policy, facility policy and the facility security level. Group gatherings may be limited for safety and security reasons but one offender may be considered a group to conduct essential practices.

1)   Offenders will be allowed to access and light wax candles for essential practices in approved holy day observances consistent with the reasonable safety and security needs of the facility.

2)   Alternate service accommodations will be offered if lighting a wax candle for an essential practice cannot be accommodated at a specific time due to a compelling governmental interest. Alternate service accommodations will be prioritized as (1) an alternate wax candle lighting service time (2) alternatives to wax candles. An incident report will be completed to document when an alternate service is conducted.

h.   The appointing authority will retain the right to limit participation in programs. This will be based upon documentation that an individual has shown a threat to the safety of employees, contract workers, volunteers, offenders, or others persons involved in such activity; or the individual's conduct disrupts the security or good order of the facility, based upon facility needs or documentation of a compelling governmental interest.

i.   All group gatherings may be subject to audio and/or video recording at any time for security purposes.

5.   ***Permit holy days as documented by faith tenet, within available time, space, and security resources. [2-CO-5E-01]*** (For currently approved holy days refer to AR Form 800-01E, Faith Group Overview) With the exception of Passover and Ramadan, the following protocol will be observed:

a.   At least 30 calendar days prior to an approved holy day, fast day, or work proscription day observance, the administrative head/designee will post accessible notification for the offender population.

b.   Fifteen calendar days prior to the observance, the administrative head or designee will generate a list of participants, in accordance with stated limitations, and appropriate memorandums to the facility's management team, housing, security, offender work assignment supervisor, and other affected areas. The sign-up for Passover/Ramadan will be facilitated by the Food Service and Laundry Program administrator or designee.

c.   Once a list of participants is generated, only new arrivals to the facility who are currently affiliated with the affected faith group will be eligible to sign up.  Modifications to the approved list will be subject to review by the administrative head/designee on a case by case basis.

App 136

| CHAPTER | SUBJECT | AR # | Page 8 |
|---------|---------|------|--------|
| Offender Pastoral Care | Religious Programs, Services, Clergy, Faith Group Representatives, and Practices | 800-01 | EFFECTIVE 04/01/22 |

d. ***Offenders of the same faith group or umbrella faith group assigned to a facility or custody level should be permitted to gather for holy day observances within allowable safety and security policies. [2-CO-5E-01].***

e. Offenders involved in any approved program that requires participation without shoes may remove their shoes while in a secure, supervised area (e.g., sweat lodge, Muslim Jumah service, Buddhist service, Yoga), in accordance with AR 850-11, *Offender Clothing and Bedding Issue, Dress Code, Hygiene, and Grooming*.

f. Food items purchased or provided from outside sources for holy day observances will only be allowed if one of the following applies:

    1) An approved outside volunteer(s) provides food item(s), in accordance with AR 300-43, *Authorization to Provide Food Items for Offenders,* and is present to conduct the observance.

    2) Where security permits and when requested in advance of the observance, offenders will be allowed to purchase and bring unopened canteen food items to holy day observances. All food must be consumed during the observance; remaining food items will be destroyed.

g. If a mandated service cannot be accommodated due to a compelling governmental interest on the specific date every effort should be made to schedule it within 7 days before or after the mandated date.

h. Fire ban information

    1) Fires in the outside faith areas are permitted when the fire ban stage defined by county or city ordinance allows fires in developed areas.

    2) No fire if the wind speed exceeds 10 mph.

    3) Water must be available at all times (enough to extinguish the fire).

    4) Shift Commanders should use discretion if safety and or security concerns arise.

6. Permit Work Proscription Days: ***Offenders who are affiliated to the faith groups that require work proscription days will be allowed to miss work, [2-CO-5E-01]*** or programs, without pay, for those days (per AR Form 800-01E, Faith Group Overview) Offenders are responsible to inform their work/program supervisor in advance of any schedule conflicts with their mandatory faith gathering.

7. Staff will conduct documented security inspections of the program area before and after authorized faith programs and will show professional respect for faith group program areas and property.

8. Permit offenders to select one faith medallion **or** a medicine bag.

a. Medallion: Size will be a maximum diameter of 2 ½", made of pressed or stamped metal. The overall design will be circular (solid) and not cut-out to create the design. The medallion will be worn on an approved lightweight chain.

b. Medicine Bag: Size will be a maximum of 2 ½" in length, made of leather, may not be embellished after purchase, and will suspend from a leather strap.

c. Medallions/medicine bags must be worn under clothing or carried in a pocket.

d. The length of chain/leather strap may be 18", 20", or 24".

| CHAPTER | SUBJECT | AR # | Page 9 |
|---|---|---|---|
| Offender Pastoral Care | Religious Programs, Services, Clergy, Faith Group Representatives, and Practices | 800-01 | EFFECTIVE 04/01/22 |

e.   Prayer beads and rosaries must be worn under clothing or carried in a pocket.

P.   Searches of faith property will be conducted using visual/physical inspections, in accordance with AR 300-06, *Searches and Contraband Control*.  Searches of personal faith property may be conducted with or without the offender present. While searching personal faith property, employees will treat said property with professional respect. Upon request, all faith property will be opened and presented for inspection. Refusal will result in confiscation and subsequent inspection.

Q.   The DOC will permit group faith property, as identified in AR Form 800-01E, Faith Group Overview.  Some group faith property will be restricted based on facility security level.  Homemade, found, or altered items are not allowed and will be deemed as contraband. Group faith property will:

1.   Be approved by the administrative head/designee so that a canteen order,  a requisition or donation request form (AR Form 800-01I, Donation Request/Chain of Custody Forms) can be submitted.

   a.   ***Group faith property is available through Canteen, donation or an approved vendor. [2-CO-5E-01]*** A list of DOC recognized vendors will be maintained by Faith and Citizen Programs and only the items listed on AR Form 800-01E, Faith Group Overview may be purchased.  Stamps are not an approved form of legal tender to purchase faith group items**.**

   b.   The facility volunteer coordinator or designee, will approve all outside purchases to ensure the items meet all appropriate security guidelines.  All items purchased from an outside vendor will be consistent with Canteen items in color, size, shape, adornment, etc.  Outside purchases will be made available when the approved items listed on Attachment E are not available from Canteen or the donation process. If an approved item is not available from an approved vendor, it may be purchased from an approved source of supply. Books, literature, and other publications may be purchased from an approved source of supply, in accordance with AR 300-38, *Offender Mail* and AR 850-06, *Offender Property*.

2.   Be stored in a secure designated location for use during faith group related programs only. Items must fit into an area the size of a foot locker. Exceptions must be requested, in writing, by the offender faith group. Approval or denial must be in writing and maintained by the offender faith group. Approval or denial will be based on space available and facility security.  Faith group items, including books, will not be removed from the area for personal use.

3.   Have an inventory list, issued by the administrative head/designee, on or in the storage area/box. Any items not on the inventory list will be considered contraband and will be confiscated. The inventory list will be typed and dated.

4.   Be reviewed for appropriateness at each security level, and be subject to approval by the administrative head/designee, in consultation with the Faith and Citizen Programs Administrator. If approved faith property is restricted, a report will be submitted annually to Faith and Citizen Programs detailing the compelling governmental interests for the restriction and if a less restrictive alternative would be appropriate.

5.   Faith group items/property, obtained from approved authorized sources, should be related to items needed for group worship or celebration and may be stored with faith group property.  Educational and other items not related to worship or celebration will be maintained in the chapel library consistent with other chapel property. (Amount specific to facility space availability. No personal faith items will be stored with group property.)

R.   ***DOC will permit personal faith property, [2-CO-5E-01]*** as identified in AR Form 800-01G, Allowable Personal Faith Group Property.  Some personal faith property items will be restricted if the offender is removed from general population status (e.g. Restrictive Housing, MCU, special housing). Homemade, found, or altered items are not allowed and will be deemed as contraband. Personal faith property items will:

1.   Conform to AR 850-06, *Offender Property*.

App 138

| CHAPTER | SUBJECT | AR # | Page 10 |
|---|---|---|---|
| Offender Pastoral Care | Religious Programs, Services, Clergy, Faith Group Representatives, and Practices | 800-01 | EFFECTIVE 04/01/22 |

2. ***Personal faith property is available through Canteen, donation or an approved vendor. [2-CO-5E-01]*** A list of DOC recognized vendors will be maintained by Faith and Citizen Programs and only the items listed on AR Form 800-01G, Allowable Personal Faith Group Property may be purchased.  Stamps are not an approved form of legal tender to purchase faith items*.*

3. The facility volunteer coordinator or designee, will approve all outside purchases to ensure the items meet all appropriate security guidelines.  All items purchased from an outside vendor will be consistent with Canteen items in color, size, shape, adornment, etc.  Outside purchases will be made available when the approved items listed on AR Form 800-01G, Allowable Personal Faith Group Property are not available from the Canteen. If an approved item is not available from an approved vendor, it may be purchased from an approved source of supply. Books, literature, and other publications may be purchased from an approved source of supply, in accordance with AR 300-38, *Offender Mail* and AR 850-06, *Offender Property*.

4. The offender will be brought into property compliance pursuant to AR 850-06, *Offender Property*.

5. Be stored in the offender's cell.  Personal faith items will be stored in a clear plastic box available from canteen or a clear plastic or a paper bag issued by the facility. This container will be clearly marked "faith property items."  The items will be included on the offender property list (see AR 850-06, *Offender Property*).

6. Be limited to that which fits within the faith property container.  Exceptions: Approved personal faith property items that are too large in size, including prayer rug/meditation cushion/etc., which must be stored on, under, or next to faith property container. Additional personal faith item storage exceptions must be requested, in writing, by the offender. Approval or denial must be in writing and maintained by the offender. Approval or denial will be based on space available and facility security.  Personal tefillin to be stored in living unit control center.

7. Be worn, displayed, or used only in the offender's cell, or during authorized faith group programs. When items are not in use, they must be stored in the faith items box. Personal faith property will not be displayed or used in general population.

   **EXCEPTIONS:**

   a.  Medicine bags, medallions, and the "Tallit Katan" may be worn under the clothing, but will not be displayed in the general population.

   b.  Prayer beads and rosaries may be carried in a pocket.

8. Religious head wear may be worn while outside of the cell and religious services. Offenders will not be required to wear a baseball cap or a stocking cap over their religious headwear.

9. Be reviewed for appropriateness at each security level, and be subject to approval by the administrative head/designee, in consultation with the Faith and Citizen Programs Administrator. If approved personal faith property is restricted, a report will be submitted annually to Faith and Citizen Programs detailing the compelling governmental interests for the restriction and if a less restrictive alternative would be appropriate.

10. Jewish, Muslim and Messianic Believer offenders, as mandated by faith tenet, will be allowed to wear the "Yarmulke" (skull cap), the kufi (Islamic religious headwear), and the "Tallit Katan" (worn under the clothing), while being transported to locations outside the facility.

11. Battery powered tea lights are authorized personal property and may be acquired in accordance with this policy.

App 139

| CHAPTER | SUBJECT | AR # | Page 11 |
|---|---|---|---|
| Offender Pastoral Care | Religious Programs, Services, Clergy, Faith Group Representatives, and Practices | 800-01 | EFFECTIVE 04/01/22 |

S.   Faith group correspondence studies will be reviewed and approved by Faith and Citizen Programs and the materials must follow the guidelines and limits provided in ARs 300-26, *Publications*, 300-38, *Offender Mail* and 850-06, *Offender Property*.  All courses of studies are considered to be for the purpose of personal enrichment and all must comply with the following:

1.   Course materials must be presented in an organized format and must contain an external testing component.

2.   The mailing of the course materials must be sent from the initiated author, organization or publisher with proper mailing labels and not be derived from a private citizen's mailing.

3.   It is the responsibility of the participant to cover any necessary cost associated with course materials and postage.

4.   All courses must be listed on the "Approved Correspondence Course" list which is available for each facility and updated quarterly.

5.   Offenders who wish to engage in a new (presently unlisted) faith related correspondence course/study must work co-operatively with the facility chaplain or facility volunteer coordinator.  It is the responsibility of the offender to obtain a complete and accurate list of materials, books and costs (including tuition costs) associated with each course.

a.   The information will be forward to the Faith and Citizens Programs through the facility volunteer coordinator

b.   The Faith and Citizens Programs will ensure the course meets the intended guidelines and will make determination on final approval.

c.   Faith and Citizens Programs will inform the requesting facility as to the approval and listing on the "Approved List".  The facility will inform the requesting offender.

6.   All materials associated with a correspondence course are subject to facility property limits.

7.   Offenders will be familiar with facility requirements and approval processes prior to requesting any correspondence course.

8.   If the offender is expecting a degree or college credit from any correspondence courses or study, they should refer to the facility education department and AR 500-01, *Offender Education System.*

9.   The presence of an organization or ministry on the approved list does not indicate that all materials, books and other items are automatically approved materials. A facility has the final authority to determine the appropriateness of material allowed into its secure environment. Written documentation should be maintained as to the justification for disallowing any materials.

10.   Organizations, ministries or publishers may initiate a request (independent of an offender's request) to include their courses on the "Approved Correspondence" list by notifying Faith and Citizens Programs.

11.   A periodic verification of contact information for all ministries and organizations on the approved list will be conducted and documented.

V.   RESPONSIBILITY

| CHAPTER | SUBJECT | AR # | Page 12 |
|---------|---------|------|---------|
| Offender Pastoral Care | Religious Programs, Services, Clergy, Faith Group Representatives, and Practices | 800-01 | EFFECTIVE 04/01/22 |

A.   The Faith and Citizen Programs Administrator is responsible for the coordination of all DOC religious programs. Administrative heads/designees and the facility chaplains(s) will ensure the initiation, coordination, and supervision of all faith group services and programs are carried out within the guidelines of Faith and Citizen Programs. *[2-CO-5E-02]*

B.   The Food Service and Laundry Program administrator will be responsible for review of faith group related diet issues, in accordance with AR 1550-15, *Medical and Religious Diets.*

C.   The director of Prisons or designee will ensure that this AR is reviewed annually and updated as necessary.

VI.   <u>AUTHORITY</u>

A.   First Amendment of the Constitution of the United States: "Congress shall make no law respecting the establishment of religion, or prohibiting the free exercise thereof …"
B.   The Religious Land Use and Institutional Persons Act of 2000. (RLUIPA)
C.   Cruz vs. Beto, 405 U.S. 319 (1972):  Prisoners must be afforded "a reasonable opportunity of pursuing their faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts."
D.   C.R.S. 17-42-101. Freedom of worship.

VII.   <u>HISTORY</u>

March 1, 2021
April 1, 2020
April 1, 2019
March 15, 2018
March 15, 2017
January 1, 2015
January 1, 2014
March 15, 2011
March 15, 2010
January 15, 2009
December 1, 2008
January 15, 2008
June 1, 2007
March 15, 2007
March 15, 2006

ATTACHMENTS:

A.   AR Form 800-01A, Qualifications for Chaplains/Candidate Protocol
B.   AR Form 800-01B, Facility Monthly Chaplain's Report
C.   AR Form 800-01C, Chaplain Memorandum of Agreement
D.   AR Form 800-01D, Faith Group Endorsement.
E.   AR Form 800-01E, Faith Group Overview
F.   AR Form 800-01F, Request for Change of Faith Group Affiliation
G.   AR Form 800-01G, Allowable Personal Faith Group Property
H.   AR Form 800-01H, Faith Property Purchase Request Form – DOC Approved Venders
I.   AR Form 800-01I, Donation Request/Chain of Custody Forms
J.   AR Form 800-01J, Establishing New or Amending Current Faith Group Practices
K.   AR Form 800-01K, American Indian Group Practices

App 141

| CHAPTER | SUBJECT | AR # | Page 13 |
|---|---|---|---|
| Offender Pastoral Care | Religious Programs, Services, Clergy, Faith Group Representatives, and Practices | 800-01 | EFFECTIVE 04/01/22 |

L.  AR Form 800-01L, Umbrella Faith Groups

M. AR Form 100-01A, Administrative Regulation Implementation/Adjustments

Qualifications for Chaplains

**CHAPLAIN:**

A.  Faith group representative approved by Faith and Citizen Programs to provide chaplaincy services, 21 or more hours per week, to all offenders, regardless of faith affiliation and without prejudice, at no cost to the Colorado Department of Corrections.

   1. Endorsement by the appropriate faith group certifying body in the community which is supporting the affiliated candidate as an institutional chaplain. The chaplain ensures equal status and protections for all religions.

   2. Provide supporting documents, certifications, diplomas and licenses related to pastoral training, education or the equivalent. Formal ordination is preferred but not required.

   3. Successful in completing the facility access check conducted by Faith and Citizen Programs and the designated portion of the basic training academy within the first six months after acceptance.

   4. Sign a memorandum of agreement (*AR Form 800-01C, Chaplain Memorandum of Agreement*") with the DOC outlining their responsibilities and authority, and will work under the direct supervision of Faith and Citizen Programs, in consultation with the administrative head/designee.

B.  **Must meet the requirements defined in administrative regulation 900-01, *Volunteer Programs.***

**ASSOCIATE CHAPLAIN:**

A.  Faith group representative approved by Faith and Citizen Programs to provide chaplaincy services, up to 20 hours per week, to all offenders, regardless of faith affiliation and without prejudice, at no cost to the Colorado Department of Corrections.

   1. Endorsement by the appropriate faith group certifying body in the community which is supporting the affiliated candidate as an institutional chaplain. The chaplain ensures equal status and protections for all religions.

   2. Provide supporting documents, certifications, diplomas and licenses related to pastoral training, education or the equivalent. Formal ordination is preferred but not required.

   3. Successful in completing the facility access check conducted by Faith and Citizen Programs and the Basic Volunteer Training class.

   4. Sign a memorandum of agreement (*AR Form 800-01C, Chaplain Memorandum of Agreement*") with the DOC outlining their responsibilities and authority, and will work under the direct supervision of Faith and Citizen Programs, in consultation with the administrative head/designee.

B.  **Must meet the requirements defined in administrative regulation 900-01, *Volunteer Programs*.**

Attachment A
Page 1 of 2

## Chaplain Candidate Protocol

A.  Candidates for the position of chaplain/associate chaplain must meet the criteria of a volunteer, as defined in AR 900-01, *Volunteer Programs*, prior to being considered as a candidate.

B.  Candidates for the position of chaplain/associate chaplain must provide the following documentation to Faith and Citizen Programs before being considered for candidacy:

1.  Appropriately credentialed (ordination, license, commission) by a governing faith body, local/national, and/or endorsed to function in a prison chaplaincy capacity (refer to *AR Form 800-01D, Faith Group Endorsement*).

2.  A signed memorandum of agreement. (*AR Form 800-01C, Chaplain Memorandum of Agreement*).

C.  Pre-Assignment Interview:

1.  The chaplain/associate chaplain candidate will schedule a meeting with the Faith and Citizen Programs Administrator and the appropriate regional coordinator. They will bring the above referenced documentation for a screening interview.

2.  Training scheduling and requirements will be addressed.

D.  The Faith and Citizen Programs Administrator and the appropriate regional coordinator will:

1.  Meet with the administrative head/designee to discuss possibility of the candidate.

2.  Upon approval of the candidate, by the facility administrative head, and the successful completion of employment requirements, schedule appropriate training.

Attachment A
Page 2 of 2

AR Form 800-01B (04/01/19)

## Faith and Citizen Programs Facility Monthly Chaplain Report

| Chaplain Name: _____ | Mo./Yr. Report: _____ of _____ | Facility: _____ |

| Hrs. in Facility | Hrs. Worked Outside Facility | Count of Request for Interview (Kites) answered | Training Hrs.<br><br>In Facility:<br>Outside Facility : |
|---|---|---|---|
| | | | |

1.  Please list the programs, classes, religious services that you have facilitated or coordinated this month. Please comment on any challenges, concerns or issues related to them.

2.  Did you facilitate/coordinate a holy day observance? Yes _____ No _____ If yes, describe the observance, offender participation, etc.

3.  Please approximate the number of "one to one" sessions with offenders (scheduled or impromptu). Examples: face to face discussions on grief and loss, struggle with incarceration, pastoral care, etc.

4.  Please detail your involvement in any new programs or changes to existing programs.

5.  Did you attend, observe, or facilitate any "special events" this month? Yes ____ No ____ If yes, please detail the event and include any observations.

6.  Number of emergency notifications you administered. Include relevant details or issues.

7.  Did you provide any services to DOC employees? Yes ____ No ____

8.  What areas of the facility did you access in order to provide services to either offenders or DOC employees?

9.  Please detail any other items of concern for the month.

_____

Chaplain signature                                    Date

_____

Volunteer Coordinator Signature                      Date

Original:  Faith and Citizen Programs
Copy:  FCP Regional Coordinator

Attachment B
Page 1 of 1

App 145

## Memorandum of Agreement

This is an agreement between the Colorado Department of Corrections, hereinafter referred to as the "Department of Corrections";

**AND**

Chaplain/Associate Chaplain _____

Organization _____

Address _____

WHEREAS, the Department of Corrections operates and controls the state corrections facilities located throughout the borders of the state of Colorado, and

WHEREAS, as a part of the duties and responsibilities associated with operation of said facilities the Department of Corrections is responsible to make chaplaincy services available to the offenders in said facilities.

NOW, THEREFORE, the parties do agree as follows:

I.   DEPARTMENT OF CORRECTIONS.

   A.   Duties and Responsibilities

   1.   Provide professional, pastoral care services for offenders, and DOC employees when requested, exercising pluralistic sensitivity. These services are to include, but are not limited to:

      a.   spiritual counseling
      b.   crisis intervention
      c.   grief counseling
      d.   performance of worship and study services appropriate to the individual chaplain's faith expertise
      e.   notification of offenders in times of family medical emergency or death
      f.   as directed by the facility administrative head or designee, notification of offender families in times of offender sickness or death
      g.   ***maintain availability of faith based reading materials for offenders [2-CO-5E-01]***, where appropriate.

   2.   Assist in planning, developing, and implementing chaplain and religious programs.

   3.   Recruit and coordinate individuals to participate in these programs.

   4.   Interface with the community resources recruited to participate in these religious programs.

   5.   Compile and maintain records and documentation of chaplaincy activity; make reports as required by the facility administrative head/designee and the Department of Corrections.

   6.   Maintain relationships with resources in the faith community and the Department of Corrections to enable the referral of current and post-release offenders to resources, where available, that are appropriate to their individual situation and need.

   7.   As appropriate, maintain professional contact with post-release offenders, with prior written approval of the Faith and Citizen Programs Administrator and the facility administrative head where assigned.

Attachment C
Page 1 of 2

App 146

B.   Support Requirements

1.   ***Appropriate office space, equipment, and office supplies to enable the chaplain to function within the facility. [5-ACI-7F-07]***

2.   A telephone with long distance access and Internet access, where security permits.

C.   Stipulations and Recognitions

1.   Chaplains must provide appropriate credentials, per AR 800-01.

2.   Chaplains must successfully complete Basic Training at the Colorado Department of Corrections Training Academy. Associate chaplains must complete the designated portions of the Training Academy, within six months after acceptance.

3.   Chaplains will be recognized as DOC employees in accordance with, and as defined by, AR 1450-01, *Code of Conduct*.

4.   Understanding that chaplains are not state supported, the Department of Corrections recognizes that a chaplain's absence from the facility for the purpose of raising financial support is necessary for the continued provision of chaplaincy services.

5.   Chaplains will participate in appropriate Department of Corrections and facility training.

6.   Security is the paramount concern of the Department of Corrections and is the primary factor in the planning and implementation of any program or service provided within the correctional facility. It is the desire of the Department of Corrections to give chaplains the greatest possible latitude in the implementation and conduct of chaplaincy programs and services, within the security requirements of each facility.

II.   CHAPLAIN/ASSOCIATE CHAPLAIN

A.   Duties and Responsibilities

1.   Provide chaplaincy services that fully meet the requirements, established in paragraph I.A. above.

2.   ***Immediately report any information related to criminal activity, or misconduct, to their appointing authority, even if such information was received during pastoral counseling. [2-CO-5E-02]***

B.   Stipulations and Recognitions

1.   On occasion a situation or circumstance may arise requiring that disciplinary action be taken with regard to a chaplain. Once the specifics have been determined, the administrative head/designee, in conjunction with Faith and Citizen Programs' representative, is responsible for taking the appropriate disciplinary action.

2.   The very nature of chaplaincy ministry requires that a chaplain do what needs to be done to meet the needs. The chaplain will work with the Department of Corrections and each facility administrative head to strike the balance that allows the chaplain to meet the needs of the ministry both within the facility and within the community.

FOR THE COLORADO DEPARTMENT OF CORRECTIONS:

_____          _____
Signature                                                                            Date
Faith and Citizen Programs Administrator

CHAPLAIN:

_____          _____
Signature                                                                            Date

Attachment C
Page 2 of 2

App 147

AR Form 800-01D (04/01/22)

## Faith Group Endorsement

RETURN TO: Colorado Department of Corrections
1250 Academy Park Loop
Colorado Springs, Colorado 80910
ATTN: Faith and Citizen Programs Administrator

**(Chaplain)** _____ is a member of our faith group, and has our support as an institutional chaplain to serve in the Colorado Department of Corrections.

| | |
|---|---|
| Signature of Authorized Agent | Date |
| Print Authorized Agent Name | Position |
| Faith Group Name | Telephone |

Official Mailing Address

Attachment D
Page 1 of 1

App 148

| Colorado Department of Corrections | | | | AR Form 800-01E (04/01/22) |
|---|---|---|---|---|
| **Faith Groups – Diet and Holy Days** | | | | |
| **FAITH GROUP** | **DIET/FAST DAYS** | **HOLY DAYS** | **GROUP GATHERINGS** | **COMMUNAL WORSHIP PROPERTY** |
| Agnostic | No special dietary standard exists | None | None | None |
| **American Indian/Alaska Native** | No special dietary standard exists | **Work Proscription**<br><br>Sweat lodge ceremonies – Offenders may work prior to and after ceremony<br>**Non-Work Proscription**<br><br>None | **No volunteer presence is required to allow a group gathering.**<br><br>Weekly sweat lodge ceremony (up to 8 hours)<br>    Includes:<br>      Sweat Lodge Ceremony<br>      Smudging<br>      Pipe Ceremony<br><br>If there are no compelling governmental reasons to disallow it, special sweat lodge ceremonies may be held, instead of regularly scheduled sweat lodge ceremonies, to honor the following days:<br>    Spring – Equinox<br>    Summer – Solstice<br>    Fall – Equinox<br>    Winter – Solstice<br><br>If wood is not available, or if a sweat lodge ceremony is not conducted for any other reason, up to 2 hours 1x week should be allowed for Smudging/Pipe Ceremony. The inipi (sweat lodge) will be covered only during a sweat lodge ceremony.<br><br>Sweat lodge ceremonies, pipe ceremonies, and smudging are all subject to fire ban limitations. | Antler sets – 2<br>Blankets – lodge cover up to 2 layers<br>Books and/or CDs used during celebration or worship<br>Buffalo/cow skull – 1<br>Canvas – lodge cover 1 layer<br>Ceremonial pipe with or without wrap/bag– 1<br>Drum sticks – 20<br>Drums – 2 (Maximum diameter 14")<br>Feather fans – 3<br>Firewood – amount contingent to facility space, security<br>Forked stick sets – up to 4<br>Herbs – amount contingent to facility space, security<br>    Sweetgrass<br>    Sage<br>    Cedar<br>Lava rock - amount contingent to facility space, security<br>Indigenous rock - amount contingent to facility space, security<br>Lodge pole – 1<br>Lodge pole flags – 4<br>Pitchfork, modified with end blunted – 1<br>Prayer ties – up to 10 per gathering 4"x4" in size, multicolor<br>Rattles – 4<br>Shells – 2<br>Shovel – 1<br>Song sheets – 20<br>Stones, rounded/tumbled no larger than 1" diameter – 6<br>Stones, rounded turquoise no larger than 2" diameter – 6<br>Tobacco blend – up to 1 oz per gathering<br>Water<br>Water bucket(s) - amount contingent to facility space, security<br>Water dipper – 1<br><br>No non-indigenous plants will be allowed to be planted or grown in the sweat lodge area. |

Attachment E
Page 1 of 9

| | | | | AR Form 800-01E (04/01/22) |
|---|---|---|---|---|
| | **Colorado Department of Corrections**<br>**Faith Groups – Diet and Holy Days** | | | |
| **FAITH GROUP** | **DIET/FAST DAYS** | **HOLY DAYS** | **GROUP GATHERINGS** | **COMMUNAL WORSHIP PROPERTY** |
| Ásatrú<br>(Odinism) | No special dietary<br>standard exists | **Work Proscription**<br><br>Charming of the Plow<br>High Feast of Osatra<br>May Day<br>Midsummer<br>Freyfaxi<br>Winter Finding<br>Winter Nights<br>Yule<br><br>**Non-Work Proscription**<br>None | **No volunteer presence is required to allow a group gathering.**<br><br>Charming of the Plow<br>High Feast of Osatra<br>May Day<br>Midsummer<br>Freyfaxi<br>Winter Finding<br>Winter Nights<br>Yule<br><br>Fire allowed contingent upon<br>time, space, security, physical plant<br>and city or county fire ban ordinance.<br>Group gatherings may be held<br>indoors. Use of outside multi-faith area is<br>preferred. | Altar – 1<br>Altar cloth – 1<br>Books and/or CDs used during celebration or worship<br>Bowl (offering) – 1<br>Candles with holders (electric, battery, wax) various colors – 6<br>Drum – 1 (Maximum diameter 14")<br>Firewood – amount contingent to facility space, security<br>Gjallarhorn (up to 18") – 1<br>Libation horn (up to 18") – 1<br>Picture (Thor's Hammer up to 12"x10") – 1<br>Pictures of Deities (up to 8"x10") – 6<br>Shells - 2<br>Sprig (evergreen) – 1<br>Statue (up to 6") – 1 |
| **Astara** | No special dietary<br>standard exists | None | None | None |
| **Athiest** | No special dietary<br>standard exists | None | None | None |
| **Ausar Auset Society** | Vegetarian<br>Vegan | **Work Proscription**<br><br>Spring Equinox<br>Summer Solstice<br>Fall Equinox<br>Winter Solstice<br><br>**Non-Work Proscription**<br>Celebration of each full<br>moon<br>Twice monthly study to<br>discuss Metu Neter | **No volunteer presence is required to allow a group gathering.**<br><br>Spring Equinox<br>Summer Solstice<br>Fall Equinox<br>Winter Solstice<br>Celebration of each full moon<br><br>**Volunteer presence is required to allow a group gathering.**<br><br>Twice monthly study to discuss<br>Metu Neter | Books and/or CDs used during celebration or worship<br>Candles with holders (electric, battery, wax) various colors – 2 |

AR Form 800-01E (04/01/22)

**Colorado Department of Corrections**
**Faith Groups – Diet and Holy Days**

| FAITH GROUP | DIET/FAST DAYS | HOLY DAYS | GROUP GATHERINGS | COMMUNAL WORSHIP PROPERTY |
|---|---|---|---|---|
| **Baha'i** | No special dietary standard exists<br><br>**Fast: March 2-21** | **Work Proscription**<br><br>Naw Ruz<br><br>**Non-Work Proscription**<br>Ridvan<br>Declaration of the Bab<br>Ascension of Baha'u'llah<br>Martydom of Bab<br>Birth of Bab<br>Birth of Baha'u'llah<br>Day of Covenant<br>Ascension of Abdu'l Baha | **Volunteer presence is required to allow a group gathering.**<br><br>Naw Ruz<br>Ridvan<br>Declaration of the Bab<br>Ascension of Baha'u'llah<br>Martydom of Bab<br>Birth of Bab<br>Birth of Baha'u'llah<br>Day of Covenant<br>Ascension of Abdu'l Baha | None |
| **Buddhism** | Vegetarian<br>Vegan | **Work Proscription**<br><br>Nirvana<br>Sangha Day<br>**Non-Work Proscription**<br><br>Birthday of Buddha –<br>(Vesak (Buddha Day))<br>Dharma Day<br>Pavarana<br>Bodi Enlightenment Day<br>Sangha | **No volunteer presence is required to allow a group gathering.**<br><br>Sangha (Twice monthly)<br>Nirvana<br>Sangha Day<br>Birthday of Buddha – (Vesak (Buddha Day))<br>Dharma Day<br>Pavarana<br>Bodi Enlightenment Day | Altar – 1<br>Altar cloth – 1<br>Bell/Gong (small) – 1<br>Books and/or CDs used during celebration or worship<br>Bowls (offering) – 7<br>Box (covered in brocade/cloth) – 1<br>Candles with holders (electric, battery, wax) various colors – 2<br>Pictures (Buddhist) – 6<br>Pitcher (small, clear plastic) – 1<br>Statue (Buddha up to 6") – 1<br>Text (small scroll or book wrapped in cloth) - 1 |
| **Catholic** | Vegetarian<br>Vegan<br><br>Meatless entrée on Fridays during Lent, Ash Wednesday & Good Friday | **Work Proscription**<br><br>None<br><br>**Non-Work Proscription**<br>Octave of Christmas<br>Ash Wednesday<br>Palm Sunday<br>Good Friday<br>Easter<br>Ascension of Jesus<br>Assumption of Mary<br>All Saints Day<br>Immaculate Conception<br>Christmas | **Volunteer presence is required to allow a group gathering.**<br><br>Weekly service<br>Octave of Christmas<br>Ash Wednesday<br>Palm Sunday<br>Good Friday<br>Easter<br>Ascension of Jesus<br>Assumption of Mary<br>All Saints Day<br>Immaculate Conception<br>Christmas | Altar – 1<br>Altar cloth – 1<br>Books and/or CDs used during celebration or worship<br>Bowl/cup (offering) – 1<br>Candles with holders (electric, battery, wax) various colors – 6<br>Cross/crucifix (up to 6") – 1<br>Holy water – up to 6 oz<br>Stations of the Cross (paper or cardboard) up to 12'x10" – 1 set<br>Statues (Saints up to 6") – 2<br><br>**The officiating priest, deacon, or Eucharistic minister may bring in the following items:**<br>Wafers for Eucharist<br>Wine – 2 oz for Eucharist **(For use by officiating priest only)** |

AR Form 800-01E (04/01/22)

## Colorado Department of Corrections
## Faith Groups – Diet and Holy Days

| FAITH GROUP | DIET/FAST DAYS | HOLY DAYS | GROUP GATHERINGS | COMMUNAL WORSHIP PROPERTY |
|---|---|---|---|---|
| **Church of Christ Scientist** | No special dietary standard exists | None | None | None |
| **Church of Jesus Christ of Latter Day Saints** (Mormon) | Vegetarian Vegan | **Work Proscription** None **Non-Work Proscription** Palm Sunday Good Friday Easter Christmas | **Volunteer presence is required to allow a group gathering.** Weekly service Palm Sunday Good Friday Easter Christmas | Books and/or CDs used during celebration or worship Bowl/cup (offering) – 1 Bread/wafer Grape juice |
| **Church of Scientology** | No special dietary standard exists | **Work Proscription** None **Non-Work Proscription** International Auditors Day International Association of Scientology | **Volunteer presence is required to allow a group gathering.** International Auditors Day International Association of Scientology | None |
| **Church Universal and Triumphant** | Vegetarian Vegan | **Work Proscription** None **Non-Work Proscription** Ascension of Church's founder Easter Wesak Christmas Day | **Volunteer presence is required to allow a group gathering.** Ascension of Church's founder Easter Wesak Christmas Day | None |
| **Eastern Orthodox Christian** | Regular fasting to include fasting most Wednesdays and Friday. Fasting may require abstinence from animal products, including fish, chicken, and dairy products. Fasting periods also include: Lent, Advent, Nativity, Dormition, Assumption, The Feast of the Holy Apostles. | **Work Proscription** None **Non-Work Proscription** Theophany (Epiphany) Presentation of Christ Palm Sunday Pascha (Easter) Ascension Pentecost Transfiguration Dormition (Assumption) Nativity of Christ (Christmas) | **Volunteer presence is required to allow a group gathering.** Theophany (Epiphany) Presentation of Christ Palm Sunday Pascha (Easter) Ascension Pentecost Transfiguration Dormition (Assumption) Nativity of Christ (Christmas) NOTE: Orthodox holy days often occur on different days than their western counterparts. Please review the calendar for correct dates. | Altar – 1 Altar cloth – 1 Books and/or CDs used during celebration or worship Chalice – 1 Pictures (Jesus Christ and Mary, with stands, up to 8"x10") – 2 Candles with holders (electric, battery, wax) various colors – 6 **The officiating priest may bring in the following items:** Incense – **May not be burned** Leavened bread – for Communion Olive oil  Red cloth napkins Star (small metal cover over bread) - 1 Wine – 2 oz for Eucharist **(For use by officiating priest only)** Liturgical vestments and service booklets |

| | | | | AR Form 800-01E (04/01/22) |
|---|---|---|---|---|
|  | **Colorado Department of Corrections**<br>**Faith Groups – Diet and Holy Days** | | | |
| **FAITH GROUP** | **DIET/FAST DAYS** | **HOLY DAYS** | **GROUP GATHERINGS** | **COMMUNAL WORSHIP PROPERTY** |
| **Hindu** | Vegetarian<br>Vegan | **Work Proscription**<br>Dashera<br>Diwali<br><br>**Non-Work Proscription**<br>None | **Volunteer presence is required to allow a group gathering.**<br>Dashera<br>Diwali | None |
| **Islam/Muslim** | Vegetarian<br>Vegan<br>Halal<br>**Fast days:**<br>**Ramadan Fast sunup to sundown – 29 to 30 days**<br>**Ashura** | **Work Proscription**<br>Eid-Ul-Fitr<br>Eid-Ul-Adha<br>Jumah – Offender may work prior to and after service<br><br>**Non-Work Proscription**<br>Ramadan | **No volunteer presence is required to allow a group gathering.**<br>Ramadan<br>Eid-Ul-Fitr<br>Eid-Ul-Adha<br>Jumah Prayer –<br>• Offenders should be allowed to shower prior to service.<br>• Allow up to a two hour observance starting after  1:00pm | Books and/or CDs used during celebration or worship |
| **Jehovah's Witness** | No special dietary standard exists | **Work Proscription**<br>None<br><br>**Non-Work Proscription**<br>Lord's Evening Meal | **Volunteer presence is required to allow a group gathering.**<br>Weekly Service<br>Lord's Evening Meal | Books and/or CDs used during celebration or worship |
| **Jewish** | Kosher<br><br>**Fast days:**<br>**Tevet**<br>**Ester**<br>**Tammuz**<br>**Fast of 9th of AV**<br>**Gedeliah**<br>**Yom Kippur** | **Work Proscription**<br>Shabbat – weekly<br>Havdalah<br>Purim<br>Passover – day 1<br>Passover – day 2<br>Passover – day 7<br>Passover – day 8<br>Shavuot – day 1<br>Shavuot – day 2<br>Fast of 9th of AV<br>Rosh Hashanah – day 1<br>Rosh Hashanah – day 2<br>Yom Kippur<br>Sukkot – day 1<br>Sukkot – day 2<br>Shemini Atzeret<br>Simchat Torah<br><br>**Non-Work Proscription**<br>Chanukah | **No volunteer presence is required to allow a group gathering.**<br>Shabbot – weekly<br>Havdalah<br>Purim<br>Passover – day 1<br>Passover – day 2<br>Passover – day 7<br>Passover – day 8<br>Shavuot – day 1<br>Shavuot – day 2<br>Fast of 9th of AV<br>Rosh Hashanah – day 1<br>Rosh Hashanah – day 2<br>Yom Kippur<br>Sukkot – day 1<br>Sukkot – day 2<br>Shemini Atzeret<br>Simchat Torah<br>Chanukah | Books and/or CDs used during celebration or worship<br>Candle (Havdalah) with holder – 1 (no more than 2 wicks)<br>Candles with holders (electric, battery, wax) various colors – 8<br>Candles – Chanukah<br>Cup (Kiddish) – 1<br>Grape juice<br>Lulav and Etrog<br>Matzot<br>Matzot cover (linen) – 1<br>Menorah (at Chanukah only) – 1<br>Shofar (up to 18") – 1<br>Spice holder with spices (pleasant smelling, such as clove/cinnamon/bay) – 1<br>Seder Plate - 1<br>Sukkah |

Attachment E
Page 5 of 9

App 153

| Colorado Department of Corrections<br>Faith Groups – Diet and Holy Days | | | | AR Form 800-01E (04/01/22) |
|---|---|---|---|---|
| **FAITH GROUP** | **DIET/FAST DAYS** | **HOLY DAYS** | **GROUP GATHERINGS** | **COMMUNAL WORSHIP PROPERTY** |
| **Krishna Consciousness** | Vegetarian<br>Vegan | <u>**Work Proscription**</u><br>None<br><u>**Non-Work Proscription**</u><br>Jagannatha<br>Janmastami<br>Vyasa Puja | **Volunteer presence is required to allow a group gathering.**<br>Jagannatha<br>Janmastami<br>Vyasa Puja | None |
| **Messianic Believers** | Kosher<br><br>**Fast days:**<br>**Tevet**<br>**Ester**<br>**Tammuz**<br>**Fast of 9th of AV**<br>**Gedeliah**<br>**Yom Kippur** | <u>**Work Proscription**</u><br>Shabbot/Havdalah–weekly<br>Purim<br>Passover – day 1<br>Passover – day 2<br>Passover – day 7<br>Passover – day 8<br>Shavuot – day 1<br>Shavuot – day 2<br>Fast of 9th of AV<br>Rosh Hashanah – day 1<br>Rosh Hashanah – day 2<br>Yom Kippur<br>Sukkot – day 1<br>Sukkot – day 2<br>Shemini Atzeret<br>Simchat Torah<br><u>**Non-Work Proscription**</u><br>Palm Sunday<br>Good Friday<br>Easter<br>Chanukah<br>Christmas | **No volunteer presence is required to allow a group gathering.**<br>Shabbot – weekly Havdalah<br>Purim<br>Passover – day 1<br>Passover – day 2<br>Passover – day 7<br>Passover – day 8<br>Shavuot – day 1<br>Shavuot – day 2<br>Fast of 9th of AV<br>Rosh Hashanah – day 1<br>Rosh Hashanah – day 2<br>Yom Kippur<br>Sukkot – day 1<br>Sukkot – day 2<br>Shemini Atzeret<br>Simchat Torah<br>Chanukah<br>**Volunteer presence is required to allow a group gathering.**<br>Palm Sunday<br>Good Friday<br>Easter<br>Christmas | Books and/or CDs used during celebration or worship<br>Candle (Havdalah) with holder – 1 (no more than 2 wicks)<br>Candles with holders (electric, battery, wax) various colors – 8<br>Candles – Chanukah<br>Communion wafers<br>Cup (Kiddish) – 1<br>Grape juice<br>Lulav and Etrog<br>Matzot<br>Matzot cover (linen) – 1<br>Menorah (at Chanukah only) – 1<br>Shofar (up to 18") – 1<br>Spice holder with spices (pleasant smelling, such as clove/cinnamon/bay) – 1<br>Seder Plate - 1<br>Sukkah |

| | | | | AR Form 800-01E (04/01/22) |
|---|---|---|---|---|
| | | **Colorado Department of Corrections**<br>**Faith Groups – Diet and Holy Days** | | |
| **FAITH GROUP** | **DIET/FAST DAYS** | **HOLY DAYS** | **GROUP GATHERINGS** | **COMMUNAL WORSHIP PROPERTY** |
| **Moorish Science Temple of America** | Vegetarian<br>Vegan | **Work Proscription**<br>Noble Drew Ali's Birthday<br>Tag Day<br>Authority Day<br>**Non-Work Proscription**<br>Weekly Divine Service/Koran Study<br>Ramadan | **No volunteer presence is required to allow a group gathering.**<br>Noble Drew Ali's Birthday<br>Tag Day<br>Authority Day<br>Weekly Divine Service<br>• Offenders may work prior to and after service<br>**Volunteer presence is required to allow a group gathering.**<br>Ramadan | Books and/or CDs used during celebration or worship<br>Moorish Holy Koran<br>Picture of Noble Drew Ali – 1<br>Picture of Flag (American 8"x10") – 1<br>Picture of Flag (MST 8"x10") – 1<br>Booklets:<br>Affirmation of Authority, Branch Temple Information, Humanity, Moorish Literature, Koran Questions for Moorish, The Great Meeting is On |
| **No Preference** | No special dietary standard exists | None | None | None |
| **None** | No special dietary standard exists | None | None | None |
| **North Western European Paganism** | Vegetarian<br>Vegan | **Work Proscription**<br>Imbloc<br>Spring Equinox<br>Beltane<br>Summer Solstice<br>Lughnassad<br>Fall Equinox<br>Samhain<br>Winter Solstice<br>**Non-Work Proscription**<br>Celebration of each full moon | **No volunteer presence is required to allow a group gathering.**<br>Imbloc<br>Spring Equinox<br>Beltane<br>Summer Solstice<br>Lughnassad<br>Fall Equinox<br>Samhain<br>Winter Solstice<br><br>Celebration of each full moon<br>• Offenders may work prior to and after service<br><br>Fire allowed contingent upon time, space, security, physical plant, and city or county fire ban ordinance.<br><br>Group gatherings may be held indoors. Use of outside multi-faith area is preferred. | Altar – 1<br>Altar cloth – 1<br>Bells (small) – 2<br>Books and/or CDs used during celebration or worship<br>Bowl (small) – 1<br>Candles with holders (electric, battery, wax) various colors – 6<br>Cards (Tarot or Rune) – 1 set<br>Chalice – 1<br>Chalk (various colors) – 12 pc<br>Charcoal – 1 pc      Charcoal burner – 1<br>Deity Pictures – 6<br>Drum – 1               Drum stick – 1<br>Earth – 2 oz<br>Feathers – 6<br>Firewood – amount contingent to facility space, security<br>Herbs – amount contingent to facility space, security<br>Libation horn (up to 18") – 1<br>Mirror (black) – 1<br>Paper tablet – 1<br>Pentacle or Pentagram – 1<br>Rattle – 1<br>Ribbon (various colors up to 12") – 5<br>Salt/sea salt – 2 oz<br>Sprig (oak) – 1<br>Stones, rounded/tumbled no larger than 1" diameter – 6<br>Crystals, rounded/tumbled no larger than 1" in diameter – 6<br>Wand (10"x¼") – 1<br>Whisk broom - 1 |

<table>
<tr><td colspan="5" align="right">AR Form 800-01E (04/01/22)</td></tr>
</table>

| | | | | |
|---|---|---|---|---|
| **Colorado Department of Corrections** | | | | |
| **Faith Groups – Diet and Holy Days** | | | | |

| FAITH GROUP | DIET/FAST DAYS | HOLY DAYS | GROUP GATHERINGS | COMMUNAL WORSHIP PROPERTY |
|---|---|---|---|---|
| **Ordo Templi Orientis** | No special dietary standard exists | None | None | None |
| **Other** | No special dietary standard exists | None | None | None |
| **Protestant** (General Christian) | Vegetarian Vegan | **Work Proscription** None <br> **Non-Work Proscription** Palm Sunday Good Friday Easter Christmas | **Volunteer presence is required to allow a group gathering.** Weekly worship service Palm Sunday Good Friday Easter Christmas | Books and/or CDs used during celebration or worship Bowl/cup (offering) – 1 Bread/wafer Grape juice |
| **Rastafarian** | Vegetarian Vegan | **Work Proscription** None <br> **Non-Work Proscription** Haile Selassie's birthday Jamaican Independence Day Marcus Garvey's birthday | **Volunteer presence is required to allow a group gathering.** Haile Selassie's birthday Jamaican Independence Day Marcus Garvey's birthday | None |
| **Satan/Satanism** | No special dietary standard exists | None | None | None |
| **Seventh Day Adventist** | Vegetarian Vegan | **Work Proscription** Weekly Sabbath – Sun down Friday to sundown Saturday <br> **Non-Work Proscription** Palm Sunday Good Friday Easter Christmas | **Volunteer presence is required to allow a group gathering.** Weekly Sabbath Palm Sunday Good Friday Easter Christmas | Books and/or CDs used during celebration or worship Bowl/cup (offering) – 1 Bread/wafer Grape juice |
| **Sikh** | Vegetarian Vegan | **Work Proscription** None <br> **Non-Work Proscription** Vaisakhi: New Year Birth of Guru Nanak Dev Ji | **Volunteer presence is required to allow a group gathering.** Vaisakhi: New Year Birth of Guru Nanak Dev Ji | None |

| | | | | AR Form 800-01E (04/01/22) |
|---|---|---|---|---|
| | | **Colorado Department of Corrections**<br>**Faith Groups – Diet and Holy Days** | | |
| **FAITH GROUP** | **DIET/FAST DAYS** | **HOLY DAYS** | **GROUP GATHERINGS** | **COMMUNAL WORSHIP PROPERTY** |
| **Taoism** | Vegetarian<br>Vegan | **Work Proscription**<br>None<br><br>**Non-Work Proscription**<br>Chinese New Year<br>Jade Emperor's Birthday<br>Kwan Yin's Birthday<br>Ching Ming Festival<br>Festival of Immortal Lu<br>Hungry Ghost Festival<br>Chung Yeung Festival | **Volunteer presence is required to allow a group gathering.**<br>Jade Emperor's Birthday<br>Kwan Yin's Birthday<br>Festival of Immortal Lu<br><br>**No volunteer presence is required to allow a group gathering.**<br>Chinese New Year<br>Ching Ming Festival<br>Hungry Ghost Festival<br>Chung Yeung Festival | Altar – 1<br>Altar cloth – 1<br>Bell/Gong (small) – 1<br>Books and/or CDs used during celebration or worship<br>Bowls (offering) – 7<br>Candles with holders (electric, battery, wax) various colors – 2<br>Pictures, Deity (8 ½" x 11" max) – 6<br>Statue (up to 6") – 1 |
| **Unitarian/Universalism** | No special dietary standard exists | **Work Proscription**<br>None<br><br>**Non-Work Proscription**<br>New Years Day<br>Martin Luther King, Jr.<br>Easter<br>Rosh Hashanah<br>Yom Kippur<br>Thanksgiving<br>Christmas | **Volunteer presence is required to allow a group gathering.**<br>New Years Day<br>Martin Luther King, Jr. Birthday<br>Easter<br>Rosh Hashanah<br>Yom Kippur<br>Thanksgiving<br>Christmas | Books and/or CDs used during celebration or worship<br>Candles with holders (electric, battery, wax) various colors – 6<br>Chalice – 1 |

AR Form 800-01F (04/01/22)

## Request for Change of Faith Group Affiliation

**(Print clearly, unreadable requests will not be processed)**

| Date: | | Facility/Center: | |
|---|---|---|---|
| Name: | | DOC#: | |
| Case Manager: | | | |
| Living Unit: | | | |

Change Faith Group Affiliation To: _____

### (choose one faith group from list below)

| | | |
|---|---|---|
| Agnostic | Church of Scientology | North Western European Paganism |
| American Indian/Alaskan Native | Church Universal and Triumphant | Ordo Templi Orientis |
| Ásatrú | Eastern Orthodox Christian | Other |
| Astara | Hindu | Protestant (General Christian) |
| Atheist | Islam/Muslim | Rastafarian |
| Ausar Auset Society | Jehovah's Witnesses | Satan/Satanism |
| Baha'i | Jewish | Seventh Day Adventist |
| Buddhism | Krishna Consciousness | Sikh |
| Catholic | Messianic Believers | Taoism |
| Church of Christ Scientist | Moorish Science Temple of America | Unitarian/Universalism |
| Church of Jesus Christ of Latter Day Saints (Mormons) | No Preference | None |

**NOTE: You may not make another faith group affiliation change for 12 months from the approved date.**

Offender Signature: _____

_____    _____    _____
Volunteer Coordinator/designee – Print/Sign     Date Received        Date Forwarded

_____    _____    Approved  Denied
Regional Coordinator/designee – Print/Sign     Date        (*Circle one*)

Reason for Denial/Notes:

_____

_____

_____

Eligible for Faith Group Affiliation Change On: _____

Original:    Regional Coordinator
        Notification: Facility Volunteer Coordinator - Offender

Attachment F
Page 1 of 1

**App 158**

AR Form 800-01G (04/01/22)

# Allowable Personal Faith Property

**PERSONAL FAITH PROPERTY IS NOT FAITH SPECIFIC**
**LIMITED TO THAT WHICH FITS WITHIN DESIGNATED CONTAINMENT SPACE OF FAITH PROPERTY BOX/BAG**

## GENERAL
### AVAILABLE ON CANTEEN
- ☐ Altar cloth (1)
- ☐ Bear root (2 oz)
- ☐ Bitter root (2 oz)
- ☐ Faith Property Container (1)
- ☐ Herb Jasmine (2 oz)
- ☐ Herb Lavender (2 oz)
- ☐ Herb Sage (2 oz)
- ☐ Meditation cushion (1)
- ☐ Citron lotion
- ☐ Frankincense lotion
- ☐ Lavender lotion
- ☐ Myrrh lotion
- ☐ Sandalwood lotion
- ☐ Paper tablet journal (1)
- ☐ Prayer rug (1)
- ☐ Sage bundle (2 oz)
- ☐ Salt/sea salt (2 oz)
- ☐ Sweet grass braid (1)
- ☐ Tea Lights, Battery powered (2)
### NOT AVAILABLE ON CANTEEN
- ☐ Bell [small] (1)
- ☐ Bowl [small] (1)
- ☐ Faith Calendar (1) (some faiths require faith specific dates and times)
- ☐ Chalice (1)
- ☐ Corn pollen (2 oz)
- ☐ Corn meal (2 oz)
- ☐ Crystals, tumbled/rounded[1x2"] (6)
- ☐ Deity pictures (up to 6, 8 ½" x 11" Max)
- ☐ Earth (2 oz)
- ☐ Feathers [up to 6](1)
- ☐ Gong [small] (1)
- ☐ Herb Cedar Bundle (2 oz)
- ☐ Herb Cedar Shavings (2 oz)
- ☐ Herb Chamomile (2 oz)
- ☐ Herb Citron (2 oz)
- ☐ Herb Fennel (2 oz)
- ☐ Herb Rosemary (2 oz)
- ☐ Herb Vervain (2 oz)
- ☐ Kanga [wood comb] (1)
- ☐ Matzot
- ☐ Palm frond (1)
- ☐ Prayer wheel [or picture] (1)
- ☐ Prayer ties (size up to 4"x4") (10)
- ☐ Ribbons [up to 12"] (5)
- ☐ Runes, Ogham (1)
- ☐ Runes set, Elder Futhark, with bag (1)
- ☐ Scapular (1)

### NOT AVAILABLE ON CANTEEN
- ☐ Sigils/Symbols (3)
- ☐ Stones, round/ polished [1x2"] (6)
- ☐ Stones turquoise 1 x 2 inch (6)
- ☐ Tallis [prayer shawl] (1)
- ☐ Tallis bag (1)
- ☐ Tallit Katan [Tzizit] (2)
- ☐ Tefillin [phylacteries] (2 sets)
- ☐ Tefillin bag (2)
- ☐ Wand [wood 10x ¼"] (1)
- ☐ Yarrow stick [bundle 50] (1)

## HEAD COVERINGS – one only
### AVAILABLE ON CANTEEN
- ☐ Head band
- ☐ Kufi
- ☐ Skull cap (yarmulke)
### NOT AVAILABLE ON CANTEEN
- ☐ Hijab
- ☐ Turban
- ☐ Tam

## CARDS - one only
### AVAILABLE ON CANTEEN
- ☐ Sacred Path w/ book
- ☐ Tarot – Universal Waite
### NOT AVAILABLE ON CANTEEN
- ☐ Rune
- ☐ Oracle
- ☐ Thoth Tarot
- ☐ Tree of Life Meditation

## MEDALLION – one only
### AVAILABLE ON CANTEEN
- ☐ Allah (metal)
- ☐ Ankh (metal)
- ☐ Baphomet (metal)
- ☐ Cross (metal)
- ☐ Crucifix (metal)
- ☐ Lion of Judah (metal)
- ☐ Pentagram (metal)
- ☐ Medicine Bag w/leather strap.
- ☐ Star of David (metal)
- ☐ Messianic Star of David (metal)
- ☐ Thor's Hammer (metal)
- ☐ Khanda (metal)
- ☐ Buddha (medal)
- ☐ Flaming Chalice (metal)

## MEDALLION CHAIN
**Medallion chain must be in conjunction with Medallion**
– one only

**AVAILABLE ON CANTEEN**
- ☐ 20" (silver)
- ☐ 24" (silver)

**BEADS** – one strand only

**NOT AVAILABLE ON CANTEEN**
- ☐ Japamala
- ☐ Prayer beads
- ☐ Standard Rosary

**PINS** – one only
### NOT AVAILABLE ON CANTEEN
- ☐ Moorish Science

**Special Notes**
**MCU Units will designate allowable items from this attachment. Allowable personal property will be identified in their facility policy.**
**Apparel (Tallis, Tallit Katan, Head Covering) – black or white**
**Cloth Scapular-brown or green or black or white**
**Prayer bead color: black, white or natural wood tone**
**Prayer ties – various colors**
**Tefillin stored in living unit control center**

**No acquisition of new personal pipes will be allowed**

Attachment G
Page 1 of 1

AR Form 800-01H (04/01/22)

# **FAITH PROPERTY PURCHASE REQUEST FORM – DOC APPROVED VENDORS**

Note:  This form must be approved and signed by the Volunteer Coordinator BEFORE any and all purchases can be submitted to an Approved Vendor.

Offender Name: _____ DOC #: _____

Date: _____ DOC Facility: _____ Housing Unit:_____

Purchase Request Information (Required):

1.  Name of item requested: _____
2.  Brief description of the item: _____
    _____
    _____

3.  Is the item listed on AR form 800-01G?          YES____ NO____
4.  Is the item available from canteen?               YES____ NO____
5.  Is the item allowable per facility OM/IA?       YES____ NO____
6.  Approved Vendor Name: _____
7.  Please choose one:      Individual Faith Property Item      ____
                            Group Faith Property Item           ____

The facility volunteer coordinator or designee, will approve all outside purchases to ensure the items meet all appropriate security guidelines.  All items purchased from an outside vendor will be consistent with Canteen items in color, size, shape, adornment, etc.  Outside purchases will be made available when the approved items listed on AR Form 800-01G, Allowable Personal Faith Group Property are not available from the Canteen. If an approved item is not available from an approved vendor, it may be purchased from an approved source of supply. Books, literature, and other publications may be purchased from an approved source of supply, in accordance with AR 300-38, *Offender Mail* and AR 850-06, *Offender Property*.

Offender Signature_____

Volunteer Coordinator Signature_____

APPROVED_____ DENIED_____ Reason for Denial_____

_____

_____

_____

Attachment H
Page 1 of 1

App 160

AR Form 800-01I (03/15/17)

## Faith and Citizen Programs
## Part I: Offender Donation Request Form

Requesting a donation does not guarantee the receipt of such item. An item will be approved and sent to an individual only one time unless approved by Faith and Citizen Programs. A request for a previously issued item will require additional information from the offender. The item will be sent out to the group/individual based on availability.

| Name | | DOC # | |
|---|---|---|---|
| Date | | Facility | | Unit | |
| Faith Affiliation | | | Case Manager | |

| Please check one: | | Individual Faith Property Item | | Group Faith Property Item | | Other |
|---|---|---|---|---|---|---|

Item(s) requested:

If item has been previously issued, please explain the reason why the item should be issued to you again:

| | |
|---|---|
| | |
| Offender signature | |

| Is the item allowable per *facility* OM/IA? | | Yes | | No |
|---|---|---|---|---|
| Is the item available at the facility? | | Yes | | No |

| Facility Volunteer Coordinator | | | |
|---|---|---|---|
| | Signature | | Date |

Faith and Citizen Programs Approval (FCP will verify information below)

| Is item already listed on offender's property list? | | Yes | | No |
|---|---|---|---|---|
| Is the offender affiliated with appropriate faith? | | Yes | | No |
| Is the item allowable per AR 800-01? | | Yes | | No |
| Item donated to offender? | | Yes | | No |

Comments:

| | |
|---|---|
| | |
| Regional Volunteer Coordinator | |

| | Signature | | Date |
|---|---|---|---|

Attachment I
Page 1 of 2

App 161

AR Form 800-01I (03/15/17)

Faith and Citizen Programs
Part II:  Donation Chain of Custody Form

| Donor: | | Approved Source: | ☐ Yes | ☐ No |
|---|---|---|---|---|
| Address | | | | |
| | | | | |
| | | | | |
| Phone: | | | | |

| | |
|---|---|
| Faith Group Affiliation: | |
| | |

| Description of Item(s): | Monetary Value of Item: |
|---|---|
| | |
| | |
| | |
| | |

| Title of Book(s)/DVD(s)/Video(s), etc.: | Monetary Value of Item: |
|---|---|
| | |
| | |
| | |

☐ Group Item         ☐ Personal Item         ☐ Other:

| Facility Volunteer Coordinator/Designee: | Date: |
|---|---|

| Offender/Group to receive item: | DOC Number: |
|---|---|
| Facility: | Unit: |
| | |

| Quantity: | Relinquished by: | Received by: | Date |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

*Facility Volunteer Coordinator, Please Sign And Return Original To Faith And Citizen Programs*

*Facility Volunteer Coordinator Is Responsible To Ensure Non-Consumable Items Are Added To Offender DCIS Property List.*

Attachment I
Page 2 of 2

App 162



AR Form 800-01J (03/15/18)

# ESTABLISHING NEW OR AMENDING CURRENT FAITH GROUP PRACTICES

Instructions:    Please print or type all information in black or blue ink. Illegible/incomplete requests will not be considered.  Use only the space provided. **No additional pages may be used or attached.  Only one request per form will be considered and addressed.**

A.   Offender Name _____    DOC # _____    Facility _____

PCDCIS Listed

Faith Affiliation _____    Case Manager _____    Unit _____

| | |
|---|---|
| B.   Yes or No: Are you requesting to establish a new religion/faith group that is not currently recognized by DOC? _____ | |
| C.   If yes in section B, state the religion that you are requesting to be recognized. If no, what faith practice would you like to change or add? | |
| D.   If yes in section B, identify basic tenets or teachings associated with the faith group. If no, provide a source, reference, or documentation which supports and shows the significance of this requested change to current practice. Listing the first amendment, or stating the understanding of it does not constitute a source. | |
| E.   If yes in section B, identify any recognized governing body associated with the faith group. Provide a name, address, and phone number, if known. | |
| F.   If yes in section B, identify any documentation (books, literature, etc.) associated or referenced with this faith group. | |

Offender Signature _____    Date Submitted _____

Facility Volunteer Coordinator - Print/Sign _____    Date Forwarded _____

Response CC: DOC office of Faith and Citizen Programs     Offender
             Facility Volunteer Coordinator              Chaplain
             Case Manager                                File

Attachment J
Page 1 of 1

AR Form 800-01K (02/01/19)

## American Indian Group Practices

This exception pertains to administrative regulations 100-04, *Tobacco Use in Buildings and Vehicles*, and 800-01, *Religious Programs, Services, Clergy, Faith Group Representatives, and Practices*.

A.  **TOBACCO BLEND**: That an exception to the tobacco ban be placed in effect for American Indian practitioners.

1.  That native tobacco blend be allowed in prepackaged and controlled amounts, not to exceed one ounce per ceremony. The tobacco in the blend should not be more than 25% of the overall mixture.

2.  That facility administrative head designates appropriate security protocols for receipt and distribution.

3.  That American Indian offenders be allowed to participate in one pipe ceremony, per week, annually, as outlined in AR 800-01.

4.  That only offenders designated American Indian religion on the DCIS system be allowed to participate in pipe ceremonies.

5.  That only the pipe ceremony be restricted to offenders designated as American Indian, and that all other ceremonies, *not involving tobacco blend*, be open for attendance to the general offender population when a volunteer is present.

6.  That if a pipe ceremony is conducted in conjunction with the sweat lodge ceremony, offenders not designated as American Indian, be restricted access to the sweat lodge area until the pipe ceremony is concluded.

7.  That medicine bags found to contain tobacco and/or tobacco blend, be deemed contraband until the tobacco and/or tobacco blend is removed. If refusal to remove the tobacco and/or tobacco blend is encountered, the medicine bag will be confiscated. Disposition of the medicine bag will be determined by the facility administrative head, in accordance with relative administrative regulations.

B.  **PERSONAL PIPES**: Due to the March 1, 1999, tobacco ban, no personal pipes will be allowed in the Colorado Department of Corrections.

C.  **SMUDGING**: That smudging be allowed on the sweat lodge grounds. That if there is no sweat lodge, an area be designated by the administrative head for the purpose. That smudging using non tobacco plants be allowed during American Indian ceremonies.

D.  **THE SWEAT LODGE AREA**:
An area approximately 40 feet by 40 feet, (*where possible and physical plant permits)* is needed for the sweat lodge in order to provide for traditional East-West door orientation. It should be situated in an area that affords as much privacy as the facility/center will permit. Consideration should also be given to ventilation of smoke from the wood fire, and so that drumming during the ceremony does not interfere with other facility operations. **(In facilities where sweat lodges already exist, no changes will be made to accommodate the above dimensions.)**

Dimensions of the sweat lodge (inipi) will depend on the average number of people expected to use it. Ordinarily it would be 7 to 12 feet in diameter and 4 to 5 feet high.

For the (1) fire pit, approximately 15-40 rocks should be on hand. Rocks will have to be replaced periodically as they break. Lava rocks will be used in the fire. Up to 50-100 rocks are commonly used for the Medicine Wheel. The Medicine Wheel may be spent lava rock, in conjunction with indigenous rock.

Wood that is free from nails and safe for burning should be on hand prior to the beginning of each ceremony. An adequate amount of wood is needed to heat the rocks.

Attachment K
Page 1 of 2

At least 25-30 willow branches 12-14 feet long are needed to construct the sweat lodge frame. The sweat lodge frame needs to be refreshed annually with new branches, preferably in the spring, if new willows are available.  A lodge pole may also be erected utilizing the willow branches.

FIRE BAN INFORMATION
- Fires in the outside faith areas are permitted when the fire ban stage defined by county or city ordinance allows fires in developed areas.
- Pipe ceremonies are permitted when the fire ban stage defined by county or city ordinance allows outdoor smoking in areas that are considered developed.
- Smudging is not considered an open fire or agricultural burning unless otherwise specifically defined by county or city ordinance.
- No fire if the wind speed exceeds 10 mph
- Water must be available at all times (enough to extinguish the fire).
- Shift commanders should use discretion if safety and or security concerns arise.

Minimum dress for offenders in the inipi is as follows: male offenders – boxers; female offenders or transgender as approved by clinical – gym shorts and undergarments must be worn at all times.

The minimum number of offender participants to conduct a sweat lodge ceremony is three. One participant must monitor the fire at all times. There will be a minimum of two offenders inside the inipi at all times when the inipi is in use during a sweat lodge ceremony.

**E.   FEATHERS:**
According to federal law the only persons permitted to own raptor feathers are of American Indian ancestry who are registered with a tribe. Eagle feathers require a permit issued to the offender by the National Eagle Repository. Offenders in possession of other raptor feathers must have acquired them through a legitimate source verified by Faith and Citizen Programs.  Offenders are required to maintain all documentation allowing the possession of eagle/raptor feathers.  Family members may not send such items to offenders.  Raptor feathers may not be sold or purchased by anyone.

Found feathers are not acceptable property items.

**F.   PRAYER TIES:**
Prayer ties are no larger than four inch by four inch cloth squares tied with light string. Ties are not to be taken back into the facility

**G.   HAIR CUTTING:**
Offenders are permitted to cut their hair as a religious act of mourning.  Any offender wishing to mail out their cut hair to a family member must receive approval from the facility volunteer coordinator prior to receiving the hair cut.  DOC employees will oversee the process.

Attachment K
Page 2 of 2

App 165

AR Form 800-01L (03/15/17)

## Umbrella Faith Groups List

**American Indian**
>      All

**Christian, Protestant**
>      Anglican
>      Baptist
>      Christian
>      Church of Christ
>      Quaker
>      Presbyterian
>      Pentecostal

**Islamic**
>      Sunni
>      Sh'ite
>      Sufi

**Jewish**
>      Orthodox
>      Conservative
>      Reform
>      Kabbalah

**Messianic Believer**
>      Biblical-Christianity
>      Christian Identity
>      Messianic Jewish
>      Judeo-Christianity
>      Hebrew Christian

**North Western European Paganism**
>      Druid
>      Wicca

Attachment L
Page 1 of 1

ADMINISTRATIVE REGULATION
IMPLEMENTATION/ADJUSTMENTS

AR Form 100-01A (04/15/08)

| CHAPTER | SUBJECT | AR # | EFFECTIVE |
|---|---|---|---|
| Offender Pastoral Care | Religious Programs, Services, Clergy, Faith Group Representatives, and Practices | 800-01 | 04/01/22 |

(FACILITY/WORK UNIT NAME) _____
WILL ACCEPT AND IMPLEMENT THE PROVISIONS OF THE ABOVE ADMINISTRATIVE REGULATION:

[ ] AS WRITTEN   [ ] NOT APPLICABLE   [ ] WITH THE FOLLOWING PROCEDURES TO ACCOMPLISH THE INTENT
OF THE AR

(SIGNED) _____   (DATE) _____
                 Administrative Head

Attachment M
Page 1 of 1

App 167

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-01269-KLM

RODNEY DOUGLAS EAVES,

     Plaintiff,

v.

JARED POLIS,
DEAN WILLIAMS,
TRAVIS TRANI,
GYPSY KELSO,
ANTHONY A. DECESARO,
MARSHALL GRIFFITH,
JERRY ROARK,
DAVID HESTAND,
JASON SMITH,
STEVEN SALAZAR,
CLARA CASEBOLT,
LARRY COX,
JUSTIN ARRASMITH,
DERICK DOCKTER,
LUKE HOLLAND,
TIFFANY SALDANA,
COLIN CARSON,
DONNY BRITTON,

     Defendants.

_____

**MINUTE ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

     This matter comes before the Court on the **CDOC Defendants' Motion to Restrict Plaintiff's Amended Complaint** [#61] (the "Motion").  The Motion [#61] states that the Amended Prisoner Complaint contains several pages inserted at seemingly random points in the document that provide rosters of inmates at BCCF, specific housing information for inmates at BCCF, the names of inmates' case managers, and classification information. *Id*. at 2.  The CDOC Defendants argue that it is appropriate to apply a Level 1 restriction

App 168

to the Amended Prisoner Complaint [#59, #66],[1] as doing so will protect the privacy interests of BCCF inmates and case managers. *Id*. According to the CDOC Defendants, the case managers face risks of harassment, threats, and potential violence due to public identification alone. *Id*. That these documents also identify the inmates to which case managers are assigned heightens these risks. *Id*. at 2-3. The CDOC Defendants assert that the public has no interest in access to this information, as it is irrelevant to the lawsuit. *Id*.

In accordance with D.C.COLO.LCivR 7.2, the Motion [#61] was publicly posted to allow for any objections to the sealing of the document. No timely objections were filed. Pursuant to D.C.COLO.LCivR 7.2, the Court finds that the presumption of public access to Court files is outweighed by the interest in privacy identified by the CDOC Defendants. The Court further finds that no alternative to restriction is practicable at this time. *See Motion* [#61] at 4. Accordingly,

IT IS HEREBY **ORDERED** that the Motion [#61] is **GRANTED**. The Clerk of the Court is directed to maintain the Amended Prisoner Complaint [#59, #66] **UNDER RESTRICTION at LEVEL 1** until further order of the Court.

Dated:  June 2, 2022

---

[1] The Amended Prisoner Complaint was originally filed as a handwritten document at [#59], and Plaintiff then filed a typed version at [#66].

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-01269-KLM

RODNEY DOUGLAS EAVES,

      Plaintiff,

v.

JARED POLIS,
DEAN WILLIAMS,
TRAVIS TRANI,
GYPSY KELSO,
ANTHONY A. DECESARO,
MARSHALL GRIFFITH,
JERRY ROARK,
DAVID HESTAND, and
STEVEN SALAZAR,

      Defendants.

---

## BCCF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

---

Defendants Jerry Roark, David Hestand, Steven Salazar, Clara Casebolt, Larry Cox, Justin Arrasmith, Derick Dockter, Luke Holland, Tiffany Saldana, and Colin Carson (collectively, "BCCF Defendants"), via counsel, Andrew D. Ringel, Esq., Edmund M. Kennedy, Esq., and Katherine N. Hoffman, Esq. of Hall & Evans, L.L.C., pursuant to Fed. R. Civ. P. 12(b)(1) and (6), submit this Motion to Dismiss Plaintiff's Amended Complaint [ECF 66], as follows:

**D.C.COLO.LCivR 7.1:** In accordance with D.C.COLO.LCivR 7.1(b)(1), because Plaintiff is an unrepresented prisoner, undersigned counsel was not required to confer with Plaintiff before filing this Motion.

**INTRODUCTION**

This action stems from Plaintiff Rodney Douglas Eaves' ("Plaintiff") incarceration by the Colorado Department of Corrections ("CDOC"). During the timeframe relevant to his Amended Complaint, Plaintiff was housed at the Bent County Correctional Facility ("BCCF"), a private prison operated pursuant to a contract with the CDOC.  Plaintiff is a member of a Native American religion. Plaintiff alleges several CDOC and BCCF employees engaged in practices pursuant to CDOC policy which Plaintiff alleges have substantially burdened his ability to practice his religion.

Plaintiff initially brought claims against BCCF Defendants Warden Jerry Roark, Chaplain David Hestand, and Programs Coordinator Steven Salazar.  Plaintiff's Amended Complaint adds claims against Clara Casebolt, Chaplain's Assistant, Larry Cox, Chief of Security, Justin Arrasmith, Hearings Officer, Derick Dockter, Hearings Officer, Luke Holland Unit Manager, Tiffany Saldana, Administrative Clerk, and Colin Carson, Assistant Warden.  Plaintiff's claims arise under the First Amendment Free Exercise Clause and the Fourteenth Amendment Equal Protection Clause pursuant to 42 U.S.C. § 1983. Plaintiff sues BCCF Defendants in their individual and official capacities.  However, BCCF Defendants cannot be sued in their official capacities because they do not have official capacities under 42 U.S.C. § 1983 as private prison employees.  Additionally, BCCF Defendants are not necessary parties to the Amended Complaint because Plaintiff's requested relief can be achieved through other Defendants.  Plaintiff's claims also fail for lack of personal participation, and several fail to plausibly plead constitutional violations. Finally, Plaintiff's retaliation claim is barred because it attempts to attack valid Code of

Penal Discipline ("COPD") convictions that have not been overturned. Accordingly, dismissal of the claims against BCCF Defendants is required as a matter of law.

## SUMMARY OF CASE

Plaintiff is a CDOC prisoner housed at BCCF. BCCF is operated by CoreCivic, which is "a private, for-profit, business corporation, listed on the New York Stock Exchange, in the business of, among other things, the private management of prisons and other correctional facilities under contract with" the State of Colorado, among other municipal entities. *Phillips v. Tiona*, 508 Fed. Appx. 727, 750-51 (10th Cir. Jan. 23, 2013)[1] (discussing CoreCivic's prior name Corrections Corporation of America ("CCA")). "The State of Colorado contracts with CoreCivic pursuant to state statute authorizing the CDOC 'to permanently place state inmates classified as medium custody and below in private prisons,' Colo. Rev. Stat. § 17-1-104.9, subject to legislation comprehensively regulating such prisons." *Id.* The State of Colorado requires private prisons to, among other things, "abide by operations standards for correctional facilities adopted by the executive director of the department of corrections." C.R.S. § 17-1-202(1)(e). "Notably, inmates assigned to private prisons remain officially in the custody of the CDOC[.]" *Phillips*, 508 Fed. Appx. at 751. Although BCCF privately-runs the correctional facility, CDOC remains intimately involved. For instance, the duties of the CDOC Executive Director specifically include the authority to "monitor and supervise the activities of private contract prisons." C.R.S. §17-1-103(a).

---

[1] All unpublished decisions have been attached as Exhibit A and provided to the Plaintiff pursuant to D.C.Colo.LCivR. 7.1(e).

3

In his Amended Complaint, Plaintiff alleges several instances where he claims his religious practices were substantially burdened by CDOC and BCCF employees, while admitting all of the BCCF employees relied on CDOC regulations for the denial of Plaintiff's various requests.  Plaintiff alleges he was denied through procedures set forth in CDOC policies the right to possess certain personal religious items and the right to perform certain religious ceremonies.

Prior to the filing of his Amended Complaint, this Court issued an Order granting all Defendants' Motions to Dismiss, with some claims dismissed with prejudice and others dismissed without prejudice.  [ECF 55].  Plaintiff has realleged all the claims dismissed without prejudice, as well as asserting a new claim for retaliation against BCCF Defendants.  All previous claims fail for the same reasons as set forth in the Order dated March 15, 2022.  [*Id.*].

As discussed below, Plaintiff's claims in his Amended Complaint fail for basically the same reasons as his original Complaint.  Additionally, the retaliation claim is precluded because the claim directly challenges Plaintiff's COPD convictions and any determination by this Court that his COPD charges were retaliatory would invalidate those convictions.  Accordingly, BCCF Defendants respectfully request this Court again dismiss all the claims against them in their entirety with prejudice.

## **ARGUMENT**

### A. **Plaintiff's Official Capacity Claims Against BCCF Defendants Must Be Dismissed Because BCCF Defendants Have No Official Capacity Under 42 U.S.C. § 1983 as Private Prison Employees.**

Plaintiff brings claims against BCCF Defendants in their official capacities.  [ECF 66 at 3-6 (Defendants 7 through 17)].  However, BCCF Defendants cannot be sued in

4

App 173

their official capacities because they have no official capacities under 42 U.S.C. § 1983;

they are employees of a private prison, not state employees. *See Jones v. Barry*, 33 F.

App'x 967, 971, n.5 (10th Cir. 2002) ("the CCA defendants are not state actors, and they

do not have an "official capacity."); *Alamiin v. Patton*, 2016 U.S. Dist. LEXIS 172044, at

*6 (W.D. Okla. Dec. 13, 2016) ("As employees of a private prison, they are not state

officials, and official capacity claims cannot be asserted against them."); *Williams v.*

*Hininger*, 2019 U.S. Dist. LEXIS 98681, at *4-5 (W.D. Okla. May 14, 2019) (dismissing

official capacity claims against employees of a private prison facility owned and operated

by CoreCivic). Because BCCF Defendants are employees of a private prison, official

capacity claims cannot be asserted against them, necessitating dismissal of all official

capacity claims against BCCF Defendants.

> **B.    BCCF Defendants Are Not Necessary Parties to This Lawsuit Because Plaintiff Can Achieve the Requested Relief from Other Defendants.**

In his Amended Complaint, Plaintiff requests mandatory injunctive relief against

both CDOC and BCCF Defendants.  Because of the relationship between CDOC and

BCCF, the Court can grant the complete injunctive relief requested by Plaintiff against

CDOC Defendants, without the BCCF Defendants' presence in this lawsuit and, as such,

the claims against BCCF Defendants are wholly unnecessary.  [*See*, *e.g.*, ECF 66 at 8, ¶

8, (Claim One asserts State Defendants, including CDOC employees, denied his request

along with BCCF Defendants, based on CDOC policies, thus violating his rights); *id.* at

15-16, ¶¶ 81, 86, 90, 96, and 99 (Claim Two asserts State regulations, statutes, and

employees, including CDOC employees, denied his request along with BCCF

Defendants, based on CDOC policies, thus violating his rights); *id.* at 17-19, ¶¶ 106, 107,

108, & 125 (Claim Three asserts State employees, including CDOC employees, denied his request along with BCCF Defendants, based on CDOC policies, thus violating his rights); *id.* at 19-20, ¶ 131 (Claim Four alleges CDOC policies created a "loophole" that allows the violation of Plaintiff's rights); *id.* at 20—21, ¶ 139 (Claim Five asserts a BCCF employee stole money donated by Plaintiff while also admitting CDOC regulations do not allow inmates to claim money donated as their own but are part of a common fund to be used for various reasons); *id.* at 21, ¶ 152 (Claim Six alleges the enforcement of CDOC policy by various CDOC and BCCF staff violate Plaintiff's rights).

The conduct Plaintiff seeks to enjoin are the policies of CDOC, not BCCF.  If BCCF is directed by CDOC to provide Plaintiff with certain personal religious items pursuant to any order from this Court to CDOC officials, they will do so. Conversely, if BCCF Defendants are directed by CDOC to deny Plaintiff the right to possess certain religious items, they will not. This applies to any requests Plaintiff seeks this Court to order.  BCCF Defendants do not have the authority to augment CDOC policy absent CDOC approval or Court order. As such, any injunctive relief ordered by this Court need only be against the entity who promulgated the policies at issue, not the contracted party who merely enforces these policies per contract and statute at BCCF. *See Quality Jeep Chrysler, Inc. v. Chrysler Group, LLC*, 2010 U.S. Dist. LEXIS 145005, at *13-14 (D. New Mexico March 22, 2011) (dismissing defendant who was not a necessary party from declaratory judgment claim because court could afford complete relief in that defendant's absence); *Discover Prop. & Cas. Ins. Co. v. Collective Brands, Inc.*, 2008 U.S. Dist. LEXIS 54705, at *23-34 (D. Kansas July 15, 2008) (*citing Salt Lake Tribune Publishing Co. v.*

*AT&T*, 320 F.3d 1081 (10th Cir. 2003) (same)). Given Plaintiff has not made a claim for monetary damages, the absence of BCCF Defendants would not impede the Court from granting him the complete *injunctive* relief requested in his Amended Complaint. Consequently, BCCF Defendants are not necessary parties to this matter, and Plaintiff's claims against them should be dismissed.

### C. Plaintiff's Claims Fail for Lack of Personal Participation.

Plaintiff's claims against BCCF Defendants fail for lack of personal participation. "Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997). The Tenth Circuit has repeatedly held in § 1983 actions, specific factual allegations regarding the elements of each claim are particularly important, because "state actors may only be held liable under § 1983 for their own acts." *Davis v. CoreCivic, Inc.*, 2020 U.S. Dist. LEXIS 209076, *12-13 (E.D. Okla. November 9, 2020) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1251 (10th Cir. 2008). "[I]t is particularly important in such circumstances that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Robbins*, 519 F.3d at 1250 (citation omitted) (emphasis in original).

A defendant may not be held liable for the unconstitutional conduct of his or her subordinates on a theory of respondeat superior. *Ashcroft*, 556 U.S. at 676 (2009). While a defendant can be liable in a § 1983 action based on his or her supervisory responsibilities, this type of claim must be supported by allegations demonstrating

personal involvement, a causal connection to the constitutional violation, and a culpable state of mind. **Schneider v. City of Grand Junction Police Dep't.**, 717 F.3d 760, 767-69 (10th Cir. 2013).

Additionally, while inmates retain protections afforded by the First Amendment including its directive no law shall prohibit the free exercise of religion, these protections are not without reasonable limitations. **Kay v. Bemis**, 500 F.3d 1214, 1218 (10th Cir. 2007) (quoting **O'Lone v. Estate of Shabazz**, 482 U.S. 342, 348 (1987)). "The Supreme Court has cautioned that prison inmates are also subject to the 'necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'" **Id.** Prison administrators, not the courts, should "make the difficult decisions concerning institutional operations…" **Turner v. Safley**, 482 U.S. 78, 89 (1987); *see* **Shaw v. Murphy**, 532 U.S. 223, 229-30 (2001) (quoting **Pell v. Procunier**, 417 U.S. 817, 822 (1974)) (in the First Amendment context, "some rights are simply inconsistent with the status of a prisoner or 'with the legitimate penological objectives of the corrections system.'").

To allege a constitutional violation based on a free exercise claim, a prisoner-plaintiff must survive a two-step inquiry. **Kay**, 500 F.3d at 1218. "First, the prisoner-plaintiff must first show that a prison regulation 'substantially burdened…sincerely-held religious beliefs.'" **Id.** (quoting **Boles v. Neet**, 486 F.3d 1177, 1182 (10th Cir. 2007)). A "substantial burden" is one that: (1) significantly inhibits or constrains plaintiff's religious conduct or expression, (2) meaningfully curtails plaintiff's ability to express adherence to his faith, or (3) denies plaintiff reasonable opportunity to engage in fundamental religious activities.

*Vasquez v. Ley*, 1995 U.S. App. LEXIS 32707, at *7 (10th Cir. 1995) (citations omitted). "Second, prison officials-defendants may 'identif[y] the legitimate penological interests that justif[ied] the impinging conduct." *Id.* The burden then returns to the prisoner to show the articulated concerns were irrational. *Id.* at 1219 n.2.

    1.  Claim One

        The crux of Plaintiff's first claim is that BCCF Defendants unlawfully denied Plaintiff the right to possess personal religious items pursuant to CDOC policy. [ECF 66 at 8, ¶¶ 8 & 9; at 13, ¶¶ 59, 63, 65, & 72 (alleging a number of CDOC employees, relying on CDOC's policy AR-800-01 and AR Form 800-01G (Allowable Personal Faith Property) "denied [Plaintiff's] request to possess personal sacred objects" and "without performing his required duties", "failed his duties"]. Plaintiff's claim relies entirely on conclusory allegations BCCF Defendants personally participated in this denial. In reality, however, BCCF Defendants were following instructions from CDOC employees and CDOC policies. Plaintiff does not specify how each BCCF Defendant violated Plaintiff's constitutional rights. While he references issues pertaining to grievances, he does not allege who denied any grievance or why any grievance was denied. Regardless, it is well-established the denial of a grievance is insufficient to establish liability under § 1983. *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (citations omitted) ("a denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by [a] plaintiff, does not establish personal participation under § 1983."). Ultimately, Plaintiff's claim against BCCF Defendants fails because it is based on the unlawful denial of his request to CDOC employees for personal faith items pursuant to CDOC policy. Plaintiff does not allege (nor could he) BCCF Defendants were involved in

9

the creation of CDOC policy or had the authority either to depart from or change the requirements and restrictions of CDOC policy. [ECF 66 at 8, ¶¶ 8 & 9; at 13, ¶¶ 59, 63, 65, & 72].

    2.  <u>Claim Two</u>

In his second claim, Plaintiff alleges BCCF Defendants violated his rights by refusing to pay for materials used in Plaintiff's religious services.  [ECF 66 at 15, ¶ 80]. Again, personal participation is lacking here.  Plaintiff fails to show any BCCF Defendant personally participated in this alleged constitutional violation for merely reciting a CDOC policy.  Notably, Plaintiff does not allege any BCCF Defendant was involved in the creation of the CDOC policy at issue or had the authority to change this policy.

Additionally, Plaintiff's second claim fails to establish a constitutional violation, based on the free exercise clause by refusing to provide materials needed for religious ceremonies free of charge.  This is insufficient to establish a plausible free exercise claim as "[p]risons do not have an affirmative duty to provide religious materials or other religious articles free of charge to inmates." ***Hamlin v. Smith***, 2010 U.S. Dist. LEXIS 69205, at *21 (D. Colo. July 12, 2010) (citing ***Cutter v. Wilkinson***, 544 U.S. 709, 720 n.8 (2005)).  While BCCF is not permitted to substantially burden Plaintiff's religious beliefs, it is not required to affirmatively subsidize religion through the purchase of religious materials. *See **Slater v. Teague***, 2018 U.S. Dist. LEXIS 63605, at *19 (D. Colo.  2018) ("Correctional facilities are not required to subsidize inmates' access to religious materials.").

### 3.  Claim Three

Plaintiff's third claim does not appear to assert any allegations against BCCF Defendants pertaining to a violation of his rights by refusing to allow Plaintiff to spiritually cleanse his cell or embellish objects like headbands or medicine bags.  [ECF 66, at 17-19, ¶¶ 105-126 (all allegations appear to be asserted against CDOC Defendants)].  In any event, based on the allegations in Plaintiff's Amended Complaint, it appears Plaintiff's claim is based on the denial of his request to amend CDOC policy, something BCCF Defendants cannot do. [*Id.* at 17, ¶ 105 (this claim centers around Plaintiff's request to amend AR 800-01)].  Plaintiff does not allege any BCCF Defendant was involved in the creation of this policy or had the authority to amend this policy.  As such, Plaintiff has not shown any BCCF Defendant personally participated in this alleged violation.

### 4.  Claim Four

Plaintiff acknowledges the issue in this claim is due to a "loophole" in CDOC policy concerning funds donated for the purpose of assisting Native Americans for the purchase of materials used in their respective rituals and his request to fix this "loophole" has not be accepted.  [*Id.* at 19, ¶¶ 131, 134, & 135].  As with the claims discussed above, Plaintiff does not allege any BCCF Defendant was involved in the creation of this policy or had the authority to amend/change this policy.  As such, Plaintiff has not shown any BCCF Defendant personally participated in this alleged violation.

Additionally, Plaintiff alleges BCCF Defendants violated the First Amendment Free Exercise Clause by failing to take proper steps to protect firewood purchased by donations from Plaintiff (as well as others) on behalf of the Native American faith group. Importantly, "isolated acts of negligence" are insufficient to establish a substantial burden,

11

App 180

*Gallagher*, 587 F.3d at 1070, and plaintiff must allege more than a mere inconvenience on his free exercise rights.  *Strope v. Cummings*, 381 F. App'x 878, 882 (10th Cir. 2010). When an alleged deprivation is "the result of a sporadic or isolated incident," it merely constitutes an "inconvenience."  *Slater*, 2018 U.S. Dist. LEXIS 63605, at *8-9 (citations omitted).

Even assuming Plaintiff's allegations are sufficient to establish a continuous deprivation, which BCCF Defendants dispute, Plaintiff has not shown BCCF Defendants' conduct amounted to more than mere negligence by failing to protect the firewood from theft by third parties.  [ECF 66, at 20, ¶ 135 (allegations are that some unknown "staff or other faiths had taken firewood" which, again, is allowed by CDOC policy)].  Negligence is insufficient to state a claim under § 1983. *Gallagher*, 587 F.3d at 1070. Moreover, Plaintiff has not alleged any of the BCCF Defendants were involved in the firewood thefts or that their policies or actions were intended to intentionally interfere with Plaintiff's firewood. *See Slater*, 2018 U.S. Dist. LEXIS 63605, at *9 ("the substantial burden must be a result of a defendant's 'intentional interference' with the plaintiff's free exercise rights 'to state a valid claim under § 1983'—negligence is not sufficient.").

5.  Claim Five

Claim Five of Plaintiff's Amended Complaint alleges BCCF Defendants "embezzled" money donated by Plaintiff, "denying him the opportunity to participate in" his religious ceremonies.  [*Id.* at 20, ¶ 138].  As with Plaintiff's other claims, the permitted uses of donated funds are set forth in a CDOC policy, as Plaintiff admits.  [*Id.* ¶ 139]. Additionally, Plaintiff's bald assertion of embezzlement is speculative, conclusory, and

unsupported at best.  As such, the Court must disregard it in ruling on this Motion to Dismiss.  *Ashcroft*, 556 U.S. at 664.

Plaintiff further alleges BCCF Defendants violated the free exercise clause by purchasing firewood from one vendor who charged high prices and provided "kick-backs" to BCCF Defendants.  [ECF 66 at 20, ¶ 140].  Plaintiff provides nothing but conclusory assertions related to his belief a "kick back" occurred.  Although Plaintiff's preference, perhaps, is for firewood from a different vendor at a lower price, he does not allege facts showing his religious practices were substantially burdened by the quality of firewood or the price paid for such wood.  Indeed, Plaintiff does not allege the firewood did not burn or he was otherwise unable to use the firewood for ceremonies other than the lack of firewood at times as discussed above.  As such, Plaintiff has failed to show that this practice (1) significantly constrained his religious expression, (2) meaningfully curtailed his ability to express adherence to his faith, or (3) denied him a reasonable opportunity to engage in fundamental religious activities. *Vasquez*, 1995 U.S. App. LEXIS 32707, at *7.

6.    Claim Six

Plaintiff's sixth claim alleges constitutional violations arising from restrictions issued in response to COVID-19.  [ECF 66 at 21, ¶ 149 (timeframe of this claim is the time of COVID 19 restrictions)].  Plaintiff specifically attributes these policies to Governor Polis and CDOC employees and does not allege any of the BCCF Defendants were involved in the creation of these policies.  [*Id.* ¶ 152 (Governor Polis and CDOC employees were the "policy enforcer, to enforce the [] lockdown.").  As no BCCF

13

Defendant was involved in the policy decisions pertaining to COVID 19, Plaintiff has again failed to provide any basis to conclude BCCF Defendants personally participated in the alleged violations.

      7.   <u>Claim Seven</u>

      The United States Supreme Court, in ***Turner v. Safley***, 482 U.S. 78, 84, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), made clear that it is not the role of the judiciary to scrutinize and interfere with the daily operations of a prison, and retaliation jurisprudence does not change this role.  Obviously, an inmate is not inoculated from the normal conditions of confinement experienced by convicted felons serving time in prison merely because he has engaged in protected activity.  Accordingly, a plaintiff "must prove that 'but for' the retaliatory motive, the incidents to which he refers, including the disciplinary action, would not have taken place."  ***Smith v. Maschner***, 899 F.2d 940, 949-50 (10th Cir. 1990).  An inmate claiming retaliation must "allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights."  ***Frazier v. Dubois***, 922 F.2d 560, 562 n. 1 (10th Cir. 1990).

      The allegations in Plaintiff's seventh claim center on Plaintiff's perception that BCCF staff's actions were all taken in retaliation for his pursuit of this litigation, even though most of the staff involved with Plaintiff's Code of Penal Disciplinary ("COPD") actions were not Defendants in this action and no allegations suggest any of them actually knew about the lawsuit at the time they participated in the COPD proceedings.  The courts "have held that [p]rison officials may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights.  This principle applies even where the action taken in retaliation would be otherwise permissible."  ***Peterson v. Shanks***, 149

14

App 183

F.3d 1140, 1144 (10th Cir. 1998) (quotations and citation omitted; alteration in original).

Nonetheless,

> an inmate is not inoculated from the normal conditions of confinement experienced by convicted felons serving time in prison merely because he has engaged in protected activity.  Accordingly, a plaintiff must prove that 'but for' the retaliatory motive, the incidents to which he refers ... would not have taken place.  An inmate claiming retaliation must allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights.

*Id.* (quotations and citation omitted).

Plaintiff's claim of retaliation for the pursuit of this lawsuit is insufficient to state a cognizable claim.  Plaintiff fails to show that, "but for" the alleged retaliatory motive, he would have been treated differently.  *See Smith v. Maschner*, 899 F.2d 940, 949-50 (10th Cir. 1990).  Plaintiff presents no allegations to support a reasonable inference that any BCCF Defendant's allegedly retaliatory motives were the "but for" cause of their actions.  Plaintiff's litigation efforts have ranged over such a lengthy period, timing alone belies Plaintiff's conclusory and speculative claims of retaliation.  As a matter of fact, Plaintiff fails to establish any link between any BCCF staff and the BCCF Defendants who are part of this suit.

Here, Plaintiff never links this alleged harassment with any inappropriate motivation on the part of any BCCF Defendant other than asserting in conclusory fashion that everyone, including staff who are not parties to this action, conspired to retaliate against him.  Thus, Plaintiff's claim fails to allege any facts sufficient to support a claim of retaliation as a matter of law.

Specifically, Plaintiff alleges he received COPD charges as retaliation for this litigation.   However, Plaintiff asserts allegations that would support the COPD guilty findings.  [*See*, *e.g.*, ECF 66 at 24, ¶¶ 181-194 (Plaintiff admits through his allegations he was told restrictions were still in place at BCCF, was then ordered to return to his Unit, refused to obey this order which required a response team to be called resulting in COPD charges for disobeying an order and creating a facility disturbance)].

Additionally, Plaintiff's retaliation claim is also precluded because it directly challenges his COPD convictions as any determination by this Court his COPD charges were retaliatory would invalidate those convictions.  The basis for granting dismissal of Plaintiff's retaliation claim is Plaintiff's claim is barred as implicating the validity of his prison disciplinary convictions, a finding that has never been invalidated.  Plaintiff admits that he was charged and convicted of COPD violations and that such violations were upheld and, as of this date, are still valid convictions.  [*Id.* at 26, ¶ 205, at 28, ¶¶ 218-221 (admitting all his convictions were not overturned on appeal and are still valid convictions)].

Plaintiff's seventh claim is prohibited because it directly challenges the legitimacy of his prison disciplinary convictions.  In ***Preiser v. Rodriguez***, 411 U.S. 475 (1973), the Supreme Court addressed whether a prisoner could bring a § 1983 claim challenging the removal of good time credits.  The Court held 42 U.S.C. § 1983 was not an appropriate vehicle for such a challenge because good-time credits affect the length of a prisoner's sentence, and the exclusive federal remedy for challenging the length of a sentence is a habeas corpus action.  *Id.* at 487.

Similarly, in **Heck v. Humphrey**, 512 U.S. 477 (1994), the Supreme Court held that a prisoner cannot bring a 42 U.S.C. § 1983 claim that implicates the validity of a criminal conviction in state court until the conviction has been invalidated.  *See also* **Beck v. City of Muskogee Police Dept.**, 195 F.3d 553, 556-57 (10th Cir. 1999).  Specifically, **Heck** held that:

> when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence;  if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

512 U.S. at 487 (footnotes omitted).  The Supreme Court explained requiring a plaintiff to establish as a threshold requirement that the challenged conviction or sentence was somehow invalidated would prevent convicted criminals from utilizing § 1983 as a vehicle for launching collateral attacks on criminal convictions.

In **Edwards v. Balisok**, 520 U.S. 641 (1997), the Court found the principles of **Heck** barred a prisoner from using § 1983 as a vehicle for challenging the legitimacy of his conviction for a prison disciplinary violation.  Unless and until the prison disciplinary conviction was overturned, the Court held, the plaintiff could not seek monetary damages from any alleged procedural irregularities during the disciplinary proceedings.

Here, Plaintiff's retaliation claim directly challenges the basis of his COPD convictions.  He claims the charges on which he was convicted were falsified and brought in retaliation for his filing of this suit.  To prevail on this claim, Plaintiff must establish BCCF Defendants, along with numerous BCCF staff not a party to this action, trumped up charges against him in connection with his disciplinary convictions.  Therefore, for a

jury to find for Plaintiff, it would have to conclude Plaintiff did not violate the COPD but was set up by BCCF Defendants, and other BCCF staff, as retaliation for Plaintiff's filing of this suit.  Such a finding would necessarily call into question Plaintiff's disciplinary convictions, which have not been invalidated.

For these reasons, Plaintiff's seventh claim implicates the validity of his disciplinary conviction.  Therefore, his claim is barred pursuant to *Heck* and *Edwards*.  For this additional reason, this Court must dismiss Plaintiff's seventh claim as a matter of law.

## II.  CONCLUSION

WHEREFORE, for the reasons set forth above, as well as based on the analysis contained in this Court's Order dated March 15, 2022, BCCF Defendants Jerry Roark, David Hestand, Steven Salazar, Clara Casebolt, Larry Cox, Justin Arrasmith, Derick Dockter, Luke Holland, Tiffany Saldana, and Colin Carson respectfully request the Court dismiss Plaintiff's claims against them pursuant to Fed. R. Civ. P. 12(b)(1) and (6) and provide any further relief the Court deems just and necessary.

Dated this 13th day of June, 2022.

Respectfully submitted,

*s/ Edmund M. Kennedy*
Edmund M. Kennedy, Esq.
Katherine N. Hoffman, Esq.
Andrew D. Ringel, Esq.
Hall & Evans, L.L.C.
1001 17th Street, Suite 300
Denver, Colorado 80202
Tel:  (303) 628-3300
Fax:  (303) 628-3368
Email:  ringela@hallevans.com
        kennedye@hallevans.com
        hoffmank@hallevans.com

18

App 187

**ATTORNEYS FOR DEFENDANTS JERRY ROARK, DAVID HESTAND, STEVEN SALAZAR, CLARA CASEBOLT, LARRY COX, JUSTIN ARRASMITH, DERICK DOCKTER, LUKE HOLLAND, TIFFANY SALDANA AND COLIN CARSON**

19

## <u>CERTIFICATE OF SERVICE (CM/ECF)</u>

I HEREBY CERTIFY that on the 13th day of June 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

**Philip T. Barrett, Esq.**
Colorado Attorney General's Office
Philip.barrett@coag.gov

and hereby certify that I have mailed the document to the following non-CM/ECF participant via U.S. mail:

**Rodney Douglas Eaves, #173190**
Bent County Correctional Facility (BCCF)
11560 Road FF75
Las Animas, CO 81054-9573

<u>*s/ Erica Cameron*</u>, Legal Assistant to
Hall & Evans, L.L.C.

20

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-CV-01269-KLM

RODNEY DOUGLAS EAVES, Plaintiff,

V.

JARED POLIS, et al., Defendants.

**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

JUL 11 2022

JEFFREY P. COLWELL
CLERK

## OPPISITION TO BCCF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT [DOC 79]

### ARGUMENT

**A.** Response to, Plaintiff's Official Capacity Claims Against BCCF Defendants Must Be Dismissed Because BCCF Defendants Have No Official Capacity Under 42 U.S.C. § 1983 as Private Prison Employees. .

Eaves agrees with BCCF Defendants for claims in their offical capacity. However, BCCF Defendants are still liable for their own actions in their individual capacities and are subject to compensatory and punitive damages. Richardson v. McKnight, 521 U.S. 399, 412 (1997); See also Quern v. Jordan, 440 U.S. 332, 338-40 (1979) (State officals enjoy Eleventh Amendment immunity from damages suits under 1983, private prison employees are fully exposed to the numerous civil suits brought by inmates).

**B.** Response to, BCCF Defendants Are Not Necessary Parties to This Lawsuit Because Plaintiff Can Achieve the Requested Relief from Other Defendants.

Eaves may be able to achieve injunctive relief against BCCF Defendants through CDOC. However, BCCF Defendants are still liable for their personal participation in Eaves' constitutional deprivations. Also, BCCF Defendants are being sued for nominal, compensatory and punitive damages. These forms of relief cannot be recovered from CDOC Defendants. Only BCCF can be liable for these forms of relief.

Pg 1 of 6

**C.** Response to, Plaintiff's Claims Fail for Lack of Personal Participation.

Eaves asserts he has pled sufficient facts, taken as true, to indicate BCCF Defendants have personally participated in the violation of Eaves' First, Eight and Fourteenth Amendment rights.

CLAIM ONE: Eaves claims BCCF Defendants violated both his First and Fourteenth Amendment rights. In the Amended Complaint Eaves states CC can and does create their own policies. [Doc 66 at 7, ¶ 4]; See also Doc 76, Exhibit A at 75, "Administrative Regulation Implementation/Adjustments". (showing a private contractor can make adjustments to CDoc policy, AR 800-01).[1]

Eaves asserts Defendants Hestand and Salazar did not do their duties when Eaves raised his concerns. [Doc 66 at, 8 ¶¶ 6, 7]. (See also Doc 76, Exhibit A at 53 "Faith and Citizen Programs Facility Monthly Chaplain Report" indicating that Hestand can comment on concerns and issues related to religious services (Bullets 1 and 9). Defendant Salazar as BCCF's administrative head/designee is "in consultation" with Faith and Citizen Programs and is suppose to have a communication with the Native American faith community. [Doc 76, Exhibit A at 41, ¶¶ K, M]. The authority of AR 800-01 is based on: "First Amendment," "(RLUIPA)," "Cruz vs. Beto, 405 U.S. 319 (1972)," and "C.R.S. 17-42-101, Freedom of Worship." [Doc 76, Exhibit A at 49].

CLAIM TWO: Hestand had a deliberate indifference to Eaves missing ceremonies because he failed to maintain or develop communication within the Native American Faith community. [Doc 66 at 15, ¶¶ 79-84]. Defendant Salazar failed his duty to supervise Hestand. [Id at 15, ¶ 85]. When Eaves complained to Salazar about Hestand, he threatend Eaves with retaliation for filing complaints. [Id at 23, ¶ 167].

CLAIM FOUR: Roark, Hestand and Salazar were directly responsible for tracking and maintaining purchases for Native American faith materials and preventing the theft of those materials. [Id at 20, ¶¶ 127-30; 132-35].

CLAIM FIVE: Hestand is directly responsible for the theft of inmate funds that were to be used to purchase Native American faith materials. [Id at 20-21, ¶¶ 136-48].

CLAIM SIX: Roark, Salazar and Hestand were directly responsible for denying Eaves access to the faith grounds so he could not adhere to his faith tenet. Even after COVID-19 restrictions were lifted, BCCF Defendants continued to deny Eaves access to the faith grounds. [Id at 22, ¶¶ 154-56; 159-62].

---

1. AR 800-01 is mentioned in Eaves' Amended Complaint and the Court may take judicial notice of CDoc's Administrative Regulations. See Reynolds v. Colo. Dep't of Corrs., No. 12-cv-02558-PAB-KMT, 2015 WL 5168783, at *2 n. 4 (D. Colo. Sept. 3, 2015).

CLAIM SEVEN: Salazar threatened Eaves with retaliation. [id at 23, ¶167]. Then after filing suit Eaves received C.O.P.D. charges, lost his privileges, his property taken, and was forced not to adhere to his faith by being denied to wear his Eagle Feathers. All this was perpatrated by the remaining Defendants Hestand, Casebolt, Cox, Arrasmith, Dockter, Carson, Holland, Saldana, and Britton. [id at 23-29, ¶¶ 173-236]. Cox personally violated Eaves' Equal Protection because when other faith programs were reinstated for all of CDoc and BCCF, he denied Eaves access to the faith grounds. [id at 25, ¶ 192].

Eaves does not challenge his C.O.P.D. conviction. The C.O.P.D. convictions are used to establish facts about the retaliatory motives of the Defendants. [id at 28, ¶ 219]. Specifically, even noting "the initial objective of Mr. Hestand and Mrs. Casebolt was to retaliate against me [id at 28, ¶ 205]," "I was not found guilty of [charge] II-14." [id at 28, ¶ 204]. No where in Claim Seven does Eaves challenge his C.O.P.D. conviction. Nor in his requests for relief does Eaves ask the Court to overturn his C.O.P.D. conviction. [id at 31-33]. The damage is already done and now Eaves seeks compensatory and punitive damages and not the reversal of the C.O.P.D. convictions.

## LEGAL STANDARD

Incarcerated individuals "retain fundamental constitutional rights," including "the reasonable opportunity to pursue one's religion as guaranteed by the Free Exercise Clause of the First Amendment." Williams v. Wilkinson, 645 F. App'x 692, 703-04 (10th Cir. 2016) (quoting Makin v. Colo. Dep't of Corr. 183 F.3d 1205, 1209 (10th Cir. 1999)).

In order to establish a constitutional violation of Free Exercise of religion, Eaves bears the initial burden of demonstrating that the restriction substantially burdened his sincerely held religious beliefs. Boles v. Neet, 486 F.3d 1177, 1182 (10th Cir. 2007). A "substantial burden" as one that "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs," Thomas v. Review Bd. of Indiana Employment Sec. Div., 450 U.S. 707, 718 (1981), or one that forces a person to "choose between following the precepts of her religion and forfeiting [governmental] benefits, on the one hand, and the abandoning one of the precepts of her religion... on the other hand." Sherbert v. Verner, 374 U.S. 398, 404 (1963).

The Fourteenth Amendment guarantees "[n]o state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. 14, Sec.1. There is no "express requirement of a particular state of mind" for a § 1983 prima facie case. Parratt v. Taylor, 451 U.S. 527 (1986). "[T]he two essential elements to a § 1983 action are present: (1) whether the conduct complained of was committed by a person acting under color of state law; and

Pg 3 of 6

(2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution." id 451 U.S. at 535.

Due Process requires an opportunity to be heard at a meaningful time and in a meaningful manner; citizens must be afforded due process before deprivation of life, liberty or property. See Mathews v. Eldridge, 424 U.S. 319, 333 (1976). Due Process violations requires a purposeful state of mind. Defendants must have an obvious intent to harm the decedent or to worsen his situation after an "opportunity for reflection." The element of arbitrary conduct to shock the conscience is fulfilled when after reflection the conduct serves no legitimate [penological] objective. See County of Sacramento, 118 S.Ct. at 1711

Equal Protection of laws extends to the incarcerated, Lee v. Washington, 390 U.S. 333, (1968), and a state may create more comprehensive due process protections for its residents than does the federal government. Jurasek v. Utah State Hosp., 158 F.3d 506 (10th Cir. 1998). However, "[C]lassifications ... like those based on nationality or race, are inherently suspect and subject to close judicial scrutiny." Graham v. Richardson, 403 U.S. 365, 372 (1971).

Defendants Hestand, Salazar, and Roark were the "gatekeepers" to Eaves' First Amendment rights. Based on the Amended Complaint Eaves asserts Defendants knew he was a Native American. [Doc 66 at 7-8, ¶¶ 5-7. and at 11, ¶¶ 42-44]. "American Indian" is defined as a religion in both AR 800-01 and C.R.S. 17-42-102, making no distinction between race and a religion. After careful opportunities for reflection the Defendants chose to ignore their constitutional and statutory duties to protect Eaves' rights. This lead to a total denial for Eaves to practice his faith. A total or flat denial creates a substantial burden and violates the First Amendment. Strope v. Cummings, 381 Fed. Appx. 878*, 882*; 2010 U.S. App. LEXIS 11806**,

When Eaves attempted to use the administrative processes available to him, superiors threaten him with reprisal and say they don't have to address his concerns anyway because the Colorado Constitution can deny "Indians" what ever they want. Meanwhile, Christian, Muslim, and Jewish faiths have all their needs met. "Personal liability under § 1983 must be based on personal involvement in the alleged constitutional violation." Williams, 645 F. App'x at 705 (quoting Brown v. Montoya, 662 F.3d 1152, 1163 (10th Cir. 2011), In other words, "[T]here must be an affirmative link between the alleged constitutional violation and each defendant's participation, control or direction, or failure to supervise." Aguilar v. Colorado Dept of Corr., Civil Action No. 16-00509-GPG, 2016 U.S. Dist. LEXIS 54843, 2016 WL 1626024, at *1 (D. Colo. Apr. 25, 2016) (citing Butler v. City of Norman, 992 F.2d 1053, 1055 (10th Cir. 1993)).

To the extent Eaves is relying upon a theory of Salazar's and Roark's liability, Eaves "must plead: (1) [that] Defendant[S] promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional

deprivation." _Williams_, 645 F. App'x at 705 (quoting _Dodds v. Richardson_, 614 F.3d 1185, 1199 (10th Cir. 2010)).

Eaves alleged in his Amended Complaint that both Salazar and Roark could have changed policy. Not only using CoreCivic policy, but after CDOC Defendants filed their Motion to Dismiss, they made it clear per the AR 800-01 policy, Form 100-01A, that these Defendants could have changed policy. [Doc 76, Exhibit A at 37]. Instead, they denied Eaves' requests and even threatened him with C.O.P.D. charges if he kept filing grievances. Accordingly, under a supervisory liability theory here, Eaves first "identif[ied] the specific policies over which" the Defendants were responsible "that led to the alleged" First Amendment violation, and then Eaves "establish[ed] a deliberate, intentional act" by the Defendants to violate Eaves' First Amendment rights. _Williams_, 645 F. App'x at 706 (first quoting _Pahls v. Thomas_, 718 F.3d 1210, 1226 (10th Cir. 2013), then quoting _Porro_, 624 F.3d at 1327-28).

While other faiths had their post Covid religious services reinstated, Hestand, Casebolt, and Cox, chose to continue to deny Eaves access to the faith grounds even after CDOC gave an order to reinstate religious services. This action is clearly intentional to violate Equal Protection and prevent Eaves from Free Exercise.

After Eaves filed suit Defendants Hestand, Casebolt, Arrasmith, Dockter, Holland, Carson, and Saldana all participated in the retaliation against Eaves. Carson and Saldana specifically violated Eaves' Due Process rights by preventing his C.O.P.D. conviction from being appealed in violation of State statue and policy. [Doc 66 at 28, ¶¶ 219-21].

Defendants CDOC filed their motion to dismiss and indicated by their motion that other Native Americans in CDOC facilities are allowed to wear their Eagle feathers. See Doc 76 at 6-7. However, Defendants Arrasmith and Britton will not allow Eaves to wear his Eagle feathers unless he wants them confiscated. This clearly violates Equal Protection. [Doc 66 at 29, ¶¶ 229-35].

Defendants Hestand and Salazar did not develop or maintain communication with any Native American faith community. This prevented Eaves from obtaining donations so he could practice his faith. Then when donations were not available he would donate his personal funds to the Native American faith fund account so materials could be bought and Hestand would take the money thereby denying Eaves the ability to adhere to his faith practices. All these allegations are covered in the Amended Complaint and where personally perpetrated their involvement in Eaves' constitutional violations

CONCLUSION

Eaves has alleged sufficient facts to establish BCCF Defendant's personal involvement in Eaves' constitutional violations. For the reasons set forth above, Eaves would respectfully move the Court to DENY BCCF Defendants Motion to Dismiss, [Doc 79].

Respectfully submitted this    day of July, 2022.

_____
Plaintiff, Rodney Eaves

---

CERTIFICATE OF SERVICE

I Rodney Eaves, certify that on _____ I placed the Opposition to BCCF Defendant's Motion to Dismiss Plaintiff's Amended Complaint [Doc 79], by placing it in the BCCF internal mail system, postage pre-paid for the U.S. mail, and addressed to the following:

Hall & Evans, L.L.C.
C/o: Edmund M. Kennedy
     Katherine N. Hoffman
     Andrew D. Ringel

1001 17th St., Suite 300
Denver, CO. 80202

_____
Plaintiff, Rodney Eaves

Pg 6 of 6

App 195



US POSTAGE ~PITNEY BOWES

$ 000.20⁰

ZIP 81054
02 4W
0000358347 JUL 07 2022

**Colorado Department Of Corrections**

Name Rodney Eaves

Register Number 173190

Unit BCCF

Box Number 11596 County Rd. FF75

City, State, Zip Las Animas, Co. 81054

LEGAL MAIL

JUL 05 2022

U.S. District Court
901 19th St., Room A105
Denver, Co. 80294-3589

LEGAL MAIL

JUL 05 2022

BCCF   7/5/22
FACILITY   DATE REC'D
DOC EMPLOYEE LAST NAME   ID #   INT
Lewis   41678614   S
DOC #   OFFENDER LAST NAME   INT
173190   Eaves   RL

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-01269-KLM

RODNEY DOUGLAS EAVES,

      Plaintiff,

v.

JARED POLIS,
DEAN WILLIAMS,
TRAVIS TRANI,
GYPSY KELSO,
ANTHONY A. DECESARO,
MARSHALL GRIFFITH,
JERRY ROARK,
DAVID HESTAND, and
STEVEN SALAZAR,

      Defendants.

---

## BCCF DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

---

      Defendants Jerry Roark, David Hestand, Steven Salazar, Clara Casebolt, Larry Cox, Justin Arrasmith, Derick Dockter, Luke Holland, Tiffany Saldana, and Colin Carson (collectively, "BCCF Defendants"), by and through their counsel, Andrew D. Ringel, Esq., Edmund M. Kennedy, Esq., and Katherine N. Hoffman, Esq. of Hall & Evans, L.L.C., submit this Reply in Support of their Motion to Dismiss Plaintiff's Amended Complaint [ECF 66], as follows:

      1.      On June 13, 2022, BCCF Defendants filed a Motion to Dismiss Plaintiff's Amended Complaint.  [ECF 79].  BCCF Defendants moved for dismissal of all claims against them based on the fact Plaintiff is in the custody of the Colorado Department of Corrections ("CDOC") and his claims challenge CDOC policies that apply to prisoners

App 197

housed at BCCF, which is operated by CoreCivic, "a private, for-profit, business corporation, listed on the New York Stock Exchange, in the business of, among other things, the private management of prisons and other correctional facilities under contract with" the State of Colorado, among other municipal entities. ***Phillips v. Tiona***, 508 Fed. Appx. 727, 750-51 (10th Cir. Jan. 23, 2013) (discussing CoreCivic's prior name Corrections Corporation of America ("CCA")). "The State of Colorado contracts with CoreCivic pursuant to state statute authorizing the CDOC 'to permanently place state inmates classified as medium custody and below in private prisons,' Colo. Rev. Stat. § 17-1-104.9, subject to legislation comprehensively regulating such prisons." ***Id.*** The State of Colorado requires private prisons to, among other things, "abide by operations standards for correctional facilities adopted by the executive director of the department of corrections." C.R.S. § 17-1-202(1)(e). "Notably, inmates assigned to private prisons remain officially in the custody of the CDOC[.]" ***Phillips,*** 508 Fed. Appx. at 751.

2.     Although BCCF is a privately-run correctional facility, CDOC remains intimately involved.  For instance, the duties of the CDOC Executive Director specifically include the authority to "monitor and supervise the activities of private contract prisons." C.R.S. §17-1-103(a).

3.     In his Amended Complaint, Plaintiff alleges several instances where he claims his religious practices were substantially burdened by CDOC and BCCF employees, while admitting all of the BCCF employees relied on CDOC regulations for the denial of Plaintiff's various requests.  [*See*, *e.g.*, ECF 66 at 8, ¶ 8, (Claim One asserts State Defendants, including CDOC employees, denied his request along with BCCF

Defendants, based on CDOC policies, thus violating his rights); *id.* at 15-16, ¶¶ 81, 86, 90, 96, and 99 (Claim Two asserts State regulations, statutes, and employees, including CDOC employees, denied his request along with BCCF Defendants, based on CDOC policies, thus violating his rights); *id.* at 17-19, ¶¶ 106, 107, 108, & 125 (Claim Three asserts State employees, including CDOC employees, denied his request along with BCCF Defendants, based on CDOC policies, thus violating his rights); *id.* at 19-20, ¶ 131 (Claim Four alleges CDOC policies created a "loophole" that allows the violation of Plaintiff's rights); *id.* at 20—21, ¶ 139 (Claim Five asserts a BCCF employee stole money donated by Plaintiff while also admitting CDOC regulations do not allow inmates to claim money donated as their own but are part of a common fund to be used for various reasons); *id.* at 21, ¶ 152 (Claim Six alleges the enforcement of CDOC policy by various CDOC and BCCF staff violate Plaintiff's rights)].  Plaintiff alleges he was denied his rights through procedures set forth in CDOC policies, including the right to possess personal religious items and the right to perform religious ceremonies.  [*Id.*].

4.      Additionally, Plaintiff alleges a seventh claim of retaliation which is precluded because the claim directly challenges Plaintiff's COPD convictions and any determination by this Court his COPD charges and convictions were retaliatory would invalidate those convictions.

5.      Based on the arguments presented in the Motion, BCCF Defendants respectfully request this Court again dismiss all the claims against them in their entirety with prejudice.

## <u>REPLY</u>

**A. Plaintiff's Official Capacity Claims Against BCCF Defendants Must Be Dismissed Because BCCF Defendants Have No Official Capacity Under 42 U.S.C. § 1983 as Private Prison Employees.**

6.      In his Response, Plaintiff concedes his official capacity claims against BCCF Defendants should be dismissed.  [ECF 83 at 1].

**B.      BCCF Defendants Are Not Necessary Parties to This Lawsuit Because Plaintiff Can Achieve the Requested Relief from Other Defendants.**

7.      In his Response, Plaintiff also concedes he can "achieve injunctive relief against BCCF Defendants through CDOC."  [*Id.*].   As such,  any claim for injunctive relief against BCCF Defendants must also be dismissed as a matter of law.

**C.      Plaintiff's Claims Fail for Lack of Personal Participation.**

8.      As discussed in more detail in the Motion, Plaintiff's claims against BCCF Defendants fail for lack of personal participation.  "Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." ***Foote v. Spiegel***, 118 F.3d 1416, 1423 (10th Cir. 1997).  [ECF 79 at 7-14 (discussing in detail each of Plaintiff's claims)].

9.      Plaintiff's Response to the lack of personal participation is to argue BCCF Defendants were the ones to inform Plaintiff CDOC policies did not allow them to provide Plaintiff with his requests.  [*Id.*].

10.      Plaintiff's theory is  a case of "shoot the messenger."  As discussed in the Motion, Plaintiff does not allege BCCF Defendants participated in the development of CDOC polices but merely were the individuals informing Plaintiff of the restrictions contained in those policies.  [*Id.*].

11.     Ultimately, as detailed in the Motion, Plaintiff's claims against BCCF Defendants fail because they are all based on the unlawful denial of his multiple requests for personal faith items pursuant to CDOC policy.  Plaintiff does not allege (nor could he) BCCF Defendants were involved in the creation of CDOC policy or had the authority either to depart from or change the requirements and restrictions of CDOC policies.  [*Id.*].

12.     Additionally, some of Plaintiff's claims fail to establish a constitutional violation by BCCF Defendants, based on the free exercise clause by refusing to provide materials needed for religious ceremonies free of charge.  [*Id.* at 10].  As discussed in the Motion, this is insufficient to establish a plausible free exercise claim as "[p]risons do not have an affirmative duty to provide religious materials or other religious articles free of charge to inmates." ***Hamlin v. Smith***, 2010 U.S. Dist. LEXIS 69205, at *21 (D. Colo. July 12, 2010) (citing ***Cutter v. Wilkinson***, 544 U.S. 709, 720 n.8 (2005)).  While BCCF is not permitted to substantially burden Plaintiff's religious beliefs, it is not required to affirmatively subsidize religion through the purchase of religious materials. *See **Slater v. Teague***, 2018 U.S. Dist. LEXIS 63605, at *19 (D. Colo.  2018) ("Correctional facilities are not required to subsidize inmates' access to religious materials.").

13.     Some of Plaintiff's claims further fail to allege any conduct by any BCCF Defendant to establish any alleged constitutional violation.  [*Id.* at 11-14 (claims three, four, five, and six do not allege any conduct of BCCF Defendants establishing a violation of Plaintiff's rights but, rather, assert issues with CDOC policy and State employees' conduct)].

5

**D.    Plaintiff's Retaliation Claim Fails as a Matter of Law.**

14.    Again, as discussed in the Motion, the United States Supreme Court, in *Turner v. Safley*, 482 U.S. 78, 84 (1987), made clear it is not the role of the judiciary to scrutinize and interfere with the daily operations of a prison, and retaliation jurisprudence does not change this role.   Obviously, an inmate is not inoculated from the normal conditions of confinement experienced by convicted felons serving time in prison merely because he has engaged in protected activity.   Accordingly, a plaintiff "must prove that 'but for' the retaliatory motive, the incidents to which he refers, including the disciplinary action, would not have taken place." *Smith v. Maschner*, 899 F.2d 940, 949-50 (10th Cir. 1990).   An inmate claiming retaliation must "allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." *Frazier v. Dubois*, 922 F.2d 560, 562 n. 1 (10th Cir. 1990).

15.    Plaintiff's retaliation allegations center on Plaintiff's perception BCCF staff's actions were all taken in retaliation for his pursuit of this litigation, even though most of the staff involved with Plaintiff's Code of Penal Disciplinary ("COPD") actions were not Defendants in this action and no allegations suggest any of them actually knew about the lawsuit at the time they participated in the COPD proceedings.

16.    Plaintiff's claim of retaliation for the pursuit of this lawsuit is insufficient to state a cognizable claim.   Plaintiff fails to show that, "but for" the alleged retaliatory motive, he would have been treated differently.   *See Smith v. Maschner*, 899 F.2d 940, 949-50 (10th Cir. 1990).   Outside of conclusory allegations, Plaintiff presents no facts supporting a reasonable inference any BCCF Defendant allegedly retaliatory motives were the "but

for" cause of Plaintiff's COPD charges.  Plaintiff's litigation efforts have ranged over such a lengthy period, timing alone belies Plaintiff's conclusory and speculative claims of retaliation.  As a matter of fact, as discussed in the Motion, Plaintiff fails to establish any link between any BCCF staff and BCCF Defendants who are part of this suit.

17.    Plaintiff never links this alleged harassment with any inappropriate motivation on the part of any BCCF Defendant other than asserting in conclusory fashion that everyone, including staff who are not parties to this action, conspired to retaliate against him.  Specifically, Plaintiff alleges he received COPD charges as retaliation for this litigation.  However, Plaintiff asserts allegations supportive of the COPD guilty findings.  [*See, e.g.*, ECF 66 at 24, ¶¶ 181-194 (Plaintiff admits through his allegations he was told restrictions were still in place at BCCF, was then ordered to return to his Unit, refused to obey this order which required a response team to be called resulting in COPD charges for disobeying an order and creating a facility disturbance)].

18.    Even if Plaintiff could establish a retaliatory motive for his COPD charges, his retaliation claim is nonetheless precluded because it directly challenges his COPD convictions as any determination by this Court his COPD charges were retaliatory would invalidate those convictions.

19.    The basis for granting dismissal of Plaintiff's retaliation claim is Plaintiff's claim is barred as implicating the validity of his prison disciplinary convictions, a finding that has never been invalidated.  Plaintiff admits he was charged and convicted of COPD violations and such violations were upheld and, as of this date, are still valid COPD convictions.  [*Id.* at 26, ¶ 205, at 28, ¶¶ 218-221 (admitting all his convictions were not

overturned on appeal and are still valid convictions)].    Plaintiff's retaliation claim is therefore prohibited because it directly challenges the legitimacy of his prison disciplinary convictions.  As stated in the Motion, in ***Preiser v. Rodriguez***, 411 U.S. 475 (1973), the Supreme Court addressed whether a prisoner could bring a § 1983 claim challenging the removal of good time credits.  [ECF 79 at 14-18].  The Court held 42 U.S.C. § 1983 was not an appropriate vehicle for such a challenge because good-time credits affect the length of a prisoner's sentence, and the exclusive federal remedy for challenging the length of a sentence is a habeas corpus action.  ***Id.*** at 487.  Similarly, in ***Heck v. Humphrey***, 512 U.S. 477 (1994), the Supreme Court held that a prisoner cannot bring a 42 U.S.C. § 1983 claim that implicates the validity of a criminal conviction in state court until the conviction has been invalidated.  *See also **Beck v. City of Muskogee Police Dept.***, 195 F.3d 553, 556-57 (10th Cir. 1999).

20.    ***Heck*** explained requiring a plaintiff to establish as a threshold requirement the challenged conviction or sentence was somehow invalidated would prevent convicted inmates from utilizing 42 U.S.C. § 1983 as a vehicle for launching collateral attacks on criminal convictions.  *See also **Edwards v. Balisok***, 520 U.S. 641 (1997) (Court found the principles of ***Heck*** barred a prisoner from using § 1983 as a vehicle for challenging the legitimacy of his conviction for a prison disciplinary violation, unless and until the prison disciplinary conviction was overturned.

21.    Here, Plaintiff's retaliation claim directly challenges the basis of his COPD convictions.  He claims the charges on which he was convicted were falsified and brought in retaliation for his filing of this suit.  To prevail on this claim, Plaintiff must establish

BCCF Defendants, along with numerous BCCF staff not a party to this action, trumped up charges against him in connection with his disciplinary convictions. Therefore, for a jury to find for Plaintiff, it would have to conclude Plaintiff did not violate the COPD but was set up by BCCF Defendants, and other BCCF staff, as retaliation for Plaintiff's filing of this suit. Such a finding would necessarily call into question Plaintiff's disciplinary convictions, which have not been invalidated, which is barred under *Heck* and *Edwards*.

WHEREFORE, for the reasons set forth above, as well as those set forth in BCCF Defendants Motion to Dismiss and based on the analysis contained in this Court's Order dated March 15, 2022, BCCF Defendants Jerry Roark, David Hestand, Steven Salazar, Clara Casebolt, Larry Cox, Justin Arrasmith, Derick Dockter, Luke Holland, Tiffany Saldana, and Colin Carson respectfully request the Court dismiss Plaintiff's claims against them in their entirety with prejudice, and provide any further relief the Court deems just and necessary.

Dated this 25th day of July, 2022.

Respectfully submitted,

*s/ Edmund M. Kennedy*
Edmund M. Kennedy, Esq.
Katherine N. Hoffman, Esq.
Andrew D. Ringel, Esq.
Hall & Evans, L.L.C.
1001 17th Street, Suite 300
Denver, Colorado 80202
Tel: (303) 628-3300
Fax: (303) 628-3368
Email: ringela@hallevans.com
       kennedye@hallevans.com
       hoffmank@hallevans.com

**ATTORNEYS FOR DEFENDANTS**

9

**JERRY ROARK, DAVID HESTAND, STEVEN SALAZAR, CLARA CASEBOLT, LARRY COX, JUSTIN ARRASMITH, DERICK DOCKTER, LUKE HOLLAND, TIFFANY SALDANA AND COLIN CARSON**

## CERTIFICATE OF SERVICE (CM/ECF)

I HEREBY CERTIFY that on the 25th day of July 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

**Philip T. Barrett, Esq.**
Philip.barrett@coag.gov

Stefanie L. Mann, Esq.
Stefanie.mann@coag.gov

and hereby certify that I have mailed the document to the following non-CM/ECF participant via U.S. mail:

**Rodney Douglas Eaves, #173190**
Bent County Correctional Facility (BCCF)
11560 Road FF75
Las Animas, CO 81054-9573

*s/ Erica Cameron,* Legal Assistant to
Hall & Evans, L.L.C.

10

App 206

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO
12:15 pm, Aug 04, 2022
JEFFREY P. COLWELL, CLERK

Civil Action No. 21-CV-01269-KLM

RODNEY DOUGLAS EAVES, Plaintiff,

v.

JARED POLIS, et al., Defendants.

## OPPOSITION TO CDOC DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. RULE 12(b)(1) & 12(b)(6), *DOC 76*

**COMES NOW,** Rodney Eaves Plaintiff, in oppisition to CDOC's Motion To Dismiss *DOC 76*. As grounds for the Plaintiff's response Eaves would state to the Court the following:

### BACKGROUND

Plaintiff, Rodney Eaves, who appears in this matter pro se, is currently in the custody of the Colorado Department of Corrections ("CDOC") at the Bent County Correctional Facility ("BCCF"). BCCF is operated by CoreCivic ("CC"), a business which contracts with the State of Colorado, among other municipalities, to privately manage prisons and other correctional facilities.

Eaves filed an original complaint alleging burdens to his religious practices and violations to his equal protection rights. He was also concerned he would be retaliated against for filing these claims. *See [DOC 1]*. Eaves brought claims under the First Amendment Free Exercise Clause and the Fourteenth Amendment Equal Protection Clause pursuant to *42 U.S.C. sec.1983* and under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), *42 U.S.C. 2000cc.*

The Court dismissed all claims. *[DOC 55]*. Eaves filed the Amended Complaint as Ordered by this Court in *DOC 55 at p. 27. See Amended Complaint DOC 66.* In the Amended Complaint Eaves asserts that Defendants have violated his First, Eighth and Fourteenth Amendment rights. As well as the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), based on his Sac and Fox religious

faith practices.

Eaves asserts in his Amended Complaint that Defendants have denied him the possession of particularized Sac and Fox religious items. He asserts that communal religious items cannot be used for personal spiritual ceremonies, but must adhere to Lakota ceremonies. He asserts that Defendants violated the above constitutional and statutory provisions by requiring him to purchase necessary materials for his ceremonies and by restricting his ability to wear religious head and neck wear outside his cell. Eaves further asserts that Defendants restricted his religious exercise by suspending access to the faith grounds during the COVID-19 pandemic and not allowing communal or personal faith items to practice his faith even in his cell. Eaves seeks compensatory, punitive, and nominal damages for the alleged constitutional and RLUIPA violations. He also requests the Court to issue a injunctive and declaratory relief. *See DOC 66.*

## STANDARD OF REVIEW

### A.   Federal Rule of Civil Procedure 12(b)(1)

Rule 12(b)(1) provides for a claim to be dismissed where the court lacks subject matter jurisdiction. *Kenney v. Helix TCS, Inc., 284 F. Supp. 3d 1186, 1188 (D. Colo. 2018), aff'd, 939 F.3d 1106 (10th Cir. 2019).* "Federal courts are courts of limited jurisdiction and, as such, must have a statutory basis to exercise jurisdiction." *Montoya v. Chao, 296 F.3d 952, 955 (10th Cir. 2002).* The party asserting jurisdiction has the burden of establishing subject matter jurisdiction. *F & S Const. Co v. Jensen, 337 F.2d 160, 161 (10th Cir. 1964).* A challenge to the subject matter jurisdiction of a complaint can take the form of a facial attack or a factual attack. *Holt v. United States, 46 F.3d 1000, 1002 (10th Cir. 1995).* A facial attack "questions the sufficiency of the complaint" whereas a factual attack "challenge[s] the facts upon which subject matter jurisdiction depends." *id.* at 1002-03. (citing *Ohio Nat'l Life Ins. Co. v. United States, 922 F.2d 320, 325 (6th Cir. 1990)*). When reviewing a facial attack on a pro se complaint, as here, the Court must "accept the allegations of the complaint as true and construe those allegations, and any reasonable inferences that might be drawn from them, in the light most favorable to the plaintiff." *Kay v. Bemis, 500 F.3d 1214, 1217 (10th Cir. 2007).*

### B.   Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss pursuant to Rule 12(b)(6) may be granted if the plaintiff's complaint fails

"to state a claim upon which relief can be granted." *Fed. R. Civ. P. 12(b)(6)*. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)* (quoting *Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (1955)*). A claim is facially plausible when the *factual* content of the complaint enables the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *id.* Because plausibility is determined by the factual content, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *id.* In determining whether a complaint is facially plausible, the Court does not "weigh potential evidence that the parties might present at trial," but assess only the Plaintiff's complaint. *Miller v. Glanz, 948 F.2d 1562, 1565 (10th Cir. 1991)*. Facial plausibility need not rise to the level of a probability but requires "more than sheer possibility that a defendant has acted unlawfully." *Iqbal, 556 U.S. at 678* (citing *Twombly, 550 U.S.* at *556*). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *id.* (quoting *Twombly, 550 U.S.* at *557*) (internal quotation marks omitted).

## ARGUMENT

The responses given are in the order raised by the defendants and proceed in the following order:

## I.   Response to, the claims regarding Eaves's access to the faith grounds during COVID-19 restrictions and wearing religious headwear are moot.

Eaves' Claim Six does not allege he is currently restricted from the faith grounds because Eaves is now seeking damages for the restriction he was subjected to for two years even after COVID restrictions were lifted. The Constitution provides that federal courts may only resolve "cases" or "controversies." *Article III, Sec. 2, United States Constitution.* This is defined as "justiciability" and the Court has authority to consider actual and concrete disputes and not abstract hypothetical issues. *Renne v. Geary, 501 U.S. 312, 315-16 (1991)* (discussing justiciability doctrines).

The Justiciablity Doctrine has several sub-categories one of those is mootness. In this case the Defendants are relying on a mootness argument. This argument fails for two reasons. One, mootness is

established only if "(1) it can be said with assurance that 'there is no reasonable expectation...' that the alleged violation will reoccur... and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *County of Los Angeles v. Davis, 440 U.S. 625, 631 (1971)* (citations omitted)(emphasis added).

Initially the Defendants claimed mootness because "the temporary suspension of religious ceremonies in the faith grounds is no longer in place," *[DOC 23 at 2]*. Eaves claims he was denied the right to practice his faith for two years, even after Defendants claim restrictions were lifted. *[DOC 66 at 21, ¶ ¶ 149-56]*. He also claims that even after the Defendants claimed the suspension was no longer in place, in January of 2022 the facility returned to COVID-19 restrictions. The new suspension lasted until March of 2022 denying Eaves the capacity to practice his faith for a total of 24 months. *[DOC 66 at 22, ¶ ¶ 162, 163]*.

Reviewing mootness under the justiciability doctrine established in *Davis, 440 U.S. 625, 631,* the Defendants have failed with any assurance to claim there is no reasonable expectation that a suspension to the faith grounds will not reoccur. (e.g. individuals are still getting sick from COVID and new variants are being discovered and there is talk if Monkey Pox reaches Colorado, lock-downs will be reestablished. See also *Exhibit 23,* Mask mandated again at BCCF which usually happens just before a lock down.), and if a new order is given for suspension and no plan has been developed to allow Eaves a safe way to get access to the faith grounds, he will just be denied his right to practice his faith again. Therefore, the Defendants have not provided a relief that has irrevocably eradicated the effects of a suspension to the faith grounds.

In *Warner v. Patterson, 534 Fed. Appx. 785 *; 2013 U.S. App. LEXIS 17586 **; 2013 WL 4471472* the 10th Circuit Court of Appeals decided, "'There [was] is an exception to the mootness doctrine . . . where the underlying dispute is capable of repetition, yet evading review.' *Buchheit v. Green, 705 F.3d 1157, 1160 (10th Cir. 2012)* (quotation omitted). 'This exception applies if: (1) the duration of the challenged action is too short to be fully litigated prior to its cessation or expiration; and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again.' *Id.* (brackets and quotation omitted); see also *McAlpine, 187 F.3d at 1216*."

Eaves' claim that he is not allowed to wear his Eagle feathers is not moot. Eaves states he is denied that right and forced to wear them in his cell or at approved religious gatherings "only." While others are allowed to wear their religious head wear openly. *[DOC 66 at 14, ¶ ¶ 69-72]*. The only reason Eaves is denied this right was in retaliation and if he chose to wear them they would be

confiscated. *[DOC 66 at 29, ¶ ¶ 229-35]*. See also attached *Exhibit 24, Request that Eagle feathers and chokers be recognized as religious wear*; *Exhibit 25, Informal grievance denied*; *Exhibit 26, Jason Smith denying Eaves' request from Exhibit 24*; *Exhibit 27, Colin Carson denying grievance and relying on the most recent AR 800-01*. These denials all rely on the amended AR allowing religious head wear to be worn outside the cell. *[DOC 66 at 29, ¶ 229]*.

Eaves clearly has an ongoing stake over his Eagle feathers and choker. The Amended Complaint and the Exhibits provide evidence that an injunctive relief will provide a remedy at law and prevent continued injury.

II.     **Response to, Eaves's overbroad requests for injunctive relief and declaratory relief must be dismissed.**

        **A. Response to, the requests are not narrowly tailored or sufficiently connected to the alleged constitutional violations.**

Before an injunction is issued, the Court must first examine whether declaratory relief would be enough to prevent or fix the injuries. Eaves requests the Court to "declare" Eaves has First, Eighth and Fourteenth Amendment rights from retaliation for asserting his rights to practice his faith. "Declare" their duties with respect to these rights. *[DOC 66 at 31]*. Eaves also requests "any other relief this Court may deem just and proper." *[DOC 66 at 33]*.

This Court "may declare the rights and other legal relations of [Eaves] seeking such declaration, whether or not further relief is or could be sought." *28 U.S.C. Sec. 2201.* A declaratory judgment is a form of prospective relief. *Ellis v. Dyson, 421 U.S. 426, 443-44 (1975)*.

Eaves need not show irreparable harm or inadequate remedies at law to get a declaratory judgment. See *Fed. R. Civ. P. Rule 57*. Such a declaration will definitely state Eaves' legal rights and the Defendant's duties with respect to those rights. This leaves the Defendants to comply with the law as the Court declares, without its having to issue an order directing conduct. If the Defendant's fail to comply with the law, the Court then may issue an injunctive relief to force compliance.

In this case a monetary award for damages will not adequately relieve Eaves' on going injuries and an injunction would be the "adequate remedy at law." *Morales v. Trans World Airlines, Inc., 504 U.S. 374, 381 (1992)*. Eaves also brought both injunctive and damage claims in his Amended Complaint. *[DOC 66 at 31-33]*. This usually means hearing the damage claims first so as to preserve

Eaves' right to a jury trial before issuing injunctive relief. *Beacon Theaters v. Westover, 359 U.S. 500, 510-11 (1959).*

In the Governor's Motion To Dismiss, Polis joined and adopted CDOC's Motion To Dismiss in its entirety. *[DOC 73 at 4].* Therefore, Eaves can address this issue in this motion concerning Defendant Polis. However, Eaves responds to the Defendant's move for dismissal from injunctive relief each in turn. Specifically, if the Defendants claim they can deny Eaves his right to participate in a religious ceremony by requiring him to purchase firewood and herbs, even if he does not have funds for those materials, and the Defendants claim they can do this because the Colorado Constitution gives them the authority to do so *[DOC 66 at 15, ¶ 87 & at 16, ¶ ¶ 95, 100],* the Colorado Constitution must be rescinded and Defendant # 1, Jared Polis has the authority to do so as the executive of the state.

It could also be said that CDOC defendants where fully aware that under the First Amendment, RLUIPA and State statue they had a duty to provide Eaves with materials needed for his ceremonies. Therefore, they relied on the Colorado Constitution to claim they could deny Eaves this right. Only the Court has the authority to issue an injunctive order to rescind the Colorado Constitution.

CDOC Defendants are connected to the violation of the right to adhere to his faith. Specifically, because if he purchased firewood for his faith and the defendants developed a policy and practice so it could be given away so he could not participate in ceremonies, or if money donated was stolen or embezzled and they failed to protect the donations so Eaves could no have a ceremony, this would put an undue restriction on Eaves to adhere to his faith that could not serve any penological interest. *[ id at 20-21, ¶ ¶ 136-48].*

Eaves asserted under Claim Three he had a First Amendment right to embellish his headband and medicine bag with beads. *[DOC 66 at 17, ¶ 105].* He also asserted that policy required Faith and Citizen Programs, the chaplain and the administrative head or designee to develop and maintain communication with faith communities. *[id at 15, ¶ 81].* Eaves asserts the Defendants failed to do this preventing Eaves from adhering to his faith beliefs. *[id at 17, ¶ 104].*

These violations, by themselves, does not entitle Eaves to an injunctive relief. *Wessel v. City of Albuquerque, 299 F.3d 1186, 1194 (10th Cir. 2002).* Without the Defendants recognizing bead work is a part of Eaves' religious expression, or developing and maintaining communication with the Native American faith community, so when materials are needed for donation they can be found or if a question arises about Native American ways of life, Eaves will continue to suffer injuries. Those actions do entitle Eaves to an injunctive relief.

Pg 6 of 31

Finally, the Defendants recognize Eaves is requesting a "declaration" that he has constitutional rights to be protected from retaliation. *[DOC 76 at 9]*. A declaratory judgment is only a binding statement of Eaves' legal rights and does not actually order anyone to do anything. The court "may declare the rights and other legal relations of [Eaves] seeking such declaration, whether or not further relief is or could be sought." *28 U.S.C. Sec. 2201.*

**B.      Response to, CDOC Defendants do not have the power to grant certain injunctive relief.**

In the Governor's Motion To Dismiss, Polis joined and adopted CDOC's Motion To Dismiss in its entirety. *[DOC 73 at 4]*. Therefore, Eaves can address this issue in this motion concerning Defendant Polis. Defendant Polis as Governor of the State of Colorado has the authority to rescind the Colorado Constitution. *Colo. Const. Art. IV Sec. 9; Colo. Const. Art. V Sec. 1(2).* As the supreme executive of the State, he has authority over CDOC. *Colo. Const. Art. IV Sec. 2; Developmental Pathways v. Ritter, 178 P.3d 524 (Colo. 2008).* (The evaluation of whether a person or entity is a proper party in a lawsuit must be determined in light of relevant facts and circumstances. There was no alternative entity for plaintiffs to sue in order to challenge article XXIX. Colorado has long recognized the practice of naming the governor, in his role as state's chief executive, as proper defendant in cases where a party seeks to "enjoin or mandate enforcement of a statute, regulation, ordinance, or policy". The only appropriate state agent for litigation purposes was the governor. Prior to creation of the independent ethics commission, the governor was appropriate party defendant in a constitutional challenge.)

CDOC defendants provided in their *DOC 76, Exhibit A at 41,* AR 800-01(IV)(I)(3)(6), effective 04/01/22, that Hestand (Defendant #8) would sign a Memorandum of Agreement or AR Form 800-01C. In Form 800-01C it states the agreement is between Defendants CDOC and Defendant Hestand. It specifically states "the Department of Corrections operates and 'controls' the state corrections facilities located throughout the borders of the State of Colorado," and the Defendants have already agreed Eaves is in the custody of CDOC. *[DOC 76 at 2; DOC 76, Exhibit A at 54]*. In Form 800-01C (I)(A) (5), the agreement states CDOC's "Duties and Responsibilities" are to "compile and maintain records and documentation of chaplaincy activity;" *[DOC 76, Exhibit A at 54]*. AR 800-01(IV)(M)(4) states CDOC will collect donations in compliance with AR 800-02. *[DOC 76, Exhibit A at 42]*.

AR 800-02(IV)(C)(2) states "[f]acility religious trust funds will be managed utilizing accepted accounting and tracking procedures." AR 800-02(IV)(C)(7) also states "[o]ffender faith groups may be given an informal report of their specific group's funds upon request." See *Exhibit 28, AR 800-02.* This policy establishes that CDOC Defendants can provide Eaves with detailed accounting statements regarding the Native American faith fund. Therefore, the Governor can grant injunctive relief to rescind the Colorado Constitution and CDOC Defendants can grant injunctive relief, per their own policy, copies of the Native American trust fund account.

III.    **Response to, Eaves is not entitled to damages against the CDOC Defendants.**

  **A. Response to, the Eleventh Amendment bars monetary damages against CDOC defendants in their official capacities.**

Eaves agrees that CDOC Defendants are immune under the Eleventh Amendment from monetary damages in their official capacities, but "[o]f course a state official in his or her official capacity, when sued for injunctive relief, would be a person under [section] 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 n.10 (1989),* quoting *Kentuckey v. Graham, 473 U.S. 159, 167 n.14 (1985).* So, Eaves can still seek injunctive relief from CDOC Defendants in their official capacities.

  **B. Response to, Eaves may not obtain damages under RLUIPA.**

Eaves agrees that CDOC Defendants are not liable for damages under RLUIPA. *Sossamon v. Texas, 563 U.S. 277, 284, (2011).* If the CDOC Defendants choose under RLUIPA to avoid a prospective injunctive relief, they can do so by changing their policies and practices to accommodate Eaves' religious exercise. *Boles v. Neet, 402 F. Supp. 2d 1237, 1241 (D. Colo. 2005).* This however does not insulate CDOC from compensatory or punitive damages. *City of Monterey v. Del Monte Dunes at Monterey, LTD., 526 U.S. 687, 729 (1999).*

  **C. Response to, any damages for emotional distress are barred under the PLRA, because Eaves has not alleged a physical injury.**

Contrary to counsel's interpretation of the Amended Complaint Eaves' allegations of physical harm are not vague. Eaves states "[b]ecause I could not cleanse my spirit or ask Ketchemanetowa for protection, I contracted COVID-19 and got really sick. I no longer have sense of smell. I have permanently lost this sense as punishment from the spirits..." *[DOC 66 at 23, ¶ 164]. Thomas v. Review Bd. Of Indiana Employment Sec. Division, 405 U.S. 707 (1981)* (It is not for courts to decide the validity of a plaintiff's religious beliefs). Eaves believes the permanent loss of his sense of smell is punishment for not adhering to his faith. The PLRA statue creates an affirmative defense from damages from mental and emotional injury without physical injury. However, because the Defendants are raising a defense under Rule 12(b)(1) & (b)(6) the complaint contains enough sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).* The Court nor the Defendants can decide the validity of Eaves' belief and must be an issue for the trier of fact to decide.

### D. Response to, joint and several liability is unavailable.

Eaves will rely on this Court's interpretation of the applicable law for joint and several liability.

**IV.    Response to, this Court should dismiss Claim Seven because Eaves has not alleged CDOC Defendants engaged in any retaliatory actions.**

Eaves would agree, as far as personal knowledge, CDOC Defendants did not participate in any retaliation against Eaves.

**V.    Response to, Eaves fails to allege a plausible claim for relief under the First Amendment against CDOC Defendants.**

In Claims One, Two, Three, Four and Six of the Amended Complaint, Eaves does allege plausible claims for relief under the First Amendment.[1] Under the First Amendment, "[i]t is well-settled

---

1. In Claim Two, Eaves asserts a different claim rather then relying on state law and federal statue that had no private right of action and Eaves has abandoned those claims. In Claim Four the Court did not dismiss with prejudice. Claim Four was "dismissed without prejudice as the Court cannot say that an amendment would be futile. *[DOC 55 at 22].*

that '[i]nmates... retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion.'" *Kay v. Bemis, 500 F.3d 1214 1218 (10ᵗʰ Cir. 2007)* (quoting *O'Lone v. Estate of Shabazz, 482 U.S. 342 348 (1987)*). Yet these protections are not without reasonable limitations. *id.* To allege a constitutional violation based on a free exercise claim, a prisoner must survive a two-step inquiry. *id.* "First, the prisoner-plaintiff must show that a prison regulation 'substantially burdened... sincerely-held religious beliefs.'" *id.* (quotation omitted). "A 'substantial burden' is one that: (1) significantly inhibits or constrains a plaintiff's religious conduct or expression, (2) meaningfully curtails a plaintiff's ability to express adherence to his faith, or (3) denies the plaintiff reasonable opportunity to engage in fundamental religious activities." *Mares v. LePage, No. 16-CV-03082-RBJ-NYW, 2018 WL 1312814, at \*3 (D. Colo. March 13, 2018)* (quotations omitted). In addition, Plaintiff "must include sufficient facts to indicate the plausibility that the actions of which he complains were not reasonably related to legitimate penological interests." *Gee v. Pacheco, 627 F.3d 1178, 1188 (10ᵗʰ Cir. 2010).* However, pro se litigants pleadings are to be construed liberally and held to a less stringent standard. *Haines v. Kerner, 404 U.S. 519 (1972).* The Court is required to "accept the allegations of the complaint as true and construe those allegations, and any reasonable inferences that might be drawn from them, in light most favorable to the plaintiff." *Kay v. Bemis, 500 F.3d 1214 1218 (10ᵗʰ Cir. 2007).*

### A. Response to, Eaves fails to articulate facts to allege any indication that CDOC Defendants' policies and actions are unrelated to legitimate penological interests.

In Claim One if Eaves' allegations are true and construed with *any* reasonable inferences, in the light most favorable to him, the following facts could not be related to a legitimate penological interest:

1. Gypsy Kelso and Jason Smith "did not conduct any research" as claimed and are "falsifying their reports." *[DOC 66 at 8, ¶ 8 and at 14, ¶ 73].*
2. Marshall Griffith also "falsified his report." *[id. at 8, ¶ 9].*
3. "I am denied prayer in the Sac and Fox way but must pray as the Lakota do." *[id. at 9, ¶ 18].*
4. I am not allowed to perform this required daily ceremony in the Sac and Fox way with the communal Pipe." *[id. at 8, ¶ 21].*
5. "Without a personal Pipe I am denied my connection to these Spirits and Ketchemanetowa." *[id. at 9, ¶ 23].*
6. Jerry Roark "insured me he would discuss this issue with the Chief of Security and Mr. Hestand and see what they could do about allowing me to have sacred objects sent in to be kept in the Chaplain's office." *[id. at 11, ¶ 42].*

Pg 10 of 31

App 216

7. "The defendants listed above... continue to attempt the cultural genocide of the Sac and Fox and my way of life." *[id. at 12, ¶ 50].*

8. Mr. Hestand referred to Eaves as an "'Indian' and as an Indian your beliefs are all the same as other Indians." *[id. at 12, ¶ 51].* (NOTE: Hestand is not a CDOC employee. However, Hestand's view of Native Americans stems from policies created and enforced by Williams, Trani, Kelso, DeCesaro, Griffith and Smith. *See* Defendants [DOC 76, Exhibit A], AR 800-01, Form 800-01L "Umbrella Faith Groups List," as a Native American religion we are considered the same, "American Indian-All." *[DOC 76, Exhibit A at 74].*

9. "As a Native American I am denied Equal Protection under the Fourteenth Amendment because I am just an 'Indian' and all Indians are the same..." *[DOC 66 at 12, ¶ 53].*

10. "To deny me my faith is to deny the public its due and deprive me of my right to be rehabilitated." *[id. at 12, ¶ 55].*

11. CDOC Defendants also show in DOC 76, Exhibit A at 72 "That an exception to the tobacco ban be placed in effect for American Indian practitioners." This page of the Defendant's Exhibit also lists a lengthy guideline for safety protocols for handling tobacco for Native American practitioners. So, this demonstrates Eaves already has access to tobacco and uses it in Lakota ceremonies.

12. CDOC Defendants also show in DOC 76, Exhibit A at 57, the list of "Communal Worship Property" and only Firewood, Herbs, Lava rock, Indigenous rock, and Water buckets are listed as being items contingent to facility "space and security."

13. When Eaves was denied the right to a personal Pipe *[DOC 66 at 7, ¶¶ 5-9],* Kelso's response was, "[p]lease note that per AR 800-01, some personal faith property Items available and used by members of a faith group outside of a correctional setting *may* not be available within a correctional setting due to available property, space and security concerns. Your request to add a 'personal pipe, flute, rattle, embellished headband, ribbon shirt, and dance bells' to AR Form 800-01G (Allowable Personal Faith Property) cannot be accommodated due to these property, space and security guidelines." See *[DOC 29, Exhibit 19].*

14. In the Defendants DOC 76 Exhibit A at 47, AR 800-01(IV)(R)(9) states "[A] report will be submitted annually to Faith and Citizen Programs *detailing* the compelling governmental interests for the restriction and if a less restrictive alternative would be appropriate."

15. *DOC 29, Exhibit 19* provides no *detailed* compelling governmental interests.

16. Defendant's *DOC 76, Exhibit A at 67,* lists allowable personal faith property. On the list are similar items comparable in size and/or description for personal sacred items Eaves sought. Examples: Pipe/Wand, Flute/Yarrow Sticks [Bundle of 50], Hand drum/Gong [small], Headband/(Headband is on the list, just not allowed to be embellished), Ribbon Shirt/ Tallis, and Tallit Katan, Dance Bells/Bell [small], Rattle/Chalice. **Note:** Also in the Special notes an item known as the Tefillin [phylacteries] would be "stored in living unit control center."

These facts taken as true and construed with any reasonable inferences in the light most favorable to Eaves, the Defendants denials of sacred items are exaggerated based on "space and security." "[I]n order to allege a constitutional violation based on a free exercise claim, a prisoner-plaintiff must survive a two-step inquiry." *Kay, 500 F.3d at 1218.* "First, the prisoner-plaintiff must first show that a prison regulation 'substantially burdened . . . sincerely-held religious beliefs.'" *Kay, 500 F.3d at 1218* (quoting *Boles v. Neet, 486 F.3d 1177, 1182 (10th Cir. 2007)).* "Second, prison officials-

defendants may 'identif[y] the legitimate penological interests that justif[ied] the impinging conduct." *Kay, 500 F.3d at 1218* (quoting *Boles, 486 F.3d at 1182*). "The burden then returns to the prisoner to 'show that these articulated concerns were irrational.'" *Kay, 500 F.3d at 1219 n. 2* (quoting *Salahuddin v. Goord, 467 F.3d 263, 275 (2d Cir. 2006)*).

In CDOC's Motion to Dismiss they only identify the "personal Pipe and tobacco" as their only concern for a denial of *all* the sacred items. *[DOC 76 at 14-15]*. However, the Defendants defeat their "identified" penological interest with their own attached Exhibit A. In *DOC 76 at 14*, the only articulated concern raised is, "Eaves has failed to allege any facts indicating how or why a denial of a personal ceremonial pipe is not reasonably related to a legitimate penological interest, and he fails to assert why CDOC's legitimate penological interest in health and safety would not apply to an inmate's possession of a personal pipe that the inmate intends to smoke." *[DOC 76 at 14]*. The Defendants do not articulate any concerns why Eaves was denied a personal Flute, Rattle, Hand drum, Embellished Headband, Ribbon shirt, and Dance bells. They have either denied or avoided this claim. See *Fed. R. Civ. P. Rule 8(b)(6)*.

First, Eaves did not need to assert CDOC's interest in health and safety concerning tobacco. This Court already knows CDOC inmates who practice the Native American ways, have access to pipes and tobacco. See *Williams v. Hansen, ___ F.4th ___, 2021 U.S. App. LEXIS 22169, 2021 WL 3116955, at \*2 (10th Cir. July 21, 2021)* ("The defendants point out that the tobacco ban was limited to 30 days. So we must decide whether a 30-day ban on a religious object could violate a clearly established right. We answer "yes" based on *Makin v. Colorado Department of Corrections, 183 F.3d 1205 (10th Cir. 1999)*"). CDOC's penological interest has also been addressed by their own policy. In *DOC 76, Exhibit A at 72*, CDOC defendants have seven bullet points addressing the health and safety concerns over tobacco and pipes for Native American practitioners. Eaves also stated fact that he already has access to a pipe and tobacco that he smokes. *[DOC 66 at 14, ¶¶ 74-78]*. Eaves also asked for access to the faith grounds to conduct his ceremony. *[DOC 66 at 22, ¶ 156]*. Defendants make it seem Eaves wants to conduct a ceremony in his cell. *[DOC 76 at 14]*. The issue raised by Eaves is, without a personal Pipe he is forced to adhere to another tribes rites. *[DOC 66 at 8, ¶¶ 15-18]*.

Second, as shown in points 12 and 16 above, the Defendants cannot claim Space is an issue either. CDOC Defendants have already addressed their concerns with specific items for space. (See point 12 above). The items Eaves seeks to possess do not take up anymore space than other items already allowed by other faiths to posses as personal faith items. (See point 16 above). If there is a

security concern the item or items can be stored in a secure location with easy access for Eaves. (See points 8 and 16 above).

Third, surely, falsifying reports, being denied prayer, participating in cultural genocide, denial of rehabilitation, and putting all Indians as having the same faith cannot be related to legitimate penological interests.

Lastly, Eaves did offer the alternative that sacred objects could be stored in a secured area and that a special process could be used so sacred objects based on *25 U.S.C. Sec. 1302(c)*'s definition would prevent just anybody from possessing these sacred objects. *[DOC 66 at 11, ¶¶ 42, 44].* (See also Defendants *DOC 76, Exhibit A at 73, ¶ E,* for CDOC's guidelines for possessing Eagle feathers). "At [this] point, [the Court should] balance the factors set forth in *Turner v. Safley, 482 U.S. 78, 89-91, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987)*, to determine the reasonableness of the regulation: (1) whether a rational connection exists between the prison policy regulation and a legitimate governmental interest advanced as its justification; (2) whether alternative means of exercising the right are available notwithstanding the policy or regulation; (3) what effect accommodating the exercise of the right would have on guards, other prisoners, and prison resources generally; and (4) whether ready, easy-to-implement alternatives exist that would accommodate the prisoner's rights. *Kay, 500 F.3d at 1219* (citation omitted)." See *Hamlin v. Smith, 2010 U.S. Dist. LEXIS 69205, 2010 WL 2740119, at *11 (D. Colo. July 12, 2010).*

In Claim Three, Eaves' allegations are true and construed with any reasonable inferences in the light most favorable to him. So, the following facts are not "naked assertion[s]":

1. Eaves sought changes to the policies. *[DOC 66 at 17, ¶¶ 105-08].*
2. Eaves' beliefs to Wazila his living space and embellish his headband and medicine bag are sincerely-held religious beliefs. *[id. At 17, ¶¶ 109-22].*
3. If the facility is tobacco free and "sage and ceder are not of the plant genus of tobacco," there is no health and safety concern. *[id. At 17, ¶¶ 109-22].*
4. Under "direct controlled supervision" (*Def.-* Direct *vt* 1: to order with authority; Control *vt* 1: to exercise restraining or directing influence over; Supervision *n* 2: a critical watching and directing as of activities or a course of action. (Merriam Webster's Dictionary of Law, 7th ed.)). Eaves could Wazila the space without posing any danger because he would be under strict control.
5. Eaves also pointed out that the ceremony is only done once when a structure is to be lived in for a significant amount of time and only needs to be done once for the duration of the time to be lived in. It is not a daily ceremony. *[id. At 17, ¶¶ 109-13].*
6. In the Defendant's *DOC 76, Exhibit A,* examples are given for events that are allowed under direct supervision. Such as AR 800-01(IV0(O)(4)(b)(2) "The number of offenders allowed to gather to practice their faith will be limited based on... whether or not employees and/or volunteers are supervising the event." *[DOC 76, Exhibit A at 43].* AR 800-01(IV)(O)(4)(g)

"Essential practices that are required of an individual... (Chanukah candle lighting) will be treated similarly to other group gatherings as governed by this policy," *[id at 44]*. AR 800-01(IV)(O)(5)(e) "Offenders involved in any approved program that requires participation without shoes may remove their shoes while in a secure, supervised area," *[id at 45]*.

7. AR Form 800-01K under the smudging guidelines ("Wazila") "an area be designated by the administrative head for the purpose. That smudging using non tobacco plants be allowed during American Indian ceremonies." (This section of the AR is in relation to facilities who do not have outdoor multi-faith areas. This demonstrates Wazila can be done indoors.) *[id at 72, ¶ C]*. If an area can be designated other than the faith grounds, Eaves should be allowed to smudge his cell per AR 800-01(IV)(O)(4)(g) as above.

Eaves is not provided with any policy that articulates why he cannot embellish his headband with bead work or his medicine bundle with stones. An argument concerning "space and security" cannot be had when those concerns are not articulated. *Fed. R. Civ. P. Rule 8(b)(6)*. If Eaves' facts are naked assertions devoid of further factual enhancement, the Defendants denials based on "space and security" are also naked and devoid of factual enhancement.

However, Eaves did establish his beliefs are sincere. He established that the policy is substantially burdening and denies a reasonable opportunity to engage in fundamental religious activities. *Mares v. LePage, No. 16-cv-03082-RBJ-NYW, 2018 U.S. Dist. LEXIS 41907, 2018 WL 1312814, at \*3 (D. Colo. Mar. 13, 2018)* ("In order to allege a violation of the First Amendment's Free Exercise Clause, a prisoner-plaintiff must show that a prison regulation "substantially burdened . . . sincerely-held religious beliefs." *Kay v. Bemis, 500 F.3d 1214, 1218 (10th Cir. 2007)*. Then, the prison official-defendant may identify the legitimate penological interests that justified the impinging conduct. *Id.*) Eaves would assert Defendants have not identified any interests with any specificity.

In the numbered bullet points above, Eaves established with facts, the denials from CDOC were not reasonably related to a legitimate penological interest. See *Gee v. Pacheco, 627 F.3d 1178, 1186 (10th Cir. 2010)* ("Of course, if the complaint alleges that the prisoner received no explanation in the grievance process, the claim that an officer's conduct lacked justification may become plausible.").

Here, as demonstrated, other activities like the "Chanukah candle lighting" can be done under supervision and smudging with non tobacco plants are already allowed during American Indian ceremonies according to policy AR 800-01[2]. The purification in Wazila of a living space is a

---

**2.** AR 800-01 is mentioned in the Amended Complaint. The Defendants also use it as an Exhibit in DOC 76, their Motion to Dismiss. Generally, the sufficiency of a complaint must rest on its contents alone. See, e.g., *Casanova v. Ulibarri, 595 F.3d 1120, 1125 (10th Cir. 2010)* ("The district court's disposition of the complaint was irregular. Although it characterized its action as a dismissal for failure to state a claim, the court did not restrict itself to looking at the complaint."). There are exceptions to this restriction on what the court can consider, but they are quite limited: (1) documents that the complaint incorporates by reference, see *Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322, 127 S. Ct. 2499, 168 L. Ed. 2D 179 (2007)*.

ceremony observed by Sac and Fox peoples. *[DOC 66 at 18, ¶ 111]*. CDOC Defendants did not state how beads of a headband or stones or bead work on Eaves' medicine bundle worn under his clothing presents a space and security concern. Defendants therefore have failed to support the second part of the inquiry under *Kay v. Bemis, id.*

### B. Response to, Eaves fails to allege the faith grounds restrictions were unrelated to legitimate penological interests in protecting the health and safety of CDOC's citizens.

Since Defendant Polis joined and adopted CDOC's Motion to Dismiss in its entirety *[DOC 73 at 4]*, Eaves can address the Governor in this motion in relation to Claim Six. Polis gave the initial order for the phase III lock-downs. *[DOC 66 at 21, ¶ 150]*. Polis, Williams, and Trani had a constitutional and statutory duty to protect Eaves' right to practice his faith. *[id. at 21-22]*. Pursuant to *C.R.S. Sec. 24-33.5-704* Polis was solely responsible for dealing with the COVID-19 pandemic. As part of his responsibilities he knew he could only initiate a suspension for 30 days. He was also responsible to convene a disaster policy group if needed to effectively and efficiently coordinate policy-level decision-making and to advise him on the response to and recovery from COVID-19. The policy group must include a representative from the department of local affairs and appropriate state agencies involved in the response and recovery effort. In this case, dealing with the CDOC it would have been Williams and Trani. The reason a suspension could only last for 30 days without renewal is because during and emergency he can suspend the provisions of any regulatory statute prescribing the procedures for conduct of state business or the orders, rules, or regulations of any state agency, if strict compliance with the provisions of any statute, order, rule, or regulation would in any way prevent, hinder, or delay necessary action in coping with the emergency. So, in order to protect the statutory and constitutional right of the citizens every effort would be made to make the suspensions temporary.

When Polis issued the order for full lock-downs of CDOC facilities, he knew his duty to protect an individual's right to free exercise. Williams and Trani also were aware of their constitutional duties as well. In addition knowing their duties, these individuals created a policy (AR 800-01) that does not allow Native American practitioners to practice their faith in their cells. *[DOC 66 at 22, ¶¶ 156-59]*. They also knew that unlike other faiths, as a Native American practitioner, this faith can only be practiced of the faith grounds. *[DOC 76, Exhibit A at 57 "Group Gatherings" and at 72-73]*. Eaves'

deprivation of 24 months is a reflection of these policy maker's deliberate indifference to Eaves' constitutional right to practice his faith. This makes Polis, Williams and Trani directly liable for causing a First Amendment violation. These Defendant's "edicts of acts may fairly be said to represent official policy..." *Monell v. Department of Social Services of City of New York, 436 U.S. 658, 694 (1978).* These Defendants may issue a *temporary* suspension to protect the health, safety, and welfare of the public and its governmental employees. However, when the Defendants knew they could only temporarily suspend all programs, they implemented access to the law library and recreation to protect other constitutional rights. *[DOC 66 at 22, ¶ 154]. Initially,* known to Eaves' personal knowledge, it was Roark and Salazar who created access to recreation and law library just 120 days after the phase III lock-downs, but continued the denial of access to the faith grounds. *[id. at 22, ¶¶ 153-55].* In BCCF's Motion to Dismiss, DOC 79, BCCF Defendants claim they did not have any personal participation in Eaves' denial to the faith grounds. In fact they place the blame squarely on the Governor's and CDOC Defendant's shoulders "[a]s no BCCF Defendant was involved in the policy decisions pertaining to COVID-19,". *[DOC 79 at 13-14].* See also *C.R.S. Sec. 24-33.5-704(6)* ("To the greatest extent practicable, the governor shall delegate or assign command authority by prior arrangement embodied in appropriate executive orders or regulations, but nothing in this section restricts the governor's authority to do so by orders issued at the time of the disaster emergency."). This establishes Polis and CDOC Defendants were personally involved in creating and enforcing the policies the lead to Eaves' 24 month constitutional deprivation.

Deliberate indifference to Eaves' Free Exercise rights is demonstrated by Eaves' multiple requests to gain access to the faith grounds went unaddressed. *[DOC 66 at 22, ¶¶ 155-59].* Since access was provided to recreation where inmates where not required to social distance or ware masks, while exercising and breathing heavily, the Defendants penological interests to deny access to the faith grounds were not legitimate. All inmates confined to CDOC were under the suspension of *all programs.* This made all of them and Eaves similarly situated. Yet, if access is made for other programs due to COVID and not faith programs, this lead to a dissimilar treatment. "[D]issimilar treatment of [inmates suspended from all programs for COVID] must not only serve a legitimate governmental purpose but the means of treatment must actually serve that purpose." *San Antonio Independent Sch. Dist. v. Rodriguez, 411 U.S. 1, (1973).* The purpose of suspension of all programs was to stop the spread of COVID. However, the suspension did not serve that purpose when allotment to access to other programs was made, but not faith programs. This lead to dissimilar treatment of Eaves.

A 24 month deprivation of the ability to cleans Eaves' spirit or the ability to pray is a clear violation of the First Amendment. Incarcerated individuals "retain fundamental constitutional rights," including "the reasonable opportunity to pursue one's religion as guaranteed by the free exercise clause of the First Amendment." *Williams v. Wilkinson, 645 F. App'x 692, 703-04 (10th Cir. 2016)* (quoting *Makin v. Colo. Dep't of Corr., 183 F.3d 1205, 1209 (10th Cir. 1999)*). The right to free exercise of religion includes inmates' "constitutional right to [pray in a fashion] conforming to their religious beliefs." *Beerheide v. Suthers, 286 F.3d 1179, 1185 (10th Cir. 2002)*. To prevail on a free exercise claim, the plaintiff must demonstrate that the defendants "substantially burdened [his] sincerely-held religious beliefs." *Gallagher v. Shelton, 587 F.3d 1063, 1069 (10th Cir. 2009)* (quoting *Kay v. Bemis, 500 F.3d 1214, 1218 (10th Cir. 2007)*). "[I]solated acts of negligence" are insufficient to establish a substantial burden, *id. at 1070*, and the plaintiff must allege more than a mere inconvenience on his free exercise rights, *Strope v. Cummings, 381 F. App'x 878, 882 (10th Cir. 2010)*. When an alleged deprivation is "the result of a sporadic or isolated incident," it merely constitutes an "inconvenience." *Ind v. Colo. Dep't of Corr., No. 09-CV-0537-WJM-KLM, 2014 U.S. Dist. LEXIS 43461, 2014 WL 1312457, at \*12 (D. Colo. Mar. 31, 2014)* (second quoting *Gallagher, 587 F.3d at 1070*), rev'd and remanded on other grounds, *801 F.3d 1209 (10th Cir. 2015)*. By contrast, "a consistent restriction or flat denial of access to something" gives rise to a free exercise violation. *Id.* (citing *Strope, 381 F. App'x at 882*). Finally, the substantial burden must be a result of a defendant's "intentional interference" with the plaintiff's free exercise rights "to state a valid claim under [Section] 1983"-negligence is not sufficient. *Gallagher, 587 F.3d at 1070*; see also *Moore v. Jay, No. CIV-16-940-R, 2018 U.S. Dist. LEXIS 34078, 2018 WL 1145945, at \*3 (W.D. Okla. Mar. 2, 2018)*.

VI.    **Response to, the allegations regarding disparity in treatment for payment of firewood to conduct Eaves's religious ceremonies do not state a plausible claim for religious discrimination under the First Amendment.**

Eaves states "[a]s a Sac and Fox believer there is no separation between *religion* and *culture.* They are one and the same and *religion* and my daily actions are governed by Sac and Fox *culture.*" *[DOC 66 at 16, ¶ 98].* (Sac and Fox is a federally recognized "Indian" tribe.) See *id. at 7, ¶ 1.*

CDOC Defendant's policy for religious treatment (AR 800-01), states its authority relies on the "First Amendment," "(RLUIPA)," "Cruz v. Beto, 405 U.S. 310 (1972)," and "C.R.S. 17-42-101.

Freedom of worship." *[DOC 76, Exhibit A at 49]*. Yet, the Governor and CDOC Defendants chose to deny Eaves' request for firewood based on the "Colorado Constitution." *[DOC 66 at 15, ¶ 87, at 16, ¶ 101]*.

Eaves also asserted that these materials are not "property" as Defendants claim but are a material as defined in C.R.S. 17-42-102 (Incarcerated Native American's Freedom of Worship Statue). *[id. at 15, ¶¶ 88, 90]*. The statue's plain language states, "[a]ccess of American Indians to... religious items (property) and materials (essential components), and religious facilities *shall* be comparable to... inmates who practice Judeo-Christian religions." See *DOC 25, Appendix A* (emphasis added). Eaves asserts that Judeo-Christian faiths are not required to purchase their materials to adhere to their faiths. *[DOC 66 at 16, ¶¶ 92, 94 and 96]*.

If Eaves is forced to purchase materials needed for his faith, and Christian faiths do not, and when he requested that they be provided and the Defendants claim they do not have to, because the Colorado Constitution states they do not have to make a "distinction in civil or political rights on account of race or color, except Indians," this would indicate the "decision maker's undertaking a course of action [was] 'because of,' not merely "in spite of,'" Eaves is an Indian. *Ashcroft v. Iqbal, 556 U.S. 662, 667-77(2009). Discrimination* based on Eaves' faith and not doing the same to Christian faiths would violate Equal Protection. The Equal Protection Clause of the Fourteenth Amendment prohibits states from "deny[ing] to any person within its jurisdiction the equal protection of the laws." *U.S. Const. amend. XIV, Sec. 1*. (See *C.R.S. 17-42-101, Freedom of Worship* compared to C.R.S. *17-42-102, Freedom of Worship, American Indian*). "[T]his language embodies the general rule that States must treat like cases alike but may treat unlike cases accordingly." *Club Italia Soccer & Sports Org. Inc. v. Charter Twp. of Shelby, Michigan, 470 F.3d 286, 298 (6th Cir. 2006)* (internal quotations omitted), overruled on other grounds as recognized by *Davis v. Prison Health Servs., 679 F.3d 433 (6th Cir. 2012)*. The Supreme Court has stressed that "the purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Vill. of Willowbrook v. Olech, 528 U.S. 562, 564, (2000)*.

To prevail on an equal protection claim "a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" *Ctr. for Bio-Ethical Reform v. Napolitano, 648 F.3d 365, 379 (6th Cir. 2011)* (quoting *Club Italia, 470 F.3d at*

299). Eaves has made factual allegations of religious discrimination. Eaves does allege how he or Native American prisoners are being treated differently from other faiths. Only conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under 42 U.S.C. Sec. 1983. See *Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 555*. Eaves, therefore, has asserted an equal protection claim.

### VII.  Response to, the First Amendment claims against CDOC Defendants in their individual capacities should be dismissed for lack of personal participation.

#### A. Response to, Eaves Fails to allege any facts in Claims Three and Six to infer CDOC Defendants' personal involvement in the alleged constitutional violations.

Since Polis joined and adopted CDOC's Motion to Dismiss in its entirety *[DOC 73 at 4]*, Eaves can address the Governor in this motion in relation to Claims Three and Six.

In this case there is "an affirmative link" between Polis and CDOC Defendants because they personally participated in the creation of policy that lead to Eaves' constitutional deprivations. Even before the policies were created Eaves exhausted his administrative remedies to get the policies changed. *[DOC 66 at 17, ¶¶ 105-08]*.

Then after Eaves made the defendants aware if his constitutional deprivations, they exercised their control and at their direction (per policy AR 150-01), Eaves was forced under threat to break his faith tenet. *[id. at 18, ¶¶ 112-15]*. See also Defendant's DOC 76, Exhibit A at 46, AR 800-01 (IV)(R) "altered items are not allowed and will be deemed as contraband." In relation to claims over the denial of Eaves' faith beliefs to embellish his headband with bead work and his medicine bundle or bag with stones. *[DOC 66 at 18-19]. I*

All that is required to establish a U.S.C. 42 Sec. 1983 claim is "(1) whether the conduct complained of was committed by a person acting under color of law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution of laws of the United States." *Parratt v. Taylor, 451 U.S. 527, 535 (1981)*.

In *Holt v. Hobbs, 135 S.Ct. 853 (2015)*, the court unanimously held, that although the prison had a compelling interest in regulating contraband, it failed to prove that the inmate's proposed alternatives

would not adequately serve its security interests when it did not allow a devout Muslim to grow a ½ inch beard. Particularly when officials failed to explain the "substantial underinclusiveness" of its policy that allowed facial hair in certain medical circumstances and otherwise.

Similarly, when Eaves requested to be allowed to Wazila (smudge) his living space and be allowed to embellish his headband and medicine bundle with bead work and stone he was denied. However, when Polis and CDOC Defendants created their new policy after Eaves' request was denied based on "space and security" concerns, they allowed smudging indoors when there is no multi-faith area (faith grounds) *[DOC 76, Exhibit A at 34, ¶ C]*, allowed possession of medicine bags, but will not allow them to be embellished even though they are to be worn under the clothing *[id. at 8-9, ¶ 8 Sec. b/c]*, and allowed possession of headbands but not embellished ones. *[id at 30 "Head Coverings"]*.

Then in March of 2020 Defendants implemented suspension of all programs due to COVID for health and, safety concerns. However, they lifted the restrictions on law library and recreation, yet continued the restrictions on faith programs for health and safety concerns for 2 years. (Even after 90% of the facility had already been vaccinated for COVID).

Defendants have failed to prove how proposed alternatives would not have adequately served its security interests and further failed to explain the "substantial underinclusiveness" described in *Holt v. Hobbs* for their policies that allowed Eaves to do things in one circumstance, but then deny it for faith reasons. The same applied for allowing Eaves access to other programs under the same circumstance for suspension of all programs, but denied the faith program for the same reasons. Hence, this would establish "an affirmative link" to the policies the Defendants personally created and Eaves made aware were depriving him of his constitutional rights.

### B. Response to, the allegations in Claims One and Two solely related to denials of grievances and responses to Eaves's correspondence.

The claims presented in One and Two go beyond mere denial of grievances. There are failures to adhere to statutory and constitutional responsibilities that lead to Eaves' constitutional deprivations. The defendants mentioned in Claims One and Two, were under the authority of (AR 800-01), "First Amendment," "(RLUIPA)," "Cruz v. Beto, 405 U.S. 310 (1972)," and "C.R.S. 17-42-101. Freedom of worship." *[DOC 76, Exhibit A at 49]*.

Eaves sought a change to AR 800-01 to possess sacred items and gain access to the faith

grounds. The "Faith and Citizen Programs Administrator is a full-time, *qualified* DOC employee who is responsible for coordinating the DOC Faith and Citizen Program." *[DOC 76, Exhibit A at 39, ¶ E]*. As part of Kelso's and Smith's responsibilities they are to review requests to change the policies and approve or deny them under direction of the *deputy executive director* or *designee. [id at 39-40, ¶¶ B, C]*. In this case Eaves received his denials from Kelso and Smith on a memorandum issued from Polis and Williams (the chief executive officer and his designee). *[DOC 66 at 8, ¶ 8]*. As part of the reviewing process they are "to ensure that offenders have the opportunity to participate in practices... individually... as authorized, that are deemed essential by the faith judicatory of that faith without being subjected to coercion, harassment, or ridiculed due to their religious affiliation. This will only be limited by documentation showing threat to the safety or employees, contract workers, volunteers, offenders, or other persons involved in such activity, or that the activity itself disrupts the security or good order of the facility." *[DOC 76, Exhibit A at 38, ¶ III]*. Eaves is also guaranteed by law he can observe his faith "unless an overiding compelling governmental interest exists." *[id.]*. However, Kelso, Smith, Polis, Williams, and Trani, denied Eaves' request with a blanket denial based on "space and security" without providing any "documentation showing threat" to anyone. The Defendants are also suppose to "develop and maintain communication with faith communities..." *[id at 41, ¶ 72]*. So when an offender like Mr. Eaves is denied the opportunity to practice his faith deemed essential by his faith judicatory, the community can be consulted in order to make documentation of the compelling governmental interests and coordinate with the community to find a least restrictive alternative. Kelso and Smith chose to instead falsify their reports in order to deny Eaves' request which lead to the constitutional deprivation. *[DOC 66 at 8 , ¶ 8; at 14, ¶ 72]*. This demonstrates a deliberate indifference to Eaves' constitutional rights and is not based on mere denials.

As Grievance officers, per AR 850-04, approved and signed by Williams and under the authority of Polis per *C.R.S. 24-20-104(2)*, "the grievance officer will sufficiently investigate the circumstances surrounding the problem or complaint and the meaningful remedy requested to formulate a meaningful response." *[DOC 42, Exhibit A at 9, ¶ E. 1]*. Under Declaration in *DOC 42, Exhibit A at 1, ¶ 2*, Defendant DeCesaro confirms that his responsibility is to *"investigate"* and answer Step 3 grievances. Defendant Griffith has the same responsibilities, but chose to falsify his reports by not conducting any investigation. *[DOC 66 at 8, ¶ 9 and at 15, ¶ 86]*. Decesaro also failed in his duties and under authority of Polis and Williams continued Eaves' constitutional deprivations. *[id at 15, ¶ 87]*.

Pg 21 of 31

Claims One and Two were also raised as Fourteenth Amendment claims. Procedural Due Process involves "two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State...; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient..." *Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989).* The State may also create more comprehensive due process protections for its residents than does the federal government. See *Jurasek v. Utah State Hosp., 158 F.3d 506 (10th Cir. 1998).* In this case Eaves was given greater due process protections in:

> (1) The general assembly hereby finds, determines, and declares that American Indian religions and religious beliefs predate the creation of the United States constitution; however, understanding of and respect for American Indian religious practices is not widespread among non-indigenous persons. **The general assembly further finds that serious problems in the practice of religious freedom persist for the American Indian and particularly for American Indians who are incarcerated.** Therefore, in order to protect this most basic freedom for American Indians who are incarcerated, traditional religious and ceremonial practices of American Indians should be permitted in correctional facilities to the extent that such practices do not impinge on the reasonable security interests of the correctional facilities to which such Indians are confined.

> (2) **American Indians who are confined to a correctional facility** as defined in section 17-1-102 and who practice an American Indian religion as defined in subsection (5) of this section shall have access on a regular basis to the following:

> (a) American Indian traditional spiritual leaders;

> (b) Items and materials utilized in religious ceremonies; and

> (c) American Indian religious facilities.

> (3) Access of American Indians to spiritual leaders, religious items and materials, and religious facilities shall be comparable to access to clergy, religious items and materials, and religious facilities which is afforded to inmates who practice Judeo-Christian religions.

> (4) The provisions of this section shall not be construed as requiring prison authorities to permit or prohibit access to peyote or American Indian religious sites.

> (5) For purposes of this section:

> (a) "American Indian" means an individual of aboriginal ancestry who is a member of an Indian tribe. "American Indian" includes any individual who is an Alaska native or any individual who is a native Hawaiian.

> (b) "American Indian religion" means any religion which is practiced by American Indians and the origin and interpretation of which is from a traditional American Indian culture or community.

> (c) "Indian tribe" means any tribe, band, nation, or other organized group or community

of Indians, including any Alaska native village as defined in the "Alaska Native Claims Settlement Act", federal Public Law 92-203, as amended, which is recognized as eligible for the special programs and services provided by the United States to Indians because of their status as Indians.

(d) "Native Hawaiian" means any individual who is a descendant of the aboriginal people who, prior to 1778, occupied and exercised sovereignty in the area that now comprises the state of Hawaii.
*C.R.S. Sec. 17-42-102*

See also *C.R.S. 2-4-201(1)(a) Intentions in the enactment of statutes;* "In enacting a statute, it is presumed that: Compliance with the constitutions of the state of Colorado and the United States is intended."

The Supreme Court also ruled that action by executive branch officials may deny due process if it "shocks the conscience." *County of Sacramento v. Lewis, 523 U.S. 833, 848-49 (1998).* In *Lewis* the Court said that conduct amounting to deliberate indifference may shock the conscience where the officials *realistically* have time to deliberate; but "when unforeseen circumstances demand... instant judgment," intent to cause harm must be shown in order to shock the conscience.

Here, Eaves attempted to change policy and have his rights protected pursuant to C.R.S. 17-42-102. He grieved the issues and even wrote Polis seeking relief so he could do the first thing the drafters of the Constitution though of when making amendments, and that was the right to freely exercise and express their faith. So, the Defendants had a realistic time to deliberate and chose to deny Eaves his rights.

## VIII.   Response to, Eaves fails to state a plausible claim for relief under the Equal Protection Clause.

Defendants counsel is misconstruing Eaves' Amended Complaint. As stated Eaves was wearing his Eagle feathers an his head under the old policy and was informed he could not wear them. *[DOC 66 at 13, ¶¶ 57-59].* However, when the policy changed he attempted to wear his Eagle feathers as required by his faith tenet and was denied even though other faiths could wear their headwear and neckwear outside the cell. *[id at 29, ¶¶ 229-35].* See also attached *Exhibits #23-26.* This also provides evidence that executive officials are deliberately, after careful consideration, denying Eaves' requests without doing any investigative duties to protect Eaves' constitutional rights. It is also a deliberate discrimination against him based on race and faith as demonstrated by what CDOC defendant's claim

Pg 23 of 31

in their motion to dismiss. For they claim they are not denying Eaves his right to wear his Eagle feathers or choker *[DOC 76 at 6-7]* however, a review of attached *Exhibits #23-26* clearly show this a false claim. If Eaves is not allowed to wear his religious items outside the cell, and other faiths are allowed, this would be a Equal Protection violation. If CDOC Defendants are not doing their duties under statue as required by law, this would be a Due Process violation. See Defendants *[DOC 76, Exhibit A at 67]* (listing head coverings and neck wear that may be worn by other faiths).

In Claims Two and Four when it comes to Equal Protection of firewood and herbs, materials needed by the Native American faith to adhere to the faith as defined in C.R.S. 17-42-102, are only provided if they are paid for by the individual practicing the faith. However, Christian faiths are not required to purchase their materials in order to adhere to their faith. See id *C.R.S. 17-42-102(3).*

It is unclear what type of defense the Defendant's counsel is raising in their motion. It seems the only argument raised is Eaves failed to meet the similarly situated requirement. Courts are generally required to use three different types of justification for Equal Protection claims. Eaves is not an attorney and will address all three just in case.

(1)*Rational relationship.* In most cases, officials only have to show that a difference in treatment bears a "rational relationship" to a legitimate governmental purpose. See *Bankers Life & Casualty Co. v. Crenshaw, 486 U.S. 71, 81 (1988).* Under the rational relationship the Defendants have not provided any "rational basis" to deny Eaves materials for his faith, yet provide materials for Christian faiths, other than the Colorado Constitution did not require them to.

(2)*Strict Scrutiny.* In cases involving a fundamental right, like the First Amendment's Free Exercise, or a suspect class, like Native American inmates, the courts apply a "strict scrutiny," which requires officials to show that their actions or practices are necessary to serve a "compelling state interest by the least restrictive means available." *Bernal v. Fainter, 467 U.S. 216, 219 (1984).* Eaves claimed he did not have money to purchase needed materials to practice his faith. *[DOC 66 at 14-15, ¶¶ 74-80].* When Eaves brought this disparity to the attention of individuals in charge of making sure he has the ability to practice his faith, they told him the Colorado Constitution did not require them to help him. However, the least restrictive means would have been to provide him with a connection to an outside faith community that might have been able to donate what he needed so he could practice his faith. *[id at 15, ¶¶ 81-87].* To provide Christian faiths with connections to outside communities and then deny Eaves based on the Colorado Constitution which states it can discriminate against him because he is an "Indian," is clearly an Equal protection violation. See *Johnson v. California, 543 U.S.*

*494, 509-15 (2005)* (applying strict scrutiny involving racial discrimination in prison).

(3)*Intermediate or heightened scrutiny.* Involves cases with discrimination based on gender or illegitimacy. This level of justification does not apply in this case. Defendants counsel only seems to be focused on a Equal Protection claim and even if the Court determines Eaves did not state a Equal Protection claim, a Free Exercise claim still exsists.

The Claims Two and Four regarding firewood and herbs is also in relation to Due Process as-well-as Equal Protection. In Claim Two Due Process was due to Eaves by Faith and Citizen Programs "maintain[ing] communication with faith communities and approve donations of ... materials for use..." by Eaves for his faith. *[DOC 66 at 15, ¶ 81].* It is also required under state statue. *[id at ¶ 90].* The statue uses mandatory language like "shall" creating a liberty interest for Eaves faith. *[id at 15, ¶ 90].* See also *DOC 25, Appendix A, C.R.S. Sec. 17-42-102.* They fail to do this which lead to Eaves' constitutional deprivation. *[DOC 66 at 15, ¶¶ 79, 83].* Equal Protection concerning Claim Two was addressed above.

Claim Four is also a Due Process as-well-as Equal Protection claim. Applying the two step process in *Thompson* and shock the conscience standard in *Lewis*, Polis, Williams, and Trani spent a considerable amount of time planning a deliberate way for the State to continue its responsibility under the Constitution and statue to develop a policy that would allow it not to provide materials to Eaves, thereby denying his ability to adhere to his faith. *[id at 19, ¶ 131].* See also *id Thompson, 490 U.S. At 460; Lewis 523 U.S. at 848-49.* Equal Protection arises because the Asatru, North Western European Paganism and Wiccan faiths were not required to purchase firewood for their ceremonies. Instead, they forced Eaves to purchase the firewood for his ceremonies and then "donated" that material to those faiths. *[id at 19, ¶ 129].* The policy and deliberate indifference to Eaves' faith practices lead to the deprivation. *[id at 20, ¶ 135].*

Additionally, Defendant's counsel states GRAACE is a non-religious program. However, Race, Awareness, Culture and Equity are four out of the six points of the program. Eaves is being discriminated against because of his race, culture and religion which are all one and the same. *[id at 7, ¶¶ 1-3].* Eaves is not provided equity because other faiths and races are not treated as he is. When Eaves attempted to bring awareness to the Defendants with multiple attempts to change policies, raise grievances and even write officials, he was denied relief. Eaves stated this fact because under the Due Process Clause, executive officials are using federal funds to allegedly foster an environment where everyone thrives. See also *C.R.S. 26-1-108* ("Powers and duties of the Executive director rules shall be

Pg 25 of 31

solely within the province of the executive director and shall include the following: Rules governing matters of internal administration in the state department.., and establishing accounting and fiscal reporting rules and regulations for disbursement of federal funds..,"). If the funds are being used to foster such a program then Eaves should receive due process so he to can thrive, but according to the Colorado Constitution, due to his race and faith beliefs he is denied.

Defendant's counsel also states there is no indication that the Christian College or GRAACE programs exist at BCCF. *[DOC 76 at 25]*. The point of the these facts is to show that Polis, Williams and Trani are given federal funds to promote programs for *all* faiths. *[DOC 66 at 16, ¶ 96]*. Some of these programs, within the personal knowledge of Eaves, are the Christian College and GRAACE. Pursuant to Due Process, if the federal government provided funds to the State of Colorado with instruction to use the funds to promote all faith programs, and all faiths are promoted except the Native American faith, this would equate to both a Due Process and Equal Protection violation.

*C.R.S. 17-42-102(3)* states "[a]ccess of American Indians to... religious facilities 'shall' be comparable to access to... religious facilities which is afforded to inmates who practice Judeo-Christian religions." This mandatory language creates a liberty interest for Eaves' faith and does not state that the religious facilities are specific to certain facilities as indicated by the Defendants. A liberty interest exists when (1) the right at issue is independently protected by the Constitution, (2) when the challenged action causes the prisoner to spend more time in prison, or (3) when the action imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner, 515 U.S. 472, 484 (1995)*. If by statue as a Native American, Eaves is to be treated as equally as Christian religions, then the statue creates an independently protected right enforceable by the Fourteenth Amendment. Also Due Process attaches to have funds appropriated for his faith. Without those funds it imposes atypical and significant hardship not experienced by other faiths. Eaves would assert that the denial of programs that promote his faith and foster his rehabilitation is a condition of confinement. *[DOC 66 at 12, ¶ 55]*. This view might be consistent with the statement that "a liberty interest in avoiding particular conditions of confinement may arise from state policies or regulations, subject to the important limitations set forth in *Sandin v. Conner...*" *Wilkinson v. Austin, 545 U.S. 209, 222 (2005)*.

If Eaves is treated differently because of his race/faith, it could not possibility be for a legitimate penological interest. "If *Pell*, *Jones*, and *Bell* have not already resolved the question posed in *Martinez*, we resolve it now: when a prison regulation impinges on inmates' constitutional rights, the

regulation is valid if it is reasonably related to legitimate penological interests. In our view, such a standard is necessary if 'prison administrators ..., and not the courts, [are] to make the difficult judgments concerning institutional operations.' *Jones v North Carolina Prisoners' Union, 433 US, at 128, 53 L Ed 2d 629, 97 S Ct 2532.* Subjecting the daytoday judgments of prison officials to an inflexible strict scrutiny analysis would seriously hamper their ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration. The rule would also distort the decisionmaking process, for every administrative judgment would be subject to the possibility that some court somewhere would conclude that it had a less restrictive way of solving the problem at hand. Courts inevitably would become the primary arbiters of what constitutes the best solution to every administrative problem, thereby 'unnecessarily perpetuat[ing] the involvement of the federal courts in affairs of prison administration.' *Procunier v Martinez, 416 US, at 407, 40 L Ed 2d 224, 94 S Ct 1800, 71 Ohio Ops 2d 139.*

As our opinions in *Pell, Bell*, and *Jones* show, several factors are relevant in determining the reasonableness of the regulation at issue. First, there must be a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it. *Block v Rutherford, supra, at 586, 82 L Ed 2d 438, 104 S Ct 3227.* Thus, a regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational. Moreover, the governmental objective must be a legitimate and neutral one. We have found it important to inquire whether prison regulations restricting inmates' First Amendment rights operated in a neutral fashion, without regard to the content of the expression. See *Pell v Procunier, 417 US, at 828, 41 L Ed 2d 495, 94 S Ct 2800, 71 Ohio Ops 2d 195; Bell v Wolfish, 441 US, at 551, 60 L Ed 2d 447, 99 S Ct 1861.*

A second factor relevant in determining the reasonableness of a prison restriction, as *Pell* shows, is whether there are alternative means of exercising the right that remain open to prison inmates. Where 'other avenues' remain available for the exercise of the asserted right, see *Jones v North Carolina Prisoners' Union, supra, at 131, 53 L Ed 2d 629, 97 S Ct 2532,* courts should be particularly conscious of the 'measure of judicial deference owed to corrections officials ... in gauging the validity of the regulation.' *Pell v Procunier, supra, at 827, 41 L Ed 2d 495, 94 S Ct 2800, 71 Ohio Ops 2d 2532.*

A third consideration is the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally. In the necessarily closed environment of the correctional institution, few changes will have no ramifications on the liberty

of others or on the use of the prison's limited resources for preserving institutional order.  When accommodation of an asserted right will have a significant 'ripple effect' on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of corrections officials.  Cf. *Jones v North Carolina Prisoners' Union, supra, at 132133, 53 L Ed 2d 629, 97 S Ct 2532.*

Finally, the absence of ready alternatives is evidence of the reasonableness of a prison regulation.  See *Block v Rutherford, 468 US, at 587, 82 L Ed 2d 438, 104 S Ct 3227.*  By the same token, the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an 'exaggerated response' to prison concerns.  This is not a 'least restrictive alternative' test: prison officials do not have to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional  complaint.  See *ibid*.  But if an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at de minimis cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard." *Turner v. Safely, 482 U.S. 78, 89-91 (1987).*

Applying this standard Eaves asserts that the regulations imposed do not serve a penological interest and are exaggerated responses to prison concerns.

## IX. Response to, Eaves alleged no facts to support a claim under the Eight Amendment.

Eaves makes no claim of an Eighth Amendment violation against CDOC Defendants and makes this claim against CC and BCCF employees. CDOC Defendants have no standing in defending his claim.

## Eaves' own response to Governor's and CDOC's motion to dismiss.

While studying case law in relation to this case, Eaves came across a case from 2009 filed by Michael Rae and Charles G. Medicine Blanket v. Colorado Dept. of Corrections, Civil Action No. 09-CV-03014-REB-CBS, 2010 WL 5575163. It was filed against BCCF then known as Corrections Corp. of America or CCA. The claims raised by these two plaintiffs are some of the exact same issue Eaves raises in his Amended Complaint. Unfortunately, they were not as articulated at stating their claims as Eaves is. However, this demonstrates that CDOC and CC (previously CCA) have been incorporating these practices against the Native American faith community for over 13 years. At some point these

Pg 29 of 31

attorneys that defend these individuals are no longer advocates for justice.

Justice Brennan, Justice Marshall, Justice Blackmun and Justice Stevens put it best in their dissent of *O'Lone v. Estate of Shabazz, 482 U.S. 342, 354-55 (1987)*:

"Prisoners are persons whom most of us would rather not think about. Banished from everyday sight, they exist in a shadow world that only dimly enters our awareness. They are members of a 'total institution' that controls their daily existence in a way that few of us can imagine:

'[P]rison is a complex of physical arrangements and of measures, all wholly governmental, all wholly performed by agents of government, which determine the total existence of certain human beings (except perhaps in the realm of the spirit, and inevitably there as well) from sundown to sundown, sleeping, waking, speaking, silent, working, playing, viewing, eating, voiding, reading, alone, with others. It is not so, with members of the general adult population. State governments have not undertaken to require members of the general adult population to rise at a certain hour, retire at a certain hour, eat at certain hours, live for periods with no companionship whatever, wear certain clothing, or submit to oral and anal searches after visiting hours, nor have state governments undertaken to prohibit members of the general adult population from speaking to one another, wearing beards, embracing their spouses, or corresponding with their lovers." Morales v Schmidt, 340 F Supp 544, 550 (WD Wis 1972).

It is thus easy to think of prisoners as members of a separate netherworld, driven by its own demands, ordered by its own customs, ruled by those whose claim to power rests on raw necessity. Nothing can change the fact, however, that the society that these prisoners inhabit is our own. Prisons may exist on the margins of that society, but no act of will can sever them from the body politic. When prisoners emerge from the shadows to press a constitutional claim, they invoke no alien set of principles drawn from a distant culture. Rather, they speak the language of the charter upon which all of us rely to hold official power accountable. They ask us to acknowledge that power exercised in the shadows must be restrained at least as diligently as power that acts in the sunlight.

In reviewing a prisoner's claim of the infringement of a constitutional right, we must therefore begin from the premise that, as members of this society, prisoners retain constitutional rights that limit the exercise of official authority against them. See Bell v Wolfish, 441 US 520, 545, 60 L Ed 2d 447, 99 S Ct 1861 (1979). At the same time, we must acknowledge that incarceration by its nature changes an individual's status in society. Prison officials have the difficult and often thankless job of preserving security in a potentially explosive setting, as well as of attempting to provide rehabilitation that

prepares some inmates for re-entry into the social mainstream.  Both these demands require the curtailment and elimination of certain rights.

The challenge for this Court is to determine how best to protect those prisoners' rights that remain.

## CONCLUSION

For the reason setforth above, Eaves would request that CDOC's Motion to Dismiss be denied.

Respectfully submitted this 18th day of July, 2022

Plaintiff, Rodney Eaves

## CERTIFICATE OF SERVICE

I Rodney Eaves, certify that on __7/18/22__ I place the Opposition to CDOC's Defendants Motion to Dismiss Pursuant to Fed. R. CIV. P. Rule 12(b)(1) & 12(b)(6), *DOC 76* attached with the Motion to File an Oversized Response to CDOC's Motion to Dismiss, by placing it in the BCCF internal mail system, postage pre-paid for the U.S. mail, and addressed to the following:


Office of the Attorney General
C/O: Philip T. Barret, Esq. And Stefanie L. Mann, Esq.
1300 Broadway, 10th Floor
Denver, CO. 80203

**BCCF,       EFFECTIVE IMMEDIATLY       DATE: July 1, 2022**

The Colorado Department of Public Health and Environment has issued a new COVID-19 related public health order that requires us to modify our pandemic related protocols for prison facilities and transports.

EXHIBIT 23
Pg 1 of 1

The Order has certain requirements based on the Community COVID-19 Transmission levels in each county. At this point in time, our county has now reached the threshold where masking is required inside our facility.

Inmates are also required to wear masks, this means anytime you are out of your cell, and can choose to wear their cloth mask or will be provided a surgical mask. If your mask gets damaged or soiled, they will be replaced.

We understand that this may be frustrating news, but we are required to follow the public health orders. As soon as we get any additional information from CDPHE or if Community Transmission levels change, we will let you know.

We appreciate your continued cooperation and flexibility.





EXHIBIT 24
Pg 1 of 1



**COLORADO**
Department of Corrections

AR Form 800-01J (03/15/18)

## ESTABLISHING NEW OR AMENDING CURRENT FAITH GROUP PRACTICES

Instructions:   Please print or type all information in black or blue ink. Illegible/incomplete requests will not be considered. Use only the space provided. No additional pages may be used or attached. Only one request per form will be considered and addressed.

A. Offender Name __Eaves, Rodney__   DOC # __173190__   Facility __BCCF__

PCDCIS Listed
Faith Affiliation __Native American__   Case Manager __Huseman__   Unit __5F-109-B__

B. Yes or No: Are you requesting to establish a new religion/faith group that is not currently recognized by DOC? __NO__

C. If yes in section B, state the religion that you are requesting to be recognized. If no, what faith practice would you like to change or add?

D. If yes in section B, identify basic tenets or teachings associated with the faith group. If no, provide a source, reference, or documentation which supports and shows the significance of this requested change to current practice. Listing the first amendment, or stating the understanding of it does not constitute a source. As of 03-01-21 AR 800-01 changed so offenders were no longer required to cover religious headwear. I was told I'm still not allowed to wear my eagle feathers on my head because they are not recognized as Native American religious headwear. My eagle feather permit #MB13578D-0 specifically states under the authority of 16 USC § 668(a) issued from the U.S. Dept. of Interior that eagle feathers are to be used for religious purposes. Any photo or historical writing demonstrates Indigenous peoples wore eagle feathers on the head for religious purposes. I am also not allowed to wear a choker necklace for a religious medallion. Any photo or historical writing demonstrates the choker was worn for religious purposes to remind the speaker to speak in a good way because our speech resembles the female form giving birth to our thoughts and carrying with it a life time of responsibily for what we speak. Allow eagle feathers on head and chokers for neck.

E. If yes in section B, identify any recognized governing body associated with the faith group. Provide a name, address, and phone number, if known.

F. If yes in section B, identify any documentation (books, literature, etc.) associated or referenced with this faith group.

__Rodney Eaves__
Offender Signature

__Date Submitted__ 11/25/21

__Facility Volunteer Coordinator - Print/Sign__

__Date Forwarded__ 12-07-21

Response XC: DOC office of Faith and Citizen Programs
    Facility Volunteer Coordinator
    Case Manager

Offender
Chaplain
File
Attachment J
Page 1 of 1

App 239



EXHIBIT 25
Pg 1 of 1

AR Form 850-04A (12/01/18)

**Informal Resolution**

| Offender Must Complete | |
|---|---|
| Name: Eaves, Rodney | DOC #: 173190 |

This form used for INFORMAL RESOLUTION ONLY

Instructions:

| | |
|---|---|
| 1. Fill out identifying data in space provided. (Must be legible.) | *This space must remain blank* |
| 2. Clearly state basis for grievance or grievance appeal. | *This space must remain blank* |
| 3. State specifically what remedy you are requesting. | *This space must remain blank* |
| 4. Remedy must remain consistent. | *This space must remain blank* |
| 5. Signatures of Parties present for resolution attempt. | *This space must remain blank* |

Subject of Grievance and Requested Meaningful Remedy:

On 1/28/22 I received a notice from faith and citizen Jason Smith informing me that unlike other faiths, I am only allowed to wear my religious headwear in my cell or at religious group programs only. All other faiths are allowed to wear their religious headwear outside the cell and openly on the yard, but as a Native American I'm only allowed to wear my religious headwear in my cell. This is a violation of my First Amend. right and specifically descriminates against Indigenous peoples. I was also informed chokers are not approved also violating my First Amend. right because all other faiths are allowed neck wear according to their faiths but not Native Americans.

Resolution: Allow Eagle feathers and chokers to be worn.

Offender Signature / Date: Rodney Eaves   2/3/22

Response from affected area or case manager or community parole officer:

Denied, I have no Authority because my customer has Already made the ruling.

Resolution:

☐ Issue Resolved   ☐ Step I Grievance Issued   ☐ Non-Grieveable per 850-04

Offender Signature: _____   Date: _____

DOC Employee Signature: David Whitnud   Date: 02-07-2022

Attachment A
Page 1 of 1



**COLORADO**
Department of Corrections

Faith & Citizen Programs
1250 Academy Park Loop
Colorado Springs, CO 80910

┌─────────────────────┐
│ **EXHIBIT 26**      │
│ **Pg  1  of  1**    │
└─────────────────────┘

## M E M O R A N D U M

| | |
|---|---|
| Date: | January 27, 2022 |
| To: | Offender Eaves, Rodney #173190<br>BCCF |
| From: | Jason Smith<br>Regional Volunteer Coordinator |
| Re: | Submission of AR form 800-01 J<br>ID #1190 |

Offender Eaves,

I have received your request dated 11/25/21 requesting to be allowed to wear feathers as headwear and to be allowed to wear a choker around your neck.

I have researched your request. The research included, but was not limited to, some or all of the following sources: consultation with faith group advisors, Colorado Department of Corrections (CDOC) staff, applicable literature, CDOC policy, time, space, and security issues.

Research indicates that headbands for headwear and medicine bags for religious medallions are sufficient. Headbands and medicine bags are available from the canteen. Feathers may be worn in your cell and during authorized faith group programs only. Chokers are not approved faith property and are not allowed.

The office of Faith and Citizen Programs has determined your request is denied.

Thank you,

*Jason Smith*

Jason Smith
Faith and Citizen Programs

www.colorado.gov/cdoc

EXHIBIT 27
Pg 1 of 1

AJt Form 850-04fi (12/01/18)

**Offender Grievance**

Offender Must Complete

Name: Eaves, Rodney     DOC #: 173190

Grievance number (completed for Steps 2 and 3, only): R-BF 21/22 -00206384-1

Instructions:
1. Fill out identifying data in space provided. (Must be legible.)   *This space must remain blank*
2. Clearly state basis for grievance or grievance appeal.   *This space must remain blank*
3. State specifically what remedy you are requesting.   *This space must remain blank*
4. Remedy must remain consistent.   *This space must remain blank*

Subject of Grievance and Requested Meaningful Remedy:

On 1/28/22 I received a notice from faith and citizen Jason Smith informing me that unlike other faiths, I am only allowed to wear my religious headwear in my cell or at religious group programs only. All other faiths are allowed to wear their religious headwear outside the cell and openly on the yard, but as a Native American I'm only allowed to wear my religious headwear in my cell. This is a violation of my First Amendment right and specifically descriminates against Indigenous peoples. I was also informed drinkers are not approved also violating my First Amendment right because all other faiths are allowed religious neck wear according to their faiths but not Native Americans.

I WAS EFFECTED BY THIS POLICY FOR THE FIRST TIME ON 1/28/22. NOT PREVIOUSLY ADDRESSD AND NOT FILED OUT OF TIME.

Offender Signature:     Date: 2/15/22
*By signing this form the offender recognizes and waives confidentiality on records necessary to address this grievance

Case Manager/CPO Must Complete CMI | Facility/Unit/Pod/Parole Office/Community Corrections Center: BCcF / 7/M - 110 -T | Step (Circle one) 1 2 3

Signature: A. Huseman
Print Name and DOC Employee ID #: A. Huseman   40828558     Date received: 2/16/22

Attachment B
Page 1 of 1

RROS??   V. Cowell
2-17-22

**TO BE COMPLETED BY GRIEVANCE COORDINATOR**
RECEIPT: I acknowledge receipt this date of a complaint from the offender in regards to the following subject.
Date 02/17/2022 | Grievance Coordinator & ID #  COWELL, VIRGINIA

**RESPONSE**
Offender Eaves, DOC Administrative Regulation 800-01 Religious Practices, outlines the attire that the different religious groups and offender population are allowed to wear inside and outside of their cell and during holy days or religious services. Due to the fact that Bent County Correctional Facility contracts with DOC, I am unable to provide any additional relief or accommodations regarding your requests concerning headgear or neck attire, and would recommend you write to the Faith and Citizens Department at DOC Headquarters to request any changes to the faith and citizenship policy concerning offender religious attire allowed to be worn. Therefore for these reasons, I am unable to provide any relief concerning your grievance, grievance denied.

**TO BE COMPLETED BY RESPONDER**
Date 02/17/2022 | Responder Name & ID #  CARSON, COLIN (12286) | Response Date 03/16/2022
Disposition |     Denied

**TO BE COMPLETED BY OFFENDER**
RECEIPT: I acknowledge receipt this date of a response from the Department of Corrections, to this grievance.
If you are dissatisfied with the response to this grievance, you may obtain further review by submitting the next step to the appropriate individual.
Offender Name  EAVES, RODNEY | DOCNO 173190 | Grievance ID R-BF21/22-00206384-2
Date: 3/23/22 | Offender Signature :

Original: Department file/AIC     Copies: Administrative Head, Offender

EXHIBIT 28
Pg 1 of 4

| ADMINISTRATIVE REGULATION | REGULATION NUMBER | PAGE NUMBER |
|---|---|---|
| | 800-02 | 1 OF 4 |

| | CHAPTER: Offender Pastoral Care |
|---|---|
| COLORADO DEPARTMENT OF CORRECTIONS | SUBJECT: Religious Trust Fund Accounts and Charitable Contributions |

| RELATED STANDARDS:   ACA Standards 2-CO-5E-01 and 5-ACI-1B-20 | EFFECTIVE DATE:   February 1, 2020 |
|---|---|
| | SUPERSESSION:   09/01/15 |

| OPR: OBO | REVIEW MONTH: DECEMBER | *Dea Williams*<br>Dean Williams<br>Executive Director |
|---|---|---|

## I.   POLICY

*It is the policy of the Colorado Department of Corrections (DOC) to allow religious programs for offenders, including program coordination and supervision, opportunities to practice one's faith, use of community resources and religious facilities and equipment. [2-CO-5E-01]*

## II.   PURPOSE

The purpose of this administrative regulation (AR) is to:

A.   Establish procedures for offenders to meet the legitimate requirements of their faith group practices through management of facility religious trust funds.

B.   Establish written policy and procedures for the operation, supervision, and accountability of facility religious trust funds. *[5-ACI-1B-20]*

## III.   DEFINITIONS

A.   Charitable Contribution: Donations of monies to verified 501-3-c "Not for Profit Organizations" or one time pre-approved special or disaster aid projects.

B.   Employee: Someone who occupies a classified, full or part-time position in the State Personnel System (including management and non-classified positions) in which the Department has affect over pay, tenure, and status.

C.   Facility Religious Trust Fund: Monies donated by offenders or outside sources held in trust for each CDOC facility.

D.   Facility Volunteer Coordinator: A full-time, qualified DOC employee, designated by the administrative head, who is responsible for the organizing, monitoring, and managing of the facility's volunteer programs and faith issues.

E.   Legitimate Faith Group Needs: Any items which may be considered essential for faith group practices as listed on AR Form 800-01E, Faith Group Overview or as directed by the Faith and Citizen Program coordinator. This may include approved supplies (i.e., cups), necessary for religious functions, services, or specific practices.

F.   Offender Donation/Tithe: Offender monies donated to the facility religious trust fund via offender withdrawal tickets.

| CHAPTER | SUBJECT | AR # | Page 2 |
|---|---|---|---|
| Offender Pastoral Care | Religious Trust Fund Accounts and Charitable Contributions | 800-02 | EFFECTIVE 02/01/20 |

G. <u>Outside Donation</u>: Monies approved by the administrative head for donation to the facility religious trust fund from outside (non-offender) sources.

IV. <u>PROCEDURES</u>

A. <u>Offender Donation Procedures</u>

1. Completed offender withdrawal tickets will be submitted to the facility volunteer coordinator, who will sign and forward the ticket to the business manager, who in turn will forward it to offender banking.

   NOTE: In order for offender banking to return insufficient funds tickets to the facility volunteer coordinators, the name and facility must appear on the ticket.

2. Donated monies become the property of the facility religious trust fund for approved faith group purchases, or contributions only. *[5-ACI-1B-20]*

   NOTE: Offenders may only donate to the faith group account they are currently affiliated with, as listed on their electronic file (DCIS/ADS/RELIGION). Offender donations to special community, catastrophic, or faith based charitable projects may be authorized by the administrative head/designee.

B. <u>Outside Donation Procedures</u>

1. All donations made from outside the DOC must be approved by the facility administrative head, in writing, prior to accepting the donation. Any cash donations of a significant amount will need approval of the executive director and governor's office, in accordance with C.R.S. 17-1-107, "Department may accept gifts, donations, and grants."

2. Donations must be in the form of a cashier's check, or money order, made out to the Colorado Department of Corrections with the trust fund account number printed on it.

3. Donated monies become the property of the facility religious trust fund for approved faith group purchases only.

C. <u>Religious Trust Fund Management</u>

1. The DOC will prevent an offender's DOC account from being placed in a deficit balance through an elective withdrawal.

2. Facility religious trust funds will be managed utilizing accepted accounting and tracking procedures. Religious trust fund proceeds are included with the offender trust fund and any interest earned on those funds are transferred to the Canteen, Vending Machine and Library account for the educational, recreational and social benefit of the offenders in the DOC. *[5-ACI-1B-20]*

3. The facility religious trust fund will show sub-accounts for each active faith group on AR Form 800-01E, Faith Group Overview. Temporary, miscellaneous sub-accounts may also be set up for the collection of offender donations for approved, specific charitable contributions.

4. Supervision of facility religious trust funds will be the responsibility of the administrative head, or designee. *[5-ACI-1B-20]*

5. Maintenance of the facility religious trust funds will be the responsibility of the facility volunteer coordinator, or designee.

| CHAPTER | SUBJECT | AR # | Page 3 |
|---------|---------|------|--------|
| Offender Pastoral Care | Religious Trust Fund Accounts and Charitable Contributions | 800-02 | EFFECTIVE 02/01/20 |

6. The facility religious trust fund account will be reconciled against the facility business manager's monthly database report by the administrative head, facility volunteer coordinator, or other designee. *[5-ACI-1B-20]*

7. Offender faith groups may be given an informal report of their specific group's funds upon request.

D. Purchasing Procedures

1. Purchase recommendations may be made by the program manager, volunteer coordinator, chaplain, or offenders from a given faith group, and/or approved facility volunteers.

2. Legitimate faith group needs may be purchased with proper authority. Religious educational material should not be purchased from this fund.

3. If religious trust funds are used to purchase such items as musical or chapel equipment it will be done with the understanding that such items will become the property of the facility for use by any faith group.

4. The facility administrative head, or designee, will have signature authority and final purchase approval.

5. Purchases of goods and supplies are to follow purchasing policies, as outlined in AR 200-06, *Purchasing*. Receipt of purchased goods will follow fiscal policy and accepted facility procedures.

E. Charitable Contribution Procedures

1. Recommendations for charitable contributions may be made by the program manager, volunteer coordinator, chaplain, or offenders with final approval from the facility administrative head, or designee.

2. Charitable contributions totaling a minimum of $25.00 will be limited to quarterly disbursements to approved charities. Charitable funds that do not reach the $25.00 minimum within one year will be disbursed annually.

3. Offender monies collected for charitable contributions will be managed separately from faith group fund sub-accounts until collection is complete and disbursement is made.

4. **Charitable contributions MAY NOT be sent to any organization of which an offender's family is directly or indirectly associated, and through which an offender, or offender's family, may directly or indirectly, benefit from such contribution.**

V. RESPONSIBILITY

A. It will be the responsibility of each administrative head/designee to ensure adherence to this AR.

B. It will be the responsibility of the director of Finance and Administration to review this AR annually and update as necessary.

VI. AUTHORITY

A. CRS 17-42-101. Freedom of worship.
B. First Amendment of the Constitution of the United States: "Congress will make no law respecting the establishment of religion, or prohibiting the free exercise thereof . . ."

App 245

| CHAPTER | SUBJECT | AR # | Page 4 |
|---|---|---|---|
| Offender Pastoral Care | Religious Trust Fund Accounts and Charitable Contributions | 800-02 | EFFECTIVE 02/01/20 |

C.  Cruz vs. Beto, 405 U.S. 319 (1972): Prisoners must be afforded "a reasonable opportunity of pursuing their faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts."

VII. HISTORY

September 1, 2015
September 1, 2014
April 1, 2013
November 1, 2011
October 15, 2010
December 1, 2009
November 1, 2008
November 1, 2007
November 15, 2006
November 15, 2005
September 15, 2005

ATTACHMENTS:

A.  AR Form 100-01A, Administrative Regulation Implementation/Adjustments

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 21-CV-01269-KLM

**FILED**
**UNITED STATES DISTRICT COURT**
**DENVER, COLORADO**
12:20 pm, Aug 04, 2022
**JEFFREY P. COLWELL, CLERK**

RODNEY DOUGLAS EAVES, Plaintiff,

v.

JARED POLIS, et al., Defendants.

---

## OPPOSITION TO GOVERNOR'S RULE 12(B)(1) AND (6) MOTION TO DISMISS [DOC 73]

**COMES NOW**, Rodney Eaves Plaintiff, in oppisition to Governor's Motion To Dismiss *DOC 73*. As grounds for the Plaintiff's response Eaves would state to the Court the following:

### BACKGROUND

Plaintiff, Rodney Eaves, who appears in this matter pro se, is currently in the custody of the Colorado Department of Corrections ("CDOC") at the Bent County Correctional Facility ("BCCF"). BCCF is operated by CoreCivic ("CC"), a business which contracts with the State of Colorado, among other municipalities, to privately manage prisons and other correctional facilities.

Eaves filed an original complaint alleging burdens to his religious practices and violations to his equal protection rights. He was also concerned he would be retaliated against for filing these claims. *See [DOC 1]*. Eaves brought claims under the First Amendment Free Exercise Clause and the Fourteenth Amendment Equal Protection Clause pursuant to *42 U.S.C. sec.1983* and under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), *42 U.S.C. 2000cc.*

The Court dismissed all claims. *[DOC 55]*. Eaves filed the Amended Complaint as Ordered by this Court in *DOC 55 at p. 27. See Amended Complaint DOC 66.* In the Amended Complaint Eaves asserts that Defendants have violated his First, Eighth and Fourteenth Amendment rights. As well as the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), based on his Sac and Fox religious faith practices.

Eaves asserts in his Amended Complaint that Defendants have denied him the possession of particularized Sac and Fox religious items. He asserts that communal religious items cannot be used for personal spiritual ceremonies, but must adhere to Lakota·ceremonies. He asserts that Defendants violated the above constitutional and statutory provisions by requiring him to purchase necessary materials for his ceremonies and by restricting his ability to wear religious head and neck wear outside his cell. Eaves further asserts that Defendants restricted his religious exercise by suspending access to the faith grounds during the COVID-19 pandemic and not allowing communal or personal faith items to practice his faith even in his cell. Eaves seeks compensatory, punitive, and nominal damages for the alleged constitutional and RLUIPA violations. He also requests the Court to issue a injunctive and declaratory relief. *See DOC 66.*

## STANDARD OF REVIEW

### A.      Federal Rule of Civil Procedure 12(b)(1)

Rule 12(b)(1) provides for a claim to be dismissed where the court lacks subject matter jurisdiction. *Kenney v. Helix TCS, Inc., 284 F. Supp. 3d 1186, 1188 (D. Colo. 2018), aff'd, 939 F.3d 1106 (10ᵗʰ Cir. 2019).* "Federal courts are courts of limited jurisdiction and, as such, must have a statutory basis to exercise jurisdiction." *Montoya v. Chao, 296 F.3d 952, 955 (10ᵗʰ Cir. 2002).* The party asserting jurisdiction has the burden of establishing subject matter jurisdiction. *F & S Const. Co v. Jensen, 337 F.2d 160, 161 (10ᵗʰ Cir. 1964).* A challenge to the subject matter jurisdiction of a complaint can take the form of a facial attack or a factual attack. *Holt·v. United States, 46 F.3d 1000, 1002 (10ᵗʰ Cir. 1995).* A facial attack "questions the sufficiency of the complaint" whereas a factual attack "challenge[s] the facts upon which subject matter jurisdiction depends." *id.* at 1002-03. (citing *Ohio Nat'l Life Ins. Co. v. United States, 922 F.2d 320, 325 (6ᵗʰ Cir. 1990)*). When reviewing a facial attack on a pro se complaint, as here, the Court must "accept the allegations of the complaint as true and construe those allegations, and any reasonable inferences that might be drawn from them, in the·light most favorable to the plaintiff." *Kay v. Bemis, 500 F.3d 1214, 1217 (10ᵗʰ Cir. 2007).*

### B.      Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss pursuant to Rule 12(b)(6) may be granted if the plaintiff's complaint fails "to state a claim upon which relief can be granted." *Fed. R. Civ. P. 12(b)(6).* "To survive a motion to

dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)* (quoting *Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (1955)*). A claim is facially plausible when the *factual* content of the complaint enables the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *id.* Because plausibility is determined by the factual content, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *id.* In determining whether a complaint is facially plausible, the Court does not "weigh potential evidence that the parties might present at trial," but assess only the Plaintiff's complaint. *Miller v. Glanz, 948 F.2d 1562, 1565 (10th Cir. 1991).* Facial plausibility need not rise to the level of a probability but requires "more than sheer possibility that a defendant has acted unlawfully." *Iqbal, 556 U.S. at 678* (citing *Twombly, 550 U.S.* at *556*). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *id.* (quoting *Twombly, 550 U.S.* at *557*) (internal quotation marks omitted).

## ARGUMENT

The responses given are in the order raised by the defendants and proceed in the following order:

The claims against Polis should not be dismissed for the reasons setforth in this motion and the Opposition to CDOC's Motion to Dismiss. First, the State of Colorado nor the Colorado Department of Corrections are named as defendants in this case. Only individuals are named in this suit. However, the Court can determine from the Amended Complaint who is being sued and in what capacity. *Jones v. Barry, 33 Fed. Appx. 967, 2002 U.S. App. LEXIS 7620 (10th Cir., Apr. 25, 2002)* (quoting *Houston v. Reich, 932 F.2d 883, 885 (10th Cir. 1991)* "if the complaint does not clearly indicate that defendants are being sued individually and/or in their official capacities, the determination must be made by reviewing the course of the proceedings") (quotation omitted).

In this regard, *Monell v Department of Social Services of New York City, 436 US 658, 694 (1978)*, established that official policy or custom may be "made by... lawmakers or those whose edicts or acts may fairly be said to represent official policy..." This suggests that where a lawmaker declares or otherwise establishes a policy which, when executed by the official personally or by a subordinate, leads to constitutional violation, the government (as-well-as the official) mat be liable under Sec. 1983 even in the absence of a formally declared policy.

Pg 3 of 7

I.  **Response to, the Eleventh Amendment bars Eaves's federal constitutional claims for equitable relief because the Governor does not manage the day-to-day operations of BCCF.**

Polis seems to rely on *Ex parte Young, 209 U.S. at 157* to claim Eaves named him in his suit "merely... as a representative of the State, and thereby [is] attempting to make the State a party." *[DOC 73 at 6]*. Usually, a "generalized duty to enforce state law, alone, is insufficient to subject [Polis] to a suit challenging a constitutional amendment they have no specific duty to enforce. *Bishop v. Oklahoma, 333 F. App'x 361, 365 (10th Cir. 2009)* See *Women's Emergency Network v. Bush, 323 F.3d 937, 949-50 (11th Cir. 2003)* ("Where the enforcement of a statute is the responsibility of parties other than the governor (the cabinet in this case), the governor's general executive power is insufficient to confer jurisdiction."); see also *Waste Mgmt. Holdings v. Gilmore, 252 F.3d 316, 330-31 (4th Cir. 2001)* (concluding governor's general duty to enforce the laws of Virginia insufficient when he lacks a specific duty to enforce the challenged statutes); *Okpalobi v. Foster, 244 F.3d 405, 422-25 (5th Cir. 2001)* (en banc) (constitutional challenge to state tort statute against Governor and Attorney General not viable under the *Ex Parte Young* doctrine because no enforcement connection existed between Governor or Attorney General and the statute in question); *1st Westco Corp. v. Sch. Dist. of Phila., 6 F.3d 108, 112-13, 116 (3d Cir. 1993)* ("If we were to allow [plaintiffs] to join... [the State officials] in this lawsuit based on their general obligation to enforce the laws.., we would quickly approach the nadir of the slippery slope; each state's high policy officials would be subject to defend every suit challenging the constitutionality of any state statute, no matter how attenuated his or her connection to it.").

This also seems to be Polis' defense in his Motion to Dismiss. He claims "the prerequisite legal connection is absent because Colorado law imposes no duty on the Governor to manage any day-to-day operations of BCCF. See [Sec.] 17-1-103(1)9a), C.R.S. (2020)." For the reasons setforth in the Opposition to CDOC's Motion to Dismiss, Defendant Polis is the chief executive officer of CDOC and determines the State statues the regulate CDOC and the policies it creates to regulate the department. See *City of St. Louis v. Praprotnik, 485 U.S. 112 (1988)*; *Jett v. Dallas Independent School Dist., 491 U.S. 701 (1989)* (the relevant question, to be answered under State law, it whether a particular official is a policy maker to whom the government has delegated policy-making authority).

Eaves' requests for policy changes were denied from Polis, Williams and Trani. *[DOC 66 at 8, ¶ 8; at 14, ¶ 72; and at 17, ¶ 106]*. After Eaves' requests to policy changes were denied, he continued to be subjected to constitutional deprivations so he grieved his issues. Even after grieving the issues, Polis and his subordinates denied Eaves' requests for relief. *[id at 8, ¶ 9; at 14, ¶ 72; and at 15, ¶ 86-87]*. Eaves even personally wrote Mr. Polis with his concerns and requested relief again. *[id at 17, ¶ 107]*.

Eaves tried these formal approaches between 06/04/19 and 10/12/20. Then on 03/01/21, Polis, Williams and Trani developed new policies, even after Eaves raised his concerns, demonstrating their deliberate indifference to Eaves' Constitutional deprivations. *[DOC 76, Exhibit A, at 1-37]*. To succeed on claims against Polis, Eaves must allege the he: (1) "committed a constitutional violation" and (2) a "policy or custom was the moving force behind the constitutional deprivation," *Campbell v. City of Spencer, 777 F.3d 1073, 1077 (10ᵗʰ Cir. 2014)*.

In this case, Eaves did not name the State of Colorado or the Department of Corrections as defendants in his suit. Specific individuals are named along with their connections to Eaves' constitutional violations. In *Harris v. Polis, 2021 WL 3024664* this Court already determined the *Ex parte Young* doctrine does not apply. Specifically, quoting the same argument raised before "[t]hus, because he does not manage the day-to-day operations of [BCCF]-rather, the duty to manage [BCCF] is 'statutorily borne by [the Colorado Department of Corrections ("CDOC")], which is overseen by Executive Director Williams'-Defendant Polis argues Ex parte Young does not apply. [#47 at 5-6 (citing Colo. Rev. Stat. ᴄᴄ 24-1-128.5(1.5) and 17-1-103(1)(a))]

However, under the Colorado Constitution:

> [W]hen [the defendant] is an administrative agency, or the executive branch of government, or even the state itself, the Governor, in his official capacity, is a proper defendant because he is the state's chief executive. For litigation purposes, the Governor is the embodiment of the state.

*Ainscough v. Owens, 90 P.3d 851, 858 (Colo. 2004)* (citing Colo. Const. art. IV Sec. 2 ('The supreme executive power of the state shall be vested in the governor, who shall take care that the laws be faithfully executed.'). Courts in this district have determined that because the Governor 'has final authority to order the executive directors of all state agencies to commence or cease any action on behalf of the state,' he is a proper party to this type of action. *Sportsmen's Wildlife Def. Fund v. U.S. Dep't of Interior, 949 F. Supp. 1510, 1515 (D. Colo. 1996)*; see also *Wildgrass Oil and Gas Committee v. Colorado, 447 F. Supp. 3d 1051, 1061-62 (D. Colo. 2020)* (declining to find Eleventh Amendment

immunity for Governor). Indeed, the Colorado Supreme Court recently reaffirmed this longstanding precedent, holding that '[t]he CDOC is an executive agency directly within the Governor's control [and] the Governor remains one of the proper defendants for the claims asserted.' *Raven v. Polis, 479 P.3d 918, 921-22, 2021 CO 8 (Colo. 2021)* ('[B]ecause he is the state's supreme executive, with ultimate authority over the executive agencies under his control, the Governor is an appropriate defendant in an action that seeks to enjoin or mandate enforcement of a statute, regulation, ordinance, or policy.' (quotations omitted)).

Accordingly, this Court RECOMMENDS Defendant Polis' Motion [#47] be DENIED as to Eleventh Amendment immunity for the official capacity claims for injunctive relief. However, to the degree that Plaintiff seeks damages against Defendants Williams and Polis in their official capacities, such claims are barred by the Eleventh Amendment and this Court RECOMMENDS such claims be DISMISSED." *id Harris at *3.* So this argument has been raised before by Polis and this Court denied it.

II.   **Response to, even if the Court determines that is has jurisdiction over Eaves's federal constitutional claims, they still must be dismissed regardless of the type of relief sought for the reasons set forth in CDOC Defendants' Motion to Dismiss Pursuant to Rules (b)(1) & 12(b)(6) of the Federal Rules of Civil Procedure.**

Since Polis adopted CDOC's Motion to Dismiss, Polis should not be dismissed for the reasons setforth in the Opposition to CDOC's Motion to Dismiss.

### CONCLUSION

For the reasons sestforth above, the Governor's Motion to Dismiss should be denied.

Respectfully submitted this 18th day of July, 2022.

Plaintiff, Rodney Eaves

## CERTIFICATE OF SERVICE

I Rodney Eaves, certify that on ___7/18/22___ I place the Amended Complaint attached with the Declaration of Rodney Eaves Concerning Filing of Hand Written Amended Complaint, by placing it in the BCCF internal mail system, postage pre-paid for the U.S. mail, and addressed to the following:


Office of the Attorney General
C/O: Philip T. Barret, Esq. And Stefanie L. Mann, Esq.
1300 Broadway, 10th Floor
Denver, CO. 80203

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-CV-01269-KLM



FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

AUG -4 2022

JEFFREY P. COLWELL
CLERK

RODNEY DOUGLAS EAVES, Plaintiff,

v.

JARED POLIS, et al., Defendants.

---

**EAVES' RESPONSE TO BCCF DEFENDANTS' REPLY TO [DOC 85]**

**COMES NOW**, Rodney Eaves Plaintiff, in response to BCCF Defendants' reply to DOC 85. As grounds for the Plaintiff's response Eaves would state to the Court the following:

**RESPONSE TO**

**D.     Plaintiff's Retaliation Claim Fails as a Matter of Law**

To reiterate the point, Eaves is not attacking his C.O.P.D. conviction or requesting the Court or a jury to overturn his C.O.P.D. conviction. Defendants assert Eaves does not suggest any allegations that any of the Defendants knew about the lawsuit. *[DOC 85 at 6, ¶ 15].*

The amended Complaint belies the Defendants assertion based on the following facts:

1. Eaves was previously threatened he would receive C.O.P.D. charges. *[DOC 66 at 23, ¶].*
2. Eaves has never had a C.O.P.D. charge or even a negative report in the five years of his incarceration. *[id ¶ 168].*
3. Defendants became fully aware. *[id ¶ 170].*
4. Eaves asked Casebolt if she knew Eaves had a civil suit and she stated "yes." *[id at 24, ¶ 186].*
5. Defendant Cox reviewed Eaves' legal paperwork. *[id at 25, ¶ 191].*
6. No one else received C.O.P.D. charges for the same incident except Eaves and he informed defendants Arrasmith and Dockter this was clear retaliation for his civil suit. *[id at 26, ¶ 201].*
7. Eaves did not know a retaliation plot was afoot until he heard a later conversation. *[id at 27, ¶ 206].*
8. Defendant Holland initiated a discussion with Eaves about his civil suit, indicating he knew Eaves had a suit. Eaves had never discussed this issue with Holland before. (This indicates that

individuals not a party to the original complaint knew Eaves has a civil action against BCCF). *[id ¶ 210].*

9. Eaves later received another C.O.P.D. charge from Holland in location Eaves has no access to. *[id ¶ 213].*

10. Defendants Arrasmith and Dockter had their "orders." *[id ¶ 216].*

11. CDOC stated Eaves is allowed to wear his Eagle feathers. *[DOC 76, at 6-7].*

12. However, defendants Arrasmith and Britton deny Eaves this right. *[DOC 66 at 29, ¶¶ 229-35].*

Eaves' allegations are not conclusory. Eaves was threatened with C.O.P.D. charges and then after he filed his suit was given C.O.P.D. charges. Defendants claim there was not motive. *[DOC 85 at 7, ¶ 17].* 17-1-104.9(2) C.R.S. does not allow CDOC to keep "inmates classified higher than medium custody in private contract prisons." 17-1-203(a) C.R.S. does not allow a private prison to "[c]hoose the correctional facility" to which an inmate is assigned. The only way a private contractor can transfer an inmate is by a "request, in writing." Unless that inmate has a higher custody level. If Eaves receives a number of C.O.P.D. charges in a short period of time, he will be classified as a higher security level ans be transferred from BCCF. *[DOC 66 at 28, ¶ 226].* If Eaves were transferred it would make his conditions of confinement against BCCF moot.

In Claim Seven Eaves also alleges a Fourteenth Amendment violation. The reason Eaves' C.O.P.D. convictions are still valid is because of the Due Process violation. *[DOC 85 at 7, ¶ 19]*; See also *[DOC 66 at 28, ¶¶ 219-22].* The appeal never reached CDOC for review according to State statue. If Eaves' convictions would have reached CDOC and were overturned, BCCF's plot to give Eaves enough security poits to be transferred would be moot.

Lastly, Eaves again asserts he is not attacking the C.O.P.D. conviction and does not ask the Court or jury to overturn the conviction as a form of requested relief. The facts from the C.O.P.D. convictions are apart of the Amended Complaint to establish motive and intent for retaliation from BCCF. The relief sought by Eaves is solely monetary for his loss of liberty and property because of the retaliation.

Respectfully submitted this 1st day of August, 2022

Plaintiff, Rodney Eaves

Pg 2 of 3

App 255

## CERTIFICATE OF SERVICE

I Rodney Eaves, certify that on ___8 - 2 - 22___ I serve a copy of Eaves' Response To BCCF Defendants' Reply to [DOC 85], by placing it in the BCCF internal mail system, postage pre-paid for the U.S. mail, and addressed to the following:

Hall & Evans, L.L.C.
C/O: Katherine N. Hoffman, Esq.
    Andrew David Ringel, Esq.
    Edmund M. Kennedy, Esq.
1001 17th St., Suite 300
Denver, CO. 80202

FOREVER USA

PURPLE HEART

DENVER CO 802

2 AUG 2022 PM9 L

**Colorado Department Of Corrections**

Name Rodney Esser

Register Number 173140

Unit BCCF

Box Number 11560 County Rd. FF 75

City, State, Zip Las Animas, Co. 81054

U.S. District Court

901 - 19th St., Room A105

Denver, Co., 80294 - 3589

80294-358151

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-01269-KLM

RODNEY DOUGLAS EAVES,

     Plaintiff,

v.

JARED POLIS,
DEAN WILLIAMS,
TRAVIS TRANI,
GYPSY KELSO,
ANTHONY A. DECESARO,
MARSHALL GRIFFITH,
JERRY ROARK,
DAVID HESTAND, and
STEVEN SALAZAR,

     Defendants.

---

### REPLY IN SUPPORT OF THE GOVERNOR'S RULE 12(B)(1) AND (6) MOTION TO DISMISS

---

     Defendant Jared Polis, the Governor of the State of Colorado ("the Governor"), by and through the Colorado Attorney General's Office and undersigned counsel, submits the following reply in support of his motion to dismiss the Amended Complaint (Doc. 66) pursuant to Fed. R. Civ. P. 12(b)(1) and (6).

### ARGUMENT

     Beyond conclusory statements that simply lump the Governor in with other defendants, Plaintiff fails to point to any allegation in the Amended Complaint that ties the Governor legally or factually to the day-to-day management of the Bent County Correctional Facility ("BCCF"). *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). This falls well short under *Twombly*'s

heightened pleading standard. *Newsom v. Ottawa Cnty. Bd. of Comm'rs*, 511 F. App'x 718 (10th

Cir. 2013) (Gorsuch, J.) (complaint that fails to explain how defendant is liable "'will not do,'"

quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Moreover, the allegations against

the Governor are simply implausible as Colorado law imposes no duty on the Governor to

manage *any* of the day-to-day operations of BCCF. *See* § 17-1-103(1)(a), C.R.S. (2022) ("The

duties of the executive director [of the Colorado Department of Corrections] shall be . . . to

monitor and supervise the activities of private contract prisons . . . ."); *see also Ashcroft*, 556

U.S. at 663 ("A claim has facial plausibility when the pleaded factual content allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." (citing

*Twombly*, 550 U.S. at 556)).

While Plaintiff relies on *Raven v. Polis*, 479 P.3d 918 (Colo. 2021), which was a state

law case with all state law claims, and *Harris v. Polis*, No. 20-cv-02999, 2021 WL 3024664 (D.

Colo. June 23, 2021), where the claims against the Governor were ultimately dismissed,

*Peterson v. Martinez*, 707 F.3d 1197 (10th Cir. 2013), is still the controlling law in this district.

Moreover, "[a] decision of a federal district court judge is not binding precedent in either a

different judicial district, the same judicial district, or even upon the same judge in a different

case." *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) (quoting 18 J. Moore et al., Moore's

Federal Practice § 134.02[1] [d], p. 134–26 (3d ed.2011)). *See also United States v. Articles of

Drug Consisting of 203 Paper Bags*, 818 F.2d 569 (7th Cir.1987) ("A single district court

decision ... has little precedential effect. It is not binding on the circuit, or even on other district

judges in the same district.").

As *Peterson* explains, "when a state law explicitly empowers one set of officials to enforce its terms, a plaintiff cannot sue a different official *absent some evidence* that the defendant is connected to the enforcement of the challenged law." *Peterson v. Martinez*, 707 F.3d 1197, 1207 (10th Cir. 2013) (emphasis added). And the mere facts that the director of the Colorado Department of Corrections ("CDOC") is appointed by and reports to the Governor does not indicate the kind of day-to-day involvement in the operation of BCCF that would make him a proper defendant. *See, e.g., Ashcroft*, 556 U.S. at 676 ("vicarious liability is inapplicable to ... § 1983 suits").

Additionally, pursuant to Rule 10(c), the Governor hereby joins and adopts by reference herein the arguments raised in CDOC Defendants' forthcoming Reply in Support of Motion to Dismiss Pursuant to Rules 12(b)(1) & 12(b)(6) of the Federal Rules of Civil Procedure in their entirety.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the Governor respectfully requests that the Court dismiss all of Eaves' claims against him.

DATED: August 18, 2022.

PHILIP J. WEISER
Attorney General

s/ Stefanie Mann
*STEFANIE MANN*, Reg. No. 43774*
Senior Assistant Attorney General
Public Officials Unit / State Services Section
1300 Broadway, 6th Floor
Denver, CO 80203
Telephone: (720) 508-6500
Email: Stefanie.mann@coag.gov

3

App 260

*Attorney for Defendant Jared Polis*
*Counsel of Record

4

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on August 18, 2022, I served a true and complete copy of the foregoing **REPLY IN SUPPORT OF THE GOVERNOR'S RULE 12(B)(1) AND (6) MOTION TO DISMISS,** upon all parties herein by e-filing with the CM/ECF system maintained by the court and/or email, addressed as follows:

Katherine N. Hoffman, Esq.
Andrew David Ringel, Esq.
Hall & Evans, L.L.C.
1001 17th Street, Suite 300
Denver, CO 80202
hoffmank@hallevans.com
*Attorneys for Defendants Jerry Roark, David Hestand and Steven Salazar*

Philip Timothy Barrett
Ralph L. Carr Colorado Judicial Center
1300 Broadway
Denver, CO 80203
Philip.barrett@coag.gov
*Attorney for Defendants Dean Williams, Gypsy Kelso, Anthony A. DeCesaro, Marshall Griffith and Travis Trani*

and hereby certify that I have mailed the document to the following non-CM/ECF participant via U.S. Mail:

Rodney Douglas Eaves, #173190
Bent County Correctional Facility (BCCF)
11560 Road FF75
Las Animas, CO 81054-9573
*Pro Se Plaintiff*

<u>s/ Xan Serocki</u>
*Xan Serocki*

App 262

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-01269-KLM

RODNEY DOUGLAS EAVES,

       Plaintiff,

v.

JARED POLIS,
DEAN WILLIAMS,
TRAVIS TRANI, in his individual capacity,
GYPSY KELSO,
ANTHONY A. DECESARO,
MARSHALL GRIFFITH,
JERRY ROARK,
DAVID HESTAND,
STEVEN SALAZAR,
JASON SMITH,
CLARA CASEBOLT,
LARRY COX,
JUSTIN ARRASMITH,
DERICK DOCKTER,
LUKE HOLLAND,
TIFFANY SALDANA,
COLIN CARSON,
DONNY BRITTON, and
ANDRE STANCIL, in his official capacity,

       Defendants.

---

**CDOC DEFENDANTS' REPLY IN SUPPORT OF PARTIAL MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT [DOC. 66] PURSUANT TO RULES
12(b)(1) & 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

---

Defendants Dean Williams, Travis Trani, in his individual capacity only, Gypsy Kelso,

Anthony DeCesaro, Marshall Griffith, Jason Smith, and Andre Stancil, in his official capacity (the

"CDOC Defendants"), through the Colorado Attorney General, respectfully submit this Reply in support of their Partial Motion to Dismiss the Amended Complaint (DOC. 66) and state as follows:

## INTRODUCTION

As explained in depth below, Eaves's Opposition fails to show why his Amended Complaint should not be dismissed based on the deficiencies articulated in CDOC Defendants' Partial Motion to Dismiss (DOC. 76). For clarification, CDOC Defendants also note that Eaves conceded several arguments. Eaves concedes that CDOC Defendants are immune from liability for damages in their official capacities and that they cannot be liable for damages under RLUIPA. (DOC. 90, at 8). He also alleges no Eighth Amendment claim against CDOC Defendants. (*Id.*, at 28). Further, Eaves agrees that he has no claim against any CDOC Defendants for retaliation as alleged in Claim Seven. (DOC. 90, at 9). Additionally, Eaves makes no argument in response to CDOC Defendants' Motion to Dismiss the joint and several liability request for relief. (*Id.*, at 9).

## ARGUMENT

### I.   Several requests for injunctive and declaratory relief should be dismissed.

In Eaves's Opposition, he argues that his requests for declaratory and injunctive relief are narrowly tailored; however, he simply repeats the allegations upon which he bases his constitutional and RLUIPA claims. (*See* DOC. 90, at 5-7). As specified in Section II(A) of CDOC Defendants' Partial Motion to Dismiss, his requests for injunctive declaratory relief should therefore be dismissed. (*See* DOC. 76, at 7-9).

Further, in this portion and other portions of his Opposition, Eaves argues that he plausibly stated First Amendment free exercise and RLUIPA claims against CDOC Defendants regarding the requirements at BCCF that he purchase firewood, which are in Claims Two and Four of the

2

App 264

Amended Complaint. (*See* DOC. 90, at 6, 20-23; DOC. 66, at 14-17, 19-20). These claims are not properly before the Court, because this Court has already dismissed the RLUIPA and First Amendment free exercise claims regarding the firewood purchase requirement *with* prejudice. (*See* DOC. 55, at 15).

## II.    Eaves has not shown that he may obtain relief against CDOC Defendants related to detailed accounting statements.

Eaves points to an unsigned memorandum of understanding form to argue that CDOC Defendants can provide him with detailed accounting statements regarding the Native American faith fund. (*See* DOC. 90, at 7-8). But an unsigned memorandum, without more, does not impose any obligations upon any CDOC Defendants because there is no objective indication that there is an agreement on the terms between parties. *See Denver Truck Exchange v. Perryman,* 307 P.2d 805, 810 (Colo. 1957) (an enforceable contract requires mutual assent to an exchange, between competent parties, with regard to a certain subject matter, for legal consideration); *Vidstone, LLC v. Carnival Corp.*, No. 15-cv-02666-DME-CBS, 2017 WL 3914263, at *4 (D. Colo. Sept. 7, 2017) (mutual assent depends on the objective representations made by the parties).

Eaves also refers to policies in AR 800-02 regarding the management of *facility* religious trust funds. (*See id.*). None of the CDOC Defendants work at BCCF, where Eaves is incarcerated, and Eaves has not alleged facts stating that any CDOC Defendants have possession over the accounting statements of BCCF's religious trust funds. *See Peterson v. Martinez*, 707 F.3d 1197, 1206-07 (10th Cir. 2013) (holding that an official capacity defendant must have some responsibility or authority to perform the injunctive relief being sought). As such, Eaves has failed to sufficiently allege or otherwise show that CDOC Defendants can provide him with a detailed accounting statement of the Native American faith fund at BCCF.

App 265

III.    **Eaves's allegations that he contracted COVID-19 and lost his smell do not satisfy the physical injury requirement under the PLRA.**

Eaves argues in his Opposition that he satisfied the physical injury requirement under the Prison Litigation Reform Act ("PLRA") because (1) he was deprived of the ability to exercise his religion, which caused (2) punishment from the spirits, which caused (3) him to contract COVID-19, which caused (4) his loss of smell. (*See* DOC. 90, at 8-9). Eaves's argument is without merit. His attribution of COVID-19 to his alleged religious issues is purely conclusory in the absence of any detailed factual allegations from which this Court could infer that similar issues are likely to cause illnesses in others. Purely conclusory allegations are insufficient to state a physical injury. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007) ("Conclusory allegations and unreasonable inferences . . . are insufficient to defeat a motion to dismiss.") Moreover, the assertion that divine retribution is the cause of his COVID-19 is not plausible, because there is a much more likely explanation – i.e., there was a highly contagious respiratory virus circulating in the world, and especially in prisons.[1] As such, Eaves's

---

[1] Courts may consider documents subject to judicial notice, including court documents and matters of public record, in determining a motion to dismiss. *Tal v. Hogan*, 453 F.3d 1244, 1265 n. 24 (10th Cir. 2006). "Public records and government documents are generally considered not to be subject to reasonable dispute. This includes public records and government documents available from reliable sources on the Internet." *U.S. ex rel. Dingle v. BioPort Corp.*, 270 F. Supp. 2d 968, 972 (W.D. Mich. 2003). Courts in this jurisdiction have taken judicial notice of facts from government websites under Rule 201(b) of the Federal Rules of Evidence, and it is proper to do so here. *See Llewellyn v. Allstate Home Loans, Inc.*, No. 08-cv-00179-WJM-KLM, 2011 WL 2533572, at *1 n. 2 (D. Colo. June 27, 2011) (taking judicial notice of business records from the Colorado Secretary of State's website as a fact not subject to reasonable dispute that is "'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'") (quoting Fed. R. Evid. 201(b)). Approximately 14,857 inmates in Colorado have contracted COVID-19, according to state databases. *See Colorado Department of Corrections COVID-19 Dashboard*, https://cdoc.colorado.gov/resources/covid-19-faq-and-updates (last visited September 1, 2022). Eaves alleges no facts suggesting that any other inmates, let alone a statistically significant population, have contracted COVID-19 due to spiritual punishment.

4

compensatory damages claims for emotional distress against CDOC Defendants should be dismissed for failure to allege a physical injury under the PLRA.[2]

## IV.    Eaves's claims regarding wearing of religious headwear and his requests for injunctive relief related to faith grounds access are moot.

Eaves argues that his prayer for relief requesting access to the faith grounds once per week *during lockdowns* or similar restrictions is not moot, because his denial of access to faith grounds may reoccur due to COVID-19 restrictions. (*See* DOC. 90, at 3-4). Eaves attaches and refers to a document purporting to be a mask mandate announcement at BCCF to argue that restrictions on access to the faith grounds may reoccur. (*See id.*, at 4, 32 (Ex. 23)). Whether mask requirements are currently in place or may reoccur at BCCF is irrelevant to Eaves's prayer for relief requesting *access* to the faith grounds at BCCF at least once per week during lockdowns or restrictions. As Eaves does not dispute that BCCF has no restrictions on faith grounds access in place, his claims on this basis are moot. (*See* DOC. 76, at 5-7); *McLendon v. City of Albuquerque*, 100 F.3d 863, 867 (10th Cir. 1996) ("[T]he parties must continue to have a personal stake in the outcome").

CDOC Defendants note, however, that Eaves asserts his Claim Six is not moot, because he only asserts damages for his First Amendment claims that he was denied access to faith grounds. (*See* DOC. 90, at 3; DOC. 66, at 21-23). Obviously, this would be fatal to the RLUIPA claim, since an inmate cannot bring a RLUIPA claim for damages. *See, e.g.*, *Stewart v. Beach*, 701 F.3d 1322, 1335 (10th Cir. 2012) ("[T]here is no cause of action under RLUIPA for individual-capacity

---

[2] To the extent there is any possible connection between CDOC Defendants' conduct and Eaves's alleged injuries, this argument amounts to a claim that Eaves's loss of smell is the physical manifestation of an emotional injury. Such physical manifestations are insufficient to satisfy the physical injury requirement under the PLRA. *See Hughes v. Colo. Dep't of Corrs.*, 594 F. Supp. 2d 1226, 1238-39 (D. Colo. 2009); *Bueno v. Chekush*, 355 F. Supp. 987, 1000 (D. Colo. 2018).

claims."); *see also* (DOC. 76, at 11; DOC. 90, at 8). Therefore, to the extent Eaves abandons his prayer for relief requesting an order requiring him access to the faith grounds once per week during lockdowns or similar restrictions, he is correct. If such is the case, Eaves's RLUIPA claim in Claim Six must be dismissed. (*See* DOC. 76, at 11; DOC. 90, at 8).

Eaves also argues that he is denied the ability to wear his eagle feathers and choker openly outside his cell. CDOC's current policy, however, allows for eagle feathers as approved headwear, and his allegations fail to create the inference that this policy denies him his religious exercise under the First Amendment and RLUIPA. As such, these claims are moot. Moreover, Eaves's claim that he was denied the ability to wear eagle feathers openly as retaliation is not alleged against CDOC Defendants. (*See* DOC. 66, at 29 ¶¶ 229-35). Eaves also fails to explain how his claim that he is denied his religious exercise related to his choker is not moot. (*See* DOC. 90, at 3-5). Dismissal of this aspect of his First Amendment claim for mootness is warranted for this reason as well.

**V.    Eaves's arguments do not show that his First Amendment free exercise claims should survive.**

Eaves recites caselaw from *Kay v. Bemis* to argue that it was CDOC Defendants' burden to identify legitimate penological interests that their policies or actions served. (*See* DOC. 90, at 11-12) (quoting 500 F.3d 1214, 1218-19(10th Cir. 2007)). *Kay*, however, only concerned the question of whether an inmate's religion was substantially burdened under the First Amendment and did not address whether the complained of actions were unrelated to legitimate penological interests. *See* 500 F.3d at 1218-21. Consequently, *Kay* is inapposite. As detailed in CDOC Defendants' Partial Motion to Dismiss, Eaves must allege sufficient facts to plausibly indicate the complained of policies and actions are unrelated to legitimate penological interests. (*See* DOC. 76,

at 14-15 (quoting *Gee v. Pacheco*, 627 F.3d 1178, 1188 (10th Cir. 2010)). Eaves has failed to do so.

A.     <u>Eaves has not alleged the denials of his requests for personal faith items, to "Wazila" his cell, or to embellish his headband or medicine bag are not reasonably related to legitimate penological interests.</u>

As to the personal possession of objects referenced in Claim One, Eaves once again relies upon conclusory allegations in his Opposition to assert that CDOC Defendants' actions were unrelated to legitimate penological interests.[3] Eaves also attempts to connect his allegations that Defendant Hestand stated "as an Indian your beliefs are all the same as other Indians" to CDOC Defendants because he asserts that "Hestand's view of Native Americans stems from policies created and enforced by Williams, Trani, Kelso, DeCesaro, Griffith and Smith." (*See* DOC. 90, at 11). These assertions, however, are not in the Amended Complaint and cannot be considered for the purposes of determining CDOC Defendants' Partial Motion to Dismiss. *See Truby v. Denham*, No. 16-cv-02764-CMA-CBS, 2017 WL 8942573, at *2 (Oct. 16, 2017) ("A plaintiff may not defeat a motion to dismiss by alluding to facts that have not been alleged, or by suggesting violations that have not been plead").

Eaves's citations to CDOC policies on personal faith items to argue that the denials of *his* requested personal faith items are not reasonably related to legitimate penological interests are unavailing. (*See* DOC. 90, at 11-14). For instance, that an item is listed as allowable personal faith

---

[3] For example, Eaves cites to allegations that CDOC Defendants Kelso and Smith "did not conduct any research" and are "falsifying reports"; that Griffith "falsified his report"; and that CDOC Defendants "continue to attempt the cultural genocide of the Sac and Fox and my way of life. (*See* DOC. 90, at 10-11 (citing DOC. 66, at 8, 12, 14 ¶¶ 8-9, 50, 73), 13). These allegations lack any further factual enhancement and, therefore, are naked assertions that are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678.

7

App 269

property does not require that a facility allow all inmates to possess such items. (*See* DOC. 90, at 11 ¶ 16). Facilities make case-by-case determinations as to whether an inmate will be allowed to possess such personal items based on several factors, such as population status, size, the inmate's custody level, and security concerns. (*See* DOC. 76-1, at 10-11 (AR 800-01(IV(R)(1)-11)). Additionally, Eaves asserts in his Opposition that Kelso cited "property, space and security concerns" and that Kelso did not cite detailed compelling government interests as required by AR 800-01(IV)(R)(9). (*See* DOC. 90, at 11, ¶¶ 13-15). AR 800-01(IV)(R)(9), however, refers to the requirements of an annual report issued to Faith and Citizens Programs and not a response to an inmate's religious items request. (*See* DOC. 76-1, at 10).

Eaves's argument that he should be allowed to personally possess a pipe if it is stored in a secure area is unpersuasive. Other courts have rejected claims from inmates that they should be allowed such items even if such objects were stored in secure areas. *See Davis v. Davis*, 826 F.3d 258, 267 (5th Cir. 2016) (The "suggestion that inmates be allowed to possess personal prayer pipes has already been considered and rejected by this Court."). Eaves also cites to *Williams v. Hansen* to assert that inmates who practice the Native American ways have access to pipes and tobacco. (*See* DOC. 90, at 12 (citing to 5 F.4th 1129 (10th Cir. 2021)). *Williams,* however, is inapplicable, as it also did not concern whether the plaintiff plausibly alleged sufficient facts to infer the prison official's actions were unrelated to legitimate penological interests – it solely involved the question of whether a purported constitutional violation was clearly established for the purposes of a qualified immunity defense. *See generally* 5 F.4th 1129. Eaves's allegations, therefore, fail to plausibly infer that the denials of personal faith property are not reasonably related to legitimate penological interests.

Regarding the allegations in Claim Three regarding his request to "Wazila" his cell, Eaves's citation to AR Form 800-01K on smudging is unavailing, as this form only indicates that smudging should be allowed on sweat lodge grounds or, if there are no sweat lodge grounds, at a place designated by the administrative head. (*See* DOC. 76-1, at 72 (AR Form 800-01K(C)). Nowhere in AR Form 800-01K does the policy indicate that a smudging or similar practice would be allowed in an individual inmate's *cell*. (*See id.*). He also references the Chanukkah candle lighting ceremony to claim that his "Wazila" can be done under supervision. (*See* DOC. 90, at 13-14). AR 800-01, however, explicitly states that Channukah candle lighting "*cannot be accomplished in the confines of an offender's cell.*" (DOC. 76-1, at 44 (AR 800-01(IV)(O)(4)(g)) (emphasis added)). Regarding the alleged denial of his ability to embellish his headband or his medicine bag, he merely argues that CDOC Defendants have not stated how such denial is reasonably related to legitimate penological interests. (*See* DOC. 90, at 14-15). As such, Eaves fails to allege facts plausibly indicating why the denials of the ability to "Wazila" his cell, with or without supervision, or his ability to embellish his headband or medicine bag are not reasonably related to legitimate penological interests.

B.     The First Amendment free exercise claims based on access to faith grounds should be dismissed.

In his Opposition, Eaves reiterates his allegations that CDOC Defendants created AR 800-01 that burdened his religion and that other inmates were allowed to access recreational grounds.[4]

---

[4] Eaves includes allegations that these inmates were not required to wear masks or social distance, which are not contained in the Amended Complaint and must be disregarded. (*See* DOC. 90, at 16); *see also Jojola v. Chavez*, 55 F.3d 488, 494 (10th Cir. 1995); *Wilson v. Jenks*, Case No. 12–CV–02495–RM–KMT, 2014 WL 6515336, at *4 (D. Colo. Nov. 20, 2014) (collecting cases and applying this principle to a pro se complaint).

9

As explained in CDOC Defendants' Partial Motion to Dismiss, Eaves does not allege any facts from which the Court could infer that the creation or enforcement of AR 800-01 related to faith grounds access was unrelated to legitimate penological interests. (*See* DOC. 76, at 16-17). Further, although Eaves has alleged and repeated arguments regarding his substantial burdens, he still has not shown how his allegations indicate that CDOC's actions during the COVID-19 pandemic are unrelated to the recognized fundamental interest in protecting the health and welfare of its citizens as detailed in CDOC Defendants' Motion to Dismiss. *See Harris v. Polis*, No. 20-cv-02999-CMA-STV, 2021 WL 3024664, at *4 (D. Colo. June 23, 2021), *report and recommendation adopted by* No. 20-cv-02999-CMA-STV, 2021 WL 3021466 (D. Colo. July 16, 2021). Consequently, the free exercise claims under the First Amendment based on access to the faith grounds should be dismissed.

**VI.     Eaves's Opposition fails to show he plausibly alleged a religious discrimination claim.**

Eaves contends that he was discriminated against because he is required to purchase firewood and herbs and Judeo-Christian faiths are not required to purchase materials. (*See* DOC. 90, at 17-19; DOC. 66, at 16 ¶¶ 92-94). However, he does not specify the materials Judeo-Christian faiths are provided for free in his Opposition. (*See* DOC. 90, at 17-19).

Eaves's response that a Colorado statute – Section 17-42-102, C.R.S. – dictates otherwise is a non sequitur. (*See* DOC. 90, at 17-19). As a threshold matter, that provision cannot serve as the predicate for his First Amendment claim because it is well established that a plaintiff cannot state a § 1983 claim for violation of a state statute. *See Rea v. Colorado Dep't of Corrs.*, No. 09-CV-03014-REB-CBS, 2010 WL 5575163, at *3-4 (D. Colo. Dec. 7, 2010), *report and*

*recommendation adopted*, No. 09-CV-03014-REB-CBS, 2011 WL 110917 (D. Colo. Jan. 13, 2011) (holding this principle applied to Section 17-42-102, C.R.S.). Further, nothing in Section 17-42-102, C.R.S. provides a private right of action or requires CDOC Defendants to affirmatively pay for firewood for Eaves's religious ceremonies. *See* Colo. Rev. Stat. § 17-42-102 (2021). Thus, as detailed in CDOC Defendants' Partial Motion to Dismiss, Eaves has not alleged CDOC Defendants discriminated against him "because of" his religion related to the requirement to purchase firewood and herbs asserted in Claims Two and Four. *See Iqbal*, 556 U.S. at 676; (*see also* DOC. 76, at 17-19).

## VII.   Eaves has no plausible First Amendment claims for individual liability against CDOC Defendants.

Citing to *Parratt v. Taylor*, Eaves disputes CDOC Defendants' assertion that individual liability under §1983 must be based on personal participation in the alleged constitutional violation. (*See* DOC. 90, at 19) (citing 451 U.S. 527, 535 (1981)). *Parratt*, however, is inapplicable to this issue, because nothing in the opinion indicates that individual liability under § 1983 does not contain a personal participation requirement. *See* 451 U.S. at 530-44, *overruled as stated in Daniels v. Williams*, 474 U.S. 327, 330-36 (1986). Instead, *Parratt* decided the issue of whether negligence was sufficient to state a claim under § 1983, and its holding on this issue was subsequently overruled in *Daniels*. *See Parratt*, 451 U.S. at 535-44; *Daniels*, 474 U.S. at 330-31.

In order to show a causal connection for the promulgation, creation, implementation, or utilization of a policy, the plaintiff must show the "'the defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of [his] constitutional rights.'" *Dodds v. Richardson*, 614 F.3d 1185, 1195-96 (10th Cir. 2010) (quoting *Poolaw v. Marcantel*, 565 F.3d 721, 732-33 (10th Cir. 2009)). Here, Eaves argues

that CDOC Defendants were personally involved in the constitutional violations in Claims Three and Six because he asserts generally that CDOC Defendants created policies substantially burdening his religion and denied requests for religious items. (*See* DOC. 90, at 19-20). His Amended Complaint includes no facts regarding specific CDOC Defendants' intent or their knowledge that the alleged religious discrimination would result against Eaves. (*See id.*). He also does not explain how his allegations show an "affirmative link" between each individual CDOC Defendant and the alleged violations in these claims. (*See id.*). Eaves's generic allegations, therefore, fail to articulate facts to plausibly infer a causal connection between any CDOC Defendant and the alleged constitutional violations in Claims Three and Six.

Regarding Claims One and Two, Eaves argues that he sufficiently alleged CDOC Defendant Williams's personal involvement because CDOC Defendants Kelso and Smith have the responsibilities to review requests to change policies and approve or deny such requests under direction of the *deputy* executive director or designee. (*See* DOC. 90, at 21). Williams, however, is the Executive Director of CDOC – not the deputy executive director or a designee. (*See, e.g.*, DOC. 66, at 2). Moreover, there are no allegations that Williams actually was presented with the relevant requests at issue in this case, or that he refused to approve them.  Thus, Eaves's individual capacity claim against Williams relies solely upon the allegation that his name appears on a memorandum indicating Eaves's requests were denied, and Eaves has failed to plausibly allege Williams's personal participation in any constitutional violation as a result. (*See* DOC. 76, at 21-22).

Eaves also argues that he has sufficiently alleged personal participation against CDOC Defendants for burdening the exercise of his religion because Kelso, Smith, Williams, and Trani

denied unspecified requests based on space and security without providing him documentation. (*See* DOC. 90, at 21).[5] The policy Eaves cites does not specify that documentation must be provided in response to a request or grievance regarding an inmate's religious exercise. (*See* DOC. 76-1, at 1, II (AR 800-01(II)). Even if Kelso and Smith were required to provide documentation in a response, the failure to provide documentation in compliance with CDOC's Administrative Regulations alone is insufficient to state a constitutional violation. *See Baird v. Corrs. Corp. of Am.*, No. 10-cv-00537-ZLW-CBS, 2011 WL 742468, at *2 (D. Colo. Jan. 5, 2011) (collecting cases from the Tenth Circuit and holding that the violation of an administrative regulation is, by itself, insufficient to show a constitutional violation) (quoting *Hovater v. Robinson*, 1 F.3d 1063, 1068 n. 4 (10th Cir. 1993)). For this same reason, Eaves's allegations that Griffith and DeCesaro failed to investigate before providing their responses to Step 3 grievances also fail to state a claim. (*See* DOC. 90, at 21-22; DOC. 66, at 8, 15 ¶¶ 9, 86). In addition, Eaves's allegations that Kelso, Smith, and DeCesaro falsified their reports is purely conclusory – he provides no factual allegations to indicate what they did to falsify the reports, when they falsified them, or why they might want to do so. This is insufficient to allege a plausible constitutional violation. *See Sanders*, 504 F.3d at 910 ("Conclusory allegations and unreasonable inferences . . . are insufficient to defeat a motion to dismiss."). As such, any individual capacity claims Eaves asserts against CDOC Defendants Williams, Kelso, Griffith, Smith, DeCesaro, and Trani in Claims One and Two should be dismissed.

---

[5] Eaves does not include any allegations of constitutional violations against Trani in Claim One. (*See* DOC. 76, at 22-23; DOC. 66, at 7-14). His allegations against Trani in Claim Two for First Amendment and RLUIPA free exercise violations were previously dismissed with prejudice and are barred. (*See* DOC. 55, at 15).

**VIII.  Eaves fails to sufficiently articulate why his equal protection claims should survive.**

Contrary to Eaves's assertion, it is not CDOC Defendants' burden to show a rational basis for any alleged disparate treatment at the motion to dismiss stage. (*See* DOC. 76, at 25-26; DOC. 90, at 24). Further, Eaves's references to strict scrutiny and intermediate scrutiny are inapplicable, because he alleged a class-of-one equal protection theory based on the requirement that he purchase firewood and herbs. (*See* DOC. 90, at 24-25); *see also, e.g., Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). He specifically disclaimed a religious class theory based on the Native American religion because he alleged that other Native American faith groups were allowed to use water for their ceremonies. (*See* DOC. 66, at 16 ¶ 93).

As detailed in CDOC Defendants' Partial Motion to Dismiss, Eaves also fails to identify any similarly situated individuals with respect to the requirement to purchase firewood and herbs and regarding programming in his Amended Complaint, and he declines to do so in his Opposition as well. (*See* DOC. 76, at 24-25; DOC. 90, at 24-28). He further does not explain how he was treated differently than any similarly situated individuals.

Eaves's allegations do not, as he suggests, state that he was "forced" to pay for firewood that was then donated Asatru, North Western, European Paganism, and Wiccan faiths. (*See* DOC. 90, at 25). Instead, Eaves merely alleges that he paid for firewood and that these groups were given firewood out of a common fund. (*See* DOC. 66, at 19, ¶¶ 129-31). As to programming, Eaves's argument that he is being treated differently due to the GRAACE program simply because this program is federally funded, he asserts that funds are to be used to promote programs of all faiths, and he is unaware of Native American programs at BCCF that are federally funded also fails to show he stated a claim. (*See* DOC. 90, at 25-26). This is because he relies upon the speculative

scenario that "*if* the federal government provided funds to the State of Colorado with instruction to use the funds to promote all faith programs and all faiths are promoted except the Native American faith, this would" violate the Equal Protection Clause. (*See* DOC. 90, at 26) (emphasis added). Such a hypothetical situation is not indicated in the Amended Complaint and is further insufficient to state an equal protection claim. *See Swallow v. United States*, 325 F.2d 97, 98 (10th Cir. 1963) ("Constitutional questions will not be decided upon hypothetical sets of facts."). Eaves's equal protection claims in Claims Two and Four should be dismissed as a result.

Additionally, Eaves argues that he is being denied the ability to wear eagle feathers and neckwear outside his cell even after a policy change of AR 800-01.[6] As detailed in CDOC Defendants' Partial Motion to Dismiss, Eaves does not allege which "other faiths" are allowed to wear religious headwear or neckwear outside their cells, and his equal protection claim in Claim One on this basis fails as a result. (*See* DOC. 76, at 23-24).

## IX.   Eaves did not allege a due process claim in his Amended Complaint.

Eaves also argues in his Opposition that in Claims One, Two, and Four of his Amended Complaint, he asserted a claim for violation of the Due Process Clause under the Fourteenth Amendment. (*See* DOC. 90, at 22-23, 25-26). It appears that Eaves now argues that he asserted both procedural and substantive due process violations. (*See id.*).

---

[6] In support, he attaches four exhibits. (*See* DOC. 90, at 24). Eaves specifically cites to Exhibits 23 to 26 as attached to his Response; however, based on the context, CDOC Defendants believe Eaves intended to reference Exhibits 24 to 27, which are grievances, requests, and responses to grievances and requests. (*See id.*). Eaves, however, did not specifically incorporate Exhibits 24, 25, or 27 into his Amended Complaint, and they may not be considered in determining CDOC Defendants' Partial Motion to Dismiss as a result. *See Gee*, 627 F.3d at 1186.

While Eaves specifically mentions violations of his religious exercise and equal protection rights and religious discrimination in these claims, nowhere in Claims One, Two, or Four does Eaves include any allegations mentioning that he was denied a liberty interest or that CDOC Defendants' actions shocked the conscience. (*See* DOC. 66, at 7-17, 19-20). He also makes no mention of due process. (*See id.*). Eaves may not amend his complaint through a response to add a new legal theory. *See Truby*, 2017 WL 8942573, at *2 ("A plaintiff may not defeat a motion to dismiss by alluding to facts that have not been alleged, or by suggesting violations that have not been plead"). Moreover, the court and the defendants are not required to "grope through... pages of irrational prolix and redundant pleadings, containing matters foreign to the issue involved...in order to determine the grounds for the petitioner's complaint." 5 C. Wright and A. Miller, Federal Practice and Procedure 1281, at 522 (2d Ed 1990). As such, this Court should decline Eaves's request to add a due process claim asserted for the first time in his Opposition.

## CONCLUSION

For the foregoing reasons, CDOC Defendants respectfully requests that the Court grant the instant Motion to Dismiss.

Respectfully submitted on September 1, 2022.

PHILIP J. WEISER
Attorney General

*/s/ Philip T. Barrett*
PHILIP T. BARRETT*
Assistant Attorney General
Civil Litigation & Employment Section
Colorado Department of Law
1300 Broadway, 10th Floor
Denver, Colorado 80203

16

App 278

Telephone: 720-508-6659
E-Mail:  philip.barrett@coag.gov;
*Attorney for the Defendants Dean Williams, Travis
   Trani, Gypsy Kelso, Anthony Decesaro, Marshall
   Griffith, Jason Smith, and Andre Stancil*

17

App 279

**CERTIFICATE OF SERVICE**

This is to certify that I have duly served the foregoing upon all parties herein by e-filing with the CM/ECF system maintained by the court on September 1, 2022, and/or by depositing same in the United States mail, postage prepaid, at Denver, Colorado, on September 1, 2022, addressed as follows:

Rodney Eaves #173190                          *Courtesy copy e-mailed to:*
Bent County Correctional Facility (BCCF)      Adrienne Sanchez, CDOC
11560 Road FF75
Las Animas, CO 81504-9573
*Plaintiff Pro Se*

Andrew Ringel
Katherine Hoffman
Hall & Evans, LLC – Denver
1001 Seventeenth Street Suite 300
Denver, CO 80202
Email:  ringela@hallevans.com
hoffmank@hallevans.com
*Attorneys for Defendants Roark, Hestand, and Salazar*

Stefanie L. Mann
Colorado Attorney General's Office
1300 Broadway
Denver, CO 80203
Email:  Stefanie.mann@coag.gov
*Attorney for Jared Polis*

*s/  Jim L. Mules*_____

18

App 280